UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY<br>PATENT LITIGATION | MDL No. 1592 (MLW)<br><br>This Document Relates To All Actions |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF COLUMBIA UNIVERSITY'S EMERGENCY MOTION TO SEAL AND RESTRICT ACCESS TO CONFIDENTIAL INFORMATION**

Dated: June 15, 2004

Thomas F. Maffei (BBO # 313220)
Scott McConchie (BBO # 634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Morgan Chu
David I. Gindler
Jason G. Sheasby
Irell & Manella LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
(310) 203-7199 (fax)

Wayne M. Barsky
Kevin S. Rosen
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California
90067-3026
(310) 552-8500
(310) 551-8741 (fax)

ATTORNEYS FOR THE TRUSTEES
OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK

1139441

**PRELIMINARY STATEMENT**

On June 11, 2004, this Court ordered supplemental briefing on two issues. First, the Court asked whether it has the authority to enter an order directing plaintiffs' outside counsel not to share confidential portions of the prosecution history of U.S. Patent Application No. 08/477,159 (the "'159 application") with third parties, including their clients. The Court has the inherent authority to preserve the integrity of its judicial proceedings and to enforce the applicable rules of professional responsibility. The integrity of this Court's proceedings, and the applicable rules of professional responsibility, require that confidential documents obtained from the United States Patent and Trademark Office ("PTO") in connection with this litigation not be further disseminated.

Second, the Court has ordered briefing on whether this issue is moot if counsel for plaintiffs have already disseminated portions of the '159 application to their clients. Plaintiffs' outside counsel have stated that only a portion of these materials have been reviewed by their clients, and then only by certain in-house counsel. Barring further dissemination, and requiring the return of these materials to outside counsel, will stop further harm from being caused to Columbia.

**FACTUAL BACKGROUND**

Although this Court has previously been advised of the facts underlying this matter, we do wish to apprise the court of some additional facts relevant in light of the Court's June 11 Order.

A.   **Unauthorized Disclosures Of The '159 Application Prosecution History**

Columbia is aware of two previous instances of improper access to the '159 application prosecution history:

(1) On November 19, 2002, a third party (Michael Linton) obtained all of the documents in the '159 application prosecution history (as it then existed) by representing falsely that the application was abandoned (the "2002 Documents").  Declaration of David I. Gindler ("Gindler Decl."), Ex. J.[1]  After becoming aware of this improper access, Columbia informed the PTO.  The PTO confirmed that the '159 application prosecution history was confidential and that it would keep the '159 application prosecution history confidential.  Declaration of Jason G. Sheasby ("Sheasby Decl."), ¶ 2.[2]  Although not disclosing whether Mr. Linton is their source, some of the plaintiffs have cited to pre-November 2002 portions of the '159 application prosecution history in their complaints.

(2) Counsel for Biogen and Genzyme (Foley Hoag LLP) have disclosed that they obtained from the PTO portions of the '159 application prosecution history that did not exist until <u>after</u> the November 2002 unauthorized disclosure occurred (the "2003 Documents"), including an October 28, 2003 Amendment.  *Id*., ¶ 5, Ex. 4.  They have refused to tell Columbia how they caused this disclosure by the PTO to happen.  *Id*., ¶ 5.  Biogen and Genzyme submitted a portion of the October 28, 2003 Amendment in the reply in support of their preliminary injunction motion (the "PI Reply").  Together, the 2002 and 2003 Documents constitute a large portion of the '159 application prosecution history.

---

[1]   The Declaration of David I. Gindler was filed concurrently with Columbia's Motion to Seal on June 10, 2004.

[2]   The Declaration of Jason G. Sheasby is filed concurrently herewith.

**B.    Columbia's Attempts To Meet And Confer On The Subject Of Unauthorized Disclosures**

Pursuant to the Court's June 11 order, Columbia held a conference call with certain opposing counsel on June 14, 2004, to meet and confer about "whether Columbia's request has been made moot by previous disclosures of the relevant information to individuals other than outside counsel for plaintiffs." Order at 3.

During the meet and confer, and by separate correspondence, counsel for plaintiffs revealed the following information:

<u>Biogen and Genzyme</u>

Biogen and Genzyme's outside counsel reported that two "in-house" counsel at Genzyme and five "in-house" counsel at Biogen received both the 2002 and the 2003 Documents. Sheasby Decl., Ex. 4. Counsel also represented that they sent portions of these documents to outside counsel for other parties to this consolidated proceeding and that they continue to investigate the full scope of the third-party disclosures of these documents. *Id.*, ¶ 5. Other than an oblique statement that these documents were obtained "from the PTO," counsel refused to explain how they obtained either the 2002 or 2003 Documents. *Id.* Biogen and Genzyme also refused to reveal what portions of the '159 application's prosecution history were in the possession of outside counsel. *Id.*

<u>Johnson & Johnson</u>

Outside counsel represented that the only material in the possession of in-house counsel and legal staff at Johnson & Johnson is that portion of the prosecution history attached to the PI Reply. *Id.*, Ex. 5. Outside counsel refused to disclose what portions of the prosecution history were in its own possession. *Id.*, ¶ 6.

Genentech:

Outside counsel represented that they possess the confidential document attached to the PI Reply, but that Genentech employees do not have this document. *Id.*, ¶ 7.

Amgen/Immunex

Outside counsel represented that both in-house and outside counsel have reviewed portions of the prosecution history of the '159 application. Outside counsel stated that they received portions of the prosecution history from both the PTO and from Biogen. *Id.*, Ex. 6.

Wyeth/Genetics Institute

Wyeth and Genetics Institute did not respond to Columbia's request that it meet and confer. *Id.*, ¶ 4, Ex. 1. However, Wyeth's outside counsel previously represented that they only possess the documents filed with Biogen and Genzyme's PI Reply, and that they would not allow access to inside counsel pending the resolution of this motion. *Id.*, Ex. 2.

Abbott

Abbott did not respond to Columbia's request that it meet and confer. *Id.*, ¶ 4, Ex. 1.

## DISCUSSION

**I.   The Court Has The Authority To Bar Counsel's Further Dissemination Of Confidential Information Concerning The '159 Application's Prosecution History, And Should Exercise That Authority**

Courts have the inherent authority to control conduct that threatens the integrity of the judicial process. *See, e.g., Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985) ("Courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal"). Moreover, "a district court is vested with broad power and responsibility to supervise the professional conduct of the attorneys appearing before it." *Fiandaca v. Cunningham*, 827 F.2d 825, 828 (1st Cir. 1987) (applying

rules governing professional conduct within the district). Attorneys appearing in the District of Massachusetts are subject to the Rules of Professional Conduct of the Supreme Judicial Court of Massachusetts. *See* D. Mass. L.R. 83.6(4)(B) (subjecting to discipline attorneys whose actions violate "those canons and rules adopted by the Supreme Judicial Court of Massachusetts").

Rule 4.4 of the Massachusetts Rules of Professional Conduct provides that "[i]n representing a client, a lawyer shall not . . . use methods of obtaining evidence that violate the legal rights of [a third person]." Massachusetts Rules of Prof. Conduct, Rule 4.4. The Comment notes that "a lawyer may [not] disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons." *Id.* The comment also notes that Rule 4.4 is "identical" to ABA Model Rule 4.4. *Id.* Cases interpreting Model Rule 4.4 are therefore instructive.

Counsel for Biogen and Genzyme, as well as counsel for Amgen and Immunex, have admitted that they obtained portions of the confidential '159 application prosecution history from the PTO. Sheasby Decl. ¶ 5, Ex. 6. The '159 application prosecution history is a confidential document protected from disclosure as a matter of law. *See* Memorandum in Support of Motion to Seal ("Memo") at 4-7. Indeed, the PTO has acknowledged that the '159 application prosecution history is confidential. Sheasby Decl., ¶ 2; Gindler Decl., Ex. K. Thus, Columbia has a legal right to keep the '159 application confidential.

Biogen, Genzyme, Amgen, and Immunex have refused to disclose how they caused the PTO to give them access to the '159 application, despite repeated requests from Columbia. Gindler Decl., Exs. C, D, F; Sheasby Decl., Ex. 1. However, since the PTO is

1139441                                     - 5 -

obligated to keep the materials confidential, and since the parties concede that they obtained these documents from the PTO, there is a compelling inference that these plaintiffs violated Columbia's legal right to confidentiality when they obtained the '159 application prosecution history through the PTO. There is a similarly strong inference that they have violated Rule 4.4, although further factual inquiry is appropriate. *Cf. United States v. Santiago-Lugo*, 904 F. Supp. 43, 48 (D.P.R. 1995) ("Rule 4.4 of the Model Rules of Professional Conduct . . . forbids the use of methods of obtaining evidence that violate the legal rights of third persons. In the present case, the state-recognized confidentiality of personnel files . . . has been circumvented and sanctions under Rule 4.4 . . . are available").

The remedies available when an attorney appearing before a court improperly obtains a document <u>outside of the discovery process</u> are broad, and include the ability to stop the further dissemination of improperly obtained documents. For example, in *In re Shell Oil Refinery*, 143 F.R.D. 105, 107 (E.D. La. 1992), Plaintiffs' Legal Committee ("PLC") "had possession of Shell documents that were not obtained through the discovery process." PLC had apparently obtained the document from a Shell employee. *Id.* The court noted that "PLC has effectively circumvented the discovery process and prevented Shell from being able to argue against production. Had the PLC sought to obtain these documents through the discovery process, Shell would have had the opportunity to seek a protective order pursuant to the Federal Rules . . . ." *Id.* at 108. The court concluded that "[f]ederal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes. Indeed, the district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Id.* (quotation omitted). The court held that the appropriate remedy was to "prohibit[] the PLC from making any use

of the documents, requiring the PLC to identify and produce the documents to Shell, and prohibiting the PLC from any further *ex parte* contact with any Shell employees," the source of the improperly obtained documents. *Id.* at 109. As part of the relief granted by the court in *Shell*, PLC was not allowed to keep copies of the information contained in the documents at issue, thus preventing the PLC from further dissemination of the materials. *Id.* See *also Giardina v. Ruth U. Fertel, Inc.,* No. Civ.A. 00-1674, 2001 WL 1628597, at *4 (E.D. La. Dec. 17, 2001) (prohibiting use and barring further dissemination by requiring return of confidential information improperly obtained outside of discovery); *cf. Public Citizen Health Research Group v. Food and Drug Admin.*, 953 F. Supp. 400, 404 (D.D.C. 1996) (barring the further dissemination of information inadvertently released by the FDA until the court could determine whether that information was exempt from disclosure under the Freedom of Information Act).

At this time, Columbia does not ask the Court to decide whether a violation of ethical obligations occurred, nor does it ask the Court to penalize any of plaintiffs' conduct. Instead, pursuant to the Court's authority "to remedy litigation practices that threaten judicial integrity and the adversary processes," *In re Shell Oil Refinery*, 143 F.R.D. at 108, and to prevent profiting from what appears to be the violation of the Massachusetts Rules of Professional Responsibility, Columbia asks that the portions of the '159 application prosecution history in the possession of plaintiffs be treated as for "Outside Attorneys' Eyes Only" while Columbia gathers more information regarding its improper release.

## II.  Columbia's Request Is Not Moot

Columbia has requested relief limiting access to the entirety of the '159 application's prosecution history to outside counsel for plaintiffs. This court has ordered Columbia to

address whether its request has been rendered moot "by previous disclosures of the relevant information to individuals other than outside counsel for the plaintiffs." Order at 3. The release of a confidential document causes damage that cannot be undone. However, the fact that harm has already occurred does not mean Columbia is not entitled to relief to prevent additional harm.

Thus, in *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 421-22 (1983), the government sought to use the results of a grand jury investigation in a civil action against the subject of the investigation. Justice Department civil division attorneys had access to the grand jury materials "for more than two years" before an appeals court stopped their access to the materials. *Id.* at 422 n.6. "The Government argued in the Court of Appeals that the case was moot because the disclosure sought to be prevented had already occurred." *Id.* The United States Supreme Court concurred with the appellate court's decision that the case was not moot: "The controversy here is still a live one," because "[e]ach day" the order granting the civil division attorneys access to the grand jury materials "remains effective the veil of secrecy is lifted higher by disclosure to additional personnel and by the continued access of those to whom the materials have already been disclosed. We cannot restore the secrecy that has already been lost but we can grant partial relief by preventing further disclosure." *Id.* (quotation omitted).

The relief that Columbia has requested is necessary and proper.

First, Biogen, Genzyme, Johnson & Johnson and Abbott have refused to disclose what portions of the '159 application prosecution history are in the possession of their outside counsel. Sheasby Decl., ¶¶ 4, 5, 6; Ex. 3. To the extent that outside counsel possess portions of the '159 application prosecution history that plaintiffs' employees have not seen,

designating the materials as "Outside Attorneys' Eyes Only" would prevent further trafficking in these materials between plaintiffs and their outside counsel.

Second, it appears that, to the extent that portions of the '159 application prosecution history were disclosed to plaintiffs' employees, it was limited to certain in-house legal counsel. *Id*., ¶ 7, Exs. 4-6. Granting Columbia's requested relief would force in-house counsel to return the confidential documents, and thus prevent their further dissemination within each plaintiff's organization.

Third, although barring further use of these materials by in-house counsel will not erase knowledge of the materials from the minds of those in-house counsel who have reviewed them, it will dim that recollection.

Columbia anticipates that plaintiffs will argue that Columbia has waived its confidentiality rights because it was aware of the release of the 2002 Documents and did not seek to recover them. This does not render Columbia's requested relief moot for three reasons. First, regardless of the status of the 2002 Documents, the 2003 Documents were still confidential when Biogen and Genzyme improperly obtained them from the PTO. Second, Columbia took steps to remediate the unauthorized access that occurred in 2002 – it asked the PTO to prevent unauthorized access from ever occurring again. Third, to the extent any attorney for plaintiffs had any role in obtaining the 2002 Documents from the PTO, they did so in violation of their Rule 4.4 duties. Plaintiffs can hardly argue that they are entitled to possession of documents that were secured by their counsel through improper means.

**CONCLUSION**

For the reasons set forth in the moving papers, and this Supplemental Memorandum, Columbia respectfully requests that this Court grant its emergency motion.

Respectfully submitted,

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK

By its attorneys,


 /s/ Jason G. Sheasby
Jason G. Sheasby
Irell & Manella LLP

 /s/ Wayne M. Barsky
Wayne M. Barsky
Gibson, Dunn & Crutcher LLP