UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: COLUMBIA UNIVERSITY PATENT LITIGATION | MDL NO. 1592 |
| IMMUNEX CORPORATION, a Washington Corporation and AMGEN INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY in the City of New York, a New York Corporation,<br><br>Defendant. | Civil Action No. 04-10740-MLW<br><br>C. D. Cal. No. CV 03-4349 MRP (CWx) |
| AND RELATED COUNTERCLAIM | |

**AMGEN INC'S AND IMMUNEX CORPORATION'S
MEMORANDUM OF LAW IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO STAY LITIGATION
PENDING CONCLUSION OF REEXAMINATION
AND REISSUE PROCEEDINGS
<u>IN THE PATENT AND TRADEMARK OFFICE</u>**

Columbia wants to delay adjudging the merits of this litigation indefinitely. Columbia could have requested reexamination and/or reissue of U.S. Patent No. 6,455,275 (the "'275 patent") from the Patent and Trademark Office ("PTO") anytime in the last 20 months. Instead, just as it delayed issuance of the claims of the '275 patent until 22 years after filing the parent patent application and 9 years after obtaining its third patent descended from that application, Columbia waited until it exhausted all of its other dilatory tactics to seek the PTO's review. Only once the scheduling conference drew near and the Court's scheduling order had forced Columbia to accede to a Rule 26(f) conference with Amgen Inc. and Immunex Corp. (collectively "Amgen") and the other plaintiffs, did Columbia announce its intent to file a reissue application and seek to stay the scheduling conference and this litigation. Just as this Court

denied Columbia's request to postpone the scheduling conference, it should deny this motion to stay.

The prejudice to Amgen from the delay sought by Columbia outweighs any benefit of a stay. A stay will delay resolution of an accruing, undetermined potential liability—the very harm Amgen sought to avoid by filing its declaratory judgment action. Instead of the litigation affording Amgen a prompt dissolution of the cloud of uncertainty, the stay creates the risk of hundreds of millions of dollars in potential liability. Absent timely resolution of these MDL cases, the biotech community will be impeded and the public interest will suffer. A stay contravenes the paramount public interest in ensuring that patent monopolies are kept to their proper scope and duration, and that patents have not been obtained through fraud or inequitable conduct.

Moreover, contrary to Columbia's assertions, at least some of Amgen's causes of action, such as inequitable conduct, laches and misuse, will survive the PTO proceedings. Indeed, if Columbia's "every confidence that the PTO will reaffirm the validity of the '275 patent during the reexamination and reissue proceedings," is true, all of the issues will still remain for this Court when the stay is lifted. [Columbia's Mot. To Stay at 11.].

A stay of this litigation is simply not warranted. All of the MDL parties (including Columbia) chose a federal court as the forum to test patent enforceability and validity, and the majority of those parties chose this Court as the MDL forum because of its expertise and familiarity with the technology in-suit. Given that Amgen filed suit almost a year ago, and that Amgen's transferee court had set trial for December 2004, Amgen deserves to have the validity and enforceability of the '275 patent promptly resolved. Columbia's motion for stay should accordingly be denied.[1]

---

[1] Due to the fact that Columbia did not file its motion for stay until June 10, Amgen did not have sufficient time to allow for the filing of one joint response to Columbia's motion.

2

## BACKGROUND

Amgen filed this declaratory judgment action in the Central District of California almost one year ago, on June 18, 2003. Columbia was served with the First Amended Complaint on September 25, 2003 but delayed answering Amgen's complaint for nearly five months by filing a series of motions to transfer and/or dismiss. [Norton Decl. at ¶¶ 2-8].

Columbia first filed a motion to transfer the case under Section 1404(a) to the Northern District of California. [Norton Decl. at ¶¶ 3-4]. When that motion was denied without oral argument, instead of filing an Answer, Columbia filed two motions to dismiss Amgen's Seventh Claim for Relief, over which Amgen ultimately prevailed. [Norton Decl. at ¶ 5]. After a delay of almost five months, Columbia finally answered on February 12, 2004. [Norton Decl. at ¶ 6]. The Court for the Central District of California Court entered a Scheduling Order setting discovery cut-off for August 27, 2004, motion cut-off for September 24, 2004 and trial for December 7, 2004. [Exh. B, Norton Decl.]. Meanwhile, Columbia filed another motion to transfer to the Northern District of California, this time addressed to the MDL Panel under Section 1407. [Norton Decl. at ¶¶ 7].

As early as March 3, 2004, Amgen sought to schedule a Rule 26(f) conference with Columbia so that discovery could begin immediately, but Columbia refused. [Exh. C, Norton Decl.]. After the MDL transfer on April 8, 2004, Amgen and Immunex continued to request a Rule 26(f) conference with Columbia to start discovery, but Columbia again refused, until the Court's scheduling order forced Columbia to agree. [Exh. D, Norton Decl.]. It was at that conference that Columbia informed Amgen and the other plaintiffs that it planned to request postponement of the scheduling conference in order to have this Court hear the motion to stay it was about to file.

## ARGUMENT

I. **THIS COURT HAS THE AUTHORITY TO DENY COLUMBIA'S MOTION FOR A STAY AND ALLOW THE LITIGATION AND PTO PROCEEDINGS TO PROGRESS IN PARALLEL.**

Courts have inherent power to manage their dockets. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *Ethicon*, 849 F.2d at 1426. This power "calls for the exercise of judgment, which must weigh competing interests and <u>maintain an even balance</u>." *Landis*, 299 U.S. at 254-55 (emphasis added).

Neither the fact that a reexamination has been granted, nor the suggestion that a request for reissue may be filed mandate a stay. The litigation and PTO procedures are distinct proceedings that can reasonably proceed in parallel. The Federal Circuit has noted that the presumed awkwardness of the PTO and court reached different conclusions "is more apparent than real," and held that both litigation and reexamination can proceed at the same time. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988). Reexamination proceedings and court actions are "distinct proceedings, with distinct parties, purposes, procedures and outcomes." *In re Etter*, 756 F.2d 852, 857–858 (Fed. Cir. 1985). There will be no real duplication if both proceed. *Ethicon*, 849 F.2d at 1427. The possibility of different conclusions is real and appropriate and there is nothing improper if the Court invalidates the '275 patent while the PTO upholds its validity:

> [W]e see nothing untoward about the PTO upholding the validity of a reexamined patent which the district court later finds invalid. <u>This is essentially what occurs when a court finds a patent invalid after the PTO has granted it.</u> Once again, it is important that the district court and the PTO can consider different evidence. Accordingly, different results between the two forums may be entirely reasonable. *Ethicon*, 849 F.2d at 1428-29 (emphasis added).

The importance of additional information presented as evidence in adversarial proceedings concerning patent validity in Court is demonstrated by the numerous cases in which district courts and the Federal Circuit have held patents invalid even after the PTO reviewed the same issue in reexamination or reissue. *See e.g., Geneva Pharm. Inc. v. GlaxoSmithKline PLC*,

4

349 F.3d 1373, 1375, 1378 (Fed. Cir. 2003) (affirming a district court's finding that the patent-in-suit was invalid for obviousness-type double patenting even though the PTO concluded otherwise during reexamination.); *see also In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1345, 1347 n.2 (Fed. Cir. 2002) (affirming a finding of invalidity based on inherent anticipation by references, several of which had been considered by the PTO during reexamination); *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425, 1427 (Fed. Cir. 1996) (affirming judgment that a reexamined patent was invalid based on a document found in litigation).

Moreover, this litigation if permitted to proceed will be a valuable source of evidence and argument to the PTO, because the PTO will have access to evidence normally only a court receives. The PTO proceedings are *ex parte*, and must rely principally upon information and argument provided only by the applicants in deciding whether subject matter in an application is patentable. *Norton v. Curtiss*, 433 F.2d 779, 793-94 (C.C.P.A. 1970) ("With the seemingly ever-increasing number of applications before it, the Patent Office has a tremendous burden. While being a factfinding as well as an adjudicatory agency, it is necessarily limited in the time permitted to ascertain the facts necessary to adjudge the patentable merits of each application. . . . Clearly, it must rely on applicants for many of the facts upon which its decisions are based.") (emphasis added); 37 C.F.R. § 1.56. However, if this litigation were to proceed, Columbia would have a duty to disclose to the PTO the validity evidence and arguments plaintiffs make in this Court. MPEP § 2001.06(c).[2]

In determining whether to allow litigation and PTO proceedings to progress in parallel, Courts have considered the following factors relevant with respect to a request for a stay of litigation pending the conclusion of reexamination or reissue proceedings:

(1) <u>Prejudice</u> - whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;

(2) <u>Delay</u> - whether the party seeking the stay is using it as a mere dilatory tactic;

---

[2] All cited sections of the Manual of Patent Examining Procedure ("MPEP") are attached as Exhibit A to the Declaration of Vicki G. Norton.

(3) <u>Effect on the issues</u> - whether a stay will simplify the issues in question and trial of the case including the probable effect on the litigation that granting a stay would have; and

(4) <u>Stage of the case</u> - whether discovery is complete and whether a trial date has been set.[3]

*Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406-407 (W.D.N.Y. 1999); *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920, at *3 (M.D.N.C. Dec. 17, 1998); *Agar Corp. v. Multi-Fluid, Inc.*, 983 F.Supp. 1126, 1127 (S.D. Tex. 1997); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F.Supp. 1205, 1208 n.9 (D. Del. 1989); *Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d 1718, 1720 (E.D. Cal. 1993). As demonstrated below, each of these factors favors denial of the motion to stay.

II. **THE COURT SHOULD DENY COLUMBIA'S MOTION FOR A STAY BECAUSE TO DO OTHERWISE WOULD SEVERELY PREJUDICE AMGEN WHILE REWARDING COLUMBIA FOR ITS DILATORY TACTICS.**

A. **Staying This Case Would Unduly Prejudice Amgen And Would Put Amgen At A Clear Tactical Disadvantage.**

This Court cannot allow Columbia to yet again delay resolution of this Declaratory Judgment action, the very purpose of which is to permit those threatened with suit to remove the uncertainty hanging over their commercial activity. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988); *see also Minnesota Mining and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672-73 (Fed. Cir. 1991) (holding that exercise of the court's discretion to issue a declaratory judgment is warranted "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."). Amgen and the other plaintiffs have sought a speedy judicial resolution. They have not opted for PTO review, because they will be prejudiced by lingering uncertainty.[4]

---

[3] This factor is discussed in Section II.C, supra, regarding delay because the lack of discovery here is due to Columbia's delay tactics. Accordingly, this factor should not weigh in Columbia's favor because Columbia should not benefit from its success in delaying discovery.

[4] None of the cases Columbia relies upon are declaratory judgment actions where the non-patentee/plaintiff opposed the motion to stay and was not the party to request reexamination. Only three of the cases Columbia cites involved declaratory judgment actions. In one, the party that brought the action was the same party who filed for

(continued...)

6

Based on PTO statistics, the reexamination of the '275 patent will take longer than the consideration of dispositive motions in this case. The average pendency of reexamination is more than 21 months. [Exh. E, Norton Decl.]. Since the request for reexamination was filed in February, 2004, the reexamination is likely to conclude after November, <u>2005</u> – and if it were consolidated with a reissue proceeding, it could be much longer. In the current draft of the MDL parties' proposed schedule, the plaintiffs propose that all dispositive motions be filed by April 26, 2005 – months before the PTO is likely to conclude its proceedings.

In addition, if the PTO finds one or more claims (but not all) of the '275 patent invalid, the PTO will cancel them only after the time for appeal has expired or any appeal proceeding has terminated. 35 U.S.C. § 307. Waiting for Columbia to appeal a canceled claim could take many more months beyond the delay described above. As a matter of fairness, Amgen should not be forced to wait two years and more for resolution - - all the time having to face the specter of potential infringement liability.[5]

While this dispute remains unresolved, unknown potential damages continue to accrue. Although Amgen believes it is unlikely that the Court will find the claims infringed and not invalid or unenforceable, the monetary size of that risk is enormous – potentially in the hundreds of millions of dollars. The longer Amgen must wait for resolution, the greater the potential

---

(...continued from previous page)
reexamination and who sought a stay. See *Softview Computer Prod. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1634 (S.D.N.Y. 2000). In the second case, the party that brought the action and the patentee both filed for reexamination only three months after litigation was initiated. *Thomas & Betts Corp. v. Tishman Research Corp.*, No. 86 Civ. 1926 (MJL), 1986 WL 13455, at *1 (S.D.N.Y. Nov. 17, 1986). In the third instance, the party that brought the action moved to stay after the defendant's licensor filed for reexamination. *Guthy-Renker Fitness L.L.C. v. Icon Health &Fitness Inc.*, 48 U.S.P.Q.2d 1058, 1059-1060 (C.D. Cal. 1998).

[5] Adding to the prejudice to Amgen is the fact that non-patentees have very limited ability to participate in either reexamination or reissue proceedings, contrary to Columbia's suggestions. In reexamination, any submission of prior art by Amgen or other licensees will not be considered by the PTO until after the reexamination is concluded. 37 C.F.R. §1.502; MPEP § 2206. While the licensees can notify the PTO about litigation proceedings, the licensees cannot make any arguments or include any additional information beyond mere notice. MPEP § 2282.

In reissue, Columbia's licensees would also have very limited roles. Amgen can only file "protests" which merely point out issues to the PTO. 37 C.F.R. § 1.291. Amgen and the other licensees cannot participate in the back-and-forth between the PTO and Columbia and cannot participate in any interviews or hearings. The PTO
(continued...)

liability exposure risk and the more unacceptable the risk – a fact that Columbia is banking on in its quest for enhanced bargaining power during any future settlement discussions between the parties. Moreover, the uncertainty resulting from the undetermined validity and enforceability of the '275 patent may impact Amgen's commercialization and development of new products.

Furthermore, Columbia clearly considers Amgen's licenses to the '275 patent and related patents to be terminated, [Columbia's Mot. To Stay at 3], and has threatened to seek an injunction. [Columbia's Opp. to Mtn. by Biogen and Genzyme for a Preliminary Injunction at 9]. The possibility of an injunction casts an even darker cloud over Amgen's business, heightening the importance of a prompt resolution.

Amgen will also suffer evidentiary prejudice if the case is stayed. Evidence relevant to this dispute is already stale since the parent patent application was filed in February 1980, and the research was performed in the 1970's. Several potential witnesses who worked in the relevant field 54 years and more ago are in their 80's.[6] In addition, one potential witness, William H. Lewis, died in 1987. [Exh. G at 26, Norton Decl.]. There is a very real chance that witnesses who possess information relevant to obviousness-type double patenting and invalidity will no longer be available when a stay would be lifted.

Moreover, because of the presumption of validity and the accompanying burden upon the accused infringer, Amgen and the other plaintiffs need discovery (particularly of documents) far more than Columbia does. Documents concerning Columbia's (a) conception, reduction to practice, development and prosecution of the subject matter of the '275 patent, (b) seeking and obtaining rights to government funded technology and (c) licensing of the '275 patent and related patents are all within Columbia's exclusive possession. Because Amgen's case is dependent upon the documents in Columbia's possession, Amgen is disadvantaged by any delay in

---

(...continued from previous page)
will not consider protests concerning inequitable conduct issues. 37 C.F.R. § 1.291(b); MPEP § 1901.

[6] As just one example, Dr. Siminovitch, a prior art witness, is 84 years old. [Exh. F, Norton Decl.].

8

obtaining these documents. Columbia, on the other hand, can examine those documents at its leisure.

### B. Staying This Case Would Have A Negative Impact On The Public.

The public is also prejudiced by delay in resolving this dispute. "A patent by its very nature is affected with a public interest." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 816 (1945). The far reaching social and economic consequences of a patent – especially here where the patent impacts on the development of life saving drugs – give the public a paramount interest in seeing that patent monopolies were not obtained through fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope. *Id.* Thus, it also benefits the public to have the validity and enforceability of the '275 patent determined without delay.

### C. Columbia Seeks A Stay As A Mere Dilatory Tactic In A Long Line Of Maneuvers Designed To Avoid Judicial Resolution Of This Case.

To support its motion, Columbia cites a purported lack of substantial discovery in the six MDL cases but conveniently ignores that any lack of discovery in Amgen's case and the other plaintiffs' cases is due to Columbia's own delays. As detailed in the Background Section above, Columbia has used every available opportunity to stall discovery. Absent Columbia's litigation tactics, discovery in this litigation would now be well underway. Thus, the stage of Amgen's case should not weigh in Columbia's favor.

Clearly reexamination and reissue are not important to Columbia. If they were, Columbia would have already filed a request for reexamination or a reissue application in the last 20 months since the '275 patent issued, or at least during the last 14 months since the first declaratory judgment plaintiff filed suit against Columbia. Columbia's failure to take timely action at the PTO should not be held against the declaratory judgment plaintiffs. Staying the case will exacerbate the business uncertainty and pressure the plaintiffs to settle with Columbia without having the merits of the plaintiffs' challenge addressed, as is the plaintiffs' right under

the Declaratory Judgment Act. Therefore, it is in Columbia's interests to delay resolution as long as possible.

### III. A STAY WILL NOT RESULT IN ANY SIGNIFICANT JUDICIAL ECONOMY GIVEN THE ISSUES RAISED IN THIS CASE.

Columbia has expressed "every confidence that the PTO will reaffirm the validity of the '275 patent," and clearly anticipates that at least some claims will survive the reexamination and reissue processes (if Columbia actually files its reissue application). [Columbia's Mot. To Stay at 11]. If Columbia is correct, a stay will not promote judicial economy as Columbia touts.

Even if the PTO does not affirm the validity of the '275 patent, substantial issues will still have to be decided. Courts have relied on the failure of a reexamination to resolve all issues in denying motions to stay. *See Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 1990) (denying stay and relying in part on the fact that reexamination will not resolve every issue, particularly an inequitable conduct claim).[7] Columbia's arguments leave the false impression that the PTO's review will affect every issue in this case. In fact, there are several key defenses in this case that the PTO cannot consider.

### A. Regardless of the outcome of the PTO proceedings, this case will not be resolved.

In considering whether the Amgen case is exceptional for purposes of awarding attorneys fee, the court <u>must</u> consider inequitable conduct. *Enzo Biochem Inc. v. Calgene Inc.*, 188 F.3d 1362, 1381 (Fed. Cir. 1999). It is undisputed that the PTO proceedings cannot resolve Amgen's inequitable conduct claims (Third Claim for Relief) either in reexamination or reissue.[8] So even if the PTO cancels all claims as invalid (thereby mooting the issues of invalidity and non-

---

[7] See also *Gladish*, 29 U.S.P.Q.2d at 1720 (denying motion for stay in part because the reexamination proceedings would not finally resolve all issues – such as validity issues the PTO cannot consider, infringement and whether the case is exceptional); *Starlight Assoc. v. Berkey-Colortran, Inc.*, 201 U.S.P.Q. 307, 307 (S.D.N.Y. 1978) (denying stay noting that claims for misuse and fraud would survive).

[8] The PTO's review on reexamination is limited to prior art patents or printed publications. 35 U.S.C. §§ 301-302; 37 C.F.R. § 1.510(a); MPEP §§ 2205, 2209. Compliance with 35 U.S.C. § 112 is only considered where claims are amended, new claims are added, or the specification is amended during reexamination. MPEP § 2258. In reissue proceedings, "[t]he Office will not comment upon duty of disclosure issues which are brought to the

(continued...)

infringement), the Court will have to decide whether Columbia obtained the '275 patent through inequitable conduct. Then, regardless of the outcome at the PTO, we will be "right back here" to litigate inequitable conduct. *See Enprotech*, 15 U.S.P.Q.2d at 1320.

Second, and contrary to Columbia's insistence, the PTO cannot consider, let alone resolve, Amgen's laches defense (Fourth Claim for Relief) in either reexamination or reissue. Columbia's reliance on *In re Bogese II*, 303 F.3d 1362 (Fed. Cir. 2002) is misplaced. Before the PTO can sanction an applicant for unreasonable delay in the prosecution of a patent application, the PTO <u>must</u> provide notice to the applicant. *Bogese*, 303 F.3d at 1367-68. In *Bogese*, the PTO warned the applicant during prosecution that the next continuation application might be rejected for laches if the applicant did not advance prosecution with substantive amendments. *Id.* at 1364. Amgen's laches defense relies on Columbia's allegedly unreasonable and unexplained 22-year delay in prosecution <u>leading up to issuance of the '275 patent</u>. The PTO cannot impose a forfeiture on the basis of laches because it did not give Columbia notice during the prosecution leading up to the '275 patent.

Third, the PTO cannot consider Amgen's misuse claim (Fifth Claim for Relief) on either reexamination or reissue. Misuse is not based on the validity of the '275 patent – but on Columbia's conduct in licensing its patents and enforcing those patents.

Fourth, Amgen's claim that Columbia has engaged in repressive practices and therefore Amgen has no contractual royalty obligations (Seventh Claim for Relief) is based upon Columbia's obligations to the NIH and under the license agreement, and Columbia's conduct with respect to its licensees while the licenses are in effect. Such contract disputes are clearly outside the authority of the PTO.

Fifth, the PTO's double patenting analysis during reexamination is not binding on this

---

(...continued from previous page)
attention of the Office in reissue applications. . . ." MPEP §§ 1448, 2010, 2014.

Court.[9]  *Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1576 (Fed. Cir. 1989) ("[a] party to a reexamination proceeding could still argue in any subsequent litigation that the PTO erred and that the patent is invalid on the basis of the cited prior art."). Thus, this issue will also not be resolved.

### B. If any claims survive – even if amended - the Court will still have to interpret and determine the scope of the original claims.

The Court will, moreover, still have to determine the scope of the original claims in the '275 patent even if all of the '275 patent claims are amended or canceled. Under the "continuity doctrine," Columbia cannot enforce any claims against prior activity unless the scope of the reexamined or reissued claim is without substantive change. *Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1115 (Fed. Cir. 1987). "Determination of whether a claim change during reexamination is substantive <u>requires analysis of the scope of the original and reexamined claims in light of the specification,</u> with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information." *Bloom Eng'g*, 129 F.3d at 1250 (emphasis added).

Claim construction and validity analyses for old claims as well as the new claims will be required to determine whether the new claims are substantially identical to old ones.

### CONCLUSION

A stay of this litigation is simply not warranted where delay and prejudice to Amgen outweigh any perceived benefits. Accordingly, Amgen respectfully requests that the Court deny Columbia's motion to stay the MDL proceedings.

---

9 Further, Columbia's suggestion that Amgen's burden of proving invalidity becomes heavier if the '275 patent survives reexamination or reissue is misleading. Amgen's burden of proving invalidity does not change – it remains "clear and convincing evidence". *Bayer AG v. Schein Pharm., Inc.*, 129 F.Supp.2d 705, 715 (D.N.J. 2001), aff'd on other grounds, 301 F.3d 1306 (Fed. Cir. 2002). For this reason, Columbia's reliance upon *E.I. DuPont de Nemours & Co. v. Cetus Corp.*, No. C-89-2860MHP, 1990 U.S. Dist. LEXIS 18414, at *10 (N.D. Cal. Dec. 3, 1990) is misplaced.

12

June 16, 2004

Respectfully submitted,

IMMUNEX CORPORATION and AMGEN INC.
By their attorneys,

/s/Eileen M. Herlihy
Arthur Wineburg (DC #163220)
Pillsbury Winthrop LLP
1133 Connecticut Avenue, NW
Washington, DC  20036-4305
Telephone:  (202) 775-9800
Facsimile:  (202) 833-8491

Vicki G. Norton (CA #175067)
Wilson Sonsini Goodrich & Rosati
3611 Valley Centre Drive, Suite 525
San Diego, CA  92130
Telephone:  (858) 350-2300
Facsimile:  (858) 350-2399

Kirke M. Hasson (CA #61446)
Pillsbury Winthrop LLP
50 Fremont Street
San Francisco, CA  94105-2228
Telephone:  (415) 983-1000
Facsimile:  (415) 983-1200


Eileen M. Herlihy (BBO #231410)
Palmer & Dodge LLP
111 Huntington Avenue at Prudential Center
Boston, MA  02199-7613
Telephone:  (617) 239-0100
Facsimile:  (617) 227-4400

# SERVICE LIST FOR AMGEN FILING

I hereby certify that a copy of the foregoing Amgen Inc.'s and Immunex Corporation's Memorandum of Law in Opposition to Columbia University's Motion to Stay Litigation Pending Conclusion of Reexamination and Reissue Proceedings in the Patent and Trademark Office and accompanying Declaration of Vicki G. Norton has been served by mail on this 16th day of June, 2004.

## BAXTER HEALTHCARE CORPORATION v. THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK

*Counsel for Plaintiff Baxter Healthcare Corporation*

Donald R. Ware
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Office: (617) 832-1000
Fax: (617) 832-7000

## BIOGEN, INC., GENZYME CORPORATION and ABBOTT BIORESEARCH CENTER, INC. v. THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK

*Counsel for Plaintiffs Biogen, Inc. and Genzyme Corp.*

>Donald R. Ware
>FOLEY HOAG LLP
>155 Seaport Boulevard
>Boston, MA 02210-2600
>Office: (617) 832-1000
>Fax: (617) 832-7000

*Counsel for Plaintiff Abbott Bioresearch Center, Inc.*

>Mark A. Pals
>KIRKLAND & ELLIS LLP
>AON Building
>200 East Randolph Drive
>Suite 5400
>Chicago, IL 60601
>Office: (312) 861-2000
>Fax: (312) 861-2200

**GENENTECH, INC. v. THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK**

*Counsel for Plaintiff Genentech, Inc.*

    Victoria F. Maroulis
    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    555 Twin Dolphin Drive, Suite 560
    Redwood Shores, California 94065
    Office: (650) 620-4500
    Fax: (650) 620-4555

**IMMUNEX CORPORATION AND AMGEN INC v. THE TRUSTEES OF COLUMBIA UNIVERSITY**

*Counsel for The Trustees of Columbia University in the City of New York*

    Kevin S. Rosen
    GIBSON, DUNN & CRUTCHER, LLP
    2029 Century Park East, Suite 4000
    Los Angeles, California 90067-4276
    Office: (310) 552-8500
    Fax: (310) 557-8741

**JOHNSON & JOHNSON v. THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK**

*Counsel for Plaintiff Johnson & Johnson*

    Steven A. Zalesin
    PATTERSON, BELKNAP, WEBB & TYLER LLP
    1133 Avenue of the Americas
    New York, NY 10036
    Office: (212) 336-2000
    Fax: (212) 336-2222

**THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK v. JOHNSON & JOHNSON**

*Counsel for Defendant Johnson & Johnson*

    Steven A. Zalesin
    PATTERSON, BELKNAP, WEBB & TYLER LLP
    1133 Avenue of the Americas
    New York, NY 10036
    Office: (212) 336-2000
    Fax: (212) 336-2222

## WYETH AND GENETICS INSTITUTE LLC v. THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK

*Counsel for Plaintiffs Wyeth and Genetics Institute LLC*

> Leora Ben-Ami
> KAYE SCHOLER, LLP
> 425 Park Avenue
> New York, NY 10022-7203
> Office: (212) 836-8000
> Fax: (212) 836-8689

and

*Counsel for The Trustees of Columbia University in the City of New York*

> David I. Gindler
> IRELL & MANELLA LLP
> 1800 Avenue of the Stars
> Suite 900
> Los Angeles, CA 90067-4276
> Office: (310) 277-1010
> Fax: (310) 203-7199

> Wayne Barsky
> GIBSON DUNN & CRUTCHER LLP
> 333 South Grand Avenue
> Los Angeles, CA 90071-3197
> Office: (213) 229-7000
> Fax: (213) 229-7520