# EXHIBIT A

## PART 1

# Manual of

# PATENT

# EXAMINING

# PROCEDURE

## Original Eighth Edition, August 2001
## Latest Revision February 2003




## U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

Rev. 1, Feb. 2003

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

Superintendent of Documents                 Telephone:    202-512-2267
Mail List Section
Washington, DC 20402

Inquiries relating to purchasing the Manual should be directed to:

Superintendent of Documents                 Telephone:    202-512-1800
United States Government Printing Office
Washington, DC 20402

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

Commissioner of Patents and Trademarks       Telephone:    1-800-972-6382 or 703-308-9726
Attention: Certification Branch
Washington, DC 20231

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room. The Manual is available on CD-ROM and on diskette from:

U.S. Patent and Trademark Office             Telephone:    703-306-2600
Office of Electronic Information Products and Services
Washington, DC 20231

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Patent Academy.       Telephone:    703-308-9660

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents, or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text. Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

First Edition, November 1949
Second Edition, November 1953
Third Edition, November 1961
Fourth Edition, June 1979
Fifth Edition, August 1983
Sixth Edition, January 1995
Seventh Edition, July 1998
Eighth Edition, August 2001
   Revision 1, February 2003

Rev. 1, Feb. 2003

Cover Design Copyright
© 2003 West Group
All Rights Reserved.

Copyright is not claimed as to any part of the original work prepared by a United States Government officer or employee as part of the person's official duties.

For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 750-4470 or West Group's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651) 687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

West Group has created this publication to provide you with accurate and authoritative information concerning the subject matter covered. However, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. West Group is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

## 1448    Fraud, Inequitable Conduct, or Duty of Disclosure Issues

The Office no longer investigates and rejects reissue applications under 37 CFR 1.56. The Office will not comment upon duty of disclosure issues which are brought to the attention of the Office in reissue applications except to note in the application, in appropriate circumstances, that such issues are no longer considered by the Office during its examination of patent applications. Examination as to the lack of deceptive intent requirement in reissue applications will continue but without any investigation of fraud, inequitable conduct, or duty of disclosure issues. Applicant's statement in the reissue oath or declaration of lack of deceptive intent will be accepted as dispositive except in special circumstances such as an admission or judicial determination of fraud, inequitable conduct, or violation of the duty of disclosure.

### ADMISSION OR JUDICIAL DETERMINATION

An admission or judicial determination of fraud, inequitable conduct, or violation of the duty of disclosure is a special circumstance, because no investigation need be made. Accordingly, after consulting with the Technology Center (TC) Special Program Examiner (SPRE), a rejection should be made using the appropriate one of form paragraphs 14.21.09 or 14.22 as reproduced below.

Any admission of fraud, inequitable conduct or violation of the duty of disclosure must be explicit, unequivocal, and not subject to other interpretation. Where a rejection is made based upon such an admission (see form paragraph 14.22 below) and applicant responds with any reasonable interpretation of the facts that would not lead to a conclusion of fraud, inequitable conduct or violation of the duty of disclosure, the rejection should be withdrawn. Alternatively, if applicant argues that the admission noted by the examiner was not in fact an admission, the rejection should also be withdrawn.

Form paragraph 14.21.09 should be used where the examiner becomes aware of a judicial determination of fraud, inequitable conduct or violation of the duty of disclosure on the part of the applicant independently of the record of the case, i.e., the examiner has external knowledge of the judicial determination.

Form paragraph 14.22 should be used where, in the application record, there is (a) an explicit, unequivocal admission by applicant of fraud, inequitable conduct or violation of the duty of disclosure which is not subject to other interpretation, or (b) information as to a judicial determination of fraud, inequitable conduct or violation of the duty of disclosure on the part of the applicant. External information which the examiner believes to be an *admission* by applicant should never be used by the examiner, and such external information should never be made of record in the reissue application.

¶ 14.21.09 Rejection, 35 U.S.C. 251, No Error Without Deceptive Intention - External Knowledge

Claims [1] rejected under 35 U.S.C. 251 since error "without any deceptive intention" has not been established. In view of the judicial determination in [2] of [3] on the part of applicant, a conclusion that any error was "without deceptive intention" cannot be supported. [4]

Examiner Note:
1. In bracket 1, list all claims in the reissue application.
2. In bracket 2, list the Court or administrative body which made the determination of fraud or inequitable conduct on the part of applicant.
3. In bracket 3, insert --fraud--, --inequitable conduct-- and/or --violation of duty of disclosure--.
4. In bracket 4, point out where in the opinion (or holding) of the Court or administrative body the determination of fraud, inequitable conduct or violation of duty of disclosure is set forth. Page number, column number, and paragraph information should be given as to the opinion (or holding) of the Court or administrative body. The examiner may add explanatory comments.

¶ 14.22 Rejection, 35 U.S.C. 251, No Error Without Deceptive Intention-Evidence in the Application

Claims [1] rejected under 35 U.S.C. 251 since error "without any deceptive intention" has not been established. In view of Paper No. [2], filed [3], a conclusion that any error was "without deceptive intention" cannot be supported.

[4]

Examiner Note:
1. In bracket 1, list all claims in the reissue application.
2. In bracket 2, insert the paper number providing an admission of fraud, inequitable conduct or violation of duty of disclosure, or that there was a judicial determination of same.
3. In bracket 3, insert the filing date of the paper.
4. In bracket 4, insert a statement that there has been an admission or a judicial determination of fraud, inequitable conduct or violation of duty of disclosure which provide circumstances why applicant's statement in the oath or declaration of lack of deceptive intent should not be taken as dispositive. Any admission of fraud, inequitable conduct or violation of duty of disclosure must be explicit, unequivocal, and not subject to other interpretation.

See MPEP § 2012 for additional discussion as to fraud, inequitable conduct or violation of duty of disclosure in a reissue application.

# 1449   Protest Filed in Reissue Where Patent Is in Interference

If a protest (see MPEP Chapter 1900) is filed in a reissue application related to a patent involved in a pending interference proceeding, the reissue application should be referred to the Office of Patent Legal Administration (OPLA) before considering the protest and acting on the reissue application.

The OPLA will check to see that:

(A) all parties to the interference are aware of the filing of the reissue; and

(B) the Office does not allow claims in the reissue which are unpatentable over the pending interference count(s), or found unpatentable in the interference proceeding.

## 1449.01   Concurrent Office Proceedings

37 CFR 1.565(d) provides that if "a reissue application and an *ex parte* reexamination proceeding on which an order pursuant to 37 CFR 1.525 has been mailed are pending concurrently on a patent, a decision will normally be made to merge the two proceedings or to suspend one of the two proceedings." A similar policy is in effect for *inter partes* reexamination proceedings pending concurrently on a patent with a reissue application. If an examiner becomes aware that a reissue application and a reexamination proceeding are both pending for the same patent, he or she should inform the Technology Center (TC) Special Program Examiner (SPRE) immediately.

Where a reissue application and a reexamination proceeding are pending concurrently on a patent, *and an order granting reexamination has been issued* for the reexamination proceeding, the files for the reissue application and the reexamination will be forwarded to the Office of Patent Legal Administration (OPLA) for a decision whether to merge the reissue and the reexamination, or stay one of the two. See *In re Onda,* 229 USPQ 235 (Comm'r Pat. 1985). See also MPEP § 2285.

If the original patent is involved in an interference, the examiner must consult the administrative patent judge in charge of the interference before taking any action on the reissue application. It is particularly important that the reissue application not be granted without the administrative patent judge's approval. See MPEP § 2360.

## 1449.02   Interference in Reissue

In appropriate circumstances, a reissue application may be placed into interference with a patent or pending application. A patentee may provoke an interference with a patent or pending application by filing a reissue application, if the reissue application includes an appropriate reissue error as required by 35 U.S.C. 251. Reissue error must be based upon applicant error; a reissue cannot be based solely on the error of the Office for failing to declare an interference or to suggest copying claims for the purpose of establishing an interference. See *In re Keil,* 808 F.2d 830, 1 USPQ2d 1427 (Fed. Cir. 1987); *In re Dien,* 680 F.2d 151, 214 USPQ 10 (CCPA 1982); *In re Bostwick,* 102 F.2d 886, 888, 41 USPQ 279, 281 (CCPA 1939); and *In re Guastavino,* 83 F.2d 913, 916, 29 USPQ 532, 535 (CCPA 1936). See also *Slip Track Systems, Inc. v. Metal Lite, Inc.,* 159 F.3d 1337, 48 USPQ2d 1055 (Fed. Cir. 1998) (Two patents issued claiming the same patentable subject matter, and the patentee with the earlier filing date requested reexamination of the patent with the later filing date (Slip Track's patent). A stay of litigation in a priority of invention suit under 35 U.S.C. 291, pending the outcome of the reexamination, was reversed. The suit under 35 U.S.C. 291 was the only option available to Slip Track to determine priority of invention. Slip Track could not file a reissue application solely to provoke an interference proceeding before the Office because it did not assert that there was any error as required by 35 U.S.C. 251 in the patent.). A reissue application can be employed to provoke an interference if the reissue application:

(A) adds copied claims which are not present in the original patent;

(B) amends claims to correspond to those of the patent or application with which an interference is sought; or

(C) contains at least one error (not directed to provoking an interference) appropriate for the reissue.

# Chapter 1900  Protest

1901     Protest Under 37 CFR 1.291
1901.01     Who Can Protest
1901.02     Information Which Can Be Relied on in Protest
1901.03     How Protest Is Submitted
1901.04     When Should the Protest Be Submitted
1901.05     Initial Office Handling and Acknowledgment of Protest
1901.06     Examiner Treatment of Protest
1901.07     Protestor Participation
1901.07(a)  Filing of Multiple Papers Relating to Same Issues
1906     **Supervisory Review of an Examiner's Decision Adverse to Protestor**
1907     **Unauthorized Participation by Protestor**
1920     **Citation of Prior Art Under 37 CFR 1.501(a)**

## 1901    Protest Under 37 CFR 1.291

*37 CFR 1.291.  Protests by the public against pending applications.*

(a) Protests by a member of the public against pending applications will be referred to the examiner having charge of the subject matter involved. A protest specifically identifying the application to which the protest is directed will be entered in the application file if:

(1) The protest is submitted prior to the date the application was published or the mailing of a notice of allowance under § 1.311, whichever occurs first; and

(2) The protest is either served upon the applicant in accordance with § 1.248, or filed with the Office in duplicate in the event service is not possible.

(b) Protests raising fraud or other inequitable conduct issues will be entered in the application file, generally without comment on those issues. Protests which do not adequately identify a pending patent application will be returned to the protestor and will not be further considered by the Office. A protest submitted in accordance with the second sentence of paragraph (a) of this section will be considered by the Office if the application is still pending when the protest and application file are brought before the examiner and it includes:

(1) A listing of the patents, publications, or other information relied upon;

(2) A concise explanation of the relevance of each listed item;

(3) A copy of each listed patent or publication or other item of information in written form or at least the pertinent portions thereof; and

(4) An English language translation of all the necessary and pertinent parts of any non-English language patent, publication, or other item of information in written form relied upon.

(c) A member of the public filing a protest in an application under paragraph (a) of this section will not receive any communications from the Office relating to the protest, other than the return of a self-addressed postcard which the member of the public may include with the protest in order to receive an acknowledgment by the Office that the protest has been received. In the absence of a request by the Office, an applicant has no duty to, and need not, reply to a protest. The limited involvement of the member of the public filing a protest pursuant to paragraph (a) of this section ends with the filing of the protest, and no further submission on behalf of the protestor will be considered, except for additional prior art, or unless such submission raises new issues which could not have been earlier presented.

*37 CFR 1.248.  Service of papers; manner of service; proof of service;  proof  of  service  in  cases  other  than interferences.*

(a) Service of papers must be on the attorney or agent of the party if there be such or on the party if there is no attorney or agent, and may be made in any of the following ways:

(1) By delivering a copy of the paper to the person served;

(2) By leaving a copy at the usual place of business of the person served with someone in his employment;

(3) When the person served has no usual place of business, by leaving a copy at the person's residence, with some person of suitable age and discretion who resides there;

(4) Transmission by first class mail. When service is by mail the date of mailing will be regarded as the date of service;

(5) Whenever it shall be satisfactorily shown to the Commissioner that none of the above modes of obtaining or serving the paper is practicable, service may be by notice published in the *Official Gazette.*

(b) Papers filed in the Patent and Trademark Office which are required to be served shall contain proof of service. Proof of service may appear on or be affixed to papers filed. Proof of service shall include the date and manner of service. In the case of personal service, proof of service shall also include the name of any person served, certified by the person who made service. Proof of service may be made by:

(1) An acknowledgement of service by or on behalf of the person served or

(2) A statement signed by the attorney or agent containing the information required by this section.

(c) See § 1.646 for service of papers in interferences.

The degree of participation allowed a protestor is solely within the discretion of the Commissioner of Patents and Trademarks.

37 CFR 1.291(a) gives recognition to the value of written protests in bringing information to the attention of the Office and in avoiding the issuance of invalid patents. All protests must be submitted prior to the publication of the application or the mailing of a notice of allowance, whichever occurs first, because no protest or other form of preissuance opposition to the grant of a patent may be initiated after publication of the application without the applicant's express

written consent as specified by 35 U.S.C. 122(c). 37 CFR 1.291(a) provides that public protests against pending applications will be referred to the examiner having charge of the subject matter involved and will be entered in the application file if the protest is submitted prior to the date the application was published or the mailing of a notice of allowance under 37 CFR 1.311, whichever occurs first, and the protest is either served upon the applicant or filed in duplicate in the event service is not possible. Paragraph (b) of 37 CFR 1.291 assures members of the public that a protest will be fully considered by the Office if the protest is submitted in accordance with 37 CFR 1.291(a), the application is still pending when the protest and application file are brought before the examiner, and the protest includes:

(A) a listing of the patents, publications, or other information relied on;

(B) a concise explanation of the relevance of each listed item;

(C) a copy of each listed patent, publication, or other item of information in written form, or at least the pertinent portions thereof; and

(D) an English language translation of all necessary and pertinent parts of any non-English language document relied on.

A party obtaining knowledge of an application pending in the Office may file a protest against the application and may therein call attention to any facts within protestor's knowledge which, in protestor's opinion, would make the grant of a patent thereon improper.

A protestor does not, however, by the mere filing of a protest, obtain the "right" to argue the protest before the Office. Active participation by a protestor "ends with the filing of the protest, and no further submission on behalf of the protestor will be considered, except for additional prior art, or unless such submission raises new issues which could not have been earlier presented." 37 CFR 1.291(c). The USPTO will acknowledge the receipt of a protest in an original or a reissue application file only if a self-addressed postcard is included with the protest (see MPEP § 1901.05). The question of whether or not a patent will issue is a matter between the applicant and the Office acting on behalf of the public.

## 1901.01    Who Can Protest

Any member of the public, including private persons, corporate entities, and government agencies, may file a protest under 37 CFR 1.291. A protest may be filed by an attorney or other representative on behalf of an unnamed principal since 37 CFR 1.291 does not require that the principal be identified.

## 1901.02    Information Which Can Be Relied on in Protest

Any information which, in the protestor's opinion, would make the grant of a patent improper can be relied on in a protest under 37 CFR 1.291(a). While prior art documents, such as patents and publications, are most often the types of information relied on in protests, 37 CFR 1.291(a) is not limited to prior art documents. Protests may be based on any facts or information adverse to patentability. The content and substance of the protest are more important than whether prior art documents, or some other form of evidence adverse to patentability, are being relied on. The Office recognizes that when evidence other than prior art documents is relied on, problems may arise as to authentication and the probative value to assign to such evidence. However, the fact that such problems may arise, and have to be resolved, does not preclude the Office from considering such evidence, nor does it mean that such evidence cannot be relied on in a protest under 37 CFR 1.291. Information in a protest should be set forth in the manner required by 37 CFR 1.291(b).

The following are examples of the kinds of information, in addition to prior art documents, which can be relied on in a protest under 37 CFR 1.291(a):

(A) Information demonstrating that the invention was publicly "known or used by others in this country... before the invention thereof by the applicant for patent" and is therefore barred under 35 U.S.C. 102(a) and/or 103.

(B) Information that the invention was "in public use or on sale in this country, more than 1 year prior to the date of the application for patent in the United States" (35 U.S.C. 102(b)).

(C) Information that the applicant "has abandoned the invention" (35 U.S.C. 102(c)) or "did not himself invent the subject matter sought to be patented" (35 U.S.C. 102(f)).

(D) Information relating to inventorship under 35 U.S.C. 102(g).

(E) Information relating to sufficiency of disclosure or failure to disclose best mode, under 35 U.S.C. 112.

(F) Any other information demonstrating that the application lacks compliance with the statutory requirements for patentability.

(G) Information indicating "fraud" or "violation of the duty of disclosure" under 37 CFR 1.56 may be the subject of a protest under 37 CFR 1.291(a). Protests raising fraud or other inequitable conduct issues will be entered in the application file, generally without comment on those issues. 37 CFR 1.291(b).

Different forms of evidence may accompany, or be submitted as a part of, a protest under 37 CFR 1.291(a). Conventional prior art documents such as patents and publications are the most common form of evidence. However, other forms of evidence can likewise be submitted. Some representative examples of other forms of evidence are litigation-related materials such as complaints, answers, depositions, answers to interrogatories, exhibits, transcripts of hearings or trials, court orders and opinions, stipulations of the parties, etc. Where only a portion of the litigation-related materials is relevant to the protest, protestors are encouraged to submit only the relevant portion(s).

In a protest based on an alleged public use or sale by, or on behalf of, the applicant or applicant's assignee, evidence of such public use or sale may be submitted along with affidavits or declarations identifying the source(s) of the evidence and explaining its relevance and meaning. Such evidence might include documents containing offers for sale by applicant or applicant's assignee, orders, invoices, receipts, delivery schedules, etc. The Office will make a decision as to whether or not public use or sale has been established based on the evidence the Office has available. If applicant denies the authenticity of the documents and/or evidence, or if the alleged public use and/or sale is by a party other than applicant or applicant's assignee, protestor may find it desirable or necessary to proceed via 37 CFR 1.292 (public use proceedings) rather than by a protest under 37 CFR 1.291.

While the forms in which evidence and/or information may be submitted with, or as a part of, a protest under 37 CFR 1.291(a) are not limited, protestors

must recognize that such submissions may encounter problems such as establishing authenticity and/or the probative value to apply to the evidence. Obviously, the Office will have to evaluate each item of evidence and/or information submitted with a view as to both its authenticity and what weight to give thereto.

Information which is subject to a court-imposed protective or secrecy order may be submitted with, or as a part of, a protest under 37 CFR 1.291(a). Trade secret information which was obtained by a protestor through agreements with others can likewise be submitted. Such information, if submitted, will be treated in accordance with the guidelines set forth in MPEP § 724 and will be made public if a reasonable examiner would consider the information important in deciding whether to allow the application to issue as a patent.

## 1901.03   How Protest Is Submitted

A protest under 37 CFR 1.291(a) must be submitted in writing, must specifically identify the application to which the protest is directed by application number or serial number and filing date, and must include a listing of all patents, publications, or other information relied on; a concise explanation of the relevance of each listed item; an English language translation of all relevant parts of any non-English language document; and be accompanied by a copy of each patent, publication, or other document relied on. Protestors are encouraged to use form PTO-1449 "Information Disclosure Statement" (or an equivalent form) when preparing a protest under 37 CFR 1.291, especially the listing enumerated under 37 CFR 1.291(b)(1). See MPEP § 609. In addition, the protest and any accompanying papers must either (1) reflect that a copy of the same has been served upon the applicant or upon the applicant's attorney or agent of record; or (2) be filed with the Office in duplicate in the event service is not possible.

It is important that any protest against a pending application specifically identify the application to which the protest is directed with the identification being as complete as possible. If possible, the following information should be placed on the protest:

(A) Name of Applicant(s).
(B) Application number (mandatory).
(C) Filing date of application.
(D) Title of invention.

(E) Group art unit number (if known).

(F) Name of examiner to whom the application is assigned (if known).

(G) Current status and location of application (if known).

(H) The word "ATTENTION:" followed by the area of the Office to which the protest is directed as set forth below.

In addition to the above information, the protest itself should be clearly identified as a "PROTEST UNDER 37 CFR 1.291(a)." If the protest includes exhibits or other attachments, these should also contain identifying information thereon in order to prevent them from becoming inadvertently separated and lost.

Any protest can be submitted by mail to the Assistant Commissioner for Patents, Washington, D.C. 20231, and should be directed to the attention of the Director of the particular Technology Center in which the application is pending. If the protestor is unable to specifically identify the application to which the protest is directed, but, nevertheless, believes such an application to be pending, the protest should be directed to the attention of the Office of Petitions, along with as much identifying data for the application as possible. Protests which do not adequately identify a pending patent application will be returned to the protestor and will not be further considered by the Office.

Where a protest is directed to a reissue application for a patent which is involved in litigation, the outside envelope and the top right-hand portion of the protest should be marked with the words "REISSUE LITI-GATION." The notations preferably should be written in a bright color with a felt point marker. Any "REIS-SUE LITIGATION" protest mailed to the Office should be so marked and mailed to BOX DAC. However, in view of the urgent nature of most "REISSUE LITIGATION" protests, protestor may wish to hand-carry the protest to the appropriate area in order to ensure prompt receipt and to avoid any unnecessary delays.

## INITIAL PROTEST SUBMISSION MUST BE COMPLETE

A protest must be complete and contain a copy of every document relied on by protestor, whether the document is a prior art document, court litigation material, affidavit, or declaration, etc., because a protestor will not be given an opportunity to supplement or complete any protest which is incomplete. Active participation by protestor ends with the filing of the initial protest, as provided in 37 CFR 1.291(c), and no further submission on behalf of protestor will be acknowledged or considered, except for additional prior art, or unless such submission clearly raises new issues which could not have been earlier presented. Protests which will not be entered in the application file include those further submissions in violation of 37 CFR 1.291(c) by which protestor merely seeks to participate in the examination process. For example, mere arguments relating to an Office action or an applicant's reply would not qualify as a new protest. Likewise, additional comments seeking to bring in further or even new data or information with respect to an issue previously raised by protestor would not qualify as a new protest. The Office will not add these arguments or comments to the original protest and will not enter them in the application file.

Even new protests which also argue Office actions or replies or any matter beyond the new issue should not be accepted. Improper protests will be returned by the Technology Center (TC) Director. While improper protests will be returned, a new protest by an earlier protestor will be proper and can be entered if it is clearly limited to new issues which could not have been earlier presented, and thereby constitutes a new protest.

As indicated in 37 CFR 1.291(b)(3), a protest must be accompanied by a copy of each prior art document relied on in order to ensure consideration by the examiner, although a protest without copies of prior art documents will not necessarily be ignored. While a protest without copies of documents will not necessarily be ignored, the submission of such documents with the protest will obviously expedite and ensure consideration of the documents, which consideration might not otherwise occur. Further, some documents which are available to protestor may not be otherwise available to the Office.

Every effort should be made by a protestor to serve a copy of the protest upon the attorney or agent of record or upon the applicant if no attorney or agent is of record. Of course, the copy served upon applicant or upon applicant's attorney or agent should be a complete copy including a copy of each prior art or other

document relied on in the same manner as required by 37 CFR 1.291(a) for the Office copy. The protest filed in the Office should reflect, by an appropriate "Certificate of Service," that service has been made as provided in 37 CFR 1.291(a). Only in those instances where service is not possible should the protest be filed in duplicate in order that the Office can attempt service.

## 1901.04    When Should the Protest Be Submitted

A protest under 37 CFR 1.291(a) must be submitted prior to the date the application was published or the mailing of a notice of allowance under 37 CFR 1.311, whichever occurs first, and the application must be pending when the protest and application file are brought before the examiner in order to be ensured of consideration. As a practical matter, any protest should be submitted as soon as possible after the protestor becomes aware of the existence of the application to which the protest is to be directed. By submitting a protest early in the examination process, i.e., before the Office acts on the application if possible, the protestor ensures that the protest will receive maximum consideration and will be of the most benefit to the Office in its examination of the application. A protest submitted after the mailing of the notice of allowance will not knowingly be ignored if the protest includes prior art documents which clearly anticipate or clearly render obvious one or more claims. However, the likelihood of consideration of a protest decreases as the patent date approaches.

A protest filed after final rejection and complying with 37 CFR 1.291(a) will be considered if the application is still pending when the protest and application are provided to the examiner. However, prosecution will not ordinarily be reopened after final rejection if the prior art cited in the protest is merely cumulative of the prior art cited in the final rejection. If a protest is not submitted within the time period set forth in 37 CFR 1.291(a)(1) it will be acknowledged as set forth in MPEP § 1901.05 only if a self-addressed postcard is included with the protest, and referred to the examiner having charge of the subject matter involved for handling as set forth in MPEP § 1901.06.

A protest with regard to a reissue application should be filed within the 2-month period following announcement of the filing of the reissue application in the *Official Gazette*. If, for some reason, the protest of the reissue application cannot be filed within the 2-month period provided by MPEP § 1441, the protest can be submitted at a later time, but the protestor must be aware that reissue applications are "special" and a later filed protest may be received after action by the examiner. Any request by a protestor in a reissue application for an extension of the 2-month period following the announcement in the *Official Gazette* will be considered only if filed in the form of a petition under 37 CFR 1.182 and accompanied by the petition fee set forth in 37 CFR 1.17(h). The petition under 37 CFR 1.182 and the petition fee must be filed prior to the expiration of the 2-month period provided by MPEP § 1441. The petition must explain why the additional time is necessary and the nature of the protest intended. A copy of such petition must be served upon applicant in accordance with 37 CFR 1.248. The petition should be directed to the appropriate Technology Center (TC) which will forward the petition to the Office of Petitions for decision. Any such petition will be critically reviewed as to demonstrated need before being granted since the delay of examination of a reissue application of another party is being requested. Accordingly, the requests should be made only where necessary, for the minimum period required, and with a justification establishing the necessity for the extension.

If the protest is a "REISSUE LITIGATION" protest, it is particularly important that it be filed early if protestor wishes it considered at the time the Office first acts on the application. Protestors should be aware that the Office will entertain petitions under 37 CFR 1.182, when accompanied by the petition fee set forth in 37 CFR 1.17(h), to waive the 2-month delay period of MPEP § 1441 in appropriate circumstances. Accordingly, protestors to reissue applications cannot automatically assume that the full 2-month delay period of MPEP § 1441 will always be available.

If a protest is filed in a reissue application related to a patent involved in a pending interference proceeding, the reissue application should be referred to the Office of the Deputy Commissioner for Patent Examination Policy before the protest is considered and the application is acted on by the TC. See also MPEP § 1441 as to the filing of a protest in a reissue application.

reviewed. Accordingly, no separate citation of the same prior art need be made in the later application.

## 2001.06(c)  Information From Related Litigation

Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office. Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of disclosure." Another example of such material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner. *Environ Prods., Inc. v. Total Containment, Inc.*, 43 USPQ2d 1288, 1291 (E.D. Pa. 1997). Such information might arise during litigation in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony.

Where a patent for which reissue is being sought is, or has been, involved in litigation which raised a question material to examination of the reissue application, such as the validity of the patent, or any allegation of "fraud," "inequitable conduct," or "violation of duty of disclosure," the existence of such litigation must be brought to the attention of the Office by the applicant at the time of, or shortly after, filing the application, either in the reissue oath or declaration, or in a separate paper, preferably accompanying the application, as filed. Litigation begun after filing of the reissue application should be promptly brought to the attention of the Office. The details and documents from the litigation, insofar as they are "material to patentability" of the reissue application as defined in 37 CFR 1.56, should accompany the application as filed, or be submitted as promptly thereafter as possible. See *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1258, 1259, 43 USPQ2d 1666, 1670-71 (Fed. Cir. 1997) (patent held unenforceable due to inequitable conduct based on patentee's failure to disclose a relevant reference and for failing to disclose ongoing litigation).

For example, the defenses raised against validity of the patent, or charges of "fraud" or "inequitable conduct" in the litigation, would normally be "material to the examination" of the reissue application. It would, in most situations, be appropriate to bring such defenses to the attention of the Office by filing in the reissue application a copy of the court papers raising such defenses. At a minimum, the applicant should call the attention of the Office to the litigation, the existence and the nature of any allegations relating to validity and/or "fraud," or "inequitable conduct" relating to the original patent, and the nature of litigation materials relating to these issues. Enough information should be submitted to clearly inform the Office of the nature of these issues so that the Office can intelligently evaluate the need for asking for further materials in the litigation. See MPEP § 1442.04.

## 2001.06(d)  Information Relating to Claims Copied From a Patent

Where claims are copied or substantially copied from a patent, 37 CFR 1.607(c) requires applicant shall, at the time he or she presents the claim(s), identify the patent and the numbers of the patent claims. Failure to comply with 37 CFR 1.607(c) may result in the issuance of a requirement for information as to why an identification of the source of the copied claims was not made.[7]

Clearly, the information required by 37 CFR 1.607(c) as to the source of copied claims is material information under 37 CFR 1.56 and failure to inform the USPTO of such information may violate the duty of disclosure.

## 2002    Disclosure — By Whom and How Made

*37 CFR 1.56.  Duty to disclose information material to patentability.*

*****

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

*****

## 2002.01  By Whom Made

37 CFR 1.56(d) makes clear that information may be disclosed to the Office through an attorney or agent of record or through a *pro se* inventor, and that other

## 2010  Office Handling of Duty of Disclosure/Inequitable Conduct Issues

Determination of inequitable conduct issues requires an evaluation of the intent of the party involved. While some court decisions have held that intent may be inferred in some circumstances, consideration of the good faith of the party, or lack thereof, is often required. In several court decisions, a high level of proof of intent to mislead the Office was required in order to prove inequitable conduct under 37 CFR 1.56. See *In re Harito*, 847 F.2d 801, 6 USPQ2d 1930 (Fed. Cir. 1988) and *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 5 USPQ2d 1112 (Fed. Cir. 1987). The Office is not the best forum in which to determine whether there was an "intent to mislead"; such intent is best determined when the trier of facts can observe demeanor of witnesses subjected to cross-examination. A court, with subpoena power, is presently the best forum to consider duty of disclosure issues under the present evidentiary standard for finding an "intent to mislead." The court proceeding involves two participating adverse parties. This is not the case in the Office, since even "protesting" parties are not permitted to participate under the rules. Also, it is the courts and not the Office that are in the best position to fashion an equitable remedy to fit the precise facts in those cases where inequitable conduct is established. Furthermore, inequitable conduct is not set by statute as a criteria for patentability but rather is a judicial application of the doctrine of unclean hands which is appropriate to be handled by the courts rather than by an administrative body. Because of the lack of tools in the Office to deal with this issue and because of its sensitive nature and potential impact on a patent, Office determinations generally will not deter subsequent litigation of the same issue in the courts on appeal or in separate litigation. Office determinations would significantly add to the expense and time involved in obtaining a patent with little or no benefit to the patent owner or any other parties with an interest.

Accordingly, the Office does not investigate and reject original or reissue applications under 37 CFR 1.56. Likewise, the Office will not comment upon duty of disclosure issues which are brought to the attention of the Office in original or reissue applications except to note in the application, in appropriate circumstances, that such issues are no longer considered by the Office during its examination of patent applications. Examination of lack of deceptive intent in reissue applications will continue but without any investigation of inequitable conduct issues. Applicant's statement of lack of deceptive intent normally will be accepted as dispositive except in special circumstances such as an admission or judicial determination of fraud or inequitable conduct. See MPEP § 2022.05...

## 2012  Reissue Applications Involving Issues of Fraud, Inequitable Conduct, and/or Violation of Duty of Disclosure

Questions of "fraud," "inequitable conduct," or violation of "duty of disclosure" or "candor and good faith" can arise in reissue applications.

**REQUIREMENT FOR "ERROR WITHOUT ANY DECEPTIVE INTENTION"**

Both 35 U.S.C. 251 and 37 CFR 1.175 promulgated pursuant thereto require that the error must have arisen "without any deceptive intention." *In re Heany*, 1911 C.D. 138, 180 (1911), unequivocally states:

> Where such a condition [fraudulent or deceptive intention] is shown to exist the right to reissue the patent is forfeited.

Similarly, the court in *In re Clark*, 522 F.2d 623, 627, 187 USPQ 209, 213 (CCPA 1975) indicated:

> Reissue is not available to rescue a patentee who had presented claims limited to avoid particular prior art and then had failed to disclose that prior art . . . after that failure to disclose has resulted in invalidating of the claims.

It is clear that "fraud" cannot be purged through the reissue process. See conclusions of Law 89 and 91 in *Intermountain Research and Eng'g Co. v. Hercules Inc.*, 171 USPQ 577, 631-32 (C.D. Cal. 1971).

Clearly, where several patents or applications stem from an original application which contained fraudulent claims ultimately allowed, the doctrine of unclean hands bars allowance or enforcement of any of the claims of any of the applications or patents. See *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 19 USPQ 228, 230 (1933); *East Chicago*

Applicant has had his day in court. He appears to have had a full and fair chance to litigate the validity of his patent.

See MPEP § 2259 for collateral estoppel in reexamination proceedings.

## 2013  Protests Involving Issues of Fraud, Inequitable Conduct, and/or Violation of Duty of Disclosure

37 CFR 1.291 permits protests by the public against pending applications.

Submissions under 37 CFR 1.291 are not limited to prior art documents such as patents and publications, but are intended to include any information, which in the protestor's opinion, would make or have made the grant of the patent improper (see MPEP § 1901.02). This includes, of course, information indicating the presence of "fraud" or "inequitable conduct" or "violation of the duty of disclosure," which will be entered in the application file, generally without comment. See MPEP § 1901.06.

Protests should be in conformance with 37 CFR 1.291(a) and (b), and include a statement of the alleged facts involved, the point or points to be reviewed, and the action requested. Any briefs or memoranda in support of the petition, and any affidavits, declarations, depositions, exhibits, or other material in support of the alleged facts, should accompany the protest.

## 2014  Duty of Disclosure in Reexamination Proceedings

As provided in 37 CFR 1.555, the duty of disclosure in reexamination proceedings applies to the patent owner. That duty is a continuing obligation on the part of the patent owner throughout the proceedings. However, issues of "fraud," " inequitable conduct," or "violation of duty of disclosure" are not considered in reexamination. See MPEP § 2280. If questions of "fraud" or "inequitable conduct" or "violation of the duty of disclosure" are discovered during reexamination proceedings, the existence of such questions will be noted by the examiner in an Office action without further comment. See MPEP § 2258.

For the patent owner's duty to disclose prior or concurrent proceedings in which the patent is or was involved, see MPEP § 2282 and § 2001.06(c).

## 2016  Fraud, Inequitable Conduct, or Violation of Duty of Disclosure Affects All Claims

A finding of "fraud," "inequitable conduct," or violation of duty of disclosure with respect to any claim in an application or patent, renders all the claims thereof unpatentable or invalid. See *Chromalloy American Corp. v. Alloy Surfaces Co.*, 339 F. Supp. 859, 173 USPQ 295 (D.Del. 1972) and *Strong v. General Electric Co.*, 305 F. Supp. 1084, 162 USPQ 141 (N.D. Ga. 1969), *aff'd*, 434 F.2d 1042, 168 USPQ 8 (5th Cir. 1970), *cert. denied*, 403 U.S. 906 (1971). In *J. P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1561, 223 USPQ 1089, 1093-94 (Fed. Cir. 1984), the court stated:

> Once a court concludes that inequitable conduct occurred, all the claims — not just the particular claims in which the inequitable conduct is directly connected — are unenforceable. See *generally*, cases collected in 4 Chisum, PATENTS, paragraph 19.03[6] at 19-85 n. 10 (1984). Inequitable conduct "goes to the patent right as a whole, independently of particular claims." *In re Clark* 522 F.2d 623, 626, 187 USPQ 209, 212 (CCPA).

The court noted in footnote 8 of *Stevens*:

> In *In re Multiple Litigation Involving Frost Patent*, 540 F.2d 601, 611, 191 USPQ 241, 249 (3rd. Cir. 1976), some claims were upheld despite nondisclosure with respect to others. The case is not precedent in this court.

As stated in *Gemveto Jewelry Co. v. Lambert Bros., Inc.*, 542 F. Supp. 933, 943, 216 USPQ 976, 984 (S. D. N. Y. 1984) (quoting Patent Law Perspectives, 1977 Developments, § G.1 [1]-189):

> The gravamen of the fraud defense is that the patentee has failed to discharge his duty of dealing with the examiner in a manner free from the taint of "fraud or other inequitable conduct." If such conduct is established in connection with the prosecution of a patent, the fact that the lack of candor did not directly affect *all* the claims in the patent has never been the governing principle. It is the inequitable conduct that generates the unenforceability of the patent and we cannot think of cases where a patentee partially escaped the consequences of his wrongful acts by arguing that he only committed acts of omission or commission with respect to a limited number of claims. It is an all or nothing proposition. [Emphasis in original.]

period of enforceability is the length of the term of the patent plus the 6 years under the statute of limitations for bringing an infringement action (35 U.S.C. 286). In addition, if litigation is instituted within the period of the statute of limitations, citations may be submitted after the statute of limitations has expired, as long as the patent is still enforceable against someone. While citations of prior art may be filed at any time during the period of enforceability of the patent, citations submitted after the date of any order to reexamine will not be entered into the patent file until the pending reexamination proceeding has been terminated (37 CFR 1.501(a)), unless the citations are submitted (1) by the patent owner, (2) by a reexamination requester who also submits the fee and other documents required under 37 CFR 1.510, or (3) in a third party requester's reply under 37 CFR 1.535, or as an enterable submission in an *inter partes* reexamination proceeding. To ensure that prior art cited by a third party is considered without the payment of another reexamination fee, it must be presented before reexamination is ordered.

The purpose of this rule is to prevent harassment of the patent owner due to frequent submissions of prior art citations during reexamination proceedings.

## 2205    Content of Prior Art Citation

The prior art which may be submitted under 35 U.S.C. 301 is limited to "written prior art consisting of patents or printed publications."

An explanation is required of how the person submitting the prior art considers it to be pertinent and applicable to the patent, as well as an explanation of why it is believed that the prior art has a bearing on the patentability of any claim of the patent. Citations of prior art by patent owners may also include an explanation of how the claims of the patent differ from the prior art cited.

It is preferred that copies of all the cited prior patents or printed publications and any necessary English translation be included so that the value of the citations may be readily determined by persons inspecting the patent files and by the examiner during any subsequent reissue or reexamination proceeding.

All prior art citations filed by persons other than the patent owner must either indicate that a copy of the citation has been mailed to, or otherwise served on, the patent owner at the correspondence address as defined under 37 CFR 1.33(c), or if for some reason service on the patent owner is not possible, a duplicate copy of the citation must be filed with the Office along with an explanation as to why the service was not possible. The most recent address of the attorney or agent of record may be obtained from the Office's register of registered patent attorneys and agents maintained by the Office of Enrollment and Discipline pursuant to 37 CFR 10.5 and 10.11(a).

All prior art citations submitted should identify the patent in which the citation is to be placed by the patent number, issue date, and patentee.

A cover sheet with an identification of the patent should have firmly attached to it all other documents relating to the citation so that the documents will not become separated during processing. The documents themselves should also contain, or have placed thereon, an identification of the patent for which they are intended.

Affidavits or declarations relating to the prior art documents submitted may accompany the citation to explain the contents or pertinent dates in more detail. A commercial success affidavit tied in with a particular prior art document may also be acceptable. For example, the patent owner may wish to cite a patent or printed publication which raises the issue of obviousness of at least one patent claim. Together with the cited art, the owner may file (a) an affidavit of commercial success or other evidence of nonobviousness, or (b) an affidavit which questions the enablement of the teachings of the cited prior art.

No fee is required for the submission of citations under 37 CFR 1.501.

A prior art citation is limited to the citation of patents and printed publications and an explanation of the pertinency and applicability of the patents and printed publications. This may include an explanation by the patent owner as to how the claims differ from the prior art. It may also include affidavits and declarations. The prior art citation cannot include any issue which is not directed to patents and printed publications. Thus, for example, a prior art citation cannot include a statement as to the claims violating 35 U.S.C. 112, a statement as to the public use of the claimed invention, or a statement as to the conduct of the patent owner. A prior art citation must be directed to patents and printed publications and cannot discuss what the patent owner did, or failed to do, with

respect to submitting and/or describing patents and printed publications, because that would be a statement as to the conduct of the patent owner. The citation also should not contain argument and discussion of references previously treated in the prosecution of the invention which matured into the patent or references previously treated in a reexamination proceeding as to the patent.

If the prior art citation contains any issue not directed to patents and printed publications, it should not be entered into the patent file, despite the fact that it may otherwise contain a complete submission of patents and printed publications with an explanation of the pertinency and applicability. Rather, the prior art citation should be returned to the sender as described in MPEP § 2206.

Examples of letters submitting prior art under 37 CFR 1.501 follow.

### EXAMPLE I

Submission by a third party:

```
            IN THE UNITED STATES
        PATENT AND TRADEMARK OFFICE

In re patent of
Joseph Smith
Patent No. 9,999,999
Issued: July 7, 2000
For: Cutting Tool

Submission of Prior Art Under 37 CFR
1.501

Hon. Assistant Commissioner for Patents
Washington, D. C. 20231
```

```
Sir:

The undersigned herewith submits in the
above identified patent the following
prior art (including copies thereof)
which is pertinent and applicable to
the patent and is believed to have a
bearing on the patentability of at
least claims 1 - 3 thereof:


Weid et al U.S. 2,595,416 April 15, 1933
McGee U.S. 2,722,794 May 1, 1934
Paulk et al U.S. 3,625,291 June 16, 1936

Each of the references discloses a cut-
ting tool strikingly similar to the de-
vice of Smith in having pivotal handles
with cutting blades and a pair of dies.
It is believed that each of the refer-
ences has a bearing on the patentabili-
ty of claims 1-3 of the Smith patent.

Insofar as claims 1 and 2 are con-
cerned, each of the references clearly
anticipates the claimed subject matter
under 35 U.S.C 102.



As to claim 3, the differences between
the subject matter of this claim and
the cutting tool of Weid et al are
shown in the device of Paulk et al.
Further, Weid et al suggests that dif-
ferent cutting blades can be used in
their device. A person of ordinary
skill in the art at the time the inven-
tion was made would have been led by the
suggestion of Weid et al to the cutting
blades of Paulk et al as obvious sub-
stitutes for the blades of Weid et al.

Respectfully submitted,
(Signed)

John Jones
```

Certificate of Service

I hereby certify on this first day of
June 1982, that a true and correct copy
of the foregoing "Submission of Prior
Art" was mailed by first-class mail,
postage paid, to:

Ben Schor
555 Any Lane
Anytown, VA 22202

    (Signed)

    John Jones

# EXAMPLE II
Submission by the patent owner:


              IN THE UNITED STATES
          PATENT AND TRADEMARK OFFICE

In re patent of
Joseph Smith
Patent No. 9,999,999
Issued: July 7, 2000
For: Cutting Tool

Submission of Prior Art Under 37 CFR
1.501

Hon. Assistant Commissioner for Patents
Washington, D. C. 20231

Sir:

The undersigned herewith submits in the
above identified patent the following
prior art (including copies thereof)
which is pertinent and applicable to
the patent and is believed to have a
bearing on the patentability of at
least claims 1 – 3 thereof:

Weid et al U.S. 2,585,416 April 15, 1933
McGee U.S. 2, 722,794 May 1, 1934
Paulk et al U.S. 3,625,291 June 16, 1936

Each of the references discloses a cut-
ting tool strikingly similar to the de-
vice of Smith in having pivotal handles
with cutting blades and a pair of dies.
While it is believed that each of the
references has a bearing on the patent-
ability of claims 1-3 of the Smith pat-
ent, the subject matter claimed differs
from the references and is believed
patentable thereover

Insofar as claims 1 and 2 are con-
cerned, none of the references show the
particular dies claimed and the struc-
ture of these claimed dies would not
have been obvious to a person of ordi-
nary skill in the art at the time the
invention was made.


As to claim 3, while the cutting blades
required by this claim are shown in
Paulk et al, the remainder of the
claimed structure is found only in Weid
et al. A person of ordinary skill in
the art at the time the invention was made
would not have found it obvious to
substitute the cutting blades of Paulk
et al for those of Weid et al. In fact,
the disclosure of Weid et al would lead
a person of ordinary skill in the art
away from the use of cutting blades
such as shown in Paulk et al.

The reference to McGee, while generally
similar, lacks the particular cooperation
between the elements which is specifically
set forth in each of claims 1-3.

Respectfully submitted,

(Signed)

William Green
Attorney for Patent Owner

## 2206    Handling of Prior Art Citation

Prior art citations received in the Office will be forwarded to the Technology Center (TC) that currently examines the class and subclass in which the patent to which the prior art citations are addressed is classified as an original.

It is the responsibility of the TC to immediately determine whether a citation meets the requirements of the statute and the rules and to enter it into the patent file at the appropriate time if it is proper.

If a proper citation is filed after the date of an order for reexamination but it is not entitled to entry pursuant to the reexamination rules, the citation is retained (stored) in the TC until the reexamination is terminated. Note 37 CFR 1.501(a) and MPEP § 2294. A tag should be placed on the reexamination file as a reminder of the citation to be placed in the patent file after termination of the reexamination proceeding. The citation is then placed in the TC's citation storage file. After the reexamination proceeding is terminated, the citation is removed from the storage file and processed for placement in the patent file. Citations filed after the date of an order for reexamination which are not entitled to entry pursuant to the reexamination rules will not be considered by the examiner during the reexamination.

## I.    CITATION QUALIFIES FOR ENTRY UNDER 37 CFR 1.501

### A.    *Citations by Third Party*

#### 1.    Prior to Order in Any Pending Reexamination Proceeding

If the citation is proper (i.e., limited to patents and printed publications) and is filed prior to an order in a reexamination proceeding, it should be immediately entered into the patent file. If the citation includes an indication of service on the patent owner, the citation is merely timely entered and no notice of such entry is sent to any party. If the citation does not include an indication of service, the patent owner should be notified that a citation of prior art has been entered into the patent file. If a duplicate copy of the citation was

filed, the duplicate copy should be sent to the patent owner along with the notification. If no duplicate copy is present, no copy will be sent with the notification. Wording similar to the following should be used:

"A citation of prior art under 35 U.S.C. 301 and 37 CFR 1.501 has been filed on ____ in your patent number ____ entitled_____.

This notification is being made to inform you that the citation of prior art has been placed in the file wrapper of:

[ ] the above identified patent.

[ ] reexamination control # _____.

The person submitting the prior art:

1. [ ] was not identified.

2. [ ] is confidential

3. [ ] is _____."

#### 2.    After the Order in Any Pending Reexamination Proceeding

If the citation is proper but is filed after an order for reexamination in a pending reexamination, the citation is not entered at the time because of the ongoing reexamination. The patent owner and sender (if known) should be alerted of this fact. Such notification is important to enable the patent owner to consider submitting the prior art under 37 CFR 1.555 during the reexamination. Such notification will also enable the third party sender to consider the desirability of filing a separate request for reexamination. If the citation does not include service of a copy on the patent owner and a duplicate copy is submitted, the duplicate copy should be sent to the patent owner along with the notification. If a duplicate copy is not present, no copy will accompany the notification to the patent owner. In this situation, the original copy (in storage) should be made available for copying by the patent owner. If the citation includes service of a copy on the patent owner, the citation is placed in storage and not entered until the reexamination is terminated. The patent owner and third party sender (if known) should be given notice of this action.

An example of a letter giving notice to the patent owner and third party sender is as follows.