# EXHIBIT 8

Case 1:01-md-01592-MLW   Document 25-9   Filed 06/18/2004   Page 2 of 3

# Lessons in Claim Construction from the Federal Circuit

## READING, WRITING AND REVERSAL

BY CHRIS ULLSPERGER OF BINGHAM McCUTCHEN LLP

Next to the U.S. Supreme Court, the Court of Appeals for the Federal Circuit is probably the most closely-watched bench in the United States. As the importance of intellectual property rights (and the diligent enforcement of those rights) has become dogma in the technology sector, the Federal Circuit's decisions in the patent arena are especially scrutinized. In addition to the usual dissection of written opinions, academics and practitioners are systematically analyzing the Federal Circuit's statistical record, focusing particularly on the resolution of claim construction issues.[1]

Claim construction is at the heart of patent litigation. Before infringement can be found, before priority can be determined, before novelty, usefulness, and non-obviousness can be established, the court must know what the patent covers, what its claims mean. Over 600 federal district court judges in 94 districts make those decisions in the first instance. All appeals are decided by the Federal Circuit. Few such decisions reach the Supreme Court.

For more than five years, the Federal Circuit has reviewed the District Courts' claim construction decisions *de novo*. Initially, the reversal rate was alarmingly high. It then declined slowly. The most recent data for 2001, summarized here, shows another slight decline. But it still remains high relative to the reversal rate of federal appellate courts generally. Clearly, the Federal Circuit believes it has more work to do in teaching the federal district courts how to construe claims. And until they learn, patent litigants will continue to experience the district court as nothing more than the first round in a long (and expensive) match.

An empirical study published last year in the Berkeley Technology Law Journal investigated the effect of two important cases, *Markman*[2] and *Cybor Corp.*,[3] on the frequency of claim construction modification.[4] Together, these two cases stand for the proposition that claim construction is a matter of law,[5] and that, as such, the construction of claims by district courts should be reviewed *de novo* on appeal.[6] When the cases were decided, some judges on the Federal Circuit expressed concern that the holdings would lead to greater unpredictability with respect to the meaning of patent claims.

For example, in her *Cybor Corp.* dissent, Judge Pauline Newman noted that the *Markman* decisions effectively increased the ambiguity of patent claims because they "released appellants' imaginations" in the Federal Circuit, the only place where claims could be construed with near certainty.[7] Judge Randall Rader, also dissenting in *Cybor Corp.*, cited results from his own survey showing that, in the two and half years following *Markman I* (April 1995 – November 1997), the Federal Circuit reversed approximately 38% of "expressly reviewed" claim constructions.[8]

The Berkeley study, conducted by Christian Chu, picked up where Judge Rader left off. Chu examined the frequency of claim construction modifications by the Federal Circuit over a 16-month period (January 1998 – April 2000).[9] Chu made several observations, all of which tended to support the idea that the Federal Circuit was, as promised, reviewing claim constructions without deference to the lower court. For example, reviewing cases resulting in written opinions, Chu found that 44% of expressly reviewed claim constructions were modified over this period, consistent with Judge Rader's analysis.[10] When summary affirmances were included, the data suggested that in cases where claim construction was an issue, the lower court's construction was modified 35% of the time.[11] Where "means plus function" claims were at issue, the Federal Circuit was even more likely to modify the construction, with alterations to these often complicated claims occurring in 56% of the court's opinions in which they were reviewed.[12] Finally, and rather ominously, Chu documented a trend towards increasing rates of claim construction reversals on appeals.[13]

A review of the Federal Circuit's patent-related opinions from 2001 suggests that the rise in claim construction reversal rates may be stalling (Table 1). Consistent with previous observations, roughly 50% of the Federal Circuit's opinions relating to patents expressly reviewed the construction of at least one claim. Of the 82 written opinions involving claim construction in 2001, 40% resulted in modification or reversal of at least one of the construed claims. When summary affirmances are taken into account, the data suggest that roughly 31% of claim constructions are modified on appeal. The Federal Circuit has evidently not had much success clarifying the law regarding the construction of "means plus function" claims, an issue which arises in approximately 30% of the court's written opinions (Table 2). The lower courts' constructions of these claims continued to be modified more than half the time on appeal, at least within the population of published opinions.

As claim construction lies at the heart of nearly every patent dispute, the outcome of a great majority of appeals is affected by the modified construction. Judge Michel has reported data from his own survey that suggests a "reversal rate on claim construction"

### TABLE 1
Review and Modification of Claim Construction by the Federal Circuit in 2001, Independent of Claim Type

| Types of Cases | Percentage of All Written Opinions Relating to Patents (168 total) | Percentage of Written Opinions Where Claim Construction Expressly Reviewed | Percentage of All Patent Cases Involving Review of Claim Construction (Includes Summary Affirmances)[17] |
|---|---|---|---|
| Cases in Which Claim Construction was Expressly Reviewed by the Fed. Cir. | 49 % (82/168) | — | — |
| Cases in Which Claim Construction was Modified by the Fed. Cir. | 19 % (32/168) | 40 % (32/82) | ~ 31 % (~32/103) |

### TABLE 2
Review and Modification of Means Plus Function Claims by the CAFC in 2001

| Types of Cases | Percentage of Written Opinions Expressly Reviewing Claim Construction | Percentage of Written Opinions Expressly Construing Means Plus Function Claims |
|---|---|---|
| Cases Construing Means Plus Function Claims | 30 % (25/82) | — |
| Cases in Which Means Plus Function Claims Were Modified by the Fed. Cir. | 17 % (14/82) | 56 % (14/25) |



in the range of 22-25%, a rate which Judge Michel argues is in line with the average reversal rate "for all issues, in patent law or other types of litigation."[14] The 31% rate reported here is quite a bit higher than Judge Michel's range. One possible explanation is that the actual number of summary affirmances that involve claim construction review may be greater than that determined by extrapolation (as here). In any case, complicated issues such as the construction of "means plus function" claims remain especially resistant to resolution at the district court level.

As it teaches the district courts how to construe patent claims, the Federal Circuit continues to remind trial judges of the central importance of claim construction. Recently, in a case concerning the invalidity of claims under the public sale bar of 35 U.S.C. § 102(b), Judge Alan Lourie wrote that "courts may not invalidate the claims of a patent without construing the disputed limitations and applying them to the allegedly invalidating acts."[15] Without a careful claim construction, he continued, a "decision invalidating the patent becomes effectively unreviewable."[16] Only time will tell if more practice by the district courts will lead to greater certainty concerning the meaning of claims, less burdensome patent litigation, and fewer hard lessons from the Federal Circuit. **IPT**

## ENDNOTES

1. *See, e.g.*, Kenneth Adamo et al., *Survey of the Federal Circuit's Patent Law Decisions in 2000: Y2K in Review*, 50 American University Law Review 1435 (2001); Kimberly Moore, *Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation?*, 79 N.C. L. Rev. 889 (2001); John Allison and Mark Lemley, *How Federal Circuit Judges Vote in Patent Validity Cases*, 27 Florida State University Law Review 745 (2000); Kimberly Moore, *Judges, Juries & Patent Cases: An Empirical Peek Inside the Black Box*, 98 Mich. L. Rev. 365 (2000); John Allison and Mark Lemley, *Empirical Evidence on the Validity of Litigated Patents*, 26 AIPLA Q.J. 185 (1998). The University of Houston Law Center also administers a website, www.patstats.org, which monitors Federal Circuit patent cases and tabulates the ultimate resolution, issue by issue.

2. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The Federal Circuit case is referred to as *Markman I*, and the Supreme Court case as *Markman II*.

3. *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc).

4. Christian Chu, *Empirical Analysis of the Federal Circuit's Claim Construction Trends*, 16 Berkeley Technology Law Journal 1075 (2001).

5. *See Markman II* at 391.

6. *See Cybor Corp.* at 1451.

7. *See id.* at 1478-79.

8. *See id.* at 1476, n. 16.

9. Chu, *supra* n.1, at 1094-95.

10. *See id.* at 1104.

11. *See id.* at 1146.

12. *See id.* at 1132.

13. *See id.* at 1100-1105.

14. Interview with the Hon. Paul R. Michel, Circuit Judge, U.S. Ct. of Appeals for the Federal Circuit, by Vikram Chaobal and Iris Cox, in the Oregon Intellectual Property Newsletter (Spring 2001).

15. *Dana Corp. v. American Axle & Manufacturing Inc.*, Fed. Cir., No. 01-1008, 2/12/02.

16. *Id.*

17. Because summary affirmances are published without any description of the issues considered by the Court of Appeals, the total number of patent cases where claim construction was reviewed was determined by extrapolation. Based on Chu's study, approximately 20% of all patent cases are decided by summary affirmance. Therefore, roughly 42 summary affirmances in 2001 involved patent issues. Assuming that the percentage of summary affirmances in which claim constructions are reviewed is identical to the percentage of written opinions in which claim constructions are reviewed, then 21 (49% of 42) summary affirmances involved a review of claim construction. The total number of cases involving a review of claim construction was determined by addition: 82 + 21 = 103.