UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY<br>PATENT LITIGATION | MDL No. 1592 (MLW)<br><br>This Document Relates To All Actions |

# SUPPLEMENTAL MEMORANDUM REGARDING FIRST AMENDMENT IMPLICATIONS OF PROTECTIVE ORDER

Dated: July 16, 2004

Thomas F. Maffei (BBO # 313220)
Scott McConchie (BBO # 634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Morgan Chu
David I. Gindler
Jason G. Sheasby
Irell & Manella LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
(310) 203-7199 (fax)

Wayne M. Barsky
Kevin S. Rosen
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California
90067-3026
(310) 552-8500
(310) 551-8741 (fax)

ATTORNEYS FOR THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK

1146278

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

THE PROTECTIVE ORDER ...................................................................................................... 2

ARGUMENT ................................................................................................................................ 2

I. The Protective Order Does Not Implicate The First Amendment ............................. 2

    A. Courts Routinely Grant Protective Orders Under Similar Conditions .................................................................................................. 3

    B. Under *Seattle Times* And Related Case Law, The Protective Order Does Not Violate The First Amendment ......................................................... 4

        1. Courts Have Applied The Reasoning Of *Seattle Times* Outside Of Discovery ................................................................................ 4

        2. The First Circuit Has Ordered Non-Discovery Documents Sealed ........................................................................................................ 5

    C. There Is No Constitutional Right Of Access To The Prosecution History Of The '159 Application ................................................................... 6

        1. Prosecution History Of Pending Patent Applications Is Traditionally Closed To The Public ................................................... 7

        2. Public Access To The '159 Application's Prosecution History Would Not Play A "Significant Positive Role" In This Litigation ............................................................................................. 8

II. There Is No Common Law Right Of Access To The Prosecution History Of The '159 Application ................................................................................................... 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986) ............................................................................................... 10

*Application of Sarkar*,
    575 F.2d 870 (C.C.P.A. 1978) ............................................................................................ 4

*Grove Fresh Distributors, Inc. v. John Labatt Limited*,
    888 F. Supp. 1427 (N.D. Ill. 1995) ................................................................................. 4, 5

*Gumbel v. Pitkin*,
    124 U.S. 131 (1888) ............................................................................................................ 1

*In re Boston Herald, Inc.*,
    321 F.3d 174 (1st Cir. 2003) .................................................................................. 7, 8, 10

*In re Gabapentin Patent Litigation*,
    312 F. Supp. 2d 653 (D.N.J. 2004) .................................................................................. 5

*In re Papst Licensing, GmbH Patent Litigation*,
    2000 WL 505960 (E.D. La. Apr. 26, 2000) .................................................................... 3

*In re Providence Journal Co., Inc.*,
    293 F.3d 1 (1st Cir. 2002) .................................................................................................. 6

*Irons & Sears v. Dann*,
    606 F.2d 1215 (D.C. Cir. 1979) ........................................................................................ 8

*Irons v. Diamond*,
    670 F.2d 265 (D.C. Cir. 1981) .......................................................................................... 8

*Misegades & Douglas v. Schuyler*,
    328 F. Supp. 619 (E.D. Va. 1971) .................................................................................... 8

*Muri v. Killeen*,
    2004 WL 1124929 (W.D. Va. May 18, 2004) ................................................................ 3

*Nixon v. Warner Communications, Inc.*,
    435 U.S. 589 (1978) ....................................................................................................... 3, 9

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) ................................................................................................ 5

Page

*Press-Enterprise Co. v. Superior Court*,
   478 U.S. 1 (1986) .................................................................................................7, 8

*Press-Enterprise Co. v. Superior Court*,
   464 U.S. 501 (1984) ...................................................................................................7

*Public Citizen Health Research Group v. FDA*,
   953 F. Supp. 400 (D.D.C. 1996)................................................................................1

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) .........................................................................................1, 2, 4, 5

*Siedle v. Putnam Investments, Inc.*,
   147 F.3d 7 (1st Cir. 1998) ......................................................................................5, 6

*SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*,
   261 F. Supp. 2d 1002 (N.D. Ill. 2003).......................................................................3

*United States v. 3D Systems Corp.*,
   2001 WL 964343 (D.D.C. Aug. 16, 2001) ................................................................4

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ....................................................................................10

*Walker Systems, Inc. v. Hubbell Inc.*,
   188 F.R.D. 428 (S.D.W. Va. 1999) ...........................................................................3

**Statutes**

35 U.S.C. §122 ...............................................................................................................4, 7

**Rules**

Federal Rule of Civil Procedure 26......................................................................................5

# **PRELIMINARY STATEMENT**

On June 23, 2004, the Court ordered supplemental briefing on the First Amendment implications of the Protective Order issued the same day. Given the principles articulated in *Public Citizen Health Research Group v. FDA*, 953 F. Supp. 400 (D.D.C. 1996), a case cited in both Columbia's Supplemental Memorandum in Support of its Emergency Motion to Seal and this Court's June 23 Order, Columbia believes that the terms of the Protective Order do not run afoul of any protections afforded either by the First Amendment or the common law.

While the law recognizes the "presumption of openness with respect to court proceedings," this "presumption must, however, be balanced with the court's power to regulate the use of information or documents, obtained through means other than discovery, in a proceeding before the court." *Id.* at 405 (citing *Gumbel v. Pitkin*, 124 U.S. 131, 146 (1888)). The key aspect of Columbia's motion to seal that differentiates it from other situations where courts have denied motions to seal is the fact that a patent prosecution file (unlike general newsworthy information) is confidential by law under the Patent Act. *See* 35 U.S.C. § 122(a). Accordingly, under Supreme Court and First Circuit law, and regardless of whether *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), applies to the disclosure of information obtained outside of the discovery process, the Protective Order entered in this action does not offend the right of access to judicial proceedings.

Plaintiffs do not seriously dispute that the prosecution history of U.S. Patent Application No. 08/477,159 (the "'159 application") is covered by Section 122. Nor do they credibly argue that any of the specifically enumerated exceptions to the confidentiality afforded by Section 122 applies to the '159 prosecution history. Moreover, plaintiffs cite no case law recognizing any judicially created exceptions to the confidentiality protections of

Section 122.  Given that the terms of the Protective Order allow plaintiffs continued access to the sections of the '159 application that the Patent and Trademark Office ("PTO") improperly released to them, plaintiffs have nothing about which to complain.  Their continued opposition to the entry of the Protective Order is intended solely to harm Columbia's right and ability to prosecute the '159 application – a matter not even at issue in this case.  Columbia respectfully requests that the Court maintain the Protective Order in place for the duration of this litigation.

## THE PROTECTIVE ORDER

The Protective Order issued by this Court on June 23, 2004 provides, in relevant part:

(1)  "[D]istribution of any portions of the prosecution history of [the '159 application], and the information that prosecution history contains, shall be restricted to in-house counsel and outside counsel for the plaintiffs";

(2)  "Any party filing a document with the court that contains information subject to this Protective Order shall file that document under seal with a redacted version for the public record."

## ARGUMENT

**I.    The Protective Order Does Not Implicate The First Amendment**

Regardless of whether the analysis of *Seattle Times* applies outside of the discovery context, the terms of the Protective Order do not offend First Amendment principles.  While any protective order merits consideration because it necessarily restricts access to information, courts commonly grant protective orders to prevent dissemination of confidential proprietary information.  As discussed below, under Supreme Court and First

Circuit case law, the Protective Order in this multidistrict litigation does not impinge on either constitutional or common law rights of public of access to information.

### A. Courts Routinely Grant Protective Orders Under Similar Conditions

The Protective Order treads well-worn ground in merely preventing public access to a small segment of information that is confidential as a matter of law. Every federal court "has supervisory power over its own records and files," and thus possesses the inherent authority to restrict access to such materials. *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 598 (1978). District courts commonly grant motions to seal or issue protective orders to shield a party's confidential information where that information has not been produced pursuant to the discovery process. *See, e.g., SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (granting motion to seal portions of non-discovery document containing "ideas or inventions having commercial value and reflecting investment by the firm seeking to maintain secrecy"); *Walker Systems, Inc. v. Hubbell Inc*., 188 F.R.D. 428, 429-30 (S.D.W. Va. 1999) (granting motion to file under seal certain documents containing "trade secrets or other confidential information"); *In re Papst Licensing, GmbH Patent Litigation*, No. MDL 1298, 99-3118, 2000 WL 505960, at *1-2 (E.D. La. Apr. 26, 2000) (granting motion for leave to file confidential exhibits under seal); *Muri v. Killeen*, No. Civ.A. 503CV00051, 2004 WL 1124929, at *3-4 (W.D. Va. May 18, 2004) (granting "protective order to seal allegedly confidential and proprietary information contained in…[e]xhibits" to a response to a motion for summary judgment).

Relying upon these principles, district courts have granted motions to seal the contents of a confidential patent application. *See, e.g., United States v. 3D Systems Corp*.,

No. CIV. 1:01CV01237 (GK), 2001 WL 964343, at *1 (D.D.C. Aug. 16, 2001) (stipulation and order providing that appendices to proposed final judgment shall be filed under seal because they "relat[e] to defendants' patent applications"); *Application of Sarkar*, 575 F.2d 870, 870-72 (C.C.P.A. 1978) (granting motion to seal record containing patent application, which "has remained confidential by virtue of the operation of 35 U.S.C. §122," so that "material disclosed in the involved patent application may be retained, in the event of an adverse decision, as a trade secret"). Like the orders granted in these cases, the Protective Order properly restricts access to a small number of documents to prevent disclosure of the confidential prosecution history of the '159 application.

> **B. Under *Seattle Times* And Related Case Law, The Protective Order Does Not Violate The First Amendment**
>
> **1. Courts Have Applied The Reasoning Of *Seattle Times* Outside Of Discovery**

In its June 23 Order, the Court asked the parties to consider whether the constitutional analysis in *Seattle Times* applies outside the context of materials obtained during discovery. While the Supreme Court has not weighed in on this issue, lower courts have applied *Seattle Times* in holding that a protective order covering non-discovery materials does not violate the First Amendment. *See, e.g., Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1440 (N.D. Ill. 1995) ("there is nothing in [*Seattle Times*] to suggest that those equitable powers [to enter a protective order] are likewise limited to protecting discovery materials. Indeed, the reverse appears to be true.").

In *Grove Fresh*, the court refused the plaintiff's attorney's request to lift an order of confidentiality over settlement agreements. The attorney claimed that the order "unduly restricted his right to free speech under the First Amendment." *Id*. Citing *Seattle Times* as controlling precedent, the *Grove Fresh* court noted that *Seattle Times* focused on discovery

protective orders under Federal Rule of Civil Procedure 26. *Id*. However, the *Grove Fresh* court observed that "[l]ike discovery materials, the dissemination of agreements intended by the parties to be confidential carries a significant potential for abuse . . . ." *Id*. at 1440-41 (quotations omitted). Finding that the confidential agreements "are also worthy subjects for a protective order, because, like discovery material, they too cannot really be considered public components of a civil trial," the *Grove Fresh* court rejected the attorney's First Amendment challenge to the protective order by employing the Supreme Court's reasoning in *Seattle Times*. *Id*. at 1441 (quotations omitted); *see also In re Gabapentin Patent Litigation*, 312 F. Supp. 2d 653, 666 (D.N.J. 2004) ("Protective orders over discovery materials and orders of confidentiality over matters relating to other stages of litigation are subject to the same balancing of the litigants' privacy interests and the public's right to obtain information concerning judicial proceedings.") (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Like confidential agreements and other sensitive documents, confidential patent prosecution documents "cannot really be considered public components of a civil trial."

### 2. The First Circuit Has Ordered Non-Discovery Documents Sealed

In addition, the First Circuit has approved sealing of non-discovery materials without relying on *Seattle Times*. In *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7 (1st Cir. 1998), the court reversed an unsealing order and remanded for re-entry of the original sealing order. *Id*. at 12. In that case, the order sealed "virtually all of the pleadings," many of which included documents alleged by the defendant to constitute attorney-client privileged information. *Id*. at 9. Balancing the interests of the public in access to judicial proceedings and the interest of Putnam in its claimed privilege, the First Circuit reversed and remanded the case with instructions to the district court to re-enter the sealing order. The court found

that the "information that Putnam wishes to keep under seal appears on its face to be subject to both the attorney-client privilege and the parallel confidentiality requirements imposed by" the plaintiff's agreement with the defendant. *Id*. at 11. Like the documents before the court in *Siedle*, the '159 application prosecution history is obviously subject to an overarching confidentiality protection – this one provided by the patent laws themselves. As in *Siedle*, the balance of the public's interest in disclosure of the non-discovery materials against the sealing proponent's interest in protecting confidentiality weighs in favor of the latter in the instant case.

        **C.**    **There Is No Constitutional Right Of Access To The Prosecution History Of The '159 Application**

As an initial matter, while the First Amendment generally provides a public right of access to *criminal* proceedings, "the Supreme Court has not established whether the constitutional right of access attaches to civil cases in general . . . ." *In re Providence Journal Co., Inc.*, 293 F.3d 1, 13 n.5 (1st Cir. 2002). Assuming, for the sake of argument, that the First Amendment right of access applies to this civil proceeding, the Protective Order does not violate that right under the law of this circuit.

While it provides for a general right of access to judicial proceedings, "the First Amendment does not grant the press or the public an automatic constitutional right of access to every document connected to judicial activity." *In re Boston Herald, Inc.*, 321 F.3d 174, 184 (1st Cir. 2003). In *Boston Herald*, the First Circuit reiterated the Supreme Court's two-part test "to determine if a constitutional right of access applies to particular documents . . . ." 321 F.3d at 182. First, a court must look to whether documents similar to those at issue "have been open to the public in the past, 'because a tradition of accessibility implies the favorable judgment of experience.'" *Id*. (citing *Press-Enterprise Co. v. Superior Court*, 478

U.S. 1, 8 (1986) ("*Press-Enterprise II*")). Second, "we ask 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Boston Herald*, 321 F.3d at 182 (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*")). Because the prosecution history of a pending patent application historically has never been open to the public and because there would be no conceivable positive impact *to the public* from releasing this confidential information, there is no constitutional right of access to the documents covered by the Protective Order.

> 1. **The Prosecution History Of A Pending Patent Application Is Traditionally Closed To The Public**

Under the first prong of the *Boston Herald* constitutional public access test, the court must consider whether the prosecution history of a patent application has "been open to the public in the past." 321 F.3d at 182. In fact, the opposite is true. As discussed at greater length in Columbia's Memorandum in Support of its Emergency Motion to Seal and Restrict Access To Confidential Information, the Patent Act specifically provides that "applications for patents shall be kept in confidence by the Patent and Trademark Office and no information concerning the same given without authority of the applicant or owner . . . ." 35 U.S.C. § 122(a). This confidentiality applies to the prosecution history of a patent application. *See, e.g., Irons v. Diamond*, 670 F.2d 265, 268 (D.C. Cir. 1981) (PTO decisions on unpublished patent applications which are part of the prosecution history are subject to section 122); *Irons & Sears v. Dann*, 606 F.2d 1215, 1221 (D.C. Cir. 1979) (interim PTO decisions on pending applications are part of the prosecution history and are subject to section 122); *Misegades & Douglas v. Schuyler*, 328 F. Supp. 619, 620 (E.D. Va. 1971) (Section 122 "includes all pertinent information given the patent examiner by the inventor or his attorney pending the granting, denial or abandonment of his application."). It cannot

seriously be contended that prosecution histories for pending patent applications have a "tradition of accessibility" to the public. Therefore, there can be no constitutional right of access to the '159 application's prosecution history.

### 2. Public Access To The '159 Application's Prosecution History Would Not Play A "Significant Positive Role"

The second part of the *Boston Herald* test asks whether allowing public access to the document in question would play a "significant positive role" in the process. 321 F.3d at 182. Congress has already answered that question in the negative.

In implementing the Patent Act, Congress clearly weighed whether the prosecution history of a pending patent application should be available to the public. The mere existence of Section 122 plainly demonstrates that Congress determined not to permit such access as part of its efforts to "promote the progress of science" through Article I, Section 8 of the Constitution. In *Press-Enterprise II*, the Supreme Court noted that "there are some kinds of government operations that would be totally frustrated if conducted openly." 478 U.S. at 9. In order to "reward[] innovation with a temporary monopoly" and thereby incentivize scientific invention, the Patent Act specifically provides for confidentiality to avoid frustrating the purpose of Article 1, Section 8 of the Constitution. Because granting public access to the '159 application prosecution history would eviscerate the protections of the patent laws, there is no "significant positive role" for public disclosure of this confidential material.

In *Nixon*, the Supreme Court considered an analogous situation in which an act of Congress provided for when and under what conditions presidential recordings could be released to the public. 435 U.S. at 603 (In the Presidential Recordings Act, "Congress has created an administrative procedure for processing and releasing to the public, on terms

meeting with congressional approval, all of petitioner's Presidential materials of historical interest, including recordings of the conversations at issue here."). Affording much credence to the "congressionally prescribed avenue of public access" to the recordings sought, the *Nixon* Court denied the requested release of the tapes, finding no First Amendment issue. *Id*. at 605-06. The *Nixon* Court found that Congress "possess[ed] superior resources for assessing the proper implementation of public access" to the Nixon tapes. *Id*. at 606 ("Simply stated, the policies of the Act can best be carried out under the Act itself.").

Like the Presidential Recordings Act, the Patent Act provides for when and in what form the public may access the information contained in a patent application. Whether and when public access may play a "significant positive role" is a question Congress has answered with respect to patent applications as well as presidential tapes. Congress specifically decided that the public does not have a right of access to the contents of the prosecution history of a pending patent application except in certain enumerated circumstances (none of which apply here). Thus, the Protective Order, in furthering the purposes of the patent laws, does not impinge on the public right of access to judicial proceedings because there is no general public right to view the prosecution history of the '159 application.

**II. There Is No Common Law Right Of Access To The Prosecution History Of The '159 Application**

"In addition to any constitutional right, there is also a presumption of public access to 'judicial records' under the common law." *Boston Herald*, 321 F.3d at 189 (citing *Nixon*, 435 U.S. at 597). However, just as there is no constitutional right of access to the prosecution history of the '159 application, neither is there a common law right of access to

the same documents. Indeed, the common law presumption of access to judicial proceedings "is more easily overcome than the constitutional right of access." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986). In *Boston Herald*, the First Circuit approved of balancing "the public interest in the information against privacy interests" as a means of determining whether the common law right of access applies to any particular document. 321 F.3d at 190. There is a close relationship between the tests for constitutional right of access and common law right of access. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (courts analyzing common law presumption should "consider the degree to which the subject matter is traditionally considered private rather than public").

While there may be a hypothetical public interest in the contents of the '159 application's prosecution history (there has been no showing of *any* actual public interest), both Columbia's own interest in its confidential patent application and the interest of Congress in promoting the progress of science clearly overcome any presumption of public access. The prosecution history of a pending patent application is traditionally considered private in the United States. Moreover, any public interest in the instant litigation should be satisfied by unencumbered access to all non-confidential judicial records filed in these actions. The '159 application's prosecution history is, at best, peripheral to these proceedings. This tangential relationship to the litigation coupled with the statutory confidentiality of the '159 application prosecution history more than justifies the terms of the Protective Order.[1]

---

[1] This action is not about the '159 application. It is about the validity and enforceability of the '275 patent. None of the theories under which plaintiffs are attacking the validity and enforceability of the '275 patent turn on the prosecution history of the '159 application. Plaintiffs would be advancing the very same attacks on the validity and enforceability of the '275 patent even if Columbia had never filed the '159 application.

**CONCLUSION**

For the reasons set forth in the moving papers, and this Supplemental Memorandum, Columbia does not believe that the Protective Order implicates the First Amendment.

| | |
|---|---|
| July 16, 2004 | Respectfully submitted, |
| | THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK |
| | By its attorneys, |
| | _/s/ David I. Gindler_____<br>David I. Gindler<br>Irell & Manella LLP |
| | _/s/ Wayne M. Barsky_____<br>Wayne M. Barsky<br>Gibson, Dunn & Crutcher LLP |