UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE COLUMBIA UNIVERSITY
PATENT LITIGATION

MDL No. 04-MD-1592 (MLW)

Civil Action No. 04-10470-MLW
C.D. Cal. No. CV 02-4349 MRP (CWx)

**COLUMBIA UNIVERSITY'S BRIEF IN OPPOSITION TO AMGEN INC.'S AND
IMMUNEX CORPORATION'S MOTION FOR LEAVE TO OBTAIN DISCOVERY
FROM "FORESEEABLY UNAVAILABLE" WITNESSES**

Dated: July 30, 2004

Thomas F. Maffei (BBO # 313220)
Scott McConchie (BBO # 634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Wayne M. Barsky
Kevin S. Rosen
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California
90067-3026
(310) 552-8500
(310) 551-8741 (fax)

ATTORNEYS FOR THE TRUSTEES
OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK

## I. INTRODUCTION AND BACKGROUND

At the June 22, 2004 hearing, the Court decided to sever the double-patenting issues in this case and try them on an expedited basis before reaching the other claims and issues. In chambers, the plaintiffs argued that they needed to take the depositions of two "elderly" individuals – the same two individuals who are the subject of Amgen Inc.'s and Immunex Corp.'s (collectively "Amgen") current motion – who had authored supposedly relevant prior art. The Court was unpersuaded by Amgen's arguments, but permitted plaintiffs to make a motion to further explain why such depositions were "necessary and appropriate." *See* Transcript of June 22, 2004 hearing, at 185:19-21.

Because of the nature of the double-patenting inquiry, the Court made clear that the only discovery necessary, at this stage, is expert discovery on the double-patenting issue. *See id.*, at 184:10-12 ("I suppose at the moment I'm not authorizing any further discovery, unless there's something more you'd like to tell me as to why you need these people.") & 186:6-8. Though it permitted the plaintiffs to file motions seeking additional discovery, the Court specifically stated that requests should be "very focused" and tailored as "narrowly" as possible. *See id.*, at 186:18-24 & 190:17-23. Amgen has not followed the Court's directive.

Amgen has shown no urgent need for the discovery it seeks and Amgen has not explained why that discovery cannot wait six months until the double-patenting issues have been resolved. Instead, Amgen has filed a motion that is effectively one paragraph long and provides no more information than was presented at the June 22, 2004 hearing. Amgen has submitted no legal authority in support of the relief it seeks. Amgen has submitted no declarations, affidavits, or other evidence in support of its factual assertions. Amgen has made no effort to distinguish the articles authored by these two individuals from the more than 90 other articles cited in alleged

- 1 -

support of its invalidity contentions, or to explain why the work of *these* individuals is somehow more critical than the work of the dozens of other scientists whose work they cite. Amgen has not even described the facts that it hopes to elicit from Dr. Srinivasan and Dr. Siminovitch, much less provided any explanation of why it cannot obtain those facts elsewhere. Amgen's motion leaves the Court, and Columbia, guessing as to the connection between this case and the two witnesses Amgen seeks to depose. In short, Amgen has added nothing to the arguments that this Court considered, and found unpersuasive, on June 22, 2004.

To divert attention from these shortcomings, Amgen focuses on Dr. Srinivasan's and Dr. Siminovitch's ages.[1] Regardless of the age of the doctors, however, there is no reason to burden them (and Columbia) with Amgen's discovery demands if Amgen cannot articulate a persuasive reason why it needs to pursue this discovery now, during the double-patenting phase of this case, rather than six months from now.

## II. AMGEN HAS FAILED TO ARTICULATE ANY PERSUASIVE REASON, OR REALLY ANY REASON AT ALL BEYOND THE AGE OF THE TWO INDIVIDUALS, THAT IT NEEDS THE DISCOVERY IT SEEKS

Amgen's conclusory motion suggests that the discovery sought is relevant to "prior art issues, double patenting and validity of the patent in suit." None of these statements, standing alone, supports Amgen's request, especially given the expedited double-patenting trial preparation process in which Columbia and the other parties are currently engaged.

---

[1]     It is worth noting that Drs. Srinivasan and Siminovitch are not quite so old and frail as Amgen makes them sound. Columbia has spoken with both witnesses. Dr. Srinivasan is only 77 and is still active in his work for Columbia. Both Dr. Srinivasan and Dr. Siminovitch appear to be in good health.

A vague allegation of "prior art issues," and a suggestion that Drs. Srinivasan and Siminovitch were researchers in the "relevant field," are not sufficient to justify the discovery Amgen seeks. This is particularly true given Amgen's failure to identify – even generally – the nature of the "prior art issues," how those issues relate to the pending claims in this lawsuit, or the specific prior art references that Amgen claims are relevant. Amgen is also silent as to why the parties should be engaged in prior art discovery at this time, given the Court's current focus on double patenting.

Even setting aside these deficiencies in Amgen's "prior art" argument, there is another fundamental point that Amgen's motion overlooks: Drs. Srinivasan and Siminovitch cannot now change, clarify, or supplement the articles that they published during the 1970s and 1980s. In patent cases, courts look to the actual content of the prior art in evaluating its importance. *See* 35 U.S.C. § 102(a), (b). Authors of prior art may have a unique understanding of their published works or they may have additional thoughts or notes that were not generally available to the public. Such non-public materials do not change a court's analysis of the information found in the prior art. *See, e.g., Texas Co. v. Globe Oil & Refining Co.*, 112 F. Supp. 455, 483 (N.D. Ill. 1953), *aff'd* 225 F.2d 725 (7th Cir. 1955) ("In considering the bearing of the patents and publications cited as prior art or anticipation, the basic question is what does the cited reference itself say – not what it might have said or what might be done with it by a present day expert, adding present day knowledge."); *Hall v. Keller*, 80 F. Supp. 763, 768 (W.D. La. 1948) ("The prior art must be interpreted from its own disclosure and is not to be aided by ex post facto wisdom."); *see also, e.g., In re Fine*, 837 F.2d 1071, 1074 (Fed. Cir. 1988) (requiring, to prove obviousness, a showing of "some objective teaching in the prior art"). Therefore, discovery from

prior art authors – whether through documents or deposition testimony – will not advance this case or resolve "prior art issues."

In like fashion, Amgen has not explained how factual discovery from Dr. Srinivasan and Dr. Siminovitch will shed any light on the double-patenting issues in this case. Amgen has not alleged or established that either Dr. Srinivasan or Dr. Siminovitch have any factual knowledge at all – much less any special knowledge – of the '275 patent, its prosecution, its relationship to other Columbia patents, or double-patenting principles in general. Nor does Amgen suggest that any particular claim of the '275 patent is obvious over any particular claim of a predecessor Axel patent in light of any particular prior art authored or presented by Dr. Srinivasan or Dr. Siminovitch. Amgen's real purpose for conducting these depositions may be their desire to extract expert opinions from Dr. Srinivasan and Dr. Siminovitch.[2] If that is Amgen's goal, then it is an improper one. Both Dr. Srinivasan and Dr. Siminovitch have been retained as expert consultants on behalf of Columbia in connection with this litigation. If Columbia elects to submit expert reports from these individuals, then Amgen shall have the right to conduct their depositions at the appropriate time. If Columbia elects not to submit expert reports from these individuals, then Amgen has no basis to seek any expert opinion discovery from them.

---

[2]    Notably, Columbia recently informed Amgen that it would reconsider its position with respect to the depositions of Drs. Srinivasan and Siminovitch if Amgen agreed to limit its questioning of the two doctors to prior art publications or presentations authored by them, and not explore other topics (such as the doctors' opinions on whether the claims of the '275 patent are obvious variants of the claims of the earlier Axel patents and the subjective knowledge of these individuals at the time the inventions were made). *See* Letter from Wayne Barsky to Arthur Wineburg, dated July 22, 2004, attached as Exh. A. Amgen refused Columbia's offer, *see* Letter from Vicki G. Norton to Wayne Barsky, dated July 28, 2004, attached as Exh. B, further confirming that Columbia's concern that Amgen may attempt to seek improper expert opinions on double patenting is a valid one.

Amgen's last inadequate reason for taking discovery from Drs. Srinivasan and Siminovitch is that the desired discovery is relevant to the validity of the patent in suit. Once again, however, Amgen provides no supporting explanation for its conclusory assertion of relevance.

### III. AMGEN'S RECENTLY-FILED INVALIDITY CONTENTIONS DEMONSTRATE THAT DRS. SRINIVASAN AND SIMINOVITCH HAVE, AT MOST, A HIGHLY ATTENUATED RELATIONSHIP TO AMGEN'S CASE THEORIES

If it were critical to preserve the testimony of Dr. Srinivasan and Dr. Siminovitch in connection with the double-patenting issues currently before the Court, Amgen presumably would have prominently cited their publications in its recently-filed Contentions on Invalidity Due to Non-Statutory Double Patenting ("Amgen's Invalidity Contentions"). They have not done so, nor have they done anything to distinguish the work of these individuals from the work of the authors of more than 90 other publications.

Although Amgen's claim chart (found in Exhibit 1 to the Invalidity Contentions) spans 79 pages, it mentions no prior art articles by either Dr. Srinivasan or Dr. Siminovitch that are supposedly relevant to assessing whether any particular claim of the '275 patent is obvious over any particular claim of any predecessor Axel patent. Amgen merely attaches a 9½ page exhibit listing approximately 95 "references associated with its contentions." *See* Exhibit 2 to Amgen's Invalidity Contentions. Buried amongst these myriad references is one article by Dr. Srinivasan and one article by Dr. Siminovitch. Amgen provides no explanation as to how any of these articles bear upon their double-patenting contentions, or why these articles are key references. Amgen's own lack of emphasis in its Invalidity Contentions on the prior art authored by Drs.

Srinivasan and Siminovitch undermines any suggestion that these witnesses authored important prior art and that Amgen needs to take discovery from them at this time.

## IV. CONCLUSION

The parties are currently attempting to comply with a very ambitious double-patenting schedule. In light of Amgen's failure to identify any reason that Drs. Srinivasan and Siminovitch are likely to have any information relevant to the issues raised in this litigation, Amgen should not now be permitted to burden Columbia – and these two individual doctors – with the expense, distraction, and inconvenience of discovery. If, however, the Court agrees with Amgen that some discovery is appropriate, Columbia requests that Amgen be permitted, at this stage of the case, to take only limited discovery with respect to any prior art authored or presented by these individuals. The plaintiffs should not be permitted to explore other subject matters, such as these individuals' opinions on whether the claims of the '275 patent are obvious variants of the claims of the earlier Axel patents, or the subjective knowledge of these individuals at the time the inventions were made. All plaintiffs should be required to coordinate their factual discovery efforts with respect to Drs. Srinivasan and Siminovitch, so as to avoid the type of duplicative discovery proceedings that the multi-district litigation rules are designed to address. Further, Amgen should not be permitted to take depositions; it should be limited to obtaining documents from Drs. Srinivasan and Siminovitch. If depositions are permitted, they should be limited to two hours each.

For the reasons set forth above, Amgen's Motion for Leave to Obtain Discovery from Foreseeably Unavailable Witnesses should be denied.

Dated: July 30, 2004

Respectfully submitted,

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK

By its attorneys,


_/s/ Wayne M. Barsky_____
Wayne M. Barsky
Gibson, Dunn & Crutcher LLP


_/s/ Scott McConchie_____
Scott McConchie
Griesinger, Tighe & Maffei, LLP


60112761v1

# EXHIBIT A

# GIBSON, DUNN & CRUTCHER LLP

## LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

2029 Century Park East  Los Angeles, California 90067-3026
(310) 552-8500
www.gibsondunn.com

wbarsky@gibsondunn.com

July 22, 2004

Direct Dial
(310) 557-8183

Fax No.
(310) 552-7010

Client No.
T 92695-00001

Arthur Wineburg, Esq.
Pillsbury Winthrop LLP
1133 Connecticut Avenue, N.W.
Washington, D.C. 20036

Re:    *In re Columbia University Patent Litigation*
       *MDL No. 1592 (MLW)*

Dear Arthur:

When we spoke last Friday, you suggested that we reconsider our position on the depositions of Professors Srinivasan and Siminovitch after reviewing the motion filed by Amgen that same day. Eileen Herlihy made a similar suggestion in a voicemail message that she left for me yesterday. Please accept this letter as my response to both requests. I would have responded sooner but have been out of town all week and will not be back in the office until tomorrow.

I have now read Amgen's motion, and find that it adds nothing to what was previously communicated by Amgen on this subject. We understand that these individuals were working in the field of molecular biology at the time the inventions of the '275 patent were made, and that they are authors of publications which Amgen believes to be relevant. We also understand that Amgen believes these individuals made presentations at conferences before the date of the inventions of the '275 patent. Amgen has not, however, suggested why anything in the work of Professors Srininvasan and Siminovitch is important to the validity of the '275 patent. Given the statements made by Judge Wolf at the June 22, 2004 hearing, we would have expected Amgen to do more than simply establish the bare relevancy of Professors Srinivasan and Siminovitch.

Clarification of Amgen's intentions will assist us in evaluating your request that we stipulate to the depositions. Specifically, we would like to know whether plaintiffs plan to limit their questioning to prior art publications or presentations authored by these individuals, or whether plaintiffs plan to explore other subject matters, such as these individuals' opinions on whether the claims of the '275 patent are obvious variants of the claims of the earlier Axel

LOS ANGELES  NEW YORK  WASHINGTON, D.C.  SAN FRANCISCO  PALO ALTO
LONDON  PARIS  MUNICH  BRUSSELS  ORANGE COUNTY  CENTURY CITY  DALLAS  DE

**EXHIBIT**

_A_

## GIBSON, DUNN & CRUTCHER LLP

Arthur Wineburg, Esq.
July 22, 2004
Page 2


patents, or the subjective knowledge of these individuals at the time the inventions were made. If you can provide us with some comfort in this regard, and do so in an unequivocal manner on behalf of all plaintiffs, we would be willing to reconsider our opposition to these depositions.

We would appreciate hearing from you at your earliest convenience, as our opposition to Amgen's motion is due next Friday.

Sincerely,

Wayne M. Barsky

WMB/gdh
20174087_1.DOC

cc:    Eileen M. Herlihy, Esq.

# EXHIBIT B

07/28/2004  17:03    8583502399                    WSGR                              PAGE  01

# WSGR Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

**Date:** July 28, 2004

**To:** Wayne Barsky                    **Fax:** (310) 552-7010                  ☐ Use this fax
                                                                                      number only

**Company:** Gibson, Dunn & Crutcher LLP    **Phone:** (310) 557-8183       ☐ Notify recipient
                                                                                      before sending

| | | |
|---|---|---|
| **From:** Vicki G. Norton | **Phone:** (858) 350-2305 | **Return Fax:** (858) 350-2399 |

**Original:**  ☐ To follow via mail    ☐ To follow via courier    ☐ To follow via email    ☒ Original will not follow

**Fax Contains:** _2_ pages *(including this sheet).*  If incomplete, call (858) 350-2325].

**Message:**

**Ref:**                              Return Original to:                          Location:

3611 Valley Centre Drive, Suite 525, San Diego, California 92130-3317
858.350.2300 Tel  •  858.350.2399 Fax • www.wsgr.com

This fax may contain confidential and privileged material for the sole use of the intended recipient. Any review or distribution by others is strictly prohibited.
If you are not the intended recipient please contact the sender and destroy all copies.
Entire Transmission Copyright © 2003 Wilson Sonsini Goodrich & Rosati. All Rights Reserved.

Document5 (398)

EXHIBIT
_B_

WSGR  Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

3611 Valley Centre Drive, Suite 525
San Diego, CA 92130
PHONE 858.350.2300
FAX 858.350.2399
www.wsgr.com

VICKI G. NORTON
Internet: vnorton@wsgr.com
Direct Dial: (858) 350-2305

July 28, 2004

Wayne Barsky, Esq.
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California  90067-3026

Re:    Immunex Corp. and Amgen Inc. v. Columbia University

Dear Wayne:

Your letter of July 22, 2004 sets out unreasonable conditions for your consent to the depositions of Professors Siminovitch and Srinivasan, conditions which we cannot possibly accept. Your proposal to limit these depositions to "prior art publications and presentations" unreasonably limits our ability to take proper discovery.

With regard to the relevance of the work of Drs. Srinivasan or Siminovitch to this case, we recently learned that Columbia has retained Dr. Siminovitch as a consultant in connection with this action. Clearly, Columbia understood Dr. Siminovitch's potential relevance to this case when it retained him.

If your concern is that we might seek expert discovery, we do not intend to do so until the expert discovery phase of this case. We will call you tomorrow at a time of your choosing to discuss this further.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Vicki G. Norton

VGN/aeb

2504293_1.DOC

PALO ALTO  AUSTIN  KIRKLAND  NEW YORK  RESTON  SALT LAKE CITY  SAN FRANCISCO  SAN DIEGO