UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY<br>PATENT LITIGATION | MDL No. 04-MD-1592 (MLW)<br><br>This Document Relates to All Actions. |

**COLUMBIA UNIVERSITY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR "LIMITED" DISCOVERY RELEVANT TO THE ISSUE OF NON-STATUTORY DOUBLE PATENTING**

Dated: July 30, 2004

Wayne M. Barsky
Kevin S. Rosen
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California
90067-3026
(310) 552-8500
(310) 551-8741 (fax)

ATTORNEYS FOR THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF
NEW YORK AS TO AMGEN INC. AND
IMMUNEX CORP.

Thomas F. Maffei (BBO # 313220)
Scott McConchie (BBO # 634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Morgan Chu
David I. Gindler
Jason G. Sheasby
Irell & Manella LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
(310) 203-7199 (fax)

ATTORNEYS FOR THE TRUSTEES
OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK

**I.     INTRODUCTION**

Pending patent application file histories are, as a matter of law, maintained in strict confidence by the Patent Office. Until such time as a pending patent application matures and issues as a patent, or is published by the Patent Office pursuant to rules not here relevant, the applicant enjoys the privilege of pursuing a patent on his or her inventions in confidence.

Where pending patent application files are sought in discovery proceedings, the courts require that the moving party meet a stricter standard of relevance than would be required for other materials, in recognition of the applicant's privilege to pursue patent protection in confidence. While applying varying tests, the courts typically require that the moving party show "heightened" relevance, or make a "convincing showing of necessity," before discovery of such applications will be permitted, and require that the need for such materials outweigh the harm to the party who will be stripped of its right to prosecute its application in secrecy.

Here, the plaintiffs assert that the '159 application file is relevant to claim construction and that its production will not harm Columbia. The issue on this motion is not, however, whether plaintiffs have met the bare relevance standard required for discovery in the run-of-the-mill civil litigation matter. Indeed, if that is all they have done, this motion must be denied.

The issue, rather, is whether plaintiffs have made a convincing showing of the *necessity* of the '159 application, an application as to which Columbia would otherwise enjoy the privilege of prosecuting in secrecy. The plaintiffs have not even *tried* to meet this standard. Instead, the plaintiffs cite to *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004), a case that considered whether a *publicly* available prosecution history document could be relevant during claim construction. That case did *not* involve discovery issues at all, much less the discovery of a confidential, non-public file history. Thus, the *Microsoft* court did not consider

the traditional balancing test applied, or the heightened relevance showing demanded, in situations where a party has moved to compel production of a pending patent application file.

Here, the plaintiffs' own objective conduct completely belies any claimed need for the '159 file history. As this Court is aware from earlier proceedings, the plaintiffs have already improperly obtained large portions of the '159 file history from the Patent Office.[1] Thus, the plaintiffs already have been able to review the pending claims, office actions, responses to office actions, amendments, and other papers filed with the Patent Office. Nevertheless, the plaintiffs have been unable to identify even a single damaging admission in the '159 file history that they believe is relevant to the double-patenting analysis, and have failed to identify any representations at all from the '159 file history in their invalidity contentions.

On July 25, 2004, in response to this Court's Order dated June 23, 2004, the plaintiffs served their invalidity contentions in this matter, including 150 pages of charts and a list of more than 90 documents alleged to be prior art publications. *Nowhere* in plaintiffs' invalidity contentions is there a *single* reference to even a *single* document in the '159 prosecution history. Thus, despite their fanciful claim that the file history of the '159 application is "critically relevant" to claim construction and the double-patenting claims in this case, the plaintiffs are not, in fact, relying upon *any* part of the '159 application to support their contention that the '275 patent is invalid for obviousness-type double patenting. This objective fact speaks volumes about the plaintiffs' true interest in having ongoing access to the '159 prosecution.

---

[1] The Patent Office, which is conducting an investigation into the improper attempts to obtain the '159 file history, confirmed in a recent letter to Columbia that the '159 file history (other than the original application) is confidential, not available to the public, and was mistakenly disclosed. (Exhibit 1). Thus, documents in the file history such as communications between

While looking over Columbia's shoulder in real-time as it prosecutes an otherwise confidential patent application will certainly be a windfall to the plaintiffs – enabling them to design products that avoid the claims of a pending application, and giving them inside information about Columbia's nascent intellectual property rights so they can plot their litigation and settlement strategy on the basis of better information than they would otherwise have – the harm that would flow to Columbia would be enormous.

For these and additional reasons discussed herein, the plaintiffs' motion should be denied.

## II. COURTS ARE GENERALLY RELUCTANT TO COMPEL DISCLOSURE OF PENDING PATENT APPLICATION FILES AND WILL DO SO ONLY WHEN THE PARTY SEEKING PRODUCTION DEMONSTRATES THAT THE BENEFITS OF PRODUCTION OUTWEIGH ANY POTENTIAL HARM

While the plaintiffs' motion cites several cases where courts have ordered disclosure, those cases are not the norm. More frequently than not, courts refuse to order production of pending patent application files.[2]

---

the Patent Office and the applicant, claim amendments, disclosures of prior art, etc. are confidential. 35 U.S.C. § 122; 37 C.F.R. § 1.14.

[2]  *See, e.g., Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, No. 3:98-CV-2996-D, 2002 U.S. Dist. LEXIS 13118, at *14-17 (N.D. Tex. July 17, 2002) (refusing to compel production of pending patent application); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 62 U.S.P.Q.2d 1794, 1796 (D. Minn. 2002) (same); *3M v. North American Sci. Assocs., Inc.*, 189 F.R.D. 406, 407 (D. Minn. 1999) (same); *Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93C5041, 1998 U.S. Dist. LEXIS 215, at *9-14 (N.D. Ill. Jan. 2, 1998) (same); *Fischer Imaging Corp. v. Lorad Corp.*, 148 F.R.D. 273, 274-75 (D. Colo. 1993) (same); *PPG Indus., Inc. v. Libbey-Owens-Ford Co.*, No. 90 C 6067, 1991 U.S. Dist. LEXIS 11368, at *3-6 (N.D. Ill. Aug. 13, 1991); *Key Tech., Inc. v. Simco/Ramic Corp.*, 137 F.R.D. 322, 324 (D. Ore. 1991) (same); *Ideal Toy Corp. v. Tyco Indus., Inc.*, 478 F. Supp. 1191, 1194-95 (D. Del. 1979) (same); *Wolowitz v. United States*, 185 U.S.P.Q. 155, 155 (Ct. Cl. 1975) (same); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1186 (D.S.C. 1974) (same); *Cleo Wrap Corp. v. Elsner Eng'g Works, Inc.*, 59 F.R.D. 386, 388 (M.D. Pa. 1972); *Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*, 45 F.R.D. 375, 379 (S.D. Tex. 1968) (same); *Great Lakes Carbon Corp. v. Continental Oil Co.*, 23 F.R.D. 33, 35 (W.D. La. 1958) (same, and stating that "the occasional necessity for directing disclosure [of pending applications] should not blind us to

Federal law recognizes the need to protect the confidentiality of pending patent applications. *See* 35 U.S.C. § 122 (providing that, with limited exceptions, "applications for patents shall be kept in confidence by the Patent and Trademark Office and no information concerning the same given without authority of the applicant or owner"). Moreover, courts have repeatedly recognized and emphasized that pending patent applications, and the materials that relate to them, are confidential and sensitive documents. *See, e.g., Microsoft Corp. v. Multi-Tech Sys., Inc.*, 62 U.S.P.Q.2d 1794, 1795-96 (D. Minn. 2002) (discussing the "sensitive" nature of pending patent applications and noting that the patentee's "interest in confidentiality is manifest"); *Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93C5041, 1998 U.S. Dist. LEXIS 215, at *9 (N.D. Ill. Jan. 2, 1998) (stating that it is "well established that materials relating to a patent application are confidential and therefore are entitled to a degree of protection against disclosure"); *Cordis Corp. v. SciMed Life Sys., Inc.*, 982 F. Supp. 1358, 1360 (D. Minn. 1997) ("It is well-settled that the secrecy of pending and abandoned United States patent applications should be preserved whenever possible."); *Central Sprinkler Co. v. Grinnell Corp.*, 897 F. Supp. 225, 227 (E.D. Pa. 1995) ("Courts agree that the secrecy of applications should be preserved whenever possible."); *Ideal Toy Corp. v. Tyco Indus., Inc.*, 478 F. Supp. 1191, 1193 (D. Del. 1979) (noting that "the absence of a statutory prohibition does not mean there is an automatic entitlement to abandoned and pending file wrappers" and discussing the "secrecy inherent in patent proceedings"); *Wolowitz v. United States*, 185 U.S.P.Q. 155, 155 (Ct. Cl. 1975) ("[A]pplications for patents are secret documents and not available to the public generally.");

---

the danger of such a measure or entice us into an unqualified sanction of a such a demand"); *De Long Corp. v. Lucas*, 138 F. Supp. 805, 809 (S.D.N.Y. 1956) (refusing to order disclosure

*Cleo Wrap Corp. v. Elsner Eng'g Works, Inc.*, 59 F.R.D. 386, 388 (M.D. Pa. 1972) (describing patent applications as "secret").

Therefore, as discussed below, pending patent applications are *not* subject to the normal discovery rules. They are, rather, treated like trade secrets or other proprietary information, and it is not sufficient for a party to simply show that discovery of such materials might lead to the discovery of admissible evidence. Instead, a party seeking to compel production of a pending patent application file must demonstrate a real need for that file which outweighs any potential harm caused by the forced disclosure of the patent application file.

### A.   Courts Mandate A Showing Of "Heightened" Relevancy

The normal lenient standards governing the discovery of relevant materials do not apply to pending patent application files. Instead, courts have consistently required a "heightened" showing of relevance that demonstrates the movant's need for the materials sought.[3] *See, e.g., Fischer Imaging Corp. v. Lorad Corp.*, 148 F.R.D. 273, 274 (D. Colo. 1993) ("[T]he courts have

---

of pending patent application); *Zenith Radio Corp. v. Dictograph Prods. Co.*, 6 F.R.D. 597, 598 (D. Del. 1947) (same); *Froedge v. Walden*, 624 S.W.2d 833, 833-34 (Ky. 1981) (same).

[3]   The cases cited in the plaintiffs' motion implicitly acknowledge this heightened standard. *Tristana*, *Cordis*, and *Central Sprinkler* each mention that a showing of "direct relevancy" tips the scale in favor of compelled production. *See Tristana Tech., Inc. v. Neoteric Cosmetics, Inc.*, 35 F. Supp. 2d 370, 372 (D. Del. 1998); *Cordis*, 982 F. Supp. at 1361; *Central Sprinkler*, 897 F. Supp. at 227. Even *Avery Denison Corp v. UCB S.A.*, No. 95C6351, 1996 U.S. Dist. LEXIS 16070, at *2-3 (N.D. Ill. Oct. 24, 1996), directs courts to assess the relative strengths of various factors, including the relevancy of the documents sought, in deciding whether to mandate disclosure. Additionally, all four cases acknowledge that courts should use a balancing test to determine whether to require disclosure of pending application files. *See Tristana*, 35 F. Supp. 2d at 372; *Cordis*, 982 F. Supp. at 1361; *Avery Denison*, 1996 U.S. Dist. LEXIS 16070, at *2; *Central Sprinkler*, 897 F. Supp. at 227. This necessarily means that the movant must make a heightened showing of relevancy. Otherwise, given the patentee's recognized interest in confidentiality, there would be nothing to balance.

uniformly recognized that a heightened relevancy standard must be applied to patent applications and materials related thereto."); *Vibrosaun USA, Inc. v. Saunamassage Int'l, Inc.*, No. 87-0656-CV-W-6, 1988 U.S. Dist. LEXIS 10574, at *8 (W.D. Mo. Sept. 19, 1988) ("In any event, the party seeking disclosure must make a *convincing showing of necessity* before being permitted access to the requested patent application files.") (emphasis added); *Wolowitz*, 185 U.S.P.Q. at 156 ("While in some rare instances it is necessary to require the disclosure of a pending application, the practice should be confined to instances where the information is *absolutely essential* for a party to a lawsuit to properly prepare for trial.") (emphasis added); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1186 (D.S.C. 1974) ("The disclosure of abandoned or pending patent applications may be compelled under a protective order only where there is a *clear showing of the relevancy* of the applications to issues involved in the present litigation.") (emphasis added).[4]

It is not sufficient for the movant to speculate as to the information the pending application files "might" contain or to make general allegations about why a pending application is relevant. *See, e.g., Microsoft*, 62 U.S.P.Q.2d at 1796 (affirming the magistrate's finding that the heightened relevancy standard had not been satisfied merely because the pending application was related to the patent-in-suit and the movant had alleged that the application "may" be important to claim construction or doctrine of equivalents issues); *Fischer*, 148 F.R.D. at 274-75 (refusing to order disclosure of pending patent application files because the movant "has simply presented generalized arguments that the patent applications contain information which may be

---

[4]   *See also, e.g., Microsoft*, 62 U.S.P.Q.2d 1794 (discussing the need for a showing of heightened relevancy); *3M*, 189 F.R.D. at 407 (same); *Froedge*, 624 S.W.2d at 833 (holding

probative on the questions of infringement and validity. No specific showing of direct relevance or particularized need has been made."); *Ideal Toy*, 478 F. Supp. at 1195 (refusing to order disclosure where the movant argued that the pending application files might have relevant prior art or admissions that would pertain to the patent-in-suit because the potential for admissions "is not sufficient to pierce the secrecy inherent in patent proceedings. This Court long ago indicated that the probative value of such admissions generally does not outweigh the intrusion into matters generally kept secret.").[5]

Instead, the movant must affirmatively provide a specific explanation of why the requested application is directly relevant to the arguments and issues raised by the parties in the litigation. *See, e.g., Aspex Eyewear*, 2002 U.S. Dist. LEXIS 13118, at *15 (requiring the movant to "point to the specific relevance that the pending application might have for its infringement suit"); *Fischer*, 148 F.R.D. at 274-75; *Vibrosaun*, 1988 U.S. Dist. LEXIS 10574, at *9; *Duplan*, 397 F. Supp. at 1186; *Cleo Wrap*, 59 F.R.D. at 388 (stating that a patent application "may be kept secret unless shown to be *materially connected* with this law suit") (emphasis added); *Froedge*, 624 S.W.2d at 833 (Ky. 1981) (holding that disclosure of patent applications "may be

---

that disclosure of patent applications "may be compelled only when the applications have a *direct bearing* on the issues being litigated") (emphasis added).

[5] *See also, e.g., Aspex Eyewear*, 2002 U.S. Dist. LEXIS 13118, at *14-17 (refusing to order production of pending patent application based on the movant's argument that the pending patent file was "likely relevant to the issue of infringement"); *Key Tech.*, 137 F.R.D. at 324 (refusing to order disclosure where the movant had suggested that the requested files might contain pertinent admissions); *Vibrosaun*, 1988 U.S. Dist. LEXIS 10574, at *9 (refusing to order disclosure because the defendants, who had argued that the requested pending patent application was relevant to patent invalidity defenses because it might contain prior art patents and documents, "have failed to specify compelling need for the information contained in the file wrapper sufficient to outweigh plaintiff's interest in maintaining secrecy of the information").

compelled only when the applications have a *direct bearing* on the issues being litigated") (emphasis added).

    **B.    Courts Will Not Order Disclosure Of A Pending Patent Application File Unless The Movant's Need For The File Outweighs The Harm Caused By Its Disclosure**

Once a party seeking disclosure of a pending patent application file has made a strong showing of their need for the materials, courts apply a balancing test that weighs the benefits of forced disclosure against the harm caused by such a practice. *See, e.g., Microsoft*, 62 U.S.P.Q.2d at 1795. The court in *Ideal Toy* laid out this balancing test:

> [T]he question of whether disclosure should be ordered requires a balancing of competing policy and litigation interests. Disclosure of file wrappers of pending and abandoned applications should be ordered when the necessity for disclosure outweighs the desirability of maintaining the secrecy of data in the file wrapper . . . . Conversely, if the need to examine the file wrapper is less than the interest served in protecting secrecy, or if confidentiality could not be effectively protected by other means, disclosure should not be ordered.

478 F. Supp. at 1193. Various factors can be considered in weighing harm against benefit, including the availability of the information absent compelled disclosure and the availability of means (such as protective orders) to reduce the harm caused by disclosure. *See, e.g., Microsoft*, 62 U.S.P.Q.2d at 1796; *Zenith Elecs.*, 1998 U.S. Dist. LEXIS 215, at *10; *Fischer*, 148 F.R.D. at 274; *Vibrosaun*, 1988 U.S. Dist. LEXIS 10574, at *8.

    **C.    *Microsoft v. Multi-Tech* Does Not Address The Confidentiality Or Production Of Pending Patent Application Files**

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004), which is cited by the plaintiffs, does not alter the balancing test used by courts deciding motions to compel production of pending patent applications. In *Microsoft*, the patent-in-suit had issued while a

related patent application was still pending. *See id.* at 1344, 1350. The patentee then filed certain documents during the continued prosecution of the pending related application. *See id.* Those documents became publicly available when the pending related patent application also issued as a patent. The parties disputed whether the publicly-available documents from the file wrapper of the second patent were relevant to the construction of common claim terms found in the first patent. *See id.* at 1350. Notably, the Federal Circuit was only required to decide the question of bare relevance within the context of a publicly-available document. *See id.* The court was *not* faced with the question of whether discovery of a confidential pending application file should be compelled. Thus, the Federal Circuit's decision in *Microsoft* does not alter the decades-old balancing test that courts apply to determine whether to compel disclosure of a pending application file.[6]

### III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THE BENEFIT OF COMPELLED PRODUCTION OF THE '159 APPLICATION FILES OUTWEIGHS THE HARM CAUSED BY COMPELLED DISCLOSURE

In this case, the plaintiffs have failed to make the required showing of heightened relevance. The plaintiffs rely upon a general allegation that there is likely to be information relevant to claim construction and double patenting in the '159 application file because the '159 application shares many common claim terms with the '275 patent.[7] *See* Plaintiffs' Motion at 3-

---

[6] The parties in *Microsoft* had disputed the discoverability of pending applications in the initial stages of the case. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 62 U.S.P.Q.2d 1794 (D. Minn. 2002). The trial court's decision *refusing to compel production* of a pending application file was not reviewed by the Federal Circuit.

[7] Plaintiffs also suggest that the '159 file history is relevant to the pending reexamination and reissue proceedings for the '275 patent. *See* Plaintiffs' Motion at 2. The plaintiffs provide no explanation as to why that fact, even if true, entitles them to discovery of the '159 application within the context of this litigation.

4. The existence of common claim terms, however, is likely to occur in all related patent applications. Nevertheless, courts have been unpersuaded that this minimal showing justifies forced production of a pending patent application file. *See, e.g., Microsoft*, 62 U.S.P.Q.2d at 1796 (affirming the magistrate's finding that the heightened relevancy standard had not been satisfied merely because the pending application was related to the patent-in-suit and the movant had alleged that the application "may" be important to claim construction or doctrine of equivalents issues).

Even with many documents from the '159 file history in hand, the best that the plaintiffs can do is to say that certain statements "are likely to be" relevant to this Court's analysis of the '275 patent. The plaintiffs are unable to point to any damaging "admissions" in the '159 application documents in their possession. *Cf. Cordis*, 982 F. Supp. at 1361-62 (granting motion to compel production of pending patent application in part because the movant was able to establish significant admissions in other publicly-available file wrappers for related patents). The plaintiffs have simply not made the requisite showing to compel production.

In addition to failing to establish the requisite level of heightened relevance, the plaintiffs have failed to demonstrate that the benefits of forced disclosure will outweigh the obvious harm caused by such disclosure. Whenever a patentee is compelled to disclose a confidential patent application, it necessarily suffers some harm by being deprived of that confidentiality. The particular injury to Columbia in this case exists *not* because the plaintiffs and Columbia are

competitors in the marketplace (they obviously are not), but because of the posture of this litigation.[8]

The forced disclosure of Columbia's pending patent application will unfairly disadvantage Columbia in charting its litigation and settlement strategy with each of the multiple plaintiffs in this action. Normally, even the bare fact that the patentee *has* pending patent applications is jealously guarded from disclosure to an adverse party in litigation, even where (indeed, especially where) the adverse party – like the plaintiffs here – are current or former licensees. By preserving the confidentiality of such information – as each one of these plaintiffs assuredly does in every lawsuit in which it is the patent plaintiff – the patent owner maximizes its litigation and settlement options. That is a prerogative that Columbia enjoys and should not be forced to give up simply because the plaintiffs here have chosen to sue Columbia in an effort to invalidate the '275 patent.

Nor would the ill effects of such disclosure be at all ameliorated by the existence of a protective order, as plaintiffs claim. The very lawyers to whom this information would be disclosed – plaintiffs' litigation counsel – are *precisely* the individuals from whom this

---

[8] In the ordinary situation, the main consideration that courts contemplate when evaluating the harm suffered from forced disclosure is that a direct competitor will learn the patent applicant's confidential information or trade secrets and then use that proprietary information to its advantage in the marketplace. Typically, the implementation of a protective order that limits the exposure of the confidential information to a party's attorneys can reduce the risk of a patentee suffering this type of harm because the attorneys are usually capable of doing their job without revealing the disclosed secrets to their clients.

Here, a protective order that limits disclosure of the '159 application to the plaintiffs' counsel will not insulate Columbia from the harm of compelled disclosure. Because the information sought will affect the parties' settlement postures, the plaintiffs' counsel cannot and should not be put in a position of being unable to discuss appropriate litigation strategy with their clients.

information must be kept to preserve Columbia's litigation and settlement position in this case. Columbia is not concerned that its confidential information will be misused by scientists; rather, Columbia wants to ensure that the individuals advising the plaintiffs in this litigation, and in any settlement discussions, do not have access to this information at all, let alone on the ongoing, real-time basis that plaintiffs seek.

### IV.    CONCLUSION

Given the public interest in protecting the secrecy of pending patent application files, the small volume of information that Columbia seeks to protect, the lack of relevance of that information to the issues of this litigation, and the plaintiffs' own financial motivations in seeking the '159 application, Plaintiffs' Motion for Limited Discovery Relevant to the Issue of Non-Statutory Double Patenting should be denied.

Dated: July 30, 2004

Respectfully submitted,

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK

By its attorneys,

  /s/ David I. Gindler
David I. Gindler
Irell & Manella LLP

  /s/ Wayne M. Barsky
Wayne M. Barsky
Gibson, Dunn & Crutcher LLP

60112761v1