UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: COLUMBIA UNIVERSITY
PATENT LITIGATION

04-MDL-1592
This document relates to all actions

**JOHNSON & JOHNSON'S OPPOSITION TO COLUMBIA
UNIVERSITY'S EMERGENCY MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION**

Pursuant to the Court's Order dated September 10, 2004, plaintiff Johnson & Johnson ("J&J") respectfully submits this memorandum of law in opposition to the motion by Columbia University ("Columbia") to dismiss J&J's complaint for lack of subject matter jurisdiction.

**Preliminary Statement**

Columbia's Covenant Not To Sue ("Covenant") eliminates some, but not all, of the issues between the parties.  Specifically, J&J agrees with Columbia that, at least insofar as J&J is concerned, there is no longer a live case or controversy concerning the validity of the '275 patent, and there is no need for further proceedings to determine whether the existing claims of that patent are invalid due to double patenting.  Moreover, based upon Columbia's representations to this Court and upon subsequent correspondence between the parties, there is no case or controversy with respect to Columbia's now abandoned claim that J&J owes royalties to Columbia for activities that occurred solely in the United States based upon the existence of foreign patents.

Despite the removal of these issues, Columbia's motion to dismiss should be denied, for two reasons. First, Columbia has informed J&J that, notwithstanding the Covenant, J&J may owe Columbia a "minimum royalty" of $500,000 per year under its 1989 license agreement concerning Erythropoietin. This agreement contains a unique term that requires J&J, irrespective of the level of its sales, to make an annual, half-million dollar "minimum royalty" payment to Columbia. Pursuant to the Court's September 10 Order, J&J asked Columbia last week to confirm that its promise not to seek any royalties on account of the existing claims of the '275 patent encompassed this "minimum royalty." To J&J's surprise, Columbia balked at this suggestion; it has informed J&J that it is still considering the issue and cannot provide the assurance J&J seeks at this time.

The fact that Columbia has not relinquished its claim for a $500,000 annual "minimum royalty" means that there is still a live controversy over the enforceability of the '275 patent. Columbia has represented that it does not seek to collect any royalties based upon the existing claims of the '275 patent, or upon applications for other patents that are pending before the United States Patent and Trademark Office ("PTO"). Accordingly, Columbia's claim for a "minimum royalty" must be based, at least in part, on the fact that the '275 patent may one day emerge from PTO reissue proceedings with new and different claims. If Columbia contends that J&J must pay half a million dollars each year while these administrative proceedings drag on, then J&J is entitled to have its claims concerning the enforceability of the '275 patent – namely its defenses of prosecution laches, inequitable conduct and patent misuse – heard at this time.

Second, apart the enforceability of the '275 patent, J&J has claims against Columbia for attorneys' fees that survive any dismissal of J&J's claims for patent invalidity and/or unenforceability.

1107130v1

## DISCUSSION

Columbia's Covenant, filed on September 1, 2004, creates an irrevocable, enforceable promise not to sue J&J for infringement, and not to seek contract royalties, on the basis of the '275 patent as it currently reads with respect to any product covered by the Covenant. J&J has made and sold only one product, Erythropoietin ("EPO"), that is implicated by the '275 patent. J&J and Columbia are parties to a 1989 license agreement concerning EPO. In a letter to J&J dated September 17, 2004, Columbia confirmed that:

> Under the Covenant, Johnson & Johnson has no liability for patent infringement with respect to EPO, or for royalties under the 1989 license agreement with respect to EPO, unless a reissued version of the '275 patent contains claims that are not the same as or substantially identical to claims of the '275 patent as it currently reads.

*See* Ex. A to accompanying Declaration of Steven A. Zalesin ("Zalesin Decl."). J&J agrees with Columbia that the Covenant, coupled with this representation, eliminates any present case or controversy over the *validity* of the claims of the '275 patent as they currently read.

Moreover, in view of Columbia's recent representations to this Court (*see* Zalesin Decl. Ex. B) and to J&J (*see* Zalesin Decl. Exs. A and C), there is no longer a live case or controversy with respect to J&J's Fifth Claim for Relief, which sought a declaration that J&J owes no royalties to Columbia based upon U.S. activities that occurred after the expiration date of the original Axel patents. Although Columbia had previously asserted that J&J owed such royalties on account of later expiring *foreign* patents, it has now abandoned that position and there is no need for further proceedings on the issue. *See* Zalesin Decl. Exs. A-C.

Unfortunately, not all issues have been resolved. In particular, there remains a live controversy, and the Court should deny Columbia's motion insofar as it seeks to dismiss, (1) J&J's request for a declaration that it presently owes no royalties, including no "minimum

3

1107130v1

royalty," under its license agreement with Columbia; and (2) J&J's request for an award of attorneys' fees under 35 U.S.C. § 285.

## I.    Columbia's Refusal To Relinquish Its Claim For A Minimum Royalty

On September 10, 2004, the Court directed the parties, *inter alia*, to "confer to . . . clarify issues concerning the scope of the Covenant and the status of the license agreements Columbia entered into with the respective plaintiffs." Pursuant to this Order, J&J sought confirmation that Columbia's position that "Johnson and Johnson has no liability for . . . royalties under the 1989 license agreement with respect to EPO" encompassed the "minimum royalty" provided for in that agreement. Royalties are typically calculated by multiplying J&J's sales of royalty-bearing EPO by a percentage formula specified in the agreement. However, the contract also contains a provision that guarantees Columbia a "minimum royalty" regardless of the magnitude of J&J's sales. Section 4(e) of the agreement reads as follows:

> During each calendar year following the effective date of this Agreement, in which this Agreement is in effect, Licensee shall pay Columbia a minimum royalty of $500,000. Licensee may apply the amount of any royalties paid under Sections 4(b) and 4(c) in any such year against the minimum royalty due Columbia for such year.

J&J wishes to avoid any confusion over whether the Covenant means that J&J truly owes *no* royalties, or whether Columbia somehow contends that, notwithstanding the seemingly clear language of the Covenant and subsequent representations by Columbia, J&J must pay the annual, $500,000 "minimum royalty" referred to in the contract.[1]

---

[1]    The 1989 license agreement between J&J and Columbia contains numerous confidential terms that have not been disclosed to the other plaintiffs in this action, who are J&J's competitors. J&J believes that the description provided herein of the relevant terms of the agreement is correct, and will not be contested by Columbia. J&J is prepared to provide the Court with a copy of the agreement, should the Court so desire, for *in camera* review, or to file the agreement with the clerk of court pursuant to an appropriate sealing order.

4

To date, Columbia has refused to provide the assurance that J&J seeks. Rather, counsel for Columbia has informed undersigned counsel that Columbia has not yet formulated a position on this issue, and that Columbia must undertake further investigation and analysis before responding to J&J's inquiry. *See* Zalesin Decl. Ex. C.

Columbia may yet acknowledge that the Covenant applies to the "minimum royalty" as well as the basic percentage royalty provided by the agreement. But if Columbia does not do so promptly, its motion to dismiss should be denied. Columbia has already sued for a determination that J&J materially breached its license agreement by failing to pay all amounts "due and owing" under the agreement. *See* Zalesin Decl. Ex. D at ¶ 16. At the present time, J&J does not know whether Columbia contends that, by refusing the pay the $500,000 annual minimum royalty referred to in Section 4(e), J&J is in breach of the agreement or at risk of termination. Columbia cannot avoid an adjudication by this Court without relinquishing its claim (if any) for annual, minimum royalties.

The reason for this is straightforward. Columbia's motion to dismiss is grounded upon the notion that there is no justiciable case or controversy because (1) Columbia has promised not to enforce the claims of the '275 patent as they currently read; and (2) while there are reissue proceedings pending before the PTO, their outcome is speculative and may never lead to claims for damages or royalties. Therefore, the argument goes, there is no presently asserted liability or payment obligation that can support an exercise of subject matter jurisdiction.

By refusing to relinquish its claim for an annual, "minimum royalty," however, Columbia is leveraging its ongoing effort to have the '275 patent reissued in order to force J&J to make *current* royalty payments. This immediately puts in issue any claims or defenses by J&J – including those for prosecution laches and inequitable conduct – that, if successful, would

5

prevent Columbia from enforcing new patent claims that may emerge from the reissue proceeding. Moreover, as alleged in J&J's declaratory judgment complaint, Columbia has already engaged in a pattern of activity designed to extend the life of its patent monopoly beyond its lawful term, and in doing so has committed patent misuse. *See* Zalesin Decl. Ex. E at ¶¶ 78-80 (Sixth Claim for Relief). Any effort by Columbia to extract a "minimum royalty" during the pendency of the reissue application would fall within this claim for relief, and would create a live controversy over whether Columbia's actions constitute patent misuse.[2]

In short, if Columbia is going to insist that J&J pay a $500,000 "minimum royalty" each year the reissue application is pending, then J&J is entitled to an adjudication *now* that no such royalties are due. Unless Columbia expressly waives any claim to a "minimum royalty," its motion to dismiss for lack of subject matter jurisdiction should be denied.[3]

## II.    Attorneys' Fees

Regardless of whether the Court grants or denies Columbia's motion with respect to J&J's claims concerning the validity and enforceability of the '275 patent, it should retain jurisdiction over J&J's claim for attorneys' fees.

---

[2]   This case is distinct from this Court's recent decision in *SVG Lithography Systems, Inc. v. Ultratech Stepper, Inc.*, 2004 WL 1948742 (D. Mass. March 6, 2004). In *SVG*, and in the Federal Circuit cases cited therein, the patent holder disavowed any right to recover damages (or royalties) based upon the infringer's (or licensee's) past or current activities. Here, Columbia has refused to say whether J&J *currently* owes a "minimum royalty" under the parties' 1989 license agreement.

[3]   In recent correspondence, Columbia has indicated that it will rely on *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376 (Fed. Cir. 2004), to argue that the fact that J&J's license remains in force means that there can be no justiciable controversy. This argument begs the question whether Columbia contends that the license agreement has been *breached*. J&J has not paid the $500,000 annual "minimum royalty" referred to in the agreement because J&J does not believe any such royalty is due. Columbia has yet to agree with J&J's interpretation. If Columbia asserts that J&J's nonpayment is a breach of the agreement, then there is a justiciable controversy over that issue, regardless of whether the agreement has been terminated or not. *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 875 (Fed. Cir. 1983) ("a patent license need not be terminated before a patent licensee may bring a declaratory judgment action").

"[I]t is well established that a district court may consider collateral issues, such as motions for costs and attorneys fees, after an action is no longer pending." *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 131 F.R.D. 464, 467 (E.D. Pa. 1990) (citing *Cooter & Gell v. Harmarz Corp.*, 496 U.S. 384, 395 (1990)). Numerous courts have retained jurisdiction over a claim for fees under § 285 even after a covenant not to sue or voluntary dismissal has removed the court's jurisdiction over claims relating to infringement or invalidity. *See e.g., Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 131 F.R.D. 464, 467 (E.D. Pa. 1990 (retaining jurisdiction over claims to attorneys fees under Rule 11 and § 285 where plaintiffs voluntarily dismissed patent infringement claims); *Bioxy, Inc. v. Birko Corp.*, 935 F. Supp. 737, 744 (E.D.N.C. 1996) (considering defendant's claim for attorneys' fees under § 285 following plaintiff's voluntary dismissal of infringement claims); *W.L. Gore & Assoc., Inc. v. Oak Materials Group, Inc.*, 424 F. Supp. 700, 702 (D. Del. 1976) (retaining jurisdiction over claim for attorneys' fees under § 285 following plaintiff's voluntary dismissal of claims); *Techimark, Inc. v. Crellin, Inc.*, 14 F. Supp. 2d 762, 767 (M.D.N.C. 1998) (retaining jurisdiction over claim for attorneys' fees under § 285 following dismissal of invalidity and infringement claims as moot because of patent holder's dedication of patent to public).

In *Ultratech*, 2004 WL 1948742 at * 5, this Court expressed concern that Federal Circuit law precluded a trial court from retaining jurisdiction over a claim for fees under § 285 when the court does not have jurisdiction over the underlying cause of action, citing to the Federal Circuit's decision in *Hudson v. Principi,* 260 F.3d 1357, 1363 (Fed. Cir. 2001). However, the Federal Circuit's decision in *Hudson* was limited to the context of a claim for fees under the Equal Access to Justice Act and therefore does not address a claim for fees under § 285. *Id.* at 1363. Indeed, the Federal Circuit has confirmed that, in the context of a claim for

1107130v1

fees in a patent action pursuant to § 285, the district court retains jurisdiction over the fee claim even when jurisdiction over the underlying claims is absent. *See H.R. Technologies, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1386 (Fed. Cir. 2002) (indicating that the District Court should not dismiss a claim for fees under § 285 when it has determined that it does not have the power to address the substantive claims at issue because the defendant should "have an opportunity to have its section 285 counterclaim addressed by the district court"); *see also Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467 (Fed. Cir. 1985) (determining claim for attorneys' fees by declaratory judgment plaintiff after underlying claims had been settled and dismissed).

   Columbia does not contend that this Court lacks subject matter jurisdiction over claims for attorneys' fees, but rather asserts that J&J and the other plaintiffs cannot be deemed the "prevailing party" under § 285 because they have not "achieved any substantial relief on the merits."[4] Br. at 8. Nothing could be further from the truth. By virtue of the Covenant, J&J has achieved a binding determination that it has no royalty obligation based upon the existing claims of the '275 patent. Whether this outcome, which is worth tens of millions of dollars to J&J, was the result of a contested decision by this Court or a voluntary tactical withdrawal by Columbia is beside the point. As noted above, voluntary retreat by a patentee cannot defeat a claim for attorneys' fees under § 285. *See*, *e.g., Techimark,* 14 F. Supp. 2d at 767 (alleged infringers deemed the "prevailing party" within the meaning of § 285 where Court dismissed the patent holders' claims for infringement following patentees' dedication of patent to public); *W.L. Gore*, 424 F. Supp. at 702 (assuming defendant was prevailing party and considering defendant's claim

---

[4] Contrary to Columbia's misstatement that only certain plaintiffs (not including J&J) have sought attorneys' fees (Br. at 8), J&J's complaint in the Southern District of New York explicitly requests a declaration that this is an exceptional case and demands an award of reasonable attorneys' fees, costs and expenses under § 285. *See* Zalesin Decl. Ex. E at page 20.

for fees under § 285 where plaintiff had formally disclaimed all claims of the asserted patent); *Bioxy*, 935 F. Supp. at 744-745 (considering defendants' claim for attorney's fees where defendant had consented to plaintiff's motion to dismiss).

J&J has prevailed in this action and Columbia's Covenant cannot defeat J&J's entitlement to reasonable attorneys' fees and costs. Columbia's motion to dismiss all claims for attorneys' fees under § 285 should be denied.

## CONCLUSION

For the reasons stated, Columbia's Emergency Motion To Dismiss should be denied.

September 22, 2004

Respectfully submitted,

PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
212-336-2000


By: /s/  Steven A. Zalesin
     Steven A. Zalesin
     Melissa Mandrgoc

Attorneys for Plaintiff Johnson & Johnson

Of counsel:

  Harman Avery Grossman, Esq.
  Johnson & Johnson

1107130v1