UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY PATENT LITIGATION | MDL No. 1592 (MLW) |

**PLAINTIFFS WYETH AND GENETICS INSTITUTE'S OPPOSITION TO COLUMBIA UNIVERSITY'S EMERGENCY MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Dated:  September 22, 2004

Leora Ben-Ami
Patricia A. Carson
Kaye Scholer LLP
425 Park Avenue
New York, NY  10024
(212) 836-8000
(212) 836-8689
Attorneys for Wyeth and Genetics Institute

3750194_1.DOC

I.      **INTRODUCTION**

Having failed in its bid to halt the progress of Plaintiffs' combined actions in this Court in favor of less rigorous proceedings in the United States Patent and Trademark Office, and unhappy with the prospect of having this Court rule on the validity of U.S. Patent No. 6,455,275 ("the '275 patent"), Columbia has embarked upon a new scheme. On September 1, 2004, Columbia University ("Columbia") filed a vague, craftily worded covenant, that purports to deprive this Court of jurisdiction over Wyeth and Genetics Insitute's ("Wyeth" or "Plaintiffs") complaint. Columbia's covenant ("the Covenant") falls short of its mark for a number of reasons.

Columbia has now "clarified" the Covenant to expand its scope. Nonetheless, as clarified, the Covenant leaves products and processes introduced by Wyeth after September 1, 2004, exposed to the threat of a patent infringement suit. And contrary to Columbia's exhortations, the threat is not merely theoretical. Wyeth is in the business of creating and marketing life-saving and life-enhancing drugs. With a pipeline of such potential drugs, Wyeth is left with the continuous looming threat of an infringement suit because of Columbia's arbitrary cut-off date. That looming threat, establishes ample basis for this Court to retain jurisdiction over Wyeth's claims of patent invalidity and unenforceability.

In addition, the requests for a declaration of patent invalidity and unenforceability constitute only a fraction of Wyeth's claims for relief. The complaint presents a number of claims that are based on Columbia's egregious conduct in improperly terminating the license agreement between Wyeth and Columbia ("the License Agreement") and seeking additional payments pursuant to that agreement despite lacking a valid patent to license. The Covenant does not eliminate the basis of those claims, or this Court's jurisdiction over those claims. Since August 20, 2003, the date Wyeth's complaint was filed, Columbia's conduct under the license

3750194_1.DOC

has only become more outrageous.  Columbia's latest position is that the license held by Wyeth is terminated based on failure to pay annual fees.  Before that, it deemed the license terminated based on failure to pay royalties under the '275 patent.  Prior to that, *inter alia*, it threatened to terminate the license based on failure to pay royalties for pending patent applications.  Columbia's threats of termination have been ever-changing but Columbia's demand for money has been constant.  Ironically, while engaging in these extortion tactics, Columbia has owed Wyeth money due to an overpayment of royalties.  Columbia's relentless efforts to extort money from Wyeth, in the form of royalties, fees or both, provide Wyeth with reasonable apprehension that it will be sued.

Columbia has exploited the legal system and this Court by engaging in illegitimate and costly efforts to enforce an invalid and unenforceable patent and pursue its unlawful patent licensing strategy.  Regardless of the effect of the Covenant on the Court's ability to retain subject matter jurisdiction over claims related to royalty obligations or the invalidity of the '275 patent, this Court retains jurisdiction to determine Wyeth's claim for fees and costs arising from Columbia's abuses.

## II.  STATEMENT OF FACTS

On September 1, 2004, at approximately three o'clock in the afternoon, counsel for Columbia informed Plaintiffs via e-mail that Columbia intended to file the Covenant with respect to the '275 patent. (Ex. 1, Covenant; Ex. 2, e-mail.)[1]  In his email, counsel for Columbia requested that Plaintiffs agree to dismiss their actions and inform Columbia of their decisions by one o'clock in the afternoon the very next day.

On September 2, 2004, Defendant filed its Emergency Motion to Dismiss.  The Court scheduled a telephonic hearing which took place on September 9, 2004.  During the hearing,

---

[1] The exhibits referenced herein are attached as Exhibits 1-17 to the Declaration of Patricia Carson filed herewith.

3750194_1.DOC

3

counsel for Columbia stated that the Covenant "does not cover the reissue except for any claims in the reissue which are the same as or substantially identical to the claims that are in the '275 patent today." (Ex. 3, Transcript at 6.) Columbia's counsel also stated that the termination of the licenses for failing to pay royalties under the '275 patent was withdrawn. Subsequent to the hearing, on September 13, 2004, Columbia informed Plaintiffs that their licenses were in fact terminated however, because of an alleged failure to pay all annual fees. (Ex. 4, Letters from Columbia.) Columbia has thus extracted money from one or more companies in this litigation, as well as other companies in the industry, relying on license agreements that have been terminated, reinstated and then in certain cases, including Wyeth's, terminated again.

Also during the hearing, the Court required the parties to confer regarding the Covenant and those issues that needed clarification. Pursuant to this order, and after the Plaintiffs corresponded with Columbia's counsel regarding specific issues requiring clarification, Columbia announced by letter dated September 17, 2004, that DNA constructs, cotransformed cells and processes created or practiced for the first time after September 1, 2004, were specifically excluded from the scope of the Covenant, unless the protein encoded by the construct or host cell was on sale on or before September 1, 2004. (Ex. 5.) Columbia further reiterated that the Covenant would not cover claims in the currently pending '159 application - an application that has now been amended to seek claims substantially similar to the claims of the '275 patent. (Ex. 5).

III. ARGUMENT

    A.     **BECAUSE PLAINTIFFS HAVE AN ACTUAL CASE OR CONTROVERSY AGAINST COLUMBIA, THIS COURT HAS SUBJECT MATTER JURISDICTION AND DEFENDANT'S MOTION SHOULD BE DENIED**

The Declaratory Judgment act requires that an "actual controversy" exist between the parties in order for a federal court to retain jurisdiction. 28 U.S.C. § 2201. In the context of a

3750194_1.DOC

request for declaratory relief, an actual controversy exists when (1) the plaintiff has a reasonable apprehension that it will face an infringement suit, and (2) there is present activity that could constitute infringement or concretes steps have been taken with the intent to conduct such activity.  *See, e.g.*, *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737 (Fed. Cir. 1988).  A court determines each of these prongs on a case-by-case basis, considering the totality of the circumstances presented in each case.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937); *Arrowhead*, 846 F.2d at 736; *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986).  Because an actual controversy exists between Wyeth and Columbia, this Court has subject matter jurisdiction and the motion to dismiss must accordingly be denied.

        **B.**        **DESPITE COLUMBIA'S COVENANT, THE THREAT OF AN INFRINGEMENT SUIT REMAINS**

Columbia contends that its September 1, 2004 Covenant Not to Sue, now "clarified" through representations by Columbia's counsel, eliminates any threat that it will sue Wyeth for infringement of its '275 patent.  It argues that its recent action therefore moots any actual controversy Wyeth had relied on to provide subject matter jurisdiction for its declaratory judgment action.

Columbia, however, cannot so easily evade the jurisdiction of this Court.  Since the Covenant as filed is vague, Plaintiffs wrote to Columbia's counsel (David Gindler) on September 15, 2004 raising specific questions. (Ex. 17, "Plaintiffs' Request").  Counsel's response may have expanded the Covenant's scope to include certain products and processes of concern to Plaintiffs, but there still exists a huge gap, leaving a threat of infringement that continues to hang over Wyeth.  (Ex. 5, Gindlers' September 17, 2004 letter.)

3750194_1.DOC

That "gap" involves pipeline products. Wyeth's livelihood as a research-focused pharmaceutical manufacturer depends on its ability to continually investigate new and promising compounds, starting from the very earliest stages in drug research. On almost any day of the year, Wyeth scientists are working on projects to characterize and evaluate potential protein and other drug products. Some of these projects exist only on paper, as proposals, and some at preliminary stages, at which the products are produced using laboratory technology appropriate for small scale production or initial evaluation. Certain of these projects require the supply of greater amounts of protein during the pre-exploratory and pre-development stages of research to enable *in vivo* evaluation of the candidate protein's biotherapeutic potential. The material requirements for the continued research on biotherapeutics adds to the cost of research and delays the bringing of a potential therapeutic into the clinic. In 2003 alone, Wyeth invested nearly 2.1 billion dollars in research and development. (Ex. 12, 2003 Wyeth Annual Report).

Notably, Columbia clarified that its new Covenant protects Wyeth's activities relating to its manufacture of any particular protein product, including use of host cells, vectors, and processes within the scope of the '275 patent claims to make such a product ("covered products"), only if these activities meet certain conditions: either (a) the protein encoded by the vector (or made in the host cell) was on sale on or before September 1, 2004, or (b) Wyeth produced, used or sold such products before that date. (Ex. 5, Columbia's Reply at 4(a) to 4(c).) Significantly, the Covenant fails to protect Wyeth from any "infringing" activity relating to a particular protein (not sold as of September 1, 2004) if Wyeth first engages in such activity only after September 1, 2004. (Ex. 5, Columbia's Reply at 4(a) to 4(c).) As such, promising protein drugs that Wyeth has had in development for years but had not sold prior to September 1, 2004,

are under a cloud of infringement from Columbia's patent. In other words, Columbia has retained the right to sue on Wyeth's products when they become more valuable.[2]

This infringement threat, under current law, establishes more than a sufficient basis for subject matter jurisdiction under the Declaratory Judgment Act. An actual controversy exists because Wyeth has a reasonable apprehension that it will face an infringement suit for such past and current activities. *Jervis B. Webb Co., v. Southern Systems, Inc.*, 742 F.2d 1388, 1398-99 (Fed. Cir. 1984). An action for declaratory relief no longer requires a plaintiff to actually be engaged in infringing conduct in order to meet the requirement for actual controversy. A plaintiff may demonstrate subject matter jurisdiction merely by showing that it has made meaningful preparation for or taken concrete steps toward conducting potentially infringing activity. *Wembley, Inc., v. Superba Cravats, Inc.*, 315 F.2d 87, 89 (2d Cir. 1963); *Jervis B. Webb Co.*, 742 F.2d at 1398-99. With the arbitrary cut-off date imposed by the Covenant, a number of Wyeth's pipeline products that have been under development for years face an imminent threat of infringement.

### C. ADJUDICATION OF WYETH'S DEFENSES OF PROSECUTION LACHES AND INEQUITABLE CONDUCT WILL PUT A STOP TO COLUMBIA'S UNJUSTIFIED PATENT TERM EXTENSION

By petitioning this Court to dismiss this litigation, Columbia no doubt seeks to avoid an inquiry into the means by which it procured the '275 patent. Wyeth alleges that the '275 patent is invalid for prosecution laches and that Columbia committed inequitable conduct in obtaining the patent. A finding of either prosecution laches or inequitable conduct would render moot the reissue and reexamination proceedings. *See Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 837 F. Supp. 1444, 1478 (N.D. Ind. 1992) ("Accordingly, Reissue is not available

---

[2] To the extent that Columbia may assert that certain vectors and host cells are "grandfathered" in by the Covenant, this does not take into account the realities of scientific research where the vectors and cell lines are only finalized after significant research has been performed.

3750194_1.DOC

to cure such inequitable conduct with respect to knowingly withheld material prior art or other information."). Avoiding an inquiry into either equitable doctrine enables Columbia to resurrect the '275 patent, prolong Plaintiffs' recourse to judicial relief, and spur further legal wrangling from which Columbia may tire Plaintiffs into settlement.

Columbia's unreasonable delay in prosecuting the '275 patent compels a finding of prosecution laches. Following the issuance of U.S. Patent No. 5,179,017, Columbia filed five continuation applications in rapid succession. A day before Congress effectuated a change in law that would prevent Columbia from securing a new seventeen-year monopoly on an application first filed so many years before, Columbia filed two new continuation applications. Columbia's timing guaranteed that these continuations would issue as patents having a life of seventeen years. The subsequent prosecution for the application that issued as the '275 patent lasted over seven years and the other application remains pending. By seeking a premature dismissal of this suit, Columbia would compound the damage already wreaked by its pursuit of an undue extension of its patent monopoly. Preventing such abuse is the very rationale for the doctrine of prosecution laches. *Webster Elec. v. Splitdorf Elec. Co.*, 264 U.S. 463, 466 (1924); *accord Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1139, 1142 (E.D. Cal. 2002).

Columbia could only secure such an undue extension of its patent rights by misleading the PTO and withholding material information during prosecution. Columbia, recognizing the difficulty of its position under existing patent law, petitioned Congress to legislate an extension of its patent rights. As part of this gambit, Columbia made representations as to the pioneering scope of its patents. Yet to the PTO, Columbia characterized the same patents as narrow and limited in scope. In failing to inform the PTO of its representations to Congress, Columbia withheld material information. (Ex. 6, Wyeth Complaint, ¶¶ 60-66.)

Columbia also contrived to withhold from the PTO material information from co-pending applications. During the long course of prosecution of the applications leading up to the '275 patent, Columbia submitted an amendment and, *sua sponte*, stated reasons as to why the new claims were not invalid for double-patenting in light of the '216 patent. Columbia thereby preempted inquiries on the part of the new examiner as to whether the new claims were subject to double-patenting rejections over other previously issued patents, such as the '017 patent, which Columbia knew to be a better basis for such a rejection. (Ex. 6, Wyeth Complaint, ¶¶ 39-48.) Nor did Columbia timely inform examiners as to the pendency of the '159 application, in which the PTO rejected claims similar to those that issued in the '275 patent. Columbia only informed the PTO of the existence of the '159 application after seven years of co-pendency and three months before the allowance of the '275 patent claims. (Ex. 6, Wyeth Complaint, ¶¶ 49-53.) Columbia withheld similarly material information from the Patent Office when it failed to disclose to the examiners the existence of the '636 patent or its file history. (Ex. 6, Wyeth Complaint, ¶¶ 54-59.)

### D. THIS COURT RETAINS JURISDICTION OVER CLAIMS RELATED TO COLUMBIA'S OPPRESSIVE LICENSING TACTICS

Even if, as Columbia wrongly purports, the Covenant were to divest this Court of jurisdiction over Plaintiffs' claims regarding validity or enforceability, this Court would still retain subject matter jurisdiction. Specifically, the Court would retain jurisdiction over Wyeth's claims stemming from Columbia's breach of its agreements with the Department of Health and Human Services ("HHS"),[3] breach of its license agreement with Wyeth and breach of its implied duty of good faith and fair dealing. These contract claims remain within this Court's jurisdiction. 28 U.S.C. § 1332(a)(1). This Court may assert subject matter jurisdiction if a "substantial

---

[3] HHS is the government organization that provided public funds to support the research that led to the '275 patent.

3750194_1.DOC

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment [exists]." *Allende v. Shultz*, 624 F. Supp. 1063, 1065 (D. Mass. 1985) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).  Because Columbia has deliberately and improperly misused the patent and licensing processes, and demanded fees, it has breached its duties regardless of the validity or enforceability of the underlying patents at issue.

### 1. Columbia's Deceptive and Improper Tactics Regarding the '275 Patent

The '275 patent is a submarine patent that surfaced over two years after the three earlier patents to the same inventors and claiming the same cotransformation technology (the "Axel patents"), had expired.  Long after the expiration of the last of the earlier issued Axel patents in August 2000, Columbia assailed Wyeth with threats that it would terminate the License Agreement.  In the face of such threats, Wyeth asked Columbia to clarify the basis for the termination.  Columbia failed to do so, providing a shifting series of rationales that evolved with its litigation strategy.

On February 27, 2002, responding to Columbia's demands for royalties, Wyeth stated that it would pay royalties only on products that, but for the license, would infringe a valid patent.  (Ex. 7, 2/27/2002 Letter from Eisen to White at 1.)  Columbia pressed its demands and threatened to terminate the license, insisting that, contrary to the plain language of the contract, royalties were owed based on pending patent applications.  (Ex. 8, 8/6/2002 Letter from White to Eisen at 2.)  For two years, Columbia maintained this unreasonable position.  It was not until well into this litigation, faced with Plaintiffs' claims for patent misuse, that Columbia backed down, and disclaimed any right to royalty payments made pursuant to a pending application.  (Ex. 9, 3/9/2004 Letter 1 from Cleare to Andrea Ryan.)  Simultaneously, although in the midst of

3750194_1.DOC

negotiations with Wyeth to schedule an audit, Columbia terminated Wyeth's license agreement for failure to pay royalties and fees under the '275 patent and failure to provide reports for unpaid royalties. (Ex. 10, 3/9/2004 Letter 2 from Cleare to Genetics Institute, LLC.) Ignoring Wyeth's repeated requests for clarification of the grounds for termination, to allow the opportunity to cure, Columbia terminated Wyeth's license. (Ex. 11, 4/8/2004 Letter from Ryan to Cleare; Ex. 12, 5/12/2004 Letter from Ryan to Cleare; Ex. 13, 5/4/2004 Letter from Ryan to Cleare.) After months of termination based on failure to pay royalties and fees under the '275 patent and failure to provide reports for unpaid royalties, Columbia again changed positions. This time, Columbia maintained that Wyeth's license was terminated, but the termination was based on the failure to pay fees. (Ex. 4, 9/13/2004 Letters from Gindler to Ben-Ami).

Columbia's basis for terminating Wyeth's license is particularly untenable in light of the fact that the amount of fees that Wyeth arguably owes under the license agreement is a mere fraction of the amount that Columbia owes Wyeth. In the course of paying royalties under its license to the Axel patents, Wyeth inadvertently overpaid Columbia by nearly $2 million. (Ex. 7, Letter from Bruce Eisen to John White dated February 27, 2002.) Although Wyeth alerted Columbia to the error, Columbia never returned the money. Yet now while wrongfully retaining Wyeth's nearly 2 million dollars, Columbia purports to justifiably terminate Wyeth's license based on less than $100,000 in fees purportedly owed. Wyeth is entitled to maintain this action to obtain relief from Columbia's outrageous behavior.

### 2. Columbia Has Breached Its Agreements and Obligations

Plaintiffs contended in their complaint that by virtue of Columbia's failure to abide by the terms under which it obtained rights to its invention from the government, Columbia was either in breach of the License Agreement or in breach of its Agreement with the HHS. (Ex. 6,

3750194_1.DOC

Plaintiffs' Complaint ¶¶ 86-94, 95-99, 100-05.)  The Assistant Secretary of HHS granted Columbia the rights to the invention described in the '275 patent under the following procedure:

> If the [Assistant Secretary] finds that the invention will thereby be more adequately and quickly developed for widest use and that there are satisfactory safeguards against unreasonable royalties and repressive practices, the invention may be assigned to a competent organization for development and administration for the term of the patent or such lesser period as may be deemed necessary.

45 C.F.R. 8.2(b) (1980).   Indeed, HHS conditioned that "[R]oyalties shall not in any event be in excess of normal trade practice."  (Ex. 14.)  The License Agreement incorporates the agreement with the government in § 2(b).  (Ex. 15.)

Columbia's practices, both before and during this litigation, have been both unreasonable and repressive.  As described above, Columbia has played fast and loose with the License Agreement, first telling Plaintiffs' the agreement was terminated, then claiming the termination was "ineffective" and then stating that it was not ineffective insofar as it related to annual fees.  Columbia's purported terminations (of invalid and unenforceable patents, which this Court may need to review in the course of adjudicating these contract claims) were the basis by which it extracted settlements and fees from several parties to this MDL.  For example, after sending the original termination notices in March 2004, Columbia repressively and unreasonably exploited the '275 patent by extracting financial settlements from Ares Trading, Serono, and Baxter in May and June of 2004.  Nothing during the course of this litigation changed the information Columbia possessed, but Columbia changed its position mere months later and withdrew its termination notices for certain licenses.  Upon what basis Columbia was then entitled to settlements from those parties, in light of Columbia's subsequent withdrawal, has never been explained.

Moreover, Columbia has repeatedly attempted to unreasonably and repressively attenuate the terms of its patents in order to unduly burden its licensees with excessive costs and fees.  For

3750194_1.DOC

more than two decades Columbia has tortured the patent process with applications, reissues, and claims all in an attempt to garner more than the seventeen-year monopoly and hundreds of millions of dollars it already received. Adding insult to injury, Columbia now seeks to divest this Court of jurisdiction over it by essentially claiming that all of its past misdeeds should be ignored, and that it will not seek those excessive fees and royalties on the '275. But Columbia's covenant not to sue is in fact an attempt to make an end run around this Court. Columbia has presented claims similar to those in the '275 patent in the pending '159 application. Under that new patent Columbia would be free to sue Plaintiffs for infringement. Indeed, Columbia has stated, in open court, that it intends to sue for infringement under such a new patent. (Ex. 16, 6/22/04 Transcript of Hearing at 15)

     Columbia's tactics and practices have breached its agreements with HHS and Plaintiffs and its duty of good faith and fair dealing. Plaintiffs have expended substantial sums of money in this litigation. If Columbia has its way, it will cost Plaintiffs, and the entire industry, millions of dollars more, as Columbia continues a thirty-six-year monopoly. Accordingly, this Court should retain jurisdiction over these claims and prevent Columbia from continuing its repressive and unreasonable behavior.

     Furthermore, the Covenant does not render moot the claims for relief seeking a declaration that Plaintiffs do not owe Columbia annual fees. Columbia continues to assert that Plaintiffs owe annual fees under the License Agreement. As noted above, Columbia first stated that its termination of the licensees was withdrawn, but on September 13, 2004, by letter to Plaintiffs, Columbia confirmed that the licenses were indeed terminated, on the basis of Plaintiffs' purported failure to pay annual fees. Thus, there exists a substantial controversy as to whether Plaintiffs are obligated to pay Columbia these fees.

### 3. Columbia Has Unclean Hands

Plaintiffs' assertions of inequitable conduct and prosecution laches also remain relevant to the issue of annual fees despite the execution of the Covenant. Patent rights should not be used "to obtain or coerce an unfair commercial advantage." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Long ago, the Supreme Court recognized that permitting a licensor to enforce a license obtained by inequitable conduct runs contrary to principles of equity. "Consider, for example, the equities of the licensor who has obtained his patent through a fraud on the Patent Office. It is difficult to perceive why good faith requires that courts should permit him to recover royalties despite his licensee's attempts to show that the patent is invalid." *Lear, Inc. v. Adkins*, 395 U.S. 653, 669-70 (1969); see also *Rohm & Haas Co. v. Dawson Chem. Co.*, 635 F. Supp. 1211, 1224-27 (E.D. Tex. 1986) (denying summary judgment to party seeking to enforce a settlement agreement despite the fact that settlement agreement concerned patent obtained through inequitable conduct).

The Supreme Court's rationale applies with equal force in the instant case. Plaintiffs allege that Columbia violated the doctrine of unclean hands by procuring the '275 patent through fraud upon the patent office and unnecessarily delaying the issuance of the '275 patent. (Ex. 6, Plaintiffs' Complaint ¶¶ 36-66, 30-35.) Because Columbia engaged in such conduct, it should be precluded from asking this Court to provide it relief. Accordingly, because there exists a substantial controversy as to whether Plaintiffs are liable for the payment of annual fees, this Court retains jurisdiction over this matter.

### E. THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS FOR ATTORNEY'S FEES PURSUANT TO § 285

Regardless of the effect of Columbia's Covenant on the Court's ability to retain subject matter jurisdiction over claims related to license obligations or the invalidity and enforceability

3750194_1.DOC

of the '275 patent, the law is clear that the Court retains jurisdiction to determine Plaintiffs' claims for fees and costs. "[I]t is well established that a district court may consider collateral issues, such as motions for costs and attorneys fees, after an action is no longer pending." *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 131 F.R.D. 464, 467 (E.D. Penn. 1990) (citing *Cooter & Gell v. Harmarz Corp.*, 496 U.S. 384, 395 (1990)).

This Court, in *SVG Lithography Systems, Inc. v. Ultratech Stepper, Inc.*, 2004 WL 1948742 at * 5 (D.Mass.) expressed concern over its ability to retain jurisdiction over a claim for fees under § 285 when it does not have jurisdiction over the underlying cause of action, citing to the Federal Circuit's decision in *Hudson v. Principi*, 260 F.3d 1357, 1363 (Fed. Cir. 2001). However, the Federal Circuit's decision in *Hudson* was limited to the context of a claim for fees under the Equal Access to Justice Act and did not address a claim for fees under § 285. *Id.* at 1363. This Court's concern should be removed however, in light of the Federal Circuit's confirmation that, in the context of a claim for fees in a patent action pursuant to § 285, the district court does indeed retain jurisdiction over claims for fees, even when jurisdiction over the underlying claims may be absent. *See H.R. Technologies, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1386 (Fed. Cir. 2002) (district court should not dismiss a claim for fees under § 285 despite lacking the power to address the substantive claims at issue because the defendant should have an "opportunity to have its section 285 counterclaim addressed by the district court"); *see also*, *Mach. Corp. v. Gullfiber AB*, 774 F.2d 467 (Fed. Cir. 1985) (determining claim for attorney fees by declaratory judgment plaintiff after underlying claims had been settled and dismissed).

The *H.R. Technologies* court followed well settled law in this regard, agreeing with courts nationwide who have retained jurisdiction over claims for fees under § 285 even after a determination that a covenant not to sue or voluntary dismissal removed the court's jurisdiction

3750194_1.DOC

over infringement or validity claims. *See, e.g.*, *Techimark, Inc. v. Crellin, Inc.*, 14 F.Supp.2d 762, 767 (M.D.N.C. 1998) (retaining jurisdiction over claim for attorneys fees under § 285 subsequent to dismissal of invalidity and infringement claims as moot due to patent holder's dedication of patent to public); *Bioxy, Inc. v. Birko Corp.*, 935 F. Supp. 737, 744 (E.D.N.C. 1996) (considering defendant's claim for attorneys fees under § 285 following plaintiff's voluntary dismissal of infringement claims); *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 131 F.R.D. 464, 467 (E.D. Penn. 1990) (retaining jurisdiction over claims to attorneys fees under Rule 11 and § 285 where plaintiff voluntarily dismissed patent infringement claims); *W.L. Gore & Assocs., Inc. v. Oak Materials Group, Inc.*, 424 F.Supp. 700, 702 (D. Del. 1976) (retaining jurisdiction over claim for attorney's fees under § 285 following plaintiff's voluntary dismissal of claims).

Columbia does not contend that this Court lacks subject matter jurisdiction over Wyeth's claims for attorney's fees, but rather alleges that Plaintiffs cannot be considered a "prevailing party" under § 285 because they have not "achieved any substantial relief on the merits." (Columbia Brief at p 8.) Nothing could be further from the truth. Regardless of whether Columbia's waiver of any claim to royalties or other damages on account of the '275 patent was a result of a decision by this Court or a voluntary tactical withdrawal by Columbia, the end result is that Wyeth has prevailed. The extinguishment Columbia's claims for damages potentially totaling hundreds of millions of dollars can hardly be characterized as "insubstantial."

Columbia's Covenant cannot deprive Plaintiffs of their status as a prevailing party. In the context of a covenant not to sue or voluntary dismissal of claims by a patentee, courts have long held that the opposing party is a "prevailing party" and the voluntary actions of the patentee cannot defeat a claim for fees. *See, e.g.*, *Techimark*, 14 F. Supp. 2d at 767 (holding that alleged

3750194_1.DOC

16

infringers were the "prevailing party" within meaning of § 285 where Court had dismissed the patent holders claims for infringement following patentee's dedication of patent to public); *Bioxy*, 925 F. Supp. (court considered defendant's claim for attorney's fees where defendant had consented to plaintiff's motion for dismissal); *Tenax Corp. v. Tensar Corp.*, 22 U.S.P.Q.2d 1264, 1266 (D.Md. 1991) ("[i]t has long been held that a party has prevailed within the meaning of § 285, if, after discovery, a claim is dismissed with prejudice."); *W.L. Gore*, 424 F. Supp. (defendant was prevailing party and court considered defendant's claim for fees under § 285 where plaintiff had formally disclaimed all claims of the asserted patent).

None of the cases cited by Columbia refute this well established principle. To the contrary, these cases further confirm that Wyeth is the prevailing party in the action and are entitled to claim fees under § 285. Columbia relies on the Federal Circuit's decision in *Machinery Corp. of America v. Gullgiber AB*, 774 F.2d 467 (Fed. Cir. 1985). However, there the Federal Circuit assumed without discussion that the alleged infringer was the "prevailing party" following settlement and dismissal of the underlying cause of action when reviewing the district court's award of fees under §285. *Id*. at 471. The Supreme Court decision in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001), also cited by Columbia, plainly confirms that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." Nor is the Federal Circuit's decision in *Island Steel Co. v. LTV Steel Co.*, 364 F.3d 1318 (Fed. Cir. 2004) to the contrary. There, the Federal Circuit held that the district court erred in its denial of the alleged infringer's motion for attorney's fees, stating that the alleged infringer was the "prevailing party" when the patentee's claims for infringement of the patent at issue were found invalid during a reexamination proceeding in the Patent Office.

The plain and simple truth of the matter, which Columbia attempts to mischaracterize and obfuscate, is that Wyeth has prevailed in this action and Columbia's Covenant cannot defeat its entitlement to reasonable attorney fees and costs. Accordingly, this Court should retain jurisdiction over these matters and set a briefing schedule for Wyeth's claim for exceptional case status and fees under § 285.

## IV.     CONCLUSION

For all of the reasons set forth above, this Court retains subject matter jurisdiction over this litigation. Thus, Columbia's motion to dismiss must be denied.

    /s/ Eric J. Marandett
Respectfully Submitted,
Robert S. Frank, Jr.
Eric J. Marandett
Paul D. Popeo
**CHOATE HALL & STEWART**
Exchange Place
53 State Street
Boston, MA 02109-2804
(617) 248-5000

Patricia A. Carson
Leora Ben-Ami
**KAYE SCHOLER LLP**
425 Park Avenue
New York, New York 10022
Telephone: 212-836-8000

Facsimile: 212-836-8689