# Exhibit 7



**WYETH®**
GENETICS INSTITUTE

*87 CAMBRIDGEPARK DRIVE, CAMBRIDGE, MA 02140*      *DIRECT NUMBER*   617-665-8404 *(phone)*
617-876-5851 *(fax)*

*LAW DEPARTMENT*

February 27, 2002

<u>*VIA FACSIMILE and FIRST CLASS MAIL*</u>
John White, Esq.
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, NY 10036

        RE: Royalties due under GI/Columbia
            (Axel) License Agreement

Dear John,

       In your letter of January 21, 2001 you asked me to clarify the basis on which GI has been paying the subject royalties, focusing on 1Q and 2Q 2001. It has always been my assumption that royalties should be, and were being paid, whenever a patent right (actual or anticipated) was being infringed by GI activities. Such activities can be manufacture, use, sale or importation of a product produced by the patented Axel process prior to the relevant patent expiration date.

       The basis of your demand for continued royalty payments apparently stems from your unusual interpretation of the "covered by a claim of Licensed Patent Rights" language of Section 1(d) defining Licensed Products. More specifically, royalties are allegedly due whenever a Columbia patent claim somehow "covers" a product even if this claim is not infringed thereby. I cannot accept such an unconventional, subjective and amorphous interpretation. Rather, this common "covered by" term of art would be classically understood in the patent licensing field to mean that royalties are based only on acts which would be infringing in the absence of ("but for") the license. Similarly rejected is the position that GI is obliged to pay on the above activities worldwide whenever a Licensed Patent Right still exists anywhere, even if only in a country unconnected with these activities.

       Together with the Wyeth accounting group, I just investigated relevant royalty payments. We found that my foregoing assumed basis has been followed for Recombinate (rFactor VIII) and BeneFIX (rFactor IX). However with regard to Refacto (B-domain deleted Factor VIII), I discovered facts leading to the conclusion that no royalties thereon were ever due Columbia and that such actual payments were made in error. These facts are that all Refacto products sold to date have been produced in Europe utilizing the "unlinked" transfection approach, a method unpatented (and unpatentable) in Europe. None of that material was imported into the US or Canada before the expiration dates of the local Columbia patents -- August 16, 2000 and December 27, 2001, respectively. The financial ramifications of this error will be addressed in the 4Q report due by March 31.

LTH-1041

Regarding the "most favored nation" clause of Section 3(j), we still have not received from Columbia a list of third parties who enjoyed more favorable rates than those set forth in the GI Agreement. This list should be accompanied by identification of these lower rates and the reasons why Columbia believes that "substantially identical conditions" did not exist in each case. A mere conclusionary assertion that there were no such parties because the conditions were not "substantially identical" is insufficient since we would want to make our own assessment.

Sincerely,

Bruce

Bruce Eisen

BE/ssp

S:\LACOMMON\PATENTS\SSP\Bruce Eisen\Axel License.doc