LEXSEE 82 FED. APPX 702

ROSA M. ARROYO-VELAZQUEZ, ET AL., Plaintiffs, Appellants, v. HOSPITAL HERMANOS MELENDEZ, INC., DR. JESUS SEDA-RAMIREZ, DR. JUAN MARTINEZ-RODRIGUEZ, ET AL. Defendants, Appellees.

No. 03-1086

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

82 Fed. Appx. 702; 2003 U.S. App. LEXIS 24889

December 11, 2003, Decided

**NOTICE:** [**1] RULES OF THE FIRST CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO. Hon. Carmen Consuelo Cerezo, U.S. District Judge.

**DISPOSITION:** Vacated and remanded.

**LexisNexis(R) Headnotes**

**COUNSEL:** Rafael F. Castro-Lang with whom Francisco Castro-Amy was on brief for appellants.

Jeannette Lopez de Victoria, Benjamin Morales-Del Valle and Roberto Abesada-Aguet with whom Pinto-Lugo, Oliveras & Ortiz, PSC, Jaime Morales-Morales, Morales-Morales Law Offices, Harold Vicente Colon and Vicente & Cuebas were on brief for appellees.

**JUDGES:** Before Boudin, Chief Judge, Howard, Circuit Judge, and DiClerico, * District Judge.

    * Of the District of New Hampshire, sitting by designation.

**OPINIONBY:** BOUDIN

**OPINION:** [*703] **BOUDIN, Chief Judge.** This is an appeal from an order dismissing with prejudice a medical malpractice action brought by Rosa M. Arroyo-Velazquez ("Arroyo") and other family members; the dismissal was based on their attorney's failure to comply with case management orders. The primary defendants were Hospital Hermanos Melendez, Inc. ("the hospital"), which operates [**2] a facility in Bayamon, Puerto Rico, several of its doctors, and unnamed insurers. The background is as follows.

On August 5, 1997, Arroyo underwent surgery at the hospital for an ovarian cyst. Serious complications ensued and several further operations were performed at the hospital; if Arroyo's account is credited, there were serious medical blunders, considerable suffering and permanent impairments. In due course, she left the Hospital and began treatment at the Johns Hopkins Hospital in Baltimore ("Johns Hopkins"). In November 1999, she and her co-plaintiffs brought this diversity action in federal court against the defendants.

A statute of limitations defense was asserted--the Puerto Rico statute is one year, *31 P.R. Laws Ann. § 5298(2)* (1990)--and, after multiple extensions of time, opposed by the plaintiffs in August 2000. It is not clear how much, if any, discovery was conducted in this initial period--seemingly not much. In all events in October 2000, the statute of limitations defense was rejected by the district court, apparently because a prior action had been brought in state court and dismissed without prejudice, thereby tolling the limitations [**3] period. See *31 P.R. Laws Ann. § 5303* (1990); *King v. TL Dallas & Co., 270 F. Supp. 2d 262, 270 (D.P.R. 2003)*.

There followed two years of fumbling trial preparation until the case was finally [*704] dismissed by the district court on August 19, 2002. To recount all of the pertinent discovery problems and protests would

take pages, but it appears that from the outset Arroyo's trial counsel (not her counsel on this appeal) found it difficult to meet ordinary discovery obligations; this he attributed in part to unspecified family problems of his own during the initial year. Because most of the trial preparation difficulties are only background for the later dismissal, it is enough to summarize the main themes.

First, it is often hard to find doctors to testify against other doctors, and apparently especially hard in this case. But Arroyo's counsel compounded the problem by naming successive experts and then having to replace them, either because they had never committed themselves or because they withdrew. n1 He also failed to produce expert reports on time and had difficulties in producing promised experts for depositions. Of course, the defendants' [**4] own retention and preparation of experts were hostage to these delays.

> n1 In the summer of 2001, plaintiffs represented to the court that, after Dr. Mark Talamini, one of Arroyo's treating physicians at Johns Hopkins, had refused to be their expert witness, they had contacted some twenty-five doctors before finally finding a replacement.

Second, for obvious reasons the defendants wanted to procure Arroyo's treatment records from the time she had spent at Johns Hopkins. The records were arguably relevant to her past treatment at the defendant hospital and to her suffering and current condition; in addition, one of her treating physicians at Johns Hopkins was initially named as an expert and then (when he disclaimed this status) as a fact witness for Arroyo. These records were the subject of discovery requests directed to Arroyo and, perhaps foolishly, her counsel repeatedly undertook to provide the records--although they were not in Arroyo's direct control--and repeatedly failed to produce the full collection. [**5]

Third, Arroyo's counsel appears to have had trouble completing interrogatory answers. Here, the details are less clear; possibly some of the answers depended on expert witness positions or medical records that were themselves difficult to obtain. It is undisputed that even by the beginning of May 2001, almost a year and a half after the complaint was filed, plaintiffs had failed to answer adequately various defendants' interrogatories or document requests, all of which had been sent to them many months before.

After disposing of the statute of limitations issue in October 2000, the district court set a final pretrial conference for February 27, 2001, with trial for May 24, 2001. This schedule was several times postponed, usually at the defendants' behest because of Arroyo's delays in furnishing the expert reports, medical records, and interrogatory answers. There were also deposition scheduling difficulties for which blame is less easily apportioned.

In response to these problems, the defendants followed a dual track. On the one hand, they filed motions to compel and, as the delays impinged on their preparation, motions to reschedule pre-trial conferences and trial dates. On the [**6] other hand, the defendants also filed successive motions over a two-year period to dismiss the complaint based on the failure of Arroyo's counsel to meet deadlines. n2 For a time, the district court denied such requests [*705] on technical grounds or without explanation, although a small monetary penalty was imposed on Arroyo's counsel for not providing timely answers to interrogatories.

> n2 Motions or supplements to motions enlarging on the requests for dismissal appear to have been filed by one or more of the defendants on or about: April 23, 2001; April 27, 2001; May 3, 2001; May 18, 2001; June 19, 2001; November 29, 2001; December 6, 2001; December 12, 2001; January 25, 2002; and June 18, 2002.

Gradually, in the second half of 2001 and early 2002 Arroyo began to accumulate expert reports, n3 although the Johns Hopkins records and depositions of the experts remained in arrears. On February 14, 2002, a date scheduled for a final pretrial conference, the parties met with the court to work out further discovery plans. [**7] The court ordered Arroyo to produce the remaining Johns Hopkins documents including progress notes, physician orders and nurses' notes within 30 days. Arroyo's counsel was told that the failure to produce would result in sanctions.

> n3 Dr. Jose Gratacos (gynecology) filed an expert report on August 31, 2001. Dr. Antonio Gonzalez (an economist) filed an expert report on January 8, 2002, relating to the extent of Mrs. Arroyo's financial damages. Dr. Virgilio Brunet-Cardona (general surgery) filed an expert report on February 14, 2002.

In the same hearing the district court noted that depositions of three doctors to be called by Arroyo (Drs. Jose Gratacos and Virgilio Brunet-Cardona as experts and Dr. Mark Talamini as a fact witness) and one economics expert (Dr. Antonio Gonzalez) were now scheduled on specific dates from May 14, 2002, through

June 27, 2002. The court gave the defendants until August 30, 2002, to name their own experts and the court set a new pretrial conference for October 30, 2002, warning that [**8] no further continuances would be allowed and that sanctions would follow if anyone impeded the proceedings further.

In June 2002, the hospital moved to compel discovery or to dismiss the case because the Johns Hopkins records had still not been produced in full and because the deposition of Arroyo's physician fact witness, Dr. Mark Talamini, had been further deferred. n4 In August 2002, another defendant moved to defer the deadline for naming his own experts because the deposition of an Arroyo expert witness, Dr. Virgilio Brunet-Cardona, had been deferred. In both instances the witnesses were among the four whose deposition dates had been listed in the February 14 conference minutes and in both cases the defendant blamed Arroyo's counsel for the deferral.

> n4 In the same month, another one of the defendant doctors, Dr. Olga Rodriguez-Rivera, obtained an unopposed dismissal of the claims against her because the expert reports offered no theory of wrongdoing directed against her.

On August 19, 2002, the district [**9] court entered an order dismissing plaintiffs' case against all of the remaining defendants under *Rule 16(f)* for "failure to abide by the Court's case management schedule." The court noted that the pending motions by the hospital and Martinez were unanswered by the plaintiffs, and recounted the defendants' allegations that the missing Johns Hopkins documents had not been produced, that plaintiffs had "failed to arrange for the deposition of Dr. Talimani (sic) to be taken on June 27, 2002, as ordered by the Court," and that "the deposition of Dr. Virgilio Brunet which was scheduled by the Court for May 14, 2002, was cancelled by plaintiffs and rescheduled for August 1, 2002."

The court then said:

> The record is plagued with instances of non-compliance by plaintiffs and their attorney with discovery deadlines and Court's Orders. For the most part, the Court has been tolerant, although it did previously sanction plaintiffs' attorney in the amount of $ 600.00 for his untimely submission of answers to interrogatories. The Court had observed before that plaintiffs had evidenced a "continuing [*706] pattern of delays." It only appears to have progressed for the worse.
>
> These latest incidents [**10] reported by movants in their motions only serve to demonstrate plaintiffs' contumacious disregard for the discovery schedule and deadlines established by the Court. They have seriously hampered defendants' preparation for trial, and in so doing have disrupted the orderly progress of this case toward its resolution. Clearly, they merit the imposition of the harshest of sanctions: dismissal.

On August 28, 2002, Arroyo's counsel filed a motion to alter or amend the judgment. *Fed. R. Civ. P. 59(e)*. He said that the reason the most recent motions to dismiss and compel had not been answered was that they had been sent to his former address and not to a new one identified by him in May 2001 in an informative motion. Counsel also offered explanations for the rescheduling of the depositions and said that he had already given the defense in March 2002 all of the Johns Hopkins documents he could obtain.

The defendants filed an opposition to the *Rule 59* motion, arguing on the basis of circumstantial evidence that Arroyo's counsel had likely received the motions at his old address. The oppositions also quarreled in detail with counsel's ameliorating [**11] explanations for the deposition delays. The defense also asserted that the Johns Hopkins documents were still incomplete. On November 18, 2002, the district court denied the motion without opinion, making no findings on any of the disputed points (e.g., whether counsel had received the motions), and this appeal followed.

The cases commonly say that a dismissal for failure to comply with scheduling orders is tested on appeal under an abuse of discretion standard. E.g., *Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002)*. Strictly speaking, this test applies primarily to the overall balancing of considerations pro and con, such as the extent and repetitive character of the defaults, deliberateness, prejudice to the opposing party, adequate warning, and a range of similar common sense concerns. See *Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996)*.

In this case, we are concerned primarily with a judgment call but one that rests in substantial measure on disputed assumptions of facts; indeed, appellants' main attack is primarily upon those assumptions. If there are pertinent factual findings underpinning a dismissal or [**12] pure issues of law raised by the appeal, these issues are tested by the ordinary standards (respectively,

clear error and de novo review). See *Cameron v. Otto Bock Orthopedic Indus., 43 F.3d 14, 16 (1st Cir. 1994)*.

In dismissing the case, the district court's initial judgment was surely colored by the failure of Arroyo's counsel to respond to the final motions to dismiss or compel. Yet there appears to be no dispute that Arroyo's counsel had moved his office and had provided notice, and that, according to their respective certificates of service, the motions in question were mailed to the wrong address. In the *Rule 59* motion, Arroyo's counsel flatly denied receiving them; the defendants in response offered some inference evidence to the contrary, n5 but no explicit findings were made by the district court.

N5 Defendants claim that at least some of the correspondence that they sent to the wrong address was received by plaintiffs' counsel, as evidenced by a deposition notice that they sent to counsel's old address on May 22, 2002, and which counsel subsequently forwarded on to Dr. Talamini on May 29, 2002. Defendants also claim that none of the motions were returned to them as undeliverable. In addition, counsel for defendant Martinez filed an affidavit from his secretary, in which the secretary says that the August 2002 motion to request an extension of time for notifying expert witnesses was in fact sent to the correct address despite the wrong address appearing on the certificate of service.

[**13]

[*707] If counsel did receive the papers and failed to answer, this last straw after a history of delays would be fatal. Yet on this record we cannot ourselves conclude that he did receive the documents and we are unwilling to impute such a finding to the district judge based on her summary denial of Arroyo's *Rule 59* motion; sometimes an implicit finding is obviously intended or inferable but in this case it would have been hard to resolve the dispute without an evidentiary hearing. Yet, it is not clear that the counsel's failure to respond to the defendants' motions was intended by the judge as a specific reason for the dismissal.

Based on the dismissal order, the district judge may have been principally concerned with the failures as to deposition scheduling and document production that her dismissal order had identified. And, conceivably, the judge found the explanations given by Arroyo's counsel in the *Rule 59* motion to be inadequate to excuse these scheduling and production gaffes and, against the background of prior delays, found this enough to justify the dismissal--whether or not counsel's failure to answer the motions was excusable.

If all of the district court's expressed concerns [**14] as to scheduling and production were borne out by supportable findings or even by record evidence identified by the defendants, we would affirm. Given the record of delays by plaintiffs' counsel and the court's clear warning on February 14, 2002, three post-warning defaults would be enough to justify the dismissal, severe though the sanction would be. But, once again, the situation is more complicated than appears on the surface.

The weakest of the charges--at least on this record--is that Arroyo's counsel violated the court's scheduling order by failing to produce Dr. Talamini for deposition on June 27, 2002. The court's dismissal order said that at the February 14, 2002, conference, "plaintiffs were [] ordered to arrange for the depositions of two of their experts [Drs. Talamini and Brunet] on May 14, 2002 and June 27, 2002, respectively." On appeal, Arroyo objects that there was no formal order to this effect; rather, along with other formal orders, the "minutes of proceedings" simply list the depositions and dates.

With or without a formal order, the minutes reflect the schedule as an understanding of the court and the parties; thus, an unjustified failure to carry through [**15] could reasonably be sanctioned. The difficulty is that Dr. Talamini was not an expert witness biddable by plaintiffs' counsel but, at least by 2002, merely a fact witness designated by Arroyo. Ordinarily, it would be defense counsels' job to subpoena such a witness for deposition. Here, defendants seem to be arguing that Arroyo's counsel had represented to them that he could produce Dr. Talamini on the specified date and then failed to carry through.

In his *Rule 59* motion, Arroyo's counsel explained (and the record confirms) that he had had great difficulty in getting the doctor to cooperate. However, whether Arroyo's counsel made commitments or representations that he should not have made and could not keep is much less clear. Without that, defendants do not get very far by blaming Arroyo's counsel for failure to move promptly after the February conference to nail down Dr. Talamini's agreement to appear. There are no findings by the district court on this issue.

As to Dr. Brunet, he was an expert witness for Arroyo, so Arroyo's counsel had a responsibility to produce him for the [*708] scheduled deposition listed in the court's order, cf. *Barrett v. Atl. Richfield Co., 95 F.3d 375, 380-81 (5th Cir. 1996)*, [**16] but it is common ground that the doctor failed to appear because he had to undertake an emergency surgery on the deposition date--obviously something over which counsel had no control. The defense says that the deposition should have been rescheduled more quickly

(it finally occurred on August 1, 2002) but it is hard to tell without findings how far the re-scheduling delay was counsel's fault and how far due to the doctor's own commitments.

The Johns Hopkins records are a different story. Here, it is undisputed that Arroyo's counsel undertook to produce them, was ordered finally to do so by the court within 30 days of February 14, 2002, under threat of sanction, and never managed to produce the complete set. n6 So far as we can tell, counsel never should have subjected himself to such a commitment; Arroyo did not control the records directly and it would probably have been enough for her counsel to provide a written release from her and leave it to the defense to depose Johns Hopkins and secure the records from it.

> n6 Indeed, it appears that he had earlier been directed by court order of July 17, 2001, to produce the records within thirty days. Between July 17, 2001, and February 14, 2002, plaintiffs' counsel apparently failed to produce any additional documents. On March 13, 2002, he produced some, but not all of the missing records, but the extent of the remaining deficiency has never been addressed by the district court.

[**17]

This is only partial mitigation. Arroyo's counsel could not promise to secure the records, fail to protest about the obligation or time limits, and then excuse the failure to comply by saying he had done his best. Nor is it an answer that, after the dismissal, Arroyo's counsel said that his client had a year earlier provided the defense with a general release granting access to her hospital records. Still, there is no finding that Arroyo ultimately failed to produce any documents that he reasonably could have or even that there presently exist any documents that Arroyo has failed to produce.

Finally, the district court relied upon a background of prior delinquencies: "the record is plagued with instances of non-compliance by plaintiffs and their attorney with discovery deadlines and Court's Orders." On appeal, Arroyo's appellate counsel makes little attempt to challenge this characterization beyond saying that the district court did not seriously sanction earlier defaults. Given that there were earlier defaults as to deadlines, this cuts more against Arroyo's position than in favor.

Our own unaided review of the record suggests that Arroyo's counsel was regularly in default [**18] on small items; n7 and, on one occasion, he failed to appear for a scheduled pretrial conference, saying that his calendar was faulty. Further, counsel was guilty of failures to meet discovery deadlines, seek necessary extensions, or even respond in timely fashion to defendants' filings.

> n7 For example, Arroyo's counsel was late in filing a response to defendants' motion that plaintiffs be required to post a non-resident bond, and when the court finally did order the plaintiffs to post a bond, plaintiffs posted it late. Counsel also failed to answer defendants' May 18, 2001, motion that the district court reconsider its decision on one of their previous motions to dismiss--this failure to respond prompted the district court to order the plaintiffs to show cause why the case should not be dismissed for lack of prosecution--plaintiffs finally filed their response on June 25, 2001. See also note 6 above.

Ordinarily, we would affirm the dismissal where, as in this case, the plaintiff's counsel had a history of missed [**19] deadlines and delays, was given a clear last chance [*709] warning and defaulted again--here by the failure to produce all of the Johns Hopkins records. This is so even though Arroyo may well have a serious medical malpractice claim, prejudice to the defendants from the delay is unspecific, and the two doctors in question have now been deposed. Trial courts cannot manage their heavy case loads unless appeals courts back them up against an attorney's disregard of deadlines.

But in this instance three of the charges against plaintiffs' counsel (failure to answer the motions and the two delayed depositions) are simply insupportable without fact findings that have never been made; the fourth charge (Johns Hopkins records) is borne out but involves partial compliance (perhaps as much as was possible). What remains is only the charge that Arroyo's counsel regularly missed deadlines, but it is not clear that much that occurred after February 14, 2002, made the situation worse.

Despite the denial of the *Rule 59* motion, we are far from clear that the district court would have exercised its discretion to dismiss if--as may be the case--(1) Arroyo's counsel never received the motions because defense [**20] counsel sent them to the wrong address, (2) the court concluded that Arroyo's counsel was not at fault as to the deposition delays, and (3) the extent of counsel's efforts to secure the missing Johns Hopkins records were known.

Accordingly, because the dismissal rests on at least three unsupported premises and some uncertainty attends the fourth, we think it prudent to remand for further

consideration. Without limiting the scope of the district court's authority, we note several options that are available. The most obvious, if the district court is so disposed, is to determine whether the plaintiffs' counsel did receive the defense motions and failed to answer, or was significantly at fault as to the scheduling of depositions. An affirmative supportable answer as to either would in our view adequately support the dismissal.

Alternatively, the district court is free to conclude that these excavations into past history are more trouble than they are worth and to lay down strict conditions for the future conduct of the case. These could include limitations on plaintiffs' proof or recovery if past delays have provably handicapped the defense; ample latitude for the defense to complete [**21] their own discovery and preparations; and a very tight rein on whichever counsel ends up representing the plaintiffs in the district court.

Neither side has covered itself in glory in this case. If the district judge does end up dismissing the claim, as she may, Arroyo is well warranted in converting her medical malpractice claim into one for possible legal malpractice. As for the defense, it has admittedly been abused by the toleration of past delays by Arroyo's counsel; but if defense counsel had sent the motions to the right address and so indicated on their certificates, the present uncertainty would likely have been sorted out by now and greatly simplified this appeal.

The judgment of dismissal as to Hospital Hermanos Melendez, Inc., Dr. Juan Martinez-Rodriguez, and Dr. Jesus Seda-Ramirez is vacated and remanded for further proceedings consistent with this opinion. This vacation does not reflect the dismissal of the claims against Dr. Olga Rodriguez-Rivera, from which plaintiffs have not appealed. Each side shall bear its own costs on this appeal.