# EXHIBIT A

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE COLUMBIA UNIVERSITY        ) CA 04-01592
                                 ) Boston, MA
PATENT LITIGATION, ET AL         ) October 6, 2004
                                 )
                                 )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:

(As previously noted.)










JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577

25

1    case or controversy.  And there are two aspects of those
2    -- of those cases that I would point to and which, I
3    think, distinguish this case.  One aspect is that in
4    those cases and in Spectronics itself, the issue was
5    presented and argued as to whether the potential grant of
6    a reissued patent placed the declaratory judgment
7    plaintiff at risk.  And this is, of course, in a context
8    in which I think we all understand the degree of
9    adversity, the degree to which we have reason to expect
10   that if Columbia can get a patent out of this --
11        THE COURT:  Let me just go back to my question.
12        (Short pause.)
13        MR. GINDLER:  I think you're thinking of GAF
14   Building.
15        THE COURT:  Maybe.
16        MR. WARE:  There's discussion of that in
17   Spectronics.
18        THE COURT:  I know there is.  Hold on just a
19   minute.
20        (Short pause.)
21        THE COURT:  GAF Building and Spectronics.  Just
22   so I understand you, Mr. Ware, you're going to
23   distinguish the cases that have been decided, but you're
24   not going to point me to a case where a case or
25   controversy was found in a situation where no patent had

26

```
 1   issued and there wasn't a question of a possible relation
 2   back that would create exposure or damages for present
 3   activity.
 4           MR. WARE:  I think that's correct because I
 5   think none of the cases have involved two factors which
 6   are present here.  But if I could say something about
 7   Spectronics.  Spectronics -- the court in Spectronics did
 8   note that there was no guarantee that the reissued patent
 9   would reissue, but the court did not rest its decision on
10   that point but, rather, made an alternative decision and
11   said that --
12           THE COURT:  What page are you on?
13           MR. WARE:  I'm on -- it's page 5 of the
14   Westlaw, but I can't find -- 636, looks like, must be
15   towards the bottom of 636.  And the paragraph itself
16   begins:  There is, however.
17           THE COURT:  Okay.
18           MR. WARE:  And then it goes on.  It says:
19   Furthermore, even if Spectronics had an objectively
20   reasonable apprehension about future suit based upon the
21   reissued patent, we would be compelled to affirm the
22   dismissal because --
23           THE COURT:  Keep reading.  That's exactly the
24   key point, where you stopped.
25           MR. WARE:  So here's the point that I wanted to
```

1    make. What they're talking about is they couldn't tell
2    whether something was potentially infringing because the
3    defense that was raised in the Spectronics case was a
4    non-infringement defense. And that makes perfect sense.
5    If the patent hasn't issued, you don't know what the
6    claim is, so you don't know whether you have present
7    activity within the scope of that claim. That's because
8    it's a non-infringement defense.
9            We have in this case other -- another defense,
10   prosecution laches. Prosecution laches is a defense that
11   is completely unrelated to the scope of the claims that
12   come out of a future patent. If we are correct, that
13   prosecution laches prevents the enforcement of the '275
14   patent, it prevents the enforcement of any other patent,
15   future patent, in that family. That factor was not
16   present in any of the cases. So that there was always a
17   problem in needing to know exactly what the claim
18   language would be. And I think that this language in
19   Spectronics actually reflects a recognition that the
20   party could have an objectively reasonable apprehension
21   about a future suit, in general. But the problem here
22   was that they couldn't know whether it would cover their
23   activity.
24           So they were not allowed to bring their
25   non-infringement declaratory judgment action. They did

1    not have prosecution laches.  There are no cases in this
2    line of cases that deal with prosecution laches, which is
3    a defense that has been flushed out fairly recently by
4    the Federal Circuit.
5         So our point is that we don't need to know what
6    the claims of the future patent are to be able to
7    maintain and seek a declaratory judgment on prosecution
8    laches.
9         THE COURT:  All right.  But what about the
10   implications of what came next?  Because it says --
11   first, you'd have to persuade me that in view of this
12   representation, covenant, that you have an objectively
13   reasonable apprehension of a future suit based on the
14   reissued patent.  That would be, at a minimum, necessary.
15   But then it says:  We would be compelled to affirm the
16   District Court's dismissal because Spectronics did not
17   demonstrate that its present activity is potentially
18   infringing any patent claim since it is immune to suit
19   under the claims of '366 patent, and no reissued patent
20   claims yet exist by which infringement vel non -- I could
21   never understand vel non -- can be measured.
22        But as a practical matter, right now, you have
23   -- your clients have no exposure -- your clients are
24   never going to have to pay damages for anything they're
25   doing now.  The problem here -- in this industry -- and

29

1    they're going to talk about this in the state decision.
2    You know, I think you've educated me to understand that
3    some of the issues that might exist in other cases, you
4    know, are big for the drug companies here. But it's not
5    the potential that you're going to owe Columbia money for
6    anything you're doing now. It's the potential that
7    you're going to invest, and then maybe new claims will
8    come out, and maybe it will turn out that you'll have to
9    change what you're doing when those new claims come out
10   or pay them royalties.
11             MR. WARE: In this case, unlike in Spectronics,
12   however, we do have the set of reissue claims, and we
13   know they're very broad claims. We also have the set of
14   claims in the '159 application. So that was a
15   distinction.
16             THE COURT: How do you know what claims are
17   going to emerge?
18             MR. WARE: There were no claims even to look
19   at, I think, in the Spectronics --
20             THE COURT: Where does it tell you that?
21             MR. WARE: It says: No reissued patent claims
22   yet exist. I read that as referring to not even being
23   able to look at an application.
24             THE COURT: If you read the next sentence, it
25   says: There are sensible reasons why the existence of

```
 1    issued patent claims presently, meaning now, enforceable
 2    at Spectronics are a requisite for litigation of a
 3    declaratory judgment action.
 4           So, if that language that I just read represents
 5    the law, you haven't met that requisite.
 6           MR. WARE:  Well, I would suggest that it is a
 7    factual -- that the question is one that turns on the
 8    facts in particular cases.  And if because -- the focus
 9    there is, well, you just have no idea if you're going to
10    be covered by these claims.  Well, we know from what the
11    nature of these claims are -- they're claiming
12    cotransformation of CHO cells.  They can put different
13    words into the claims here and there, but I don't think
14    that anybody has any doubt that these claims are going to
15    be directed at what the plaintiffs do.
16           THE COURT:  Let me ask you this.  In your view,
17    if there's a reissuance with whatever claim you say
18    you've read, would that be impermissible double
19    patenting?
20           MR. WARE:  Well, since we think all of these
21    claims are impermissible double patenting over the
22    earlier patents, in all likelihood, we would think that.
23           THE COURT:  Okay.  And you think that at least
24    in part based on the evidence that you gave me in the
25    preliminary injunction, right?
```

```
 1    appellees:  Because Spectronics has been absolved from
 2    liability on all the claims of the '366 patent, there
 3    will be no future confrontation with respect to them.
 4            THE COURT:  Now, again, this isn't rhetorical,
 5    and I apologize if I'm misunderstanding or misstating
 6    anything, but that's what I think Mr. Gindler told you
 7    your immunity is.  It's only if there is a new claim that
 8    emerges, something that is not the same or substantially
 9    the same as the existing '275 claims, that your clients
10    can have any liability even after -- I guess at the
11    moment I'm putting aside the '159 -- but with regard to
12    the '275.  Did you understand the representation the way
13    I just described it?
14            MR. HASSON:  Your Honor, I should have been
15    clearer.  I was addressing exactly the '159.  That was my
16    intent.  The reason that Spectronics is distinguishable
17    in this regard is that there was a substantive admission
18    of non-infringement with regard to the claims that had
19    been stated in that patent.  That would carry forward to
20    those claims wherever they might emerge and under
21    whatever number.
22            THE COURT:  So your point is -- let me just see
23    if I've got it.  To the extent -- see, I don't have the
24    '159 and the '275 in front of me.  You say there are some
25    identical claims -- some claims in the '159 that are
```

                                                                    62

```
 1      due, independent of the '275 application or '275 patent.
 2              THE COURT:  For the foreign patents?
 3              MR. HASSON:  I'm sorry.
 4              THE COURT:  For foreign patents?
 5              MR. HASSON:  No, your Honor.  Columbia takes
 6      the position that some additional funds are owed by my
 7      clients having to do with some of the patents that
 8      expired in the year 2000.
 9              THE COURT:  Okay.  Well, when he gets his turn
10      to respond to all of this, Mr. Gindler will tell me why
11      Amgen has got nothing to worry about.
12              MR. HASSON:  Thank you, your Honor.
13              THE COURT:  Except for anything they owed back
14      in 2000.
15              Is there anybody else who would like to be
16      heard?
17              MS. PRUETZ:  Yes, your Honor, Adrien Pruetz for
18      Genentech.  I don't think I have anything to add to the
19      argument that's been made on the '159.  I think, though,
20      that focusing on the language in Spectronics that Mr.
21      Hasson pointed out to the court, the fact that in
22      Spectronics the accused party was free of ever having to
23      deal with a patent arising out of the invention claimed
24      in the patent is not the situation here.  And, for that
25      reason, I think Mr. Ware argued that this court has
```

```
                                                              63

1    jurisdiction and should exercise it to go forward to
2    decide the prosecution laches issue, because that would
3    apply to any claims --
4           THE COURT:  Actually, why does the covenant as
5    Mr. Gindler described it today not assure that you'll
6    never have to deal with a patent arising out of the
7    intention claimed in the '275, putting aside the '159
8    issue, which I said I thought you weren't referring to,
9    or maybe you are.  Are you referring to the '159?
10          MS. PRUETZ:  No, I'm referring to the '275.
11          THE COURT:  Well, Mr. Gindler's reliably
12   represented today, if I understand it right, that the
13   plaintiffs will never have any liability on the claims in
14   the '275 or substantially the same claims if there's a
15   reissuance that includes those claims.
16          MS. PRUETZ:  I believe that's correct, your
17   Honor.  And if that were the only issue, I would
18   completely agree that the court should not move ahead to
19   decide any part of this case.  But I think that there is
20   another issue presented.  The invention of the '275 is
21   what's defined in the specification of the patent.  And
22   what Columbia is trying to do in the Patent Office in the
23   context of reissue proceedings is get new and different
24   claims off of the same old 24-year old invention.  Now,
25   there may be new and different claims that they can
```