# EXHIBIT B-1

CORRECTED

# BRIEF OF PLAINTIFF-APPEL    NT
# SPECTRONICS CORPORATION

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

NO. 91-1041

RECEIVED

JUN 4 - 1991

United States Court of Appeals
for the Federal Circuit

SPECTRONICS CORPORATION,

           Plaintiff-Appellant,

    v.

H.B. FULLER COMPANY, INC. and
H.B. FULLER AUTOMOTIVE PRODUCTS, INC.,

         Defendants-Appellees.

FILED
U.S. COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

JAN 28 1991

FRANCIS X. GINDHART
CLERK

APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF NEW YORK
JUDGE RAYMOND J. DEARIE

*Non-Confidential*

ARTHUR H. SEIDEL
FED. OTTO L. ERICHSEN
PAUL S. CHIRGOTT
SEIDEL, GONDA, LAVORGNA
  & MONACO, P.C.
1800 Two Penn Center Plaza
Philadelphia, PA 19102
Telephone: (215) 568-6383

Attorneys for
Plaintiff-Appellant
Spectronics Corporation

January 3, 1991

I.

## TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| I. | TABLE OF CONTENTS . . . . . . . . . . . . . . . . | i |
| II. | TABLE OF AUTHORITIES . . . . . . . . . . . . . . | iii |
| III. | CERTIFICATE OF INTEREST . . . . . . . . . . . . . | v |
| IV. | STATEMENT OF RELATED CASES . . . . . . . . . . . | vi |
| V. | STATEMENT OF JURISDICTION . . . . . . . . . . . . | vii |
| VI. | STATEMENT OF THE ISSUES . . . . . . . . . . . . | 1 |
| VII. | STATEMENT OF THE CASE . . . . . . . . . . . . . | 2 |
| VIII. | SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . | 19 |
| IX. | ARGUMENT . . . . . . . . . . . . . . . . . . . | 21 |

A.  THE COURT BELOW COMMITTED
REVERSIBLE ERROR BY FAILING
TO RECOGNIZE THAT A JUDICIABLE
CONTROVERSY SURVIVED THE FILING
OF A REISSUE APPLICATION AND A
STATEMENT OF NONLIABILITY BY FULLER . . . . . . 21

    1.  The Dismissal Of This
Action Was Improper In
That It Defeats The Very
Purpose Of The Declaratory
Judgment Act To Afford
Relief Against In Terrorem
Tactics And Flies In The
Face Of Altvater v. Freeman,
319 U.S. 359 (1943)  . . . . . . 21

    2.  Once A Declaratory Judgment
Action Has Been Initiated,
The Action Must Go Forward
Notwithstanding Voluntary
Dismissals By The Patentee
Or Concessions Of Non-Infringement . . . 23

- i -

8.  IT WAS REVERSIBLE ERROR
    FOR THE DISTRICT COURT TO
    REFUSE TO DEAL WITH THE VERY
    SUBSTANTIAL AND WELL-DOCUMENTED
    ALLEGATIONS OF INEQUITABLE CONDUCT
    WHICH WERE PROPERLY BEFORE IT    . . . . .   31

    1.  Only The District Court Can
        Resolve Issues Of Inequitable
        Conduct, The Patent and Trademark
        Office Having Declared It Will
        No Longer Consider Or Make Any
        Findings On These Issues In
        Connection With A Reissue
        Patent Application           . . . .   31

    2.  Inequitable Conduct
        Cannot Be Purged By
        A Reissue Proceeding  . . . . . . . . .  36

    3.  The Patentee's Inequitable Conduct
        Drastically Affects The Public   . . . .  39

X.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT . . . . . . .  42

II.

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

PAGE

Airship Industries (UK) v.
Goodyear Tire & Rubber Co.,
643 F.Supp. 754 (S.D.N.Y. 1986)   .   .   .   .   25

Akzona, Inc. v. E.I. du Pont de Nemours & Co.,
662 F.Supp. 603 (D.Del. 1987)   .   .   .   .   23

Altvater v. Freeman,
319 U.S. 359 (1943)   .   .   .   .   .   21, 22

Arrowhead Industrial Water, Inc.
v. Ecolochem, Inc.,
846 F.2d 731 (Fed.Cir. 1984)   .   .   .   .   22, 30

C.R. Bard, Inc. v. Schwartz,
716 F.2d 874 (Fed.Cir. 1983)   .   .   .   .   25

Flehmig v. Giesa,
13 U.S.P.Q. 2d 1052
(Bd. Pat. Int. 1989)   .   .   .   .   .   33

Grain Processing Corp. v.
American Maize Products Co.,
840 F.2d 902 (Fed.Cir. 1988)   .   .   .   .   27, 28

H.B. Fuller Co. v. National
Starch & Chemical Corp.,
689 F.Supp. 923 (D.Minn. 1988)   .   .   .   3

Hewlett-Packard Co. v. Bausch & Lomb Inc.,
882 F.2d 1556 (Fed. Cir. 1989),
cert. den., 110 S.Ct. 1125 (1990)   .   .   .   36

Hoffman-La Roche Inc. v. Lemmon Co.,
906 F.2d 684 (Fed. Cir. 1990)   .   .   .   .   36

Lear Inc. v. Adkins,
395 U.S. 653 (1969)   .   .   .   .   .   40

Pope Mfg. Co. v. Gormully,
144 U.S. 224, 36 L.Ed. 414 (1892)   .   .   .   40

- iii -

Precision Instrument Mfg. Co.
v. Automotive Maintenance Machinery Co.,
324 U.S. 806 (1945) . . . . . . . . . 30, 41

Proctor & Gamble Co. v. Nabisco Brands Inc.,
711 F.Supp. 759 (D.Del. 1989) . . . . . . . 28

Shelcore, Inc. v. Durham Industries, Inc.,
745 F.2d 621 (Fed. Cir. 1984) . . . . . . . 22

### STATUTES, REGULATIONS, AND NOTICES

18 U.S.C. 497 . . . . . . . . . . . . 10

28 U.S.C. 1292(b) . . . . . . . . . . 7, 8

35 U.S.C. 251-252 . . . . . . . . . . 31

1095 O.G. 16-17 (September 8, 1988) . . . . . 31, 33

1096 O.G. 19 (October 17, 1988) . . . . . . 31

1098 O.G. 502-503 (December 8, 1988) . . . . . 32

37 C.F.R. 1.171-1.179 . . . . . . . . . 31

37 C.F.R. 1.291 . . . . . . . . . . . 33

### MISCELLANEOUS

The Patent and Trademark Office View of
Inequitable Conduct or Attempted Fraud
in the Patent and Trademark Office,
16 AIPLA Q.J. 88 (1988) . . . . . . . . 37

5 L. Horowitz, Intellectual Property
Counseling and Litigation, pp. 101-107 (1990) . . . . 31

## III.    CERTIFICATE OF INTEREST

The undersigned counsel for Appellant, Spectronics Corporation, certifies the following:

1.    The full name of the party represented by me is Spectronics Corporation.

2.    The real party in interest is Appellant, Spectronics Corporation.

3.    The parent companies, subsidiaries and affiliates that have issued shares to the public, of the party or amicus curiae represented by me are Spectronics Corporation.

4.    The names of the lawyers and law firms whose members appeared for the Appellant, Spectronics Corporation, in the Trial Court, or that are expected to appear in this court, are:

Arthur H. Seidel, Esq.
Paul S. Chirgott, Esq.
Per-Otto L. Erichsen, Esq.
Seidel, Gonda, Lavorgna
 & Monaco, P.C.
1500 Two Penn Center Plaza
Philadelphia, PA 19102
Tel. No. (215) 568-6383

David H. Brainin, Esq.
Locker, Greenberg & Brainin, P.C.
One Pennsylvania Plaza
New York, NY 10001
Tel. No. (212) 494-7000

Date:    January 3, 1991

_____
PER-OTTO L. ERICHSEN
Attorneys for Appellant

- v -

## IV.    STATEMENT OF RELATED CASES

1.    No other appeal in or from this civil action or proceeding in the lower court was previously before this or any other Appellate Court under the same or similar title.

**V.    STATEMENT OF JURISDICTION**

1.    The statutory basis for jurisdiction of the Trial Court was 28 U.S.C. 1331, 1338, 2201 and 2202.

2.    The statutory basis for jurisdiction of this Court is 28 U.S.C. 1295(a)(1).

3.    This appeal was timely brought by Appellant pursuant to Rule 4, Federal Rules of Appellate Procedure.

VI.  **STATEMENT OF THE ISSUES**

Whether the Court below committed reversible error in dismissing this declaratory judgment action and granting judgment to the patentee because it had filed a reissue application with the U.S. Patent and Trademark Office and had submitted a "Statement of Non-Liability" when:

(A)  A reasonable fear of future infringement exists arising from continued in terrorem tactics and the resultant refusal of customers to deal with the plaintiff;

(B)  The patentee has not gone so far as to completely and unequivocally abandon its patent or any future assertion of infringement against the plaintiff and its customers; and.

(C)  The original claims of the patent-in-suit are tainted by inequitable conduct, this being an issue that can only be addressed by the District Court.

956-35.33
/rr                              - 1 -

## VII. STATEMENT OF THE CASE

This declaratory judgment action was commenced by Appellant, Spectronics Corporation ("Spectronics") for a judgment of invalidity and non-infringement of U.S. Patent 4,758,366 ("the '366 patent"), (A14-28), presently held by Appellee, H.B. Fuller Company, Inc. ("Fuller")[1].

The '366 patent issued on July 19, 1988 in the name of Manher Parekh and was for "Polyhalogenated Hydrocarbon Refrigerants And Refrigerant Oils Colored With Fluorescent Dyes And Method For Their Use As Leak Detectors". (A29-34) The claims of the '366 patent are directed to the black-light detection of leaks in automotive air conditioning systems by specified fluorescent tracer dyes. (A33-34)

The '366 patent was assigned to Fuller in August of 1988. (A-77-78) Almost immediately, Fuller began an aggressive campaign to market its fluorescent tracer dye products. (A27-28)

Since at least as early as 1986, Spectronics has been engaged in the manufacture and sale of "DYGLO 12", a fluorescent leak detection additive for automobile air conditioning systems

---

[1] The Complaint also alleged antitrust violations and tortious interference with business relations. These counts were subsequently dropped without prejudice from the Complaint. Also named as a defendant was Widger Chemical Corporation, the assignor of the '366 patent. Spectronics voluntarily dismissed Widger on the basis of Widger's affidavits and representations which tended to show that personal jurisdiction was lacking. (A74-76, 143-144)

which contains Refrigerant 12, fluorescent dye and refrigeration oil. (A16-17)

Beginning in November 1988, Fuller began an intensive campaign in the form of letters to the industry touting its acquisition of the '366 patent and heralding its "patent strategy". (A23-28) It was obvious that the purpose of these communications was to intimidate both Spectronics and its customers, the tacit threat being that anyone making, using or selling "DYGLO 12" would be liable for infringement of the '366 patent. (A84)

The manager of Fuller's Dye Group, Don Michau, a former employee of Widger, who both before and after the assignment of the '366 patent had threatened Spectronics and Spectronics' distributors with patent infringement. (A27-28, 83-85) In Fuller's November, 1988 "patent strategy" letter, Don Michau was identified as the contact person for Fuller's tracer dye product. (A27-28)

Historically, Fuller has been an extremely litigious and aggressive competitor[2]. (A90-91) Given this fact, and the unavoidable conclusion that Fuller's announcement of its "patent strategy" was merely the opening salvo in an all-out legal offensive to enforce its newly-acquired patent and drive all

---

[2] See by way of example, H.B. Fuller Co. v. National Starch & Chemical Corp., 689 F.Supp. 923 (D.Minn. 1988), where the Court awarded increased damages against Fuller for willful infringement.

956-35.33
/rz

- 3 -

other competitors from the field, Spectronics filed its action
for declaratory relief.

Spectronics had good ground for asserting the invalid-
ity of the '366 patent, itself having pioneered fluorescent leak
detection in the automotive industry as far back as 1956.  (A83)

Spectronics was also convinced that the original
inventor, Manher Parekh, had been guilty of inequitable conduct
in obtaining the '366 patent.  Specifically, he, or those acting
on his behalf, had knowingly and deliberately concealed prior
anticipatory art from the patent examiner.

In a declaration executed during the prosecution of the
patent application and dated May 1, 1987, Manher Parekh declared
(in paragraph 7) that: "Non-fluorescent dyes used for leak
detection in refrigerant systems are difficult to detect and are
thermally unstable at high temperatures required for the opera-
tion of refrigeration units." (A35)  He further declared (in
paragraph 8) that: "Until now, no one has devised a method for
dissolving a fluorescent dye into a refrigerant or a refrigera-
tion oil.  Fluorescent dyes are generally water-soluble and will
not go into solution with the refrigerants." (A36)  However,
U.S. Patent 3,770,640 (Bartlett), which was cited by the Examiner
and well-known to Parekh, clearly teaches that non-fluorescent
dyes used for leak detection in refrigerant systems are thermally
stable at the high temperatures (450°F) required for the opera-
tion of refrigeration units.  (A38-44)  Furthermore, Parekh was

also well aware that fluorescent dyes such as Rhodamine B dis-
closed in the Bartlett patent) were water-soluble and readily
dissolved into solution with refrigerants. (A29-34)

These intentional statements were material and were
relied on by the Examiner in allowing Parekh's application
(Serial No. 704,666) to issue as the '366 patent.

Parekh's counsel performed a patentability search (A64-
69) months prior to the filing of the application which issued as
the '366 patent in which the following prior art references were
noted:

1.    Patent 3,386,920 (Alburger) discloses a fluores-
cent dye tracer for use in detecting surface flaws in metal tanks
or pipes. (A45-56)  The tracer composition comprises at least one
sensitizer dissolved in a liquid solvent carrier within the range
of at least 15 grams of sensitizer per pint of solvent carrier.
(A45-56)  This corresponds to approximately 3.3 wt.% sensitizer.
The patent specifically teaches that the sensitizer may be a
fluorescent perylene dye, a fluorescent xanthene dye or a variety
of miscellaneous visible dyes which are also fluorescent.
(A45-56)  The solvent may be, inter alia, a silicon oil, a
fluorocarbon oil or a polyglycol fluorocarbon oil or a
polyglycol. (A45-56)

It is to be especially noted that all of these
fluorescent dyes and solvents are recited in claim 1 of the '366
patent and are used in concentrations well above the 0.001 grams

956-35.33                         - 5 -
/rz

of dye per 100 grams of liquid solvent required. (A45-46) Additionally, it is to be noted that Figure 3 (discussed at column 5, lines 19-48) contemplates a leak detection process for pipes where the tracer composition is internally pressurized to promote outward migration of the sensitizer dye through the leakage path. (A45-56)

2. Patent 3,906,827 (Alburger) discloses dye tracer inspection compositions in which a fluorescent dye is dissolved in a liquid solvent including mineral oils, glycols and fluoro-carbons. (A57-63)

The above-identified patents, either singly or in combination, are far more material to the claimed subject matter of the '366 patent than the prior art considered by the Examiner. Further, the combination of the 3,366,920 (Alburger) patent with the 3,770,640 (Bartlett) patent, already of record in the '366 prosecution, clearly suggests to one skilled in the art to substitute fluorescent perylene and xanthene dyes for anthra-quinone dyes.

The fact that the above-recited patents, particularly the Alburger '920 patent, were not disclosed to the Examiner raises a significant if not overriding inference that the prosec-ution of the '366 patent was tainted by fraud and equitable conduct.

Following the filing of Spectronics' Complaint, on December 6, 1989, Fuller employed every means at its disposal to

avoid joining issue. On February 3, 1989, in lieu of answering the Complaint, Fuller filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction for Failure to State a Claim Upon Which Relief Can Be Granted Under Fed.R.Civ.P. 12(b)(1).

(A70-73) After extensive briefing and counter-briefing, this Motion was formally denied by the Court on June 7, 1989. (A118-119) Meanwhile, on June 5, 1989, Fuller filed a motion to certify for appeal under 28 U.S.C. 1292(b) the Court's Order denying its Motion to Dismiss for lack of subject matter jurisdiction. (A116-117) This Motion was denied by the Court on June 9, 1989. (A120) The Court also denied Fuller's Motion to Dismiss the action based on its assertion that the Court lacked subject matter jurisdiction over the declaratory judgment count in the Complaint. (A118-119) On July 7, 1989, Fuller inexplicably filed a Notice of Appeal from the trial court's decision denying its motion to dismiss for lack of case or controversy. (A121) This Notice of Appeal was formally withdrawn by Fuller on July 12, 1989. (A122)

On July 14, 1989, Fuller filed a second motion to dismiss (A123-124) together with a motion to extend time in which to answer the Complaint. (A125-126) Again, Fuller's Motion to Dismiss was denied.

Finally, on September 22, 1989, Fuller filed its answer to Spectronics' Complaint. (198-210) This answer, however, did not contain a counterclaim. An amended answer was filed by

956-35.13
/mz

- 7 -

Fuller on March 9, 1990 containing a "contingent" counterclaim.
(A211-248)

On April 13, 1990 Fuller filed yet another motion to
dismiss the Complaint for lack of jurisdiction alleging that no
case or controversy existed. (A249-250)   This motion was denied
on June 7, 1990. (A279)   Another motion by Fuller to have the
Court certify its denial for appeal under 28 U.S.C. 1292(b) was
also denied. (A279)

On this same date (June 7, 1990), Fuller provided the
Court and counsel with a copy of a reissue application it had
filed with the U.S. Patent and Trademark Office relative to the
'366 patent. (A282-361)

In addition, Fuller filed of record with the Court a
"Statement of Nonliability". (A362-363)

This Statement of Nonliability reads in full as fol-
lows:

### Statement of Nonliability

Defendant, H.B. Fuller Company, Inc., has
filed a reissue application to reissue U.S.
Patent No. 4,758,366 cancelling claims 1-18
and seeking new claims.

Spectronics has no liability to defendants
or any successors-in-interest to U.S. Patent
No. 4,758,366 for infringement of claims 1-18
of U.S. Patent No. 4,758,366, and defendants
and any successors-in-interest to U.S. Patent
No. 4,758,366 will not sue Spectronics for
infringement of claims 1-18 of U.S. Patent
No. 4,758,366. (A362)

956-35.13
/rz                            - 8 -

A hearing on Fuller's Motion to Dismiss took place on August 17, 1990. At the close of this hearing it was apparent that the District Court Judge would dismiss this action on the basis that the reissue application together with the Statement of Nonliability operated to divest the Court of Jurisdiction. (A455) A formal Order to this effect did, in fact, ensue. (A12-13)

It is apparent, however, that the Court below dismissed this action while at the same time concluding that a reasonable apprehension of further litigation persisted. At the very least, it appears from the record that the Court was of two minds:

> MR. SEIDEL: The point is we still have reasonable apprehension. Forgetting technicalities, Your Honor, someone in the position of Spectronics, and the president is sitting in this courtroom, would have reasonable apprehension in this situation where he is looking at his customers being exposed to the type of threats that have gone on.
>
> They sent that patent that they marked up to every potential major customer in the United States—every major oil company, every major automotive company, to Du Pont, they didn't miss anybody. They have used a campaign from the start of this case right up to the present. We had an incident as recently as a week ago.
>
> Your Honor, he is living with constant apprehension and for them to get out of this thing for us to have to come back here again at some later date, I think, defeats the whole purpose of what Judge Markie [sic] described as 'dance macabre' [sic].
>
> I've been in the profession a reasonable length of time—40 some odd years—but before my day, before the first Declaratory Judgment action, they used to have what was known in the profession as the 'pigeon drop'. You

threatened the hell out of anybody but you never sue them and there wasn't a thing the alleged infringer could do about it and one of the great advances made with a Declaratory Judgment action is that you could prevent that type of apprehension. Now we have got that type of apprehension here, Your Honor.

THE COURT: Well, what you have and this is my question to you, the way of graverman [sic] of Spectronics' complaint here does not go to issues that are necessarily confined to the four (4) corners of the patent claims but really have to do, at least in large measure, with the conduct of the patentee.

Will not that part of the case persist no matter what happens? Unless, of course, conceivably that the reissue application was denied and so forth but the likelihood is—virtual inevitability is that this controversy will persist.

He has a reasonable apprehension. He is reasonably apprehensive of some day having to do battle with you over some patent claim in an environment that will be—in a context that will be dominated by your conduct which will be relevant if this is a reissue—your client's conduct vis-a-vis the original patent application will be relevant in that proceeding. Isn't there some sense to what Mr. Feldei says? What is the point of background? It may? It's going to continue. That part of the controversy is not moot. It will remain with us. If there is a lawsuit it will be, as far as Spectronics is concerned, it will be contemporaneous in any lawsuit in any lawsuit on any claims whatever the reissue application.

MR. CARLSON: It gets back-burnered for practical and legal reasons. The practical reason is that there may never be claims that come out of the Patent and Trademark Office. If claims come out, they may not be infringed. If claims come out that are infringed, they may not be asserted. We don't know what will happen as a practical matter with respect to this patent and these

claims so there is no point, as a practical
matter, in going ahead, taking court
resources and taking the resources of our
clients and trying an issue that may be
totally moot. That's the practical reason.
The legal reason is that the law is
unequivocle [sic] that there is no case or
controversy. The _Exxon_ [sic] case that Mr.
Seidel read so extensively from is pure
_dicta_. It's pure _dicta_.

THE COURT: Well, that's ...

MR. CARLSON: ...and, in fact it's not even
binding _dicta_. It's not from the Federal
Circuit. The Federal Circuit cases make it
absolutely clear that if you don't have an
issue with respect to infringement, you do
not get into validity. That's the _Grain_
_Processing_ case that we cited, also the
_Indiam_ [sic] case ...

THE COURT: You both cited that case. Well
...

MR. CARLSON: And, as you'll see we've cited
some other cases where they will even vacate
a holding on the validity of a patent if, on
appeal, it is found to not be infringed.
They just don't get into the subsidiary issue
of the validity of the patent. You do not
have a cause of action to declare a patent
invalid. I cannot file an action to have
IBM's patents held invalid. You cannot do
that.

Now, what we have here is what he says is
this reasonable apprehension of this future
litigation. I don't think its reasonable
but its not legally recognizable at the very
least. There is no cause of action to have a
patent application declared invalid. None
whatsoever. You can't do it. It would be
terrible if people could go out and file
lawsuits with respect to what was happening
in the Patent and Trademark Office and in
this case we had the functional equivalent of
a patent application. That's what we've go
[sic] going on from our standpoint. From his
standpoint, it's much better. In the case of

956-35.33                      - 15 -
/rz

a normal patent application, it's kept in secrecy in the Patent and Trademark Office. I prosecute it without having the public in any fashion know about what is taking place. That's a normal patent application.

In this case, Mr. Seidel is free to give the Patent and Trademark Office all the prior art that he knows of and all the arguments that he knows of and he is free to participate in this patent application. It may never issue.

THE COURT:    Do you agree with that, Mr. Seidel?

MR. SEIDEL:    No, sir. That's the ---he set up a straw man and it's completely phoney. All I can do, Your Honor, is file one (1) piece of paper and tell the office--Here's the art. That's called a protest. It's in our ...

THE COURT:    Well, that one (1) piece of paper, if it's the prior art could be ...

MR. SEIDEL:    I can't argue. I can't participate. I can't do a darn thing.

THE COURT:    I understand you have limited access to the Patent Office.

MR. SEIDEL:    Just that. The Patent Office itself said in the notice that this is miniscule and that's the reason they dropped on ruling on inequitable conduct. The position you could take in a reissue proceeding to simply file this one (1) piece of paper one time.

MR. CARLSON:    Well, I wouldn't call it one (1) piece of paper, Your Honor, it's is his best case that he could possibly make with respect to the issue of whether claims ought to be allowed. It is exactly what it is.

MR. SEIDEL:    But the case I am talking about, Your Honor, is not that case at all. It's the inequitable conduct which only this court can pass on.

THE COURT: Well, I grant you only I can, the question is whether I have jurisdiction to do it.

*I must say you have presented your client's best position as attractively as you possibly could. I don't tend to agree with you right now, although as a practical matter, I can understand the frustration because it does seem to me that the likelihood exists that there will be a continuing controversy ultimately resolved in the format of some Declaratory Judgment action or infringement action either here or someplace else. So there is that peculiarity of this case where there is a reasonable likelihood or apprehension of suit but not on these claims.*

Alright, gentlemen, I have to move on and I thank you for your arguments and your submissions and I will issue an order shortly.

Thank you, gentlemen. (Emphasis added) (A450-455)

From the above it is clear that the District Court Judge dismissed this action despite his conclusion that a reasonable apprehension existed with regard to litigation and Fuller's '366 patent claims. By his dismissal notwithstanding his conclusion, reversible error was committed.

The history of this case, the 128 docket entries and Fuller's conduct in asserting its ownership of the '366 patent, clearly demonstrate that Fuller's prime purpose was to have this case dismissed while at the same time continue its *in terrorem* tactics.

In short, Fuller has managed to circumvent the major purpose of the Declaratory Judgment Act, multiplying motions in

956-35.33
/rz

- 17 -

an attempt to grind a small competitor into the ground.   This
should not be permitted, and the District Court's dismissal of
this action should be reversed.

From a practical standpoint, and given the uncontro-
verted evidence of inequitable conduct in the prosecution of this
patent, it makes much more sense to permit this case to go
forward in the District Court on that issue alone.   Discovery on
this issue could be quickly accomplished and this facet of the
case could be tried in two or three days' time.   The chances are
that such a trial would result in a finding of inequitable
conduct and the cancellation of the '366 patent. Such a result,
it is submitted, would be much more efficient and less wasteful
of scarce judicial and Patent and Trademark Office resources.

As will be seen, the procedures presently employed by
the Patent and Trademark Office preclude any consideration of
inequitable conduct during the reissue prosecution of this
patent.   The Patent and Trademark Office has taken the position
that inequitable conduct can only be determined by the District
Court.   Furthermore, this Court has squarely held that a reissue
patent cannot purge inequitable conduct.   For this reason alone,
the District Court committed reversible error in dismissing this
action and in failing to address the very substantial allegations
of inequitable conduct.

956-35.33
/rz

- 18 -

## VIII. SUMMARY OF THE ARGUMENTS

The Court below committed reversible error by failing to recognize that a case or controversy continued to exist between the parties. Specifically, it was apparent that Spectronics and its customers continued under a reasonable apprehension that Fuller would assert its rights under the patent at some point in time and that such a probability persisted despite the reissue application and the "Statement of Nonliability". At the very least, there was a sufficient quantum of evidence of reasonable apprehension to preclude the drastic denouement of dismissal.

It was reversible error for the District Court to conclude that the '366 patent became a "dead letter" by virtue of the reissue application and the "Statement of Nonliability". The District Court should have recognized that the '366 patent is merely in limbo, and may be resurrected at some future time, albeit in reduced form. Meanwhile, it operates as a sword of Damocles above Spectronics and its customers.

The very real prospect of continued in terrorem tactics by Fuller, coupled with the clearly fraudulent pattern of conduct in prosecution of the '366 patent, which fraud can only be determined by the District Court, clearly indicated that a justiciable controversy survived despite the reissue application and the "Statement of Nonliability".

956-35.33
/rz

- 19 -

Spectronics urges this Court to recognize that a patent holder may not turn aside the main purpose of the Declaratory Judgment Act by resort to any legal maneuvering short of voluntary cancellation of the patent or dedication of the patent to the public.

Spectronics also requests this Court to rule that where a declaratory judgment action implicates evidence of inequitable conduct in prosecution of a patent, the District Court should retain jurisdiction since it is the <u>only</u> forum where such issues can be determined especially where, as here, a possibility exists that the patent holder will attempt further enforcement of the patent against the plaintiff and its customers.

956-35.33
/rz                                        - 20 -