# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY PATENT LITIGATION | No. 04-MDL-01592<br><br>This Document Relates To All Actions. |

**SUPPLEMENTAL MEMORANDUM OF LAW REGARDING
A NEW CASE RESPONSIVE TO THE COURT'S OCTOBER 4, 2004 ORDER**

In its October 4, 2004, Order, the Court requested that the parties inform the Court of additional caselaw regarding whether a court has discretion to decline to hear declaratory judgment claims. (MDL Docket No. 135). Last week, after the date of the parties' submissions, the United States Court of Appeals for the Federal Circuit decided *Capo, Inc. v. Dioptics Medical Products, Inc.*, No. 04-1045 (Fed. Cir. Oct. 25, 2004) (attached hereto at Tab A), in which it reversed a court's discretionary dismissal of a declaratory judgment action. Plaintiffs Biogen Idec MA, Inc. and Genzyme Corporation respectfully submit this supplemental memorandum to bring this case to Court's attention.

In the *Capo* case, the president of patentee Dioptics Medical Products, Inc. ("Dioptics") threatened Capo, Inc. ("Capo") with an infringement suit. Capo sought a declaration of noninfringement of Dioptics' patents, and Dioptics moved to dismiss for lack of subject matter jurisdiction. *See* slip op. at 3. Although the district court found that an actual controversy existed, it exercised its discretion to decline jurisdiction, finding that it was a "close question" whether Capo had a reasonable apprehension of an infringement suit. *See id.* at 4.

The Federal Circuit reversed, holding that the district court abused its discretion when it declined to exercise jurisdiction over the case. First, the Court addressed the argument that

jurisdiction should be declined because Dioptics did not have sufficient information about Capo's product to bring an infringement action. Dioptics' claim that it could not ethically have filed suit based upon the information it had at the time did not change the fact that its president's statements had given Capo an objective apprehension of suit. Next, the Court considered Dioptics' argument that the declaratory judgment action should be dismissed because it had not filed a counterclaim for infringement. The Court noted that the time for filing counterclaims had been extended and that, in response to discovery requests, Dioptics had not denied infringement but merely stated that it had "no opinion" as to whether Capo's product infringed any of the patents in suit at the time. *Id.* at 8. In these circumstances, Dioptics could not avoid a declaratory judgment action "by refusing to file the counterclaim." *Id.*

Third, the Court considered Dioptics' argument that jurisdiction should be *declined* because Dioptics "had pending patent applications that upon issuance would strengthen its case for infringement." *Id.* at 9. Dioptics intimated that it would not file an infringement suit until its case against Capo was made stronger by the issuance of new patents, and suggested that the district court should decline to exercise jurisdiction until those new patents issued. *Id.* at 4, 9. The Federal Circuit flatly rejected the argument that the suit should not go forward until future patents issued, explaining that, given the controversy over the existing patents, it was error to rely upon the future patents as "a reason for declining to resolve Capo's present liability."[1] *Id.*

In reversing the lower court's dismissal of the case, the Federal Circuit explained that a district court must have "well-founded reasons for declining to entertain a declaratory judgment action." *Id.* at 6. While a judge has discretion, it must be exercised in a way that "would 'serve

---

[1] Whether the pending patent applications themselves provided further reason to *exercise* jurisdiction was not at issue and was not addressed by the Federal Circuit. Unlike the plaintiffs in this MDL proceeding, the declaratory judgment plaintiff in *Capo* was not arguing that pending patent applications provided an additional reason to exercise jurisdiction.

the objectives for which the Declaratory Judgment Act was created.'" *Id.* at 6; *see also id.* at 10 (objectives include "clarifying and settling the legal relations in issue" and "afford[ing] relief from uncertainty, insecurity, and controversy") (quoting Edwin Borchard, *Declaratory Judgments* 299 (2d ed. 1941)). "[W]hen these objectives are served, dismissal is rarely proper." *Id.* at 6. Where a dispute meets the Article III threshold, it is the district court's responsibility to resolve it, and for the district court to decline to do so is an abuse of discretion. *Id.* at 11.

Dated: _____  Respectfully submitted,

_____
Donald R. Ware (BBO # 516260)
Claire Laporte (BBO # 554979)
Sarah Cooleybeck (BBO # 631161)
Carla Miriam Levy (BBO # 654212)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
Attorneys for BIOGEN IDEC MA INC. and
  GENZYME CORPORATION