# Exhibit A

                                                                    1

                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


BIOGEN, INC., ET AL            )   CA 03-11329
                               )   Boston, MA
v.                             )   June 22, 2004
                               )
COLUMBIA UNIVERSITY, ET AL     )


              BEFORE THE HONORABLE MARK L. WOLF
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

(As previously noted.)








                    JUDITH A. TWOMEY, RPR
                    Official Court Reporter
                      One Courthouse Way
                   Courtroom 10~Room 5200
                      Boston, MA 02210
                       (617)946-2577

1    MR. GINDLER: That's correct.
2    THE COURT: Have you completely and finally
3    identified all of the claims that you want reissued?
4    MR. GINDLER: Well, the answer is yes, based
5    upon the state of proceedings. What happens next is
6    patent prosecution. The Patent Office will then write
7    back and say, claims allowed or not allowed. And if not
8    allowed, here's why. And then we have a chance to meet
9    that office action by possibly changing the language of
10   the claims or any new claims.
11   THE COURT: So how long is this process of
12   reissuance and reexamination going to take?
13   MR. GINDLER: It will probably take between one
14   and two years. I think that's a fair assessment. I'm
15   not sure people disagree very much about that, but that's
16   just how long it's going to take the Patent Office to do
17   it. The Patent Office will expedite. It's part of the
18   rules. The Patent Office will speed things up if we have
19   stayed litigation, because they know there's a lot of
20   people in the green room waiting to see what's going to
21   happen. But why should we have a case for construing
22   claims that might be wiped out by the Patent Office or we
23   may get new claims or the claims may be amended and
24   narrowed. We don't know what we're fighting about. And
25   that's the difference. The Patent Office is a

90

```
 1    fundamentally different forum.  What they're doing is
 2    reconsidering the '275 patent all over again.  They're
 3    saying, let's start from scratch.  Do you get any of
 4    these claims?  Do you get some of them, but only
 5    modified?  Or can you get new claims which better
 6    describe the subject matter of the invention?  That's why
 7    the Patent Office is different.  We can have a hearing
 8    here on summary judgment.  The plaintiffs can win and
 9    validate all the claims.  But why?  Because which claims
10    will emerge?  Which claims will be narrowed?  Which
11    claims will be added?  It is a tremendous waist of
12    resources, both of the parties and of the court to do
13    that.  We didn't bring this on, you're right.  Something
14    called Public Patent Foundation brought this on.  It was
15    a surprise to us.  But they did it.  And now the question
16    is what's the most efficient thing to do?
17            THE COURT:  Well, they did part of it.  They
18    asked for the reexamination.  They didn't ask for the
19    reissuance.
20            MR. GINDLER:  That's correct.  But it's very
21    common to ask for reissue, and that's why there's a
22    procedure to merge the two proceedings when someone asks
23    for a reexamination.  But it both happened together on
24    the same track by the same examiner so nothing gets
25    slowed down.  That's what we want to happen.  We want
```

91

```
 1    this done quickly in the Patent Office too.  We want to
 2    know what rights we do and do not have.  But we don't
 3    know the answer to that question right now, and that's
 4    fundamentally why this case can't go for.  This case is a
 5    fight about the '275 patent.  How can you fight about
 6    that patent if we don't know what it claims?
 7              THE COURT:  We know what it claims.
 8              MR. GINDLER:  We know what it claims today --
 9              THE COURT:  It might change.
10              MR. GINDLER:  -- but we don't know what's going
11    to happen, and that's the fundamental issue.
12              THE COURT:  Isn't it time to know what the --
13    isn't it time to know what they patents -- the first
14    application was filed in 1980, right?
15              MR. GINDLER:  That's correct.
16              THE COURT:  And if we had the current law, the
17    longest any of these patents could have run would be
18    2000.
19              MR. GINDLER:  Also correct.
20              THE COURT:  So now --
21              MR. GINDLER:  And the Patent Office --
22              THE COURT:  I mean, you're grandfathered in by
23    one day.  You know, we have an expression in public
24    policy by Congress and the President that, you know, you
25    get 20 years to do this, and anything more than that is
```

92

1   abusive. And they tell me -- you know, you're standing
2   here and predicting one to two years, but you're not
3   prosecuting this in the Patent Office. That's Mr. White.
4           MR. GINDLER: That's correct.
5           THE COURT: And Mr. White is in there and, in
6   effect, confessing error. He's saying, I've been
7   prosecuting this for 24 years and here it is, June 2004.
8   I realize I didn't claim enough. I mean, if he did such
9   a lousy job, why didn't Columbia fire him and get
10  somebody who can articulate the claims as they should
11  have been articulated 24 years ago?
12          MR. GINDLER: I don't think he did a lousy job.
13  When a patent is issued, it's not uncommon for the patent
14  court, look at the patent and say, I wish I had done a
15  better job in that claim. And people often leave it
16  alone, and they leave it alone because if you go back to
17  the Patent Office and you seek reissue, it's a whole new
18  ball game. You put the entire patent at risk. Well,
19  since that's already happened, since reexamination was
20  filed, it makes sense for us to go back and try and
21  figure out what the proper scope of the claims is.
22          THE COURT: I want to hear Biogen and Genzyme's
23  response, but I have to decide this based on the record.
24  You know, with what's in the record, you're making a
25  great argument, but, you know, I'm looking at this, and