# EXHIBIT A

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky, SBN 116731
Kevin S. Rosen, SBN 133304
DoHoang T. Duong, SBN 219127
2029 Century Park East, Ste. 4000
Los Angeles, California 90067
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

Attorneys for Defendant The Trustees of
Columbia University in the City of New York

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| IMMUNEX CORPORATION, a Washington corporation and AMGEN INC., a Delaware Corporation,<br><br>      Plaintiffs,<br><br>      v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY, a New York corporation,<br><br>      Defendant. | Case No. CV 03-4349 MRP (CWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER**<br><br><br>Date:   November 17, 2003<br>Time:  10:00 a.m.<br>Ctrm:  Hon. Mariana R. Pfaelzer |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT .................................................................. 1

II.  PROCEDURAL HISTORY .................................................................... 4

III.  ARGUMENT .......................................................................................... 6

   A.  THIS ACTION SHOULD BE TRANSFERRED TO THE
       NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28
       U.S.C. § 1404(a) ........................................................................... 6

       1.  The Interest Of Justice Mandates That This Action Be
           Transferred To The Northern District of California ................ 6

           a.  This Action Should Be Transferred To Avoid Wasteful
               And Duplicative Litigation ............................................. 8

           b.  The Ability To Consolidate These Cases In The
               Northern District of California Strongly Supports
               Transfer To That District ............................................ 12

       2.  The Convenience Of Witnesses Favors Transfer ................... 13

       3.  Plaintiffs' Choice Of Forum Is Entitled To Little Weight ........... 14

       4.  Plaintiffs Could Have Brought This Action In The Northern
           District Of California ............................................................ 15

   B.  ALTERNATIVELY, THE DOCTRINE OF COMITY REQUIRES
       THE TRANSFER OF THIS CASE TO THE FORUM OF THE
       EARLIER-FILED ACTION ........................................................... 17

   C.  THE NORTHERN DISTRICT OF CALIFORNIA IS THE
       PROPER FORUM FOR THIS ACTION ........................................ 21

IV.  CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.J. Indus., Inc. v. United States Dist. Ct.*,
503 F.2d 384 (9th Cir. 1974) ....................................................................... 13

*A.P.T., Inc. v. Quad Environmental Technologies Corp., Inc.*,
698 F. Supp. 718 (N.D. Ill. 1988) .................................................................. 9

*Arcement v. Velocity Powerboats, Inc.*,
1998 WL 219620 (E.D. La. Apr. 30, 1998) .................................................. 24

*Biochem Pharma, Inc. v. Emory University*,
148 F. Supp. 2d 11 (D.D.C. 2001) ................................................................ 11

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ........................................................................ 24

*Carus Corp. v. Greater Texas Finishing Corp.*,
1992 WL 22691 (N.D. Ill. Jan. 31, 1992) ................................................ 8, 11

*Central Money Mortgage Co. v. Holman*,
122 F. Supp. 2d 1345 (M.D. Fla. 2000) ....................................................... 13

*Centreville Alf, Inc. v. Balanced Care Corp.*,
197 F. Supp. 2d 1039 (S.D.N.Y. 2002) ........................................................ 18

*Church of Scientology v. United States Dep't. of the Army*,
611 F.2d 738 (9th Cir. 1979) ............................................................. 3, 19, 20

*Cianbro Corp. v. Curran-Lavoie, Inc.*,
814 F.2d 7 (1st Cir. 1987) ............................................................................. 13

*Clear Lam Packaging, Inc. v. Rock-Tenn Co.*,
2003 WL 22012203 (N.D. Ill. Aug. 22, 2003) ....................................... 11, 16

*Codex Corp. v. Milgo Electronic Corp.*,
553 F.2d 735 (1st Cir. 1977) .......................................................................... 7

*Coffey v. Van Dorn Iron Works*,
796 F.2d 217 (7th Cir. 1986) ............................................................. 2, 8, 13

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800, 96 S. Ct. 1236 (1976) ............................................................ 19

*Continental Grain v. The Barge FBL-585*,
364 U.S. 19, 80 S. Ct. 1470 (1960) .......................................................... 9, 15

*Countryman v. Stein Roe & Farnham*,
681 F. Supp. 479 (N.D. Ill. 1987) ................................................................ 13

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) .......................................................................... 7

*Duplan Corp. v. Deering Milliken, Inc.*,
324 F. Supp. 102 (S.D.N.Y. 1970) ............................................................... 11

*Faigenbaum Machinery, Inc., v. Scott & Williams, Inc.*,
344 F. Supp. 1267 (S.D.N.Y. 1972) .............................................................. 11

*Fluor Corp. v. Pullman, Inc.*,
446 F. Supp. 777 (W.D. Okl. 1977) ................................................... 12, 14, 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
### [Continued]

Page(s)

*Genentech, Inc. v. Eli Lilly and Co.,*
998 F.2d 931 (Fed. Cir. 1993) ...................................................23

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.,*
179 F.R.D. 264 (C.D. Cal. 1998)................................................21

*Hoffman v. Blaski,*
363 U.S. 335, 80 S. Ct. 1084 (1960)..........................................17

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.,*
342 U.S. 180, 72 S. Ct. 219 (1952)............................................19

*Lizardtech, Inc. v. Earth Resource Mapping,*
2001 U.S. Dist. Lexis 24298 (W.D. Wash. Mar. 26, 2001) ............20

*London & Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.,*
1999 WL 479013 (N.D. Cal. Aug. 14, 1996) .....................2, 7, 12

*Magnavox Co. v. APF Electronics, Inc.,*
496 F. Supp. 29 (N.D. Ill. 1980).................................................12

*Mann Mfg, Inc. v. Hortex, Inc.,*
439 F.2d 403 (5th Cir. 1971) .....................................................21

*Marshak v Reed,*
2000 WL 33152076 (E.D.N.Y. Oct. 17, 2000) ......................21, 22

*O'Hopp v. Contifinancial Corp.,*
88 F. Supp. 2d 31 (E.D.N.Y. 2000) ............................................24

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982) ...................................19, 20, 22, 23

*Peak v. Green Tree Financial Servicing Corp.,*
2000 U.S. Dist. Lexis 9711 (N.D. Cal. July 7, 2000)....................23

*Recycling Sciences Int'l, Inc. v. Restoration and Recycling LLC,*
159 F. Supp. 2d 1095 (N.D. Ill. 2001)......................................8, 9

*Regents of the University of California v. Eli Lilly & Co.,*
119 F.3d 1559 (Fed. Cir. 1997) .................................................14

*Sae Getters S.p.a. v. Aernoex, Inc.,*
219 F. Supp. 2d 1081 (S.D. Cal. 2002).......................................12

*Save Power Limited v. Synteck Finance Corp.,*
121 F.3d 947 (5th Cir. 1997) ...............................................20, 21

*Seattle Audubon Soc'y v. Lyons,*
871 F. Supp. 1286 (W.D. Wash. 1994) .......................................23

*Serlin v. Arthur Anderson & Co.,*
3 F.3d 221 (7th Cir. 1993) ...................................................19, 20

*Thomas & Betts Corp. v. Hayes,*
222 F. Supp. 2d 994 (W.D. Tenn. 2002) .....................................24

*Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc.,*
833 F. Supp. 882 (M.D. Fla. 1993)..............................................23

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
## [Continued]

Page(s)

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,*
  751 F.2d 721 (5th Cir. 1985) .................................................................. 19

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286, 100 S. Ct. 551 (1980).......................................................... 18

*Wright v. Jackson,*
  505 F.2d 1229 (4th Cir. 1974) ................................................................. 20

*Wyndham Associates v. Bintliff,*
  398 F.2d 614 (2d Cir. 1968) ..................................................................... 8

## Statutes

28 U.S.C. § 1331 ............................................................................................ 16

28 U.S.C. § 1338(a) ....................................................................................... 16

28 U.S.C. § 1391(b)(1)................................................................................... 17

28 U.S.C. § 1391(c) ....................................................................................... 17

28 U.S.C. § 1404(a) ............................................................................... *passim*

28 U.S.C. § 1407............................................................................................ 13

28 U.S.C. § 2201(a) ....................................................................................... 16

28 U.S.C. § 2202 ........................................................................................... 16

Cal. Civ. Proc. Code § 410.10 ....................................................................... 16

Federal Rule of Civil Procedure 42 ............................................................... 12

## Other Authorities

*Moore's Federal Practice* § 111.13[1][n] (3rd ed. 2000)............................ 7, 15

Wright, Miller & Cooper, *Federal Practice and Procedure* § 3849 (1986) ............... 15

Wright, Miller & Cooper, *Federal Practice and Procedure* § 3854 (1986) ................. 7

Gibson, Dunn &
Crutcher LLP

## I.    PRELIMINARY STATEMENT

By this action, two pharmaceutical companies challenge a patent issued to The Trustees of Columbia University in the City of New York ("Columbia University") that pertains to the manufacture of various drugs used to treat many serious medical conditions.  The plaintiffs here seek a declaratory judgment that Columbia University's patent is invalid and unenforceable based on theories of "double patenting," "prosecution laches," and "inequitable conduct."  That same patent, and those same theories of invalidity and unenforceability, form the basis of lawsuits seeking identical declaratory relief filed by other pharmaceutical companies against Columbia University in the Northern District of California and the District of Massachusetts.

As a result of these actions, the federal judiciary and Columbia University are faced with the specter of three lengthy and complex trials, each of which purportedly will determine the validity and enforceability of Columbia University's patent.  For the federal judiciary, this portends a colossal waste of scarce judicial resources, the danger of inconsistent rulings (both evidentiary and substantive) at trial, and the unseemliness of inconsistent findings of fact and inconsistent judgments.  Indeed, what will happen, for example, if one court finds Columbia University's patent valid and enforceable and rejects plaintiffs' theories of invalidity, while another court accepts one of those same theories and finds the patent invalid and unenforceable?

For the relevant witnesses who invented the process covered by the patent, who prosecuted the patent, who authored significant prior art, and who will serve as experts, as well as for Columbia University, these multiple actions would require them to expend the time and resources to address at trial the same patent and refute the same defenses to the validity of that patent in three different judicial districts.  For Columbia University, the considerable unfairness in having to defend three separate trials is not limited to burden and expense.  Rather, this state of affairs effectively gives the various pharmaceutical companies who brought these actions across the United States multiple

Gibson, Dunn & Crutcher LLP

"bites at the apple" with the anticipated effort to invoke the doctrine of offensive collateral estoppel in the unlikely event that one of them is successful.

Fortunately, the federal judiciary in general, and this Court in particular, are not condemned to this undesirable fate by the actions of the various pharmaceutical plaintiffs. Both the federal statute authorizing the transfer of actions among district courts (28 U.S.C. § 1404(a)) and the doctrine of comity provide this Court with discretion to do what makes sense here – have this case consolidated for all purposes with the other cases challenging the same patent based on the same theories. [1] While there are many factors in a § 1404 analysis, the interest of justice factor is paramount. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986) (The interest of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result."); *accord London & Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.*, 1999 WL 479013, *5 (N.D. Cal. Aug. 14, 1996); *Recycling Sciences Int'l, Inc. v. Restoration and Recycling LLC*, 159 F. Supp. 2d 1095, 1101 (N.D. Ill. 2001). Here, as in countless cases involving multiple actions concerning the same patent, *see infra* note 8, application of this factor mandates that this action be transferred so that it can be consolidated with the related lawsuits currently pending in the Northern District of California and the District of Massachusetts. This procedural mechanism will promote the interest of justice by eliminating the risk of inconsistent adjudications, minimizing the inconvenience to witnesses, and avoiding duplication of effort.

Likewise, and independently, the federal doctrine of comity compels the transfer of this case. In that regard, the advice of the Ninth Circuit is compelling.

---

[1] Columbia University has filed a similar motion to transfer in the cases pending in the District of Massachusetts.

Gibson, Dunn & Crutcher LLP

In its classic formulation, the comity doctrine permits a district court to decline jurisdiction over a matter if a complaint has already been filed in another district.

* * * *

When considering issues raised by the comity doctrine, however, courts are not bound by technicalities. The Supreme Court in *Kerotest Manufacturing Company, supra,* noted that the handling of multiple litigation involving the same subject matter does not lend itself to " . . . rigid mechanical solution. . . . " 342 U.S. 180, 183, 72 S. Ct. 219, 221, 96 L. Ed. 200. Citing *Kerotest Manufacturing*, the Eighth Circuit observed in *Florida v. United States*, 285 F.2d 596 (8th Cir. 1960) that "(t)here is no rigid or inflexible rule for determining priority of cases pending in federal courts involving the same subject matter."

The purpose of the comity principle is of paramount importance. The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.

*Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 749-50 (9th Cir. 1979).

There is no procedural mechanism to achieve a consolidated trial unless all of the related actions are pending within a single district. While the Multidistrict Litigation rules provide a means for the coordination of pre-trial proceedings, such as discovery, they do not provide a means for the consolidation of trial proceedings. On the contrary, the Multidistrict Litigation rules specifically provide that related cases shall be returned to their respective districts for trial.

The general rule is that related cases involving substantially similar issues should be transferred to the forum where the first related case was filed. Accordingly,

Gibson, Dunn & Crutcher LLP

3

Columbia University is filing this Motion to Transfer, as well as a Motion to Transfer the cases pending in the District of Massachusetts, to the Northern District of California. That is the district where the first action was filed. Indeed, the Court in the Northern District of California has delayed the beginning of the scheduled events under its local rules governing patent cases so that the four cases will stay in similar procedural positions while these motions are heard. Because the Northern District of California has developed a special set of local rules governing patent cases, it is particularly well-suited to manage these four complex patent cases.

Judicial economy, the paramount policy of avoiding inconsistent determinations, convenience of witnesses, and fairness to Columbia University, when taken together, strongly militate in favor of transferring this matter to the Northern District of California. Based on the compelling reasons noted above, and as explained more fully below, Columbia University respectfully requests that this Court transfer this case to the Northern District of California.

## II.    PROCEDURAL HISTORY

There are currently four related actions pending in three different judicial districts against Columbia University challenging the validity and enforceability of U.S. Patent No. 6,455,275 (the "'275 Patent"), which was issued to Columbia University on September 24, 2002. All of these actions were filed by pharmaceutical companies that entered into long-term agreements with Columbia University pursuant to which they licensed certain patent rights (including the '275 Patent) in exchange for royalties.

The first action was filed by Genentech, Inc. in the Northern District of California on April 15, 2003, and was assigned to The Honorable Vaughn R. Walker (Case No. C 03-1603-VRW). (Ex. A.)[2] Columbia University filed its answer on

---

[2] The exhibits are attached to the accompanying Declaration of DoHoang Duong. Page numbers refer to those in the bottom center of the exhibit.

Gibson, Dunn & Crutcher LLP

July 14, 2003. (Ex. B.) The second action was filed in this Court on June 18, 2003. (Ex. C.) Columbia University was served with a copy of the complaint on September 25, 2003, and the parties have stipulated to an extension until October 30, 2003, for Columbia University to file a responsive pleading. (Ex. D.) This Court has not scheduled a Case Management Conference.

In addition, there are two actions filed in the District of Massachusetts against Columbia University. One action was filed by Biogen, Inc., Genzyme Corp., and Abbott Bioresearch Center, Inc. on July 15, 2003 (Case No. 03-CV-11329 MLW). (Ex. E.) The other action was filed by Wyeth and its subsidiary Genetics Institute LLC on August 20, 2003 (Case No. 03-CV-11570 MLW). (Ex. F.) Both cases are assigned to The Honorable Mark L. Wolf. Columbia University filed its answer in the Biogen action on September 5, 2003. Columbia University's answer is due in the Wyeth action on November 24, 2003. Columbia University has moved to transfer both of the Massachusetts actions to the Northern District of California. No Case Management Conference has been scheduled in either of the Massachusetts actions.

On October 7, 2003, Judge Walker held a case management conference in the Genentech case. At this conference, Columbia University indicated that it intended to move to transfer the Biogen, Wyeth and Amgen cases to the Northern District of California. (Gindler Decl. ¶ 3.) In response to this, Judge Walker delayed by sixty days the first scheduled event under the Northern District of California Patent Local Rules. (Id. ¶ 4.) None of the formal events that lead to claim construction will occur in the Genentech case until December 2003. Judge Walker indicated that he adopted this schedule to allow time for a resolution of Columbia University's motions to transfer, including this one. (Id.)

The complaints in every one of the foregoing cases seek identical relief—a judicial declaration that the '275 Patent is invalid and unenforceable—and cite essentially the same grounds for the requested relief. First, each complaint alleges that

Gibson, Dunn &
Crutcher LLP

the '275 Patent is invalid and unenforceable for "double patenting."[3]  Second, each complaint alleges that the '275 Patent is invalid and unenforceable because of "prosecution laches."[4]  Third, each complaint alleges that the '275 Patent is invalid and/or unenforceable due to "inequitable conduct."[5]  Finally, each complaint seeks a declaration that no royalties are owed to Columbia University due to the alleged invalidity and unenforceability of the '275 Patent.[6]

Even the plaintiffs here admit the close similarity between the cases:  Amgen and Immunex identified all of the other cases as related actions pursuant to C.D. Cal. L.R. 83-1.4.  (Ex. G.)

## III.    ARGUMENT

## A.    THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  This Court has considerable discretion in deciding whether to transfer a case under § 1404(a).  *See, e.g., Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 739-40 (1st Cir. 1977).

### 1.    The Interest Of Justice Mandates That This Action Be Transferred To The Northern District of California

When analyzing whether transfer is appropriate, the Court may consider a number of factors derived from the statutory language.  These considerations include

---

[3]  Ex. E at 70; Ex. F at 90; Ex. I at 179; First Amended Complaint ("FAC") ¶¶ 64-69 (in the Court's file).

[4]  Ex. E at 70-71; Ex. F at 90-91; Ex. I at 180; FAC ¶¶ 70-75.

[5]  Ex. E at 71; Ex. F at 91-92; Ex. I at 180-84; FAC ¶¶ 76-80.

[6]  Ex. E at 70, 80; Ex. F at 99-100; Ex. I at 184-85; FAC ¶¶ 59-63.

not only private interest factors such as the convenience of the parties and witnesses,
but also public interest factors collectively described as the "interest of justice."
*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)
(discussing private and public factors).

*"The most important factor to consider is the 'interest of justice'"* when a
*Court undertakes a § 1404 transfer analysis. London & Hull Maritime Ins. Co. Ltd.*
*v. Eagle Pacific Ins. Co.*, 1999 WL 479013, *5 (N.D. Cal. Aug. 14, 1996) (quoting 15
Wright, Miller & Cooper, *Federal Practice and Procedure* § 3854) (emphasis added).
The "interest of justice" includes a variety of "public interest factors relating to the
efficient administration of the court system, such as the interests of conserving judicial
resources . . . [and] avoiding court congestion." 17 James W. Moore et al., *Moore's*
*Federal Practice* § 111.13[1][n], at 89 (3rd ed. 2000). The interest of justice factors
also include the elimination of duplicative and wasteful litigation, the possibility of
consolidating a case with a related action pending in another district, and the need to
avoid inconsistent rulings by different judges deciding the same factual and legal
issues in different districts. *See, e.g., Wyndham Associates v. Bintliff*, 398 F.2d 614,
619 (2d Cir. 1968) ("There is a strong policy favoring the litigation of related claims in
the same tribunal in order that pretrial discovery can be conducted more efficiently,
duplicative litigation can be avoided, thereby saving time and expense for both parties
and witnesses, and inconsistent results can be avoided.").

As noted above, the interest of justice factor will frequently override the private
interest factors weighing against transfer under § 1404.[7] *Coffey v. Van Dorn Iron*

---

[7] *See Recycling Sciences Int'l, Inc. v. Restoration and Recycling LLC*, 159 F. Supp.
2d 1095, 1101 (N.D. Ill. 2001) ("The interests of justice may be determinative to a
particular transfer motion even if the convenience of the witnesses and parties
might call for a different result."); *Medi USA v. Jobst Institute, Inc.*, 791 F. Supp.
208, 211 (N.D. Ill. 1992) (same); *Carus Corp. v. Greater Texas Finishing Corp.*,
1992 WL 22691, *2 (N.D. Ill. Jan. 31, 1992) (concluding that "the interests of
justice far outweigh the interest of Carus in a more convenient forum"); *Magnavox*
*Co. v. APF Electronics, Inc.*, 496 F. Supp. 29, 34 (N.D. Ill. 1980) ("[T]he most
[Footnote continued on next page]

Gibson, Dunn &
Crutcher LLP

*Works*, 796 F.2d 217, 220 (7th Cir. 1986) (The interest of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result."). *Carus Corp. v. Greater Texas Finishing Corp.*, 1992 WL 22691 (N.D. Ill. Jan. 31, 1992), is instructive. There, the court acknowledged that "all of Carus's witnesses and documents regarding this suit are located in Ottawa, Illinois, and transfer to New York would be an added expense for it," and that transferring the case to the district where three related patent cases were already pending would simply shift the burden of inconvenience from Greater Texas to Carus. *Id.* at *2. Noting that "[t]he most compelling factor in determining the appropriateness of transfer is the interest of society in the efficient administration of justice" and that "[f]ailure to transfer this case would lead to duplicative judicial effort requiring two courts to resolve the same [complex technical and legal] issues," the court granted the transfer motion. *Id.* In *Recycling Sciences Int'l, Inc. v. Restoration and Recycling LLC*, 159 F. Supp. 2d 1095 (N.D. Ill. 2001), the court used similar logic to deny a motion to transfer even though the convenience of the parties favored transfer, because "the interests of justice weigh more heavily in favor of retaining jurisdiction." *Id.* at 1101 (reasoning that "transfer of this one defendant would lead to a duplication of the case and would likely lead to delay"). Here, as in *Carus Corp.*, the interest of justice factors are determinative and mandate the transfer of this action to the Northern District of California, where the first of these related cases was filed.

### a. This Action Should Be Transferred To Avoid Wasteful And Duplicative Litigation

Where related lawsuits have been instituted in different districts, it is in the interest of justice to permit such suits to proceed before one court rather than simultaneously before multiple tribunals. As the United States Supreme Court

---

[Footnote continued from previous page]
compelling factor in determining the appropriateness of transfer is the interest of society in the efficient administration of justice.").

explained: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain v. The Barge FBL-585*, 364 U.S. 19, 26, 80 S. Ct. 1470, 1474 (1960). Thus, the "interest of justice" prong of the § 1404(a) analysis directs courts to transfer related cases to facilitate the efficient adjudication of similar issues in a single forum. *See A.P.T., Inc. v. Quad Environmental Technologies Corp., Inc.*, 698 F. Supp. 718, 723 (N.D. Ill. 1988) ("As a general proposition, cases should be transferred to districts where related actions are pending"; transferring later-filed patent action to related action pending in the Northern District of California).

The Fourth Circuit's decision in *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361 (4th Cir. 1967), is directly on point. There, the Court of Appeals considered the ramifications of permitting multiple lawsuits on the validity of the same patent to proceed simultaneously in different districts. The patent holder (General Tire) filed a patent infringement action against two manufacturers in Ohio. A third manufacturer brought a declaratory judgment suit in Maryland charging that the same patent was invalid and unenforceable. *Id.* at 363. The district court denied General Tire's motion to transfer the later-filed Maryland case to Ohio. Citing the complexity and similarity of the factual issues involved in the case, the Court of Appeals reversed, concluding that the Maryland action should be transferred to Ohio under § 1404(a) "to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues." *Id.* at 362; *see also id.* at 368 ("Certainly the simultaneous trial of two suits in different circuits involving a number of identical questions of fact and law would result in a useless waste of judicial time and energy.").

Since *General Tire* was decided, numerous federal courts have approved motions to transfer involving multiple parties in patent litigation with similar issues, where one party is either prosecuting or defending a patent claim in each forum, to

avoid wasteful duplication and possible inconsistent rulings. For example, in *Impra, Inc. v. Quinton Instruments Co.*, No. CIV-90-0383 PHX WPC, 1990 WL 284713 (D. Ariz. June 26, 1990), the court transferred a patent declaratory judgment action filed in Arizona to Illinois where the movant was defending the same three patents in a suit brought by another plaintiff. The court observed that "[t]he patents are being attacked on the same grounds in Illinois as they are in the present litigation." *Id.* at *3. Accordingly, transfer was warranted notwithstanding the lack of party identity. *Id.* at *2 (noting that "the related actions may involve different parties, so long as there are common issues of fact and/or law"). Many other courts have reached the same conclusion.[8]

Here, just as in *General Tire* and its progeny, the parties in each of the four actions involving the '275 Patent will litigate the same issues of patent validity and enforceability. These factual and legal issues are highly technical and complicated, and their adjudication likely will consume considerable judicial resources. The complexity of these patent issues strongly militates in favor of litigating all four related

---

[8] *See, e.g., Chan v. Brother Int'l Corp.*, No. 4:02-CV-1022-A, 2003 U.S. Dist. LEXIS 9040 (N.D. Tex. May 28, 2003) (granting defendants' motion to transfer patent infringement case to California where plaintiff had asserted the same patent against three other companies); *Biochem Pharma, Inc. v. Emory University*, 148 F. Supp. 2d 11, 14 (D.D.C. 2001) (transferring patent case to N.D. Ga. where related case had been pending); *Carus Corp.*, 1992 WL 22691 at *2 (granting Greater Texas's motion to transfer the Illinois action to New York, because "transferring this case to New York will avoid inconsistent determinations regarding the same patent"); *Fluor Corp. v. Pullman, Inc.*, 446 F. Supp. 777, 779 (W.D. Okl. 1977) (granting defendant patent owner's transfer motion because "to require Defendant to litigate the validity of the patent in suit in multiple actions and forums would be vexatious"); *Faigenbaum Machinery, Inc., v. Scott & Williams, Inc.*, 344 F. Supp. 1267, 1272 (S.D.N.Y. 1972) (transferring declaratory judgment action instituted by alleged infringers to North Carolina, where patent holder had filed a related action accusing a different party of infringing the same patent); *Duplan Corp. v. Deering Milliken, Inc.*, 324 F. Supp. 102, 103 (S.D.N.Y. 1970) ("The presence of related actions and issues in South Carolina is a persuasive reason for the decision to transfer [action for declaratory judgment of patent invalidity]. . . . The District of South Carolina is where all such disputes about the validity and enforceability of the FT license agreements can be resolved."). *Cf. Magnavox Co. v. APF Elecs., Inc.*, 496 F. Supp. 29 (N.D. Ill. 1980) (denying motion to transfer where transfer would separate patent infringement case from two others pending before the court which involved the same patent).

Gibson, Dunn & Crutcher LLP

actions in a single forum. *See Clear Lam Packaging, Inc. v. Rock-Tenn Co.*, 2003 WL 22012203, *5 (N.D. Ill. Aug. 22, 2003) (granting patent holder's motion to transfer declaratory judgment action to Georgia, where three patent infringement suits involving the same patent were pending "[t]o ensure the uniformity of the substantive rulings in this complex area of law while conserving judicial resources"); *cf. Magnavox Co. v. APF Electronics, Inc.*, 496 F. Supp. 29, 34 (N.D. Ill. 1980) (refusing to transfer one of three patent infringement actions brought on the same patent to another district because each case "involves complex technical and legal issues; transfer would result in duplicative judicial effort requiring two courts to resolve some of the same issues").

Moreover, courts have recognized the paramount importance of avoiding inconsistent verdicts, which in this case militates in favor of transfer. *See London & Hull Maritime Ins. Co. Ltd.*, 1999 WL 479013 at *5 ("If this case is not transferred, inconsistent judgments could result, which could work an injustice"); *Sae Getters S.p.a. v. Aernoex, Inc.*, 219 F. Supp. 2d 1081, 1092 (S.D. Cal. 2002) (recognizing "the importance of ensuring that the '588 and '955 patents are interpreted consistently"); *Fluor Corp. v. Pullman, Inc.*, 446 F. Supp. 777, 779 (W.D. Okl. 1977) (absent transfer "there would be a distinct possibility of inconsistent decisions by the Georgia Court in the related cases currently pending there . . .").

Rather than trying to avoid the risk of inconsistent verdicts, plaintiffs appear eager to exploit that very possibility. Indeed, plaintiffs have initiated litigation in three different districts in a *de facto* effort to gain a collective three bites at the validity apple. If these cases continue to proceed individually in different districts, and if one case eventually results in a judgment of invalidity or unenforceability, the other plaintiffs may argue that any judgment estops Columbia University from asserting the patent's validity and enforceability in any other action. On the other hand, plaintiffs will argue that they face no similar threat from Columbia University; if Columbia University obtains a judgment of validity and enforceability in any one (or more) of

the four cases, the plaintiffs in the other cases will argue that this judgment does not estop them from continuing to litigate the validity and enforceability of the '275 Patent. Only transfer and consolidation for trial in a single forum will level the playing field so that Columbia University is not forced to win the same case three times.

> **b.**  **The Ability To Consolidate These Cases In The Northern District of California Strongly Supports Transfer To That District**

Where multiple actions in different districts involve the same subject matter, the potential for consolidation is an important consideration in ruling on a motion to transfer. *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987); *A.J. Indus., Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974). Indeed, it is well established that "related litigation should be transferred to a forum where consolidation is feasible." *Coffey*, 796 F.2d at 221.[9]

The four cases currently pending against Columbia University all seek declaratory judgments of invalidity and unenforceability of the '275 Patent based on substantially similar theories. Common questions of law and fact abound in these cases, thereby making them prime candidates for consolidation in the Northern District of California. The potential for consolidation, or at least litigation of related actions in the same district, is a common basis for granting a § 1404(a) transfer. *See, e.g., General Tire*, 373 F.2d at 369 ("In view of the complex and time consuming nature of

---

[9] *See also Central Money Mortgage Co. v. Holman*, 122 F. Supp. 2d 1345, 1347 (M.D. Fla. 2000) ("Since the pending action in Maryland involves the same central issue as well as parties and witnesses as the present case, it would be more expeditious to try both cases in the same forum. Consolidation of the cases would promote judicial economy and efficiency, and avoid problems related to duplicative actions in multiple forums."); *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 484 (N.D. Ill. 1987) ("The court must decide a § 1404 transfer motion in a manner that serves the interests of justice. [citation] One important factor to consider is whether there are any similar actions pending in other federal district courts. . . . Thus, the fact that the two suits have common questions of law and fact and could practicably be consolidated pursuant to Rule 42 favors a transfer to the transferee district.").

Gibson, Dunn &
Crutcher LLP

patent cases, the advisability of consolidation is obvious."); *Fluor Corp.*, 446 F. Supp. at 779 ("to require Defendant to litigate the validity of the patent in suit in multiple actions and forums would be vexatious.").[10]

Multidistrict Litigation ("MDL") will not remedy the serious issues associated with the filing of these similar actions across the United States. Authorized by statute in 28 U.S.C. § 1407, MDL merely provides for consolidated *pretrial* treatment. Upon the completion of pretrial proceedings in MDL, § 1407(a) requires that "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." Thus, the convenience of the parties and witnesses and the interests of justice would not be served by MDL treatment because witnesses and Columbia University, as well as the federal judicial system, still would be required to participate in three separate trials of substantially the same issues in three different districts. *Cf. Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (affirming district court's transfer of case to itself for purposes of trial after consolidated pretrial proceedings).

### 2.    The Convenience Of Witnesses Favors Transfer

Because all four of the pending cases focus squarely on the '275 Patent, present substantially similar theories of invalidity and unenforceability (double patenting, prosecution laches, and inequitable conduct), and seek essentially the same relief (a declaration that the '275 Patent is invalid and unenforceable and that there is no obligation to make royalty payments under it), they will involve the same group of core witnesses: the named inventors on the '275 Patent, the attorneys who prosecuted

---

[10]  The standard for consolidation of federal actions is set forth in Federal Rule of Civil Procedure 42(a):  "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  Fed. R. Civ. P. 42(a).

Gibson, Dunn & Crutcher LLP

1 the '275 Patent, expert witnesses, and authors of significant prior art. *See Medi USA v.*

2 *Jobst Institute, Inc.*, 791 F. Supp. 208, 211 (N.D. Ill. 1992) ("The most likely

3 indispensable witnesses include expert witnesses and those involved in the design of

4 the respective devices."). These witnesses would face an extreme burden if forced to

5 shuttle back and forth between three districts thousands of miles apart to provide

6 testimony and other evidence substantially identical to that produced in the other

7 related cases. *See Fluor Corp.*, 446 F. Supp. at 779 ("if this case is tried in the Georgia

8 Court, Defendant's witnesses would have to testify only once"). Therefore, the

9 convenience of witnesses favors transfer.

10        Indeed, if all of the relevant witnesses must make themselves available for trial

11 in three separate actions spanning the breadth of the country, the situation will create

12 precisely the sort of "wastefulness of time, energy and money" that the U.S. Supreme

13 Court states § 1404(a) "was designed to prevent." *Continental Grain Co*, 364 U.S. at

14 26, 80 S. Ct. at 1472 (failure to transfer would "bring about exactly the kind of

15 mischievous consequences against 'the interest of justice' that § 1404(a) was designed

16 to prevent, that is, unnecessary inconvenience and expense to parties, witnesses, and

17 the public").

18        The fact that many of these witnesses are not located in California is irrelevant.

19 For the core group of witnesses on the validity and enforceability of the '275 Patent,

20 the inconvenience at issue is not caused by where they are located; it is caused by the

21 fact that they will have to testify multiple times, at multiple trials, on substantially

22 similar issues. *See Carus Corp.*, 1992 WL 22691 at *2 ("The problem is that the three

23 pending lawsuits in New York will require the testimony of the same Greater Texas

24 witnesses that would be required to travel to Chicago if the Court were to deny the

25 motion to transfer.").

26        **3.    Plaintiffs' Choice Of Forum Is Entitled To Little Weight**

27        Because, as noted in the previous section, the inconvenience to the core group of

28 witnesses is so great, the location of the parties cannot outweigh this consideration.

Gibson, Dunn &
Crutcher LLP

14

The residence of the parties "is not a controlling factor [in the transfer decision] if the convenience of witnesses and the interest of justice point strongly in a contrary direction." Wright, Miller & Cooper, *supra*, § 3849, at 398; *see also Clear Lam*, 2003 WL 22012203 at *5 (transferring patent case to forum where related action was previously filed, court concluded that "[a]ny inconvenience [plaintiff] may experience as a result of the transfer of this case is 'relatively insignificant in comparison to the interests of justice . . .'"); *Carus*, 1992 WL 22691 at *2 (recognizing that "all of [plaintiff's] witnesses and documents regarding this suit are located in Ottawa, Illinois, and transfer to New York would be an added expense for it," but concluding that second-filed patent dispute should be transferred to forum of first-filed action because "the interests of justice far outweigh the interest of [plaintiff] in a more convenient forum").

Likewise, because none of the principal facts underlying plaintiffs' validity and unenforceability theories is alleged to have taken place in California, plaintiffs' choice of forum merits considerably less weight. *See* Moore et al., *supra*, § 111.13[1][c][iii], at 70 ("Even if the plaintiff resides in the chosen forum, if the operative events did not take place in that district . . . , many courts assign the plaintiff's choice of forum less weight."). Plaintiffs in this district allege that the '275 Patent is invalid and unenforceable primarily based on theories of double patenting, prosecution laches, and inequitable conduct. These theories are principally based on acts or omissions alleged to have occurred in communications with the Patent Office, which would have taken place in either New York (where Columbia and its counsel are located) or Washington, D.C. (where the Patent and Trademark Office is located).

### 4. Plaintiffs Could Have Brought This Action In The Northern District Of California

An action may be transferred under § 1404(a) if it "might have been brought" in the transferee district. An action "might have been brought" in the transferee district when: (1) there exists subject matter jurisdiction in that court; (2) the defendants would

have been subject to personal jurisdiction in the district; and (3) venue would have been proper in the transferee district. *Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S. Ct. 1084, 1089 (1960). This action meets all three of these criteria.

The first of the requirements is met because the Northern District of California, like this Court, has subject matter jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202. In addition, having sued Columbia University in this Court, plaintiffs cannot seriously dispute that Columbia University is subject to personal jurisdiction in the State of California. Indeed, plaintiffs' complaint expressly alleges that the events giving rise to this dispute, and hence personal jurisdiction, occurred in California. Thus, the second of the three criteria is satisfied.[11]

---

[11] California's long-arm jurisdiction statute grants a court within the State personal jurisdiction over a defendant if the assertion of jurisdiction is consistent with the Constitution. Cal. Civ. Proc. Code § 410.10. Under the Constitution, personal jurisdiction existed over Columbia University in California if Columbia University had "minimum contacts" with California "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 551, 561 (1980). Here, prior to the filing of the instant case, Columbia University had negotiated and entered into a series of license agreements relating to the '275 Patent in California, had received substantial revenues from those licenses, and already was subject to the jurisdiction of the Northern District of California in a lawsuit on the validity and enforceability of the '275 Patent based on essentially the same arguments that plaintiffs raise in this case.

Beginning in 1984, Columbia University entered into six long-term agreements involving the '275 Patent with companies or operating divisions based in California. (Cleare Aff. ¶¶ 2-7 (attached as Exhibit H to the Declaration of DoHoang T. Duong).) These agreements have generated more than *$234 million* in revenue for Columbia University. (*Id.* ¶ 8.) The lengthy terms and substantial value of these license agreements clearly put Columbia University in a position in which it could "reasonably anticipate being haled into court" in California to litigate the validity and enforceability of the '275 Patent. *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567. Indeed, as demonstrated by the Genentech and Amgen lawsuits, Columbia University's anticipation of suit in California was patently reasonable and, now, a reality.

On July 14, 2003, Columbia University responded to Genentech's Complaint in the Northern District of California, thereby conceding that venue was proper and that personal jurisdiction existed over it in the Northern District of California for purposes of litigation involving the validity and enforceability of the '275 Patent. (Ex. B.) *See Centreville Alf, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1048 (S.D.N.Y. 2002) ("A number of courts have held that venue is proper in that

[Footnote continued on next page]

Finally, venue is proper in the Northern District of California. Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district where any defendant resides." As a non-profit corporation, Columbia University "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Because Columbia University is subject to personal jurisdiction in the Northern District of California due to its licensing activities with companies based therein, *see* Cleare Affidavit ¶¶ 2-7, venue is proper in that district.

## B.   ALTERNATIVELY, THE DOCTRINE OF COMITY REQUIRES THE TRANSFER OF THIS CASE TO THE FORUM OF THE EARLIER-FILED ACTION

When related actions have been instituted in two or more federal district courts, "though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976)). This principle forms the basis for the federal doctrine of comity.

The comity doctrine "requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985). Comity is "a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district." *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 749 (9th Cir. 1979) (citing *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 72 S. Ct. 219 (1952)); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95-96 (9th Cir. 1982) (comity doctrine "permits a district court to decline jurisdiction over an

---

[Footnote continued from previous page]
district when the corporate defendant had failed to challenge the court's exercise of personal jurisdiction.").

Gibson, Dunn & Crutcher LLP

action when a complaint involving the same parties and issues has already been filed in another district"); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("As a general rule, a federal suit may be dismissed for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court.").

As the Ninth Circuit has noted, "[w]hen considering the issues raised by the comity doctrine . . . courts are not bound by technicalities. . . . The purpose of the comity principle is of paramount importance. The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology*, 611 F.2d at 750; *see also Wright v. Jackson*, 505 F.2d 1229, 1232 (4th Cir. 1974) ("In sum, administrative convenience, judicial efficiency, and avoidance of any possibility of conflict between courts all combine to support the wisdom of transfer in this case on principles of comity. . . ."). Although the decision whether to defer to an earlier-filed action is committed to the sound discretion of the district court,[12] "[n]ormally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc.*, 678 F.2d at 96; *accord Serlin*, 3 F.3d at 223.

The doctrine of comity does not require strict identity of parties or claims where the actions are substantially similar. *See, e.g., Save Power Limited v. Synteck Finance Corp.*, 121 F.3d 947, 949 (5th Cir. 1997) ("The crucial inquiry is one of 'substantial overlap': . . 'Regardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the

---

[12] *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993) (reviewing dismissal of duplicative action for abuse of discretion); *Lizardtech, Inc. v. Earth Resource Mapping*, 2001 U.S. Dist. Lexis 24298, *4 (W.D. Wash. Mar. 26, 2001) ("District courts are accorded a great deal of discretion when ruling on issues of comity."),

jurisdiction first seized of the issues.'") (quoting *Mann Mfg, Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)) (second ellipses in original); *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) (applying first-filed rule where two actions involved "substantially similar parties" and "same primary patent"); *Marshak v Reed*, 2000 WL 33152076, *3 (E.D.N.Y. Oct. 17, 2000) ("Parties whose interests are clearly aligned may be treated as if they were the same parties in deciding whether a later-filed action should be stayed in deference to an earlier action.") (internal quotations omitted); *Texas Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993) ("[A]ll that need be present is that the two actions involve closely related questions or common subject matter, or that the core issues substantially overlap. The cases need not be identical to be duplicative.").

Where, as here, the issues raised by the duplicative actions are identical, such as the validity of '275 Patent, the risk of inconsistent adjudications is great. In such circumstances, comity may require deference to the first-filed suit even though a litigant in the first action is unnamed in the second action. For example, in *Save Power*, the Fifth Circuit reversed the district court's denial of a motion to transfer the second-filed action even though the defendant, Syntek, was not a party to the earlier-filed action. In light of the "inconsistent rulings that [have] already resulted" from the pendency of the two related actions, "[t]he fact that Syntek is not a party to the Original Action does not undermine the appropriateness of transfer. Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." 121 F.3d at 951.

Similarly, in *Marshak*, the district court enjoined the second-filed suit, even though it involved almost entirely different parties than the earlier action. The court held that it was of no moment that "Reed has not chosen to name any of the plaintiffs in this action as defendants in the Massachusetts action. . . . Since the rights of the defendant in the Massachusetts action are derived from the plaintiffs in this action,

Gibson, Dunn &
Crutcher LLP

19

there is an identity of interest in the litigation" sufficient to support a transfer. 2000 WL 33152076 at *2.

In *Pacesetter*, the Ninth Circuit upheld dismissal of an action for a declaratory judgment of patent invalidity and unenforceability because a patent infringement action already had been filed in another district. The court reasoned:

> Examination of the complaints filed in these two actions indicates that the
> issues raised are identical. The central questions in each are the validity
> and enforceability of three specific patents. The same three parties are
> involved in both suits. The two actions differ only as to the remedy
> sought, and we therefore conclude the first to file rule is applicable.

678 F.2d at 95-96. The court concluded that dismissal of the second-filed declaratory judgment action was appropriate even though "at the time Medtronic moved to dismiss the California action, neither action had proceeded past the pleading stage," because "permitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear." *Id.* at 96. Moreover, the court observed that plaintiff's declaratory judgment claims could be asserted and adjudicated in the earlier-filed case. *Id.* ("No apparent bar existed to a presentation of Pacesetter's claims and defenses before the Florida court. That forum was capable of efficiently resolving all issues, and economic use of both courts' resources resulted from the California court's refusal to consider Pacesetter's claims.").

The lessons of all of the foregoing cases are readily applicable to this case. Here, there are four actions involving the validity and enforceability of the same patent currently pending in three judicial districts. The prospect of three district courts concurrently deciding precisely the same issues raises an unacceptable risk of inconsistent rulings and judgments and conflicts with longstanding principles of comity. *See Seattle Audubon Soc'y v. Lyons*, 871 F. Supp. 1286, 1289 (W.D. Wash. 1994) ("When litigation over the same controversy is fragmented among districts and

circuits all parties suffer. . . .  To adjudicate one set of challenges in the Ninth Circuit, and the other set in the District of Columbia Circuit, would inflict intolerable delay, expense, and confusion on the public.  The federal courts must make the justice system work sensibly.").  Accordingly, this Court should transfer the case at bar.[13]

## C.    THE NORTHERN DISTRICT OF CALIFORNIA IS THE PROPER FORUM FOR THIS ACTION

This case should be transferred to the Northern District of California under the first-filed rule because the first of four related lawsuits was filed in that district.  *See Pacesetter*, 678 F.2d at 95 (deferring to first-filed Florida action); *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.").  "The first-to-file rule, by contrast, is essentially a forward-looking doctrine [used to] to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another district court."  *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999) (emphasis in original).[14]

---

[13] While the traditional remedy in such situations is to dismiss the second-filed action, *Peak v. Green Tree Financial Servicing Corp.*, 2000 U.S. Dist. Lexis 9711 (N.D. Cal. July 7, 2000), courts have the discretion to transfer the duplicative second action as well. *See, e.g., Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc.*, 833 F. Supp. 882, 887 (M.D. Fla. 1993) (transferring case to Massachusetts based on first-filed rule and "the doctrine of federal comity which requires the federal district court to refrain from interfering with each others' affairs in order to avoid the duplication of judicial resources and conflicting decisions").

[14] *Arcement v. Velocity Powerboats, Inc.*, 1998 WL 219620, No. CIV 97-3666, *1 (E.D. La. Apr. 30, 1998) ("The first-to-file rule is grounded in the principles of comity and sound judicial administration. [It is implicated] here, where related cases have been filed in different districts. Under the first-to-file rule, a district court may dismiss an action where the issues presented could be resolved in an earlier filed action pending in another district court."); *O'Hopp v. Contifinancial Corp.*, 88 F. Supp. 2d 31 (E.D.N.Y. 2000) (applying first-filed rule to transfer four related securities cases to S.D.N.Y., where defendants were located and where any

[Footnote continued on next page]

Gibson, Dunn &
Crutcher LLP

## IV.    CONCLUSION

For the foregoing reasons, Columbia University respectfully requests that the Court grant its motion to transfer this action to the Northern District of California.

Dated:  October 27, 2003

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky
Kevin S. Rosen
DoHoang T. Duong


By:  _____
         DoHoang T. Duong

Attorneys for Defendant The Trustees of Columbia University in the City of New York

10738451_2.DOC

---

[Footnote continued from previous page]
bankruptcy proceeding would be filed); *Thomas & Betts Corp. v. Hayes*, 222 F. Supp. 2d 994 (W.D. Tenn. 2002) (applying first-filed rule to transfer action to district where a suit involving some of the same parties and similar legal and factual issues).

Gibson, Dunn & Crutcher LLP