# EXHIBIT C

1          UNITED STATES OF AMERICA

2     JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

3

4

5

6

7   MDL-1592       In re Columbia University Patent Litigation

8

9          (Excerpt of proceedings as to the above-entitled case

10  only)

11

12

13          Oral Argument on the above-described multidistrict

14  litigation case pursuant to 28 U.S.C. 1407, heard before the

15  Hon. Wm. Terrell Hodges, Chairman; John F. Keenan, Bruce M.

16  Selya, D. Lowell Jensen, J. Frederick Motz, Robert L.

17  Miller, Jr., and Kathryn H. Vratil, Judges of the Panel, at

18  9:59 a.m. on Tuesday, March 23, 2004, in Courtroom 13 A,

19  United States District Courthouse, 300 N. Hogan Street,

20  Jacksonville, Florida.

21

22

23  Reported by:

24          L. Marie Splane, CRR, RDR
            Official Court Reporter
25          P. O. Box 1196
            Jacksonville, Florida  32201-1196

1  APPEARANCES:

2      **DAVID I. GINDLER**
       *Irell & Manella LLP*
3      1800 Avenue of the Stars, Suite 900
       Los Angeles, California  90067-4276
4              appearing for The Trustees of Columbia
               University

5

6      **ARTHUR WINEBURG**
       *Pillsbury Winthrop LLP*
       1133 Connecticut Avenue, N.W.
7      Washington, DC  20036
               appearing for Immunex Corp. and Amgen, Inc.

8

9      **ADRIAN M. PRUETZ**
       *Quinn Emanuel Urquart Oliver & Hedges, LLP*
       865 South Figueroa Street, 10th Floor
10     Los Angeles, California  90017-2543
               appearing for Genentech

11

12     **DONALD R. WARE**
       *Foley Hoag LLP*
       155 Seaport Boulevard
13     Boston, Massachusetts  02210-2600
               appearing for Baxter Healthcare Corporation,
14             Biogen IDEC MA Inc., and Genzyme Corp.

15

16

17

18

19

20

21

22

23

24

25

```
 1  March 23, 2004    P R O C E E D I N G S          9:59 a.m.

 2              THE COURT:  The next case on the docket is

 3  MDL-1592, a new docket which we've denominated the Columbia

 4  University Patent Litigation.  At the moment we are aware of

 5  seven actions pending in different districts in which the        09:59

 6  defendant in each case has moved for centralization under

 7  Section 1407.  And the first to be heard in support of that

 8  motion, I believe, is Mr. Gindler.

 9              JUDGE JENSEN:  And I would be recused in this

10  case.                                                            10:00

11              THE COURT:  All right.  Judges Selya and Jensen

12  are recused.

13              MR. GINDLER:  Good morning, Your Honors.  My name

14  is David Gindler.  I represent Columbia University.

15              You mentioned that there were seven cases pending,   10:00

16  and that was true when we filed our motion for

17  centralization.  There are now eight cases pending.  There

18  was seven involving 11 biotech companies.  Now there are

19  eight, involving 12.

20              The last case involves a company called Serrano,     10:00

21  which has alleged the same bases for invalidating Columbia's

22  patent as all the other cases.  The principal bases are

23  double patenting, prosecution of laches, and inequitable

24  conduct.  There are some additional allegations in that case

25  shared by some, but not all of the other cases.  But the        10:01
```

4

1  test, of course, is common questions, not identical

2  questions.

3        There have been a couple of things which have

4  happened since the papers have been filed.  Just recently,

5  Columbia sent termination notices to many of the licensees.

6        Now, this raises an issue that some of the

7  licensees, the plaintiffs, raised in their papers, which is,

8  will there be claims by Columbia back against the biotech

9  companies for infringement or for breach of contract?  And

10 the answer is, probably.  Again, some of them.  We've

11 already asserted claims against three of them, I believe,

12 and there probably will be more coming.  So the question is,

13 does that make a difference?  And I think the answer is no.

14       Does it make a difference for a couple of reasons?

15 The first reason is, all those claims are going to require

16 claim construction.  An infringement case will require a

17 Markman hearing.  Just as well, all of the claims by the

18 plaintiffs against Columbia, those will all require a

19 Markman hearing.  And so that will be the central event in

20 all of the cases, the claim construction hearing.  So it

21 makes no difference.

22       And, in fact, the vast majority of the cases, the

23 published cases on multidistrict litigation involving

24 patents involve infringement cases, not invalidity cases

25 where courts have held if you have many cases which are

10:01

10:01

10:01

10:02

10:02

10:02

1  pending, involving one patent asserted against many parties,    10:02

2  they should be done together.

3       Well, here we have many biotech companies trying

4  to invalidate a patent which is owned by Columbia, and

5  Columbia may have counterclaims.  And those should all be    10:02

6  done together.

7       There has been another development since the

8  filing of the papers, and that is the lack of cooperation

9  among the plaintiffs.  I know that one factor the court

10  considers is:  Can we deal with this issue simply by    10:03

11  encouraging informal coordination?  Well, as the court may

12  have seen, no one has offered to coordinate discovery or

13  anything across all of the cases.

14       And since the filing of the papers, two things

15  have happened.  One is that Serrano, the most recent case to    10:03

16  be filed, wanted to serve some discovery.  And they called

17  me up and said, We want to serve some documents requests.  I

18  responded by saying, well, we have an MDL motion pending,

19  why don't you wait?  They said, We'd rather not.  And they

20  served the document requests, and we objected.    10:03

21       A second thing that's happened is that the

22  plaintiffs in the Amgen case tried to barrel forward with

23  discovery in their action.  The clerk sent out an order

24  setting a trial date and a discovery cutoff date, and Amgen

25  responded by saying, Great, let's have discovery.  And    10:04

1    Columbia responded by saying, Well, we have an MDL hearing          10:04

2    which is coming up, why don't we just wait and see what

3    happens.  And Amgen said no.

4        And there was a hearing held yesterday before

5    Judge Pfaelzer, who said, Why don't we wait and see what the          10:04

6    Panel does before doing anything.  We can always adjust our

7    schedule.

8        Recently, I think in the past couple of days, one

9    of the plaintiffs raised a question about jurisdiction in

10   the action in San Francisco, the action found by Genentech.          10:04

11   There is a recent case from the Federal Circuit called

12   GenProbe, and that decision holds that if a licensee is paid

13   under his license, still has his license, hasn't been

14   terminated, that licensee doesn't have standing to sue to

15   invalidate the patent.  Genentech is a licensee.  They say          10:05

16   they have been paying, and they are still suing to

17   invalidate the patent.

18       We did serve Genentech with a termination notice

19   because we don't agree that they are paying the proper

20   amounts under the agreement.  They haven't permitted us to          10:05

21   conduct an audit, and so I don't think there's a GenProbe

22   issue there.

23       There also is quite a lot of authority for the

24   proposition that a case that has a jurisdictional challenge

25   pending can still be transferred.  There's also case law for          10:05

1  the proposition that you can still transfer a case to the

2  district where a jurisdictional challenge has been set.

3         As we've said in our papers, we think the best

4  court for centralization is the Northern District of

5  California.  I think one of our principal reasons for that

6  is the Northern District has a very comprehensive set of

7  patent local rules which govern how patent cases proceed.  I

8  see that as --

9         JUDGE MOTZ:  But those rules can be incorporated

10 into a pretrial order by another court.  That happens all

11 the time.

12        MR. GINDLER:  That could, and that would be fine,

13 except I expect there to be a lot of jockeying among the

14 parties here to try to create a case schedule that best

15 benefits them.  By having a set of rules that are in place

16 as the governing rules, subject to possible modification, I

17 think is a better starting place than no rules, with each

18 party jockeying for a better procedural posture.

19        There's a lot of possibility for that here.  We

20 have 12 biotech companies.  We have Columbia University.

21 There's a lot of money at stake, and everyone will be trying

22 to push the envelope to the maximum position.  I think

23 having a set of rules in place that has a level playing

24 field, that's been tested over time, is a smart place to

25 start.  Thank you.

10:05

10:05

10:06

10:06

10:06

10:06

10:06

| | |
|---|---|
| 1 | THE COURT:  Thank you, Mr. Gindler. | 10:07 |
| 2 | You do have a minute reserved for rebuttal. |
| 3 | MR. GINDLER:  Thank you. |
| 4 | THE COURT:  Next to be heard in opposition to the |
| 5 | motion for centralization as I understand it is | 10:07 |
| 6 | Mr. Wineburg. |
| 7 | MR. WINEBURG:  Thank you, Mr. Chairman.  I speak |
| 8 | in opposition to the motion. |
| 9 | Judge Pfaelzer, presiding in the Amgen case in the |
| 10 | Central District, is prepared to hear this case this year. | 10:07 |
| 11 | She's entered a scheduling order that had trial on |
| 12 | December 7th.  Upon request of Columbia last Friday, she |
| 13 | held a telephonic conference yesterday in which she stayed |
| 14 | discovery pending the decision of this Panel.  But she |
| 15 | promised to modify the schedule only by the time it takes | 10:07 |
| 16 | this Panel to decide. |
| 17 | So Judge Pfaelzer is prepared to have trial in the |
| 18 | Amgen case this year.  And we submit that that serves the |
| 19 | purpose of justice, convenience and efficiency. |
| 20 | With respect to justice, we have at risk many | 10:08 |
| 21 | millions of dollars.  There's a cloud of uncertainty |
| 22 | overlooking Amgen, and we filed a declaratory judgment |
| 23 | action that would resolve that cloud and remove it.  And we |
| 24 | believe we're entitled to the termination, and Judge |
| 25 | Pfaelzer is prepared to give it to us.  So the only old | 10:08 |

1  saying I think applies:  Justice delayed, may be justice                    10:08

2  denied.

3           With respect to convenience, Columbia talks about

4  some testimony will be given on multiple occasions, or will

5  be required if these cases aren't transferred.  I submit      10:08

6  that with respect to the key witnesses -- that's the

7  inventors, these are the people that are earning 20 percent

8  of all royalties paid -- that there will be multiple days of

9  deposition, regardless of whether there's transfer or not.

10 However, I submit that if these cases are not transferred,    10:09

11 the second and third depositions will supplement the first

12 and will not retrace the old questions.

13          In fact, what Columbia really wanted was a 1404

14 motion to avoid multiple trials.  They admitted that 1407

15 wouldn't really solve their problem.  And I submit that       10:09

16 they've elected to go 1407 as the second-best solution when

17 Judge Pfaelzer denied the 1404 motion, because it provides

18 them with delay, not -- they're not interested in expediting

19 the case, they're interested in delay.

20          So with respect to the judicial efficiency, I         10:10

21 submit that let Amgen have its early trial.  If Amgen wins,

22 all the cases go away.  And in any event, the Amgen case

23 will be tried before any Markman hearing would be held.  And

24 so I would suggest that the other parties and the judges

25 presiding over those cases could at that point decide         10:10

10:10
1  whether to stay Markman and some other proceedings in those

2  cases, pending resolution of the Amgen case on appeal.

3          THE COURT:  Mr. Wineburg, your time has expired,

4  and I think we do understand your position.

10:10
5          MR. WINEBURG:  Thank you, Your Honor.

6          THE COURT:  Next to be heard is Ms. Pruetz,

7  representing the plaintiff opposing centralization.

8          MS. PRUETZ:  Good morning, Your Honors.  Adrian

9  Pruetz for the plaintiff, Genentech.

10:11
10         Consolidating the cases of these competitors is

11 only going to delay their resolution because there are many

12 more issues that divide us than those that unite us in this

13 case.

14         Genentech, in particular, filed suit a year ago in

10:11
15 its home forum, the Northern District of California.

16 Genentech's suit was very narrowly focused on the double

17 patenting issues, prosecution laches, and certain elements

18 of inequitable conduct, to get this case to trial

19 immediately. And that was about to happen when this MDL

10:11
20 proceeding was commenced by Columbia University.  There was

21 already a scheduling order in place, because of the Northern

22 District local rules, that would have had a claim

23 construction hearing being held next week, on March 29th.

24 That was derailed by the filing of this motion, in which

10:11
25 everything has been stayed pending the outcome.

1          It would not be efficient, convenient or just for          10:12

2    Genentech, or really any of these parties to be consolidated

3    into the kind of unwieldy case that is resulting from the

4    posture that Columbia has taken.

5          As Mr. Gindler pointed out to the Panel, Columbia          10:12

6    has now served termination notices on all of the plaintiffs.

7    There are going to be a multiplicity of infringement claims,

8    and this is added to what already are unique distinctions

9    between the different cases dealing with the very different

10   terms of the parties' licenses.          10:12

11         There are more than 25 complicated and unrelated

12   biotechnology products, highly proprietary to each these

13   companies, which are competitors.  There will have to be --

14   I mean, every party would have to endure discovery and seek

15   multiple layers of protection in order to avoid disclosure          10:12

16   of their proprietary manufacturing processes.

17         If you look at the different claims in the cases,

18   even going beyond the very separate factual issues of

19   infringement, there are enormously different factual issues

20   asserted as bases for invalidity.  There are --          10:13

21         JUDGE MOTZ:  From the point of view, to the extent

22   there are common issues, from the point of view of justice,

23   Columbia runs the risk, if they lose in any of these cases,

24   collateral estoppel, which then bars it, but its opponents

25   would be free to litigate.  Is that right?  Should that be          10:13

1  permitted?  It seems like it's somewhat of a one-way street.  10:13

2        MS. PRUETZ:  Well, if the patent is invalidated,

3  there won't be any further litigation.  And Mr. Wineburg is

4  correct, that if Amgen gets to trial first and the patent is

5  invalidated, that's the end of the line in all of the cases.  10:13

6        I think Mr. Gindler made a point that the parties

7  were not cooperating.  That's not the case.  Where it is

8  efficient for the parties to hold a single deposition,

9  that's going to happen.  That's in everybody's best

10  interest.  10:13

11        To move along on the invalidation front, there

12  will be as much cooperation as there needs to be.  What

13  there can't be is cooperation on all of these multiple

14  issues unique to the parties because --

15        JUDGE MOTZ:  Excuse me, but you didn't answer my  10:14

16  question.  If the patient is invalidated, obviously it's

17  over for Columbia.  If the patent is invalidated, what

18  effect is that going to have in the other litigation?

19  Because the other parties are -- you know, are not barred by

20  collateral estoppel.  10:14

21        MS. PRUETZ:  That's correct, Your Honor.  If there

22  were additional bases alleged that hadn't been tried, and

23  perhaps even the ones that were alleged, there would be no

24  collateral estoppel for other plaintiffs to continue to

25  challenge the patent.  10:14

1           Now, if the matter is consolidated, which we

2  oppose, we believe also that the Northern District of

3  California is the most appropriate place.  It does have a

4  set of patent local rules in place, which have been lauded

5  by other courts as being extremely efficient, streamlining

6  the process.  Three times as many patent cases and

7  intellectual property cases are heard in the Northern

8  District of California as in Boston, Massachusetts, for

9  example.

10          THE COURT:  How many of these cases are presently

11 pending in that district, counsel, in the Northern District

12 of California?

13          MS. PRUETZ:  I don't have the exact figure for how

14 many cases exactly there are pending.

15          THE COURT:  There are at least two cases,

16 according to the information --

17          MS. PRUETZ:  Oh, in this case?  I thought you were

18 asking in general.  In this case, yes, there are two cases

19 pending.

20          THE COURT:  And they're presently assigned to

21 different judges?

22          MS. PRUETZ:  Yes, they are.  They were determined

23 to be unrelated.  Columbia moved to relate the cases and

24 have them assigned to a single judge, but because of the

25 numerous unique issues dealing with these different parties

10:14

10:14

10:15

10:15

10:15

10:15

10:15

1   and their products, the judge in the Northern District          10:15

2   determined that they were not related.

3           THE COURT:  Which judge?

4           MS. PRUETZ:  Judge Walker.  And Judge Walker has

5   presided over some 120 patent cases.  He's written 21          10:15

6   published patent opinions.

7           If the case were to proceed in the Northern

8   District, I would submit to the Panel that it would be very

9   convenient for all the parties, wherever they're located,

10  because the Northern District also has mandatory e-filing,      10:15

11  such that any party, wherever they are, can electronically

12  file their papers and needn't have the cumbersome situation

13  of local counsel and having multiple layers of lawyers

14  getting involved and getting their filings.

15          And if the case were to go to the Northern             10:16

16  District and the stay would then be lifted and a very

17  streamlined and sequenced schedule would be set up for claim

18  construction and all of the other matters that have to be

19  dealt with.

20          THE COURT:  Your time has expired, Ms. Pruetz, and     10:16

21  I think we understand your position.

22          MS. PRUETZ:  Thank you, Your Honors.

23          THE COURT:  Next to be heard is Mr. Ware,

24  representing plaintiffs who also oppose centralization.

25          MR. WARE:  Thank you, Mr. Chairman.                    10:16

1    And the thrust of my presentation is to say that

2  although we oppose the MDL transfer, if there is a transfer,

3  the group that I represent, or that for whom I am speaking,

4  would urge that that transfer be to Massachusetts.

5    I'm speaking on behalf of eight plaintiffs who

6  have filed complaints in Massachusetts.  There are actually

7  four cases now pending in Massachusetts, including the

8  tag-along Serrano case that was referred to by Mr. Gindler.

9  All of them are assigned to Judge Wolf, and so I really have

10  two principal points that I'd like to make in support of

11  Massachusetts.

12    One is, simply, we think it makes no sense to drag

13  four cases and eight plaintiffs out of Massachusetts off to

14  the Northern District of California.  Out of the 13 parties

15  involved in this matter, there are only two, Columbia and

16  Genentech, who favor the Northern District of California.

17  And we simply do not understand.  We understand Genentech's

18  reasoning, and that's where they're based.

19    But Columbia, of course, is based in New York, and

20  it's a little bit unusual for a university to want to move

21  3,000 miles away for litigation.  Certainly not for the

22  convenience of the witnesses and parties, as Section 1407

23  requires.  Most of the parties are on the East Coast.  Most

24  of them actually are based in Massachusetts.  There is one

25  that is in Switzerland.  So this is a very East

10:16

10:17

10:17

10:17

10:17

10:17

10:18

1  Coast-centered matter.                                           10:18

2        The other point I wanted to make is that the -- we

3  think the most important efficiency factor -- and I think

4  all of the plaintiffs are very interested in efficiency here

5  and we want to get this case resolved -- we think the most    10:18

6  important efficiency factor in this case in this matter is

7  the familiarity of the court with the very complex

8  biotechnology that is involved.

9        Most of the lawyers, I can tell you in this case,

10 are not molecular biologists, and believe me, there is a       10:18

11 very steep learning curve to understand the

12 cotransformation, DNA -- recombinant DNA technology that is

13 involved in Columbia's patent.

14       Massachusetts presents a real opportunity in that

15 regard.  There are actually two judges in the country who      10:19

16 have published decisions about the cotransformation

17 technology and have both addressed the Columbia patents, and

18 they are both in Massachusetts.  One is Judge Wolf and one

19 is Judge Gertner.

20       Judge Wolf we discussed in our brief.  Judge Wolf        10:19

21 had an extensive published opinion which is in effect a

22 tutorial on this very technology, and he dealt with the

23 Columbia patent.

24       Judge Gertner -- we did not mention this in our

25 brief -- but Judge Gertner has also had a case where           10:19

1    Columbia actually choose to bring suit on its own patents,    10:19

2    on these patents that are involved in this case, in

3    Massachusetts against a third party called Roche

4    Diagnostics.  Judge Gertner has already construed claims in

5    the patents and is quite familiar with the technology.    10:19

6         So if Judge Wolf, who presently has the cases,

7    were not able to take an MDL for any reason, Judge Gertner

8    would equally be familiar with the technology.

9         So we think that in terms of bringing this to

10   closure efficiently, having a judge that doesn't have to go    10:20

11   through tutorials to learn about cotransformation

12   technology, gives us the best efficiency factor.  Thank you.

13         THE COURT:  All right.  Thank you.

14         Mr. Gindler, you have one minute remaining.

15         JUDGE KEENAN:  Mr. Gindler, does the fact that    10:20

16   Judge Walker, who is a very experienced judge, who has

17   handled an awful lot of multidistrict litigation matters,

18   said these cases are not related, and refused to take one as

19   related to the other, does that have any bearing on whether

20   or not the Panel should treat this as something that's    10:20

21   subject to 1407(3)?

22         MR. GINDLER:  I don't think so.  We don't know

23   anything about what Judge Walker's decision was based upon.

24   It's a form, it's if he checks off a box whether something

25   is related or not in the same district.  So it's simply a    10:20

1  black box to us.                                                    10:20

2          What we do know is that upon being told of the MDL

3  motion, Judge Walker stayed his case when Genentech tried to

4  barrel ahead with depositions of the inventors and said,

5  We're going to wait until we have an MDL ruling.  So I think    10:21

6  he recognizes that things have to pause to see what the

7  Panel in fact does.

8          I've heard a number of the plaintiffs argue

9  that --

10         JUDGE MOTZ:  My question to you is:  Why not          10:21

11  Massachusetts?

12         MR. GINDLER:  I think the answer to the question

13  is this:  Any one of the four districts in which the actions

14  are pending would be fine for centralization.  They each

15  have their benefits and their detriments in terms of          10:21

16  weighing where it should go.  There are benefits to

17  Massachusetts; there are benefits to New York.

18         The one benefit which I think the Northern

19  District has, which stands out, is the application of these

20  rules, the patent local rules at the starting point.  I see   10:21

21  that as extremely important in setting forth a level playing

22  field at the very beginning of this matter.  Otherwise, I'm

23  concerned that chaos will result.

24         We do not want delay.  Delay is not in our

25  interest.  We have a number of licensees who are not paying   10:22

1   on their license agreements.   It's much better for us to get    10:22

2   this matter resolved quickly because if our patent is upheld

3   to be valid, as we think it will be, we get paid again.   So

4   delay does not help us.   Thank you.

5           THE COURT:  All right.   Thank you all.   We will    10:22

6   take the matter under submission.

7           (Proceedings concluded at 10:22 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3  UNITED STATES DISTRICT COURT)

 4  MIDDLE DISTRICT OF FLORIDA

 5

 6       I hereby certify that the foregoing transcript is a

 7  true and correct computer-aided transcription of my

 8  stenotype notes taken at the time and place indicated

 9  therein.

10

11

12

13

14  _____ 5/4/2004
    L. MARIE SPLANE, Official Court Reporter,
15  United States District Court,
    Middle District of Florida.

16

17

18

19

20

21

22

23

24  Registered Diplomate Reporter (RDR)

25  Certified Realtime Reporter (CRR)
```