# EXHIBIT D

**BEFORE THE**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE COLUMBIA UNIVERSITY    )    MDL Docket No. 1592
PATENT LITIGATION            )

## COLUMBIA UNIVERSITY'S REPLY BRIEF IN SUPPORT OF

## MOTION TO TRANSFER UNDER 28 U.S.C. § 1407

TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   ARGUMENT ..........................................................................................................2

      A.   The Lawsuits Involve Common Factual And Legal Issues ....................................3

           1.   Plaintiffs' Complaints Are Substantially Similar ........................................3

           2.   Previous Rulings On Transfer And Relatedness Are Not
                Relevant To The Panel's Analysis Under Section 1407 ...........................7

      B.   At This Stage, The Interests Of Convenience, Efficiency, And Justice
           Are Best Served By Transfer And Consolidation Under Section 1407................8

           1.   Multiple Claim Construction Proceedings Would Be Wasteful
                And Inefficient ......................................................................................9

           2.   Failure To Transfer Will Cause Inconvenience To All
                Witnesses, Many Of Whom Are Third Parties .......................................11

           3.   Informal Coordination Of Discovery Is Unrealistic And
                Insufficient ..........................................................................................11

           4.   Discovery On Issues Unrelated To A Particular Case Will Not
                Cause Undue Delay...............................................................................12

           5.   Genentech's Concerns About Prejudice Are Unfounded........................13

      C.   The Northern District Of California Is The Most Appropriate
           Transferee Forum...................................................................................15

III.  CONCLUSION..........................................................................................................18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AK Steel Corp. v. Sollac and Ugine,*
    344 F.3d 1234 (Fed. Cir. 2003)..................................................................... 10

*Akami Techs., Inc. v. Cable & Wireless Internet Servs., Inc.,*
    344 F.3d 1186 (Fed. Cir. 2003)..................................................................... 10

*Cybor Corp. v. FAS Techs., Inc.,*
    138 F.3d 1448 (Fed. Cir. 1998)..................................................................... 10

*Eli Lilly & Co. v. Barr Labs., Inc.,*
    251 F.3d 955 (Fed. Cir. 2001)....................................................................... 10

*Hoffman v. Blaski,*
    363 U.S. 335 (1960)....................................................................................... 7

*In re America Online, Inc., Cmty. Leaders Litig.,*
    198 F. Supp. 2d 1381 (J.P.M.L. 2002).......................................................... 16

*In re Anthracite Coal Antitrust Litig.,*
    436 F. Supp. 402 (J.P.M.L. 1977)................................................................. 15

*In re Antibiotic Drugs Antitrust Litig.,*
    355 F. Supp. 1400 (J.P.M.L. 1973)............................................................... 14

*In re Baldwin-United Corp. Litig.,*
    581 F. Supp. 739 (J.P.M.L. 1984)................................................................. 14

*In re Capital Underwriters, Inc. Sec. Litig.,*
    464 F. Supp. 955 (J.P.M.L. 1979)............................................................ 12, 17

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.,*
    177 F. Supp. 2d 1375 (J.P.M.L. 2001).......................................................... 7, 9

*In re Heritage Bonds Litig.,*
    217 F. Supp. 2d 1369 (J.P.M.L. 2002).......................................................... 13

*In re Mailblocks, Inc., Patent Litig.,*
    279 F. Supp. 2d 1379 (J.P.M.L. 2003)........................................................ 9, 12

*In re Mirtazapine Patent Litig.,*
    199 F. Supp. 2d 1380 (J.P.M.L. 2002).......................................................... 7, 9

Page(s)

*In re MLR, LLC, Patent Litig.,*
    269 F. Supp. 2d 1380 (J.P.M.L. 2003)................................................................ 11, 13

*In re Phonometrics, Inc., Elec. Long Distance Call Cost Computer And Recorder*
  *Patent Litig.,*
    No. 1141, 1997 WL 83673 (J.P.M.L. Feb. 19, 1997)....................................... 9

*In re Piper Aircraft Distrib. Sys. Antitrust Litig.,*
    405 F. Supp. 1402 (J.P.M.L. 1975)........................................................... 17

*In re Prempro Prods. Liab. Litig.,*
    254 F. Supp. 2d 1366 (J.P.M.L. 2003)........................................................ 13

*In re Silicone Gel Breast Implants Prods. Liab. Litig.,*
    793 F. Supp. 1098 (J.P.M.L. 1992)........................................................... 17

*Markman v. Westview Instruments, Inc.,*
    517 U.S. 370 (1996).................................................................................. 9, 10

*Matt v. Baxter Healthcare Corp.,*
    74 F. Supp. 2d 467 (E.D. Pa. 1999).......................................................... 15

*Precision Shooting Equi., Inc. v. High Country Archery,*
    1 F. Supp. 2d 1041 (D. Ariz. 1998)........................................................... 16

**Statutes**

28 U.S.C. § 1404(a)................................................................................ 7, 8, 15

28 U.S.C. § 1407............................................................................................ passim

35 U.S.C. § 101................................................................................................ 5, 10

35 U.S.C. § 102................................................................................................ 5, 10

35 U.S.C. § 103................................................................................................ 5, 10

35 U.S.C. § 112................................................................................................ 5, 10

N.D. Cal. Patent Local Rules 3-1 to 3-8,
  4-1 to 4-6................................................................................................ 16

**Other Authorities**

William F. Lee & Anita K. Krug, *Still Adjusting to* Markman:
  *A Prescription for the Timing of Claim Construction Hearings,*
  13 Harv. J. L. & Tech. 55 (1999)............................................................. 16

## I.    PRELIMINARY STATEMENT

It is not terribly surprising that Plaintiffs argue they should be allowed to attack the same patent on substantially similar grounds at the same time in four judicial districts spanning three states. After all, Plaintiffs no doubt relish the opportunity to take a collective seven swings at the same ball, with each Plaintiff stepping up to bat on its own home turf—even if it means subjecting the parties and witnesses to multiple depositions and duplicative written discovery, and even if it means requiring at least four different federal judges to construe the claims of the '275 Patent and hear dispositive motions on the very same issues.

Despite Plaintiffs' efforts to characterize their complaints as "dramatically" different from one another, they cannot hide from the simple reality that:

- each complaint challenges the validity and enforceability of *the same patent*;
- each complaint alleges that this same patent is invalid or unenforceable based on nearly identical theories of double patenting, prosecution laches, and inequitable conduct; and
- each complaint relies upon these same three theories as the primary grounds for attacking the validity and enforceability of this patent, even though some of the complaints raise additional claims.

It is immaterial to the transfer analysis that some Plaintiffs have asserted additional claims stemming from the same or related factual allegations. Section 1407 provides a means for pretrial consolidation of multiple actions raising common issues, even where certain actions involve additional legal or factual issues.

Here, Plaintiffs' allegations relating to double patenting (and other validity issues) require a judge to construe the claims of the '275 Patent, a time-intensive and resource-consuming process that need only occur once through multidistrict coordination. Similarly, the remaining core allegations shared by all of the Plaintiffs (prosecution laches and inequitable conduct) will require the same discovery from the same witnesses, most of whom are third parties. It would be

- 1 -

manifestly wasteful and inefficient to permit multiple lawsuits raising substantially identical issues about the same patent to proceed individually before four federal judges.

Columbia's request that the Panel transfer these cases to the Northern District of California for consolidated pretrial proceedings is not guided by its own geographical convenience. Rather, it is guided by the goals of the multidistrict litigation statute: efficient, rational resolution of multiple related cases such that the energies and resources of the parties, witnesses, and judiciary are expended only as necessary. Columbia believes that the Northern District of California, where the first of these related actions was filed, remains the most appropriate forum for consolidated pretrial proceedings. The Northern District of California has special local rules designed to ensure the orderly and efficient administration of patent disputes, and Judge Walker has a depth and breadth of experience in managing patent cases as well as multidistrict litigation.[1]

## II.    ARGUMENT

Plaintiffs' opposition briefs fail to cite a single opinion in the last twenty years in which the Panel has denied a motion to transfer multiple cases involving common questions of the validity and interpretation of the same patent. Faced with a dearth of authority for their ultimately unsupportable position, Plaintiffs devote much energy to highlighting any and every conceivable distinction between their complaints in a misguided effort to distinguish the instant multi-forum dispute from all of the similar cases that this Panel has transferred pursuant to section 1407. This linguistic hair-splitting cannot justify simultaneous litigation of eight actions on the same patent in federal courts across the country.

---

[1]    Throughout this brief, the term "Plaintiffs" refers collectively to Biogen, Genzyme, Abbott Bioresearch Center, Wyeth, Genetics Institute, Amgen, Immunex, Johnson & Johnson, Baxter Healthcare, Serono, Ares Trading, and Genentech.

A.    The Lawsuits Involve Common Factual And Legal Issues

1.    Plaintiffs' Complaints Are Substantially Similar

Plaintiffs would have the Panel believe that their complaints—all of which are devoted to

attacking the validity and enforceability of the '275 Patent—barely resemble one another. This

untruth can be put to rest by simply reading the complaints, many of which parrot the exact same

charging allegations. The complaints make clear that there are three major issues in each of the

cases, and that these three issues turn upon common allegations.

First, each Plaintiff alleges that the '275 Patent is invalid on the basis of double patenting,

and relies on the exact same allegations to support this claim.[2] Indeed, Plaintiffs' double

patenting allegations—that Columbia has improperly attempted to extend its patent monopoly

until 2019 through the issuance of a new patent that covers the same invention as three expired

patents—are the centerpiece of each complaint. No Plaintiff disputes that the double-patenting

allegations are exactly the same in each of their complaints.

Second, each Plaintiff alleges that the '275 Patent is unenforceable under the doctrine of

prosecution laches,[3] and relies on essentially the same facts to support this claim.[4] Each

complaint describes the prosecution history of the '275 Patent and alleges that Columbia

intentionally and unreasonably delayed the issuance of this patent. No Plaintiff contends that

---

[2]    Gindler Decl. Ex. 1 at 8 (¶¶31-35); id. Ex. 2 at 36 (¶¶66-67); id. Ex. 3 at 56 (¶41); id. Ex. 4 at 77 (¶¶25-26); id. Ex. 6 at 112 (¶37); id. Ex. 7 at 136 (¶38); Supp. Gindler Decl. Ex. N at 115 (¶46). All citations to "Gindler Decl." refer to the Declaration of David I. Ginder in Support of Columbia University's Motion to Transfer Pursuant to 28 U.S.C. § 1407 filed on December 2, 2003. All citations to "Supp. Gindler Decl." refer to the Supplemental Declaration of David I. Gindler In Support Of Columbia University's Motion to Transfer Under 28 U.S.C. § 1407 filed concurrently with the brief.

[3]    Gindler Decl. Ex. 1 at 9 (¶¶36-41); id. Ex. 2 at 38 (¶¶76-80); id. Ex. 3 at 56-57 (¶¶44-46); id. Ex. 4 at 77-78 (¶¶30-35); id. Ex. 6 at 112-13 (¶¶40-43); id. Ex. 7 at 137 (¶¶41-43); Supp. Gindler Decl. Ex. N at 115-16 (¶¶49-52).

[4]    Gindler Decl. Ex. 1 at 2, 4-5, 6-8 (¶¶1-3, 13-18, 22-30); id. Ex. 2 at 19, 20-22, 24 (¶¶5, 12-18, 26-28); id. Ex. 3 at 42-44, 46-50, 53-55 (¶¶1-2, 4, 13-22, 30-35); id. Ex. 4 at 69, 70, 72-73, 75, 77-78 (¶¶1, 3, 10, 19, 30-35); id. Ex. 6 at 104-09 (¶¶1, 4-7, 14-18, 23-25); id. Ex. 7 at 125-31, 133-35 (¶¶1, 2-4, 9-17, 26-30); Supp. Gindler Decl. Ex. N at 103-05, 107-09, 111-12 (¶¶1-2, 4, 13-19, 24-34).

there is any meaningful difference among the prosecution laches claims asserted in their complaints.

Third, each Plaintiff alleges that the '275 Patent is unenforceable because Columbia purportedly committed inequitable conduct during the prosecution of this patent. Although Plaintiffs would have the Panel believe that there are vast differences in the inequitable conduct allegations, there are in fact quite few. All but one complaint relies on the same four factual allegations to support the inequitable conduct claim: (1) failure to disclose statements regarding the patentability of claims in the '275 Patent;[5] (2) failure to disclose statements made to Congress;[6] (3) failure to disclose the '159 Application;[7] and (4) failure to disclose the '636 Patent.[8] Two of the seven complaints add one additional factual allegation, relating to a failure to disclose prior art articles and court papers.[9] Genentech's complaint alleges only two grounds for inequitable conduct, one of which is theory (1) above, shared by all the Plaintiffs.[10] In addition, while Genentech alleges one additional inequitable conduct theory not found in the other cases, it has demanded discovery on the inequitable conduct theories of all other Plaintiffs.[11]

---

[5]    Gindler Decl. Ex. 2 at 25-26, 28-29 (¶¶30-33, 39-44); id. Ex. 3 at 57-61 (¶¶51-60); id. Ex. 4 at 79-82 (¶¶40-48); id. Ex. 6 at 114-16 (¶¶48-56); id. Ex. 7 at 138-40 (¶¶48-57); Supp. Gindler Decl. Ex. N at 117-20 (¶¶57-67).

[6]    Gindler Decl. Ex. 2 at 26-27 (¶¶34-38); id. Ex. 3 at 64-65 (¶¶71-74); id. Ex. 4 at 85-86 (¶¶60-66); id. Ex. 6 at 120-21 (¶¶68-72); id. Ex. 7 at 143-44 (¶¶68-71); Supp. Gindler Decl. Ex. N at 125-27 (¶¶84-87).

[7]    Gindler Decl. Ex. 2 at 29-30 (¶¶45-49); id. Ex. 3 at 61-62 (¶¶61-65); id. Ex. 4 at 82-83 (¶¶49-53); id. Ex. 6 at 117 (¶¶57-61); id. Ex. 7 at 140-41 (¶¶58-62); Supp. Gindler Decl. Ex. N at 122-23 (¶¶74-78).

[8]    Gindler Decl. Ex. 2 at 32-33 (¶¶54-57); id. Ex. 3 at 62-64 (¶¶66-70); id. Ex. 4 at 83-85 (¶¶54-59); id. Ex. 6 at 118-20 (¶¶62-67); id. Ex. 7 at 141-43 (¶¶63-67); Supp. Gindler Decl. Ex. N at 123-25 (¶¶79-83).

[9]    Gindler Decl. Ex. 2 at 31-32 (¶¶50-53); Supp. Gindler Decl. Ex. N at 121-22 (¶¶68-73).

[10]    Gindler Decl. Ex. 1 at 10 (¶¶45-50).

[11]    Supp. Gindler Decl. Ex. A at 7-8 (Nos. 19-21, 15-17); id. Ex. B. at 17, 21, 23, 25 (Nos. 13, 15-16, 39-41, 48-51, 59-60).

The similarities between the complaints are not limited to these three core theories. Seven of the twelve Plaintiffs seek declarations that they have no contractual obligation to pay royalties and/or that Columbia committed patent misuse because Columbia allegedly demanded that they pay royalties for products made and sold when no applicable patent was in force (*i.e.*, after the expiration of the three earlier patents but prior to the issuance of the '275 Patent).[12] Of the five Plaintiffs who do not make this allegation, four of them have already demanded discovery on this issue.[13]  (The fifth, Baxter, has yet to seek discovery at all.)

There are still other similarities among the complaints.  Six complaints include the boilerplate allegation, commonly found in claims or affirmative defenses asserting patent invalidity, that the '275 Patent fails to meet the standards for patentability under some or all of 35 U.S.C. §§ 101, 102, 103 and/or 112.[14]  Moreover, the close similarity between the complaints carries over to allegations relating to Columbia's obligations under a letter agreement with the National Institute of Health ("NIH") not to engage in "repressive royalty practices."  Six Plaintiffs explicitly present claims relying upon these obligations,[15] while the other six Plaintiffs refer to these obligations in their charging allegations.[16]  Moreover, every Plaintiff serving discovery upon Columbia has requested the production of documents on this issue,[17] as well as

---

[12]    Gindler Decl. Ex. 2 at 33-35, 39 (¶¶58-63, 81-84); *id.* Ex. 4 at 87-89 (¶¶73-85); *id.* Ex. 6 at 109-10, 122-23 (¶¶27-29, 77-81); Supp. Gindler Decl. Ex. N at 114, 128 (¶¶40-41, 97-102).

[13]    Supp. Gindler Decl. Ex. B at 17-18 (Nos. 13, 15-16, 18-19); *id.* Ex. C at 33, 37 (Nos. 46, 52, 55, 92);.

[14]    Gindler Decl. 2 at 36 (¶66); *id.* Ex. 3 at 56 (¶42); *id.* Ex. 4 at 77 (¶27); *id.* Ex. 6 at 112 (¶38); *id.* Ex. 7 at 136 (¶39); Supp. Gindler Decl. Ex. N at 115 (¶47).

[15]    Gindler Decl. Ex. 2 at 22-23, 40 (¶21, 88-91); *id.* Ex. 4 at 76, 89-90 (¶¶20-22, 86-99); Supp. Gindler Decl. Ex. N at 104, 128 (¶¶2, 100).

[16]    Gindler Decl. Ex. 1 at 5-6 (¶20); *id.* Ex. 3 at 47 (¶15); *id.* Ex. 6 at 109 (¶26); *id.* Ex. 7 at 129 (¶11).

[17]    Supp. Gindler Decl. Ex. B at 25 (No. 58); *id.* Ex. C at 32-33 (Nos. 44-45, 47-48).

all issues concerning the validity and enforceability of the '275 Patent.[18] Biogen, Genzyme and Abbott have gone so far as to demand production of *all* materials from the other pending cases.[19]

While arguing that their respective actions are really quite different from one another, Plaintiffs very carefully avoid any suggestion that they will refrain from amending their complaints to add claims from the other cases, or that they will not seek discovery on issues in the other cases. The reason for this strategy is obvious: Plaintiffs want the freedom to amend their complaints based upon facts learned during discovery or their further analysis of claims asserted in other actions. At the end of the day, it is likely that all of the Plaintiffs will wind up relying upon essentially the same grounds to attack the validity and enforceability of the '275 Patent.[20]

It is certainly true that several Plaintiffs have also requested declarations that they do not infringe the '275 Patent, thereby requiring some amount of individualized discovery relating to the products at issue. These allegations do not make a difference, however, as the Panel has frequently granted transfer in patent cases even where certain actions contain unique claims or allegations. Indeed, many of the Panel's patent consolidation orders involve a single patent holder charging a number of different parties with infringement. The facts regarding each party's alleged infringement, *e.g.*, the characteristics of the accused product, are thus unique to that party and require individualized discovery. Regardless of such factual differences, the Panel generally consolidates those cases because they still involve many common issues—such as the interpretation of the patent claims, as well as the validity and enforceability of the patent. *See,*

---

[18]    Supp. Gindler Decl. Ex. B at 17 (Nos. 13, 15-16); *id.* Ex. C at 35, 37 (Nos. 72-73, 96).

[19]    Supp. Gindler Decl. Ex. C at 37 (No. 92).

[20]    Plaintiffs also suggest that Columbia's declaratory relief action against Johnson & Johnson and Ares Trading raises distinct issues, yet nothing could be further from the truth. Columbia's complaint is essentially the mirror image of the complaints that Johnson & Johnson and Ares Trading later filed against Columbia raising substantially the same issues as all of the other Plaintiffs. At some point, either the cases filed by Johnson & Johnson and Ares Trading, or the case filed by Columbia, will be stayed to avoid duplicative litigation among the same parties.

*e.g., In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (transferring multiple patent infringement cases and noting that although "the actions present unique issues relating to infringement and damages," transfer is proper because "[a]ll actions . . . share factual and legal questions concerning such matters as patent validity, prior art, obviousness and interpretation of the claims of the patent"); *In re Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (transferring multiple patent infringement actions because "[a]ll actions concern the validity and alleged infringement of [the same patent]").

> **2.    Previous Rulings On Transfer And Relatedness Are Not Relevant To The Panel's Analysis Under Section 1407**

Before filing this motion to transfer under section 1407, Columbia sought to transfer all of the cases to the Northern District of California pursuant to 28 U.S.C. § 1404(a). One of Columbia's motions under section 1404(a), filed in the Amgen action, was denied in a minute order that did not disclose the basis for the decision. Plaintiffs assume that, in denying this motion, the court necessarily determined that the Amgen case was not sufficiently related to the Genentech case (in the Northern District of California) to warrant transfer. Plaintiffs ignore, however, that Amgen's lead argument in opposing the section 1404(a) motion was that Amgen could not have originally filed its action against Columbia in the Northern District of California because personal jurisdiction did not exist over Columbia in that district with respect to Amgen's claims at the time that Amgen filed its complaint.[21] *See* 28 U.S.C. § 1404(a) (permitting transfer of an action only to a district "where it might have been brought").[22] This unique requirement under section 1404(a) has no application to motions under section 1407. Given the indisputable

---

[21]    Supp. Gindler Decl. Ex. M at 86, 87-92.

[22]    *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) ("If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where (the action) might have been brought.' If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently (makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum).") (quotations omitted).

similarities between the Amgen case and the other related actions, it is much more likely that the court determined that Amgen could not have originally filed its action in the Northern District of California, as required by section 1404(a).[23]

Plaintiffs also note that Judge Walker in the Northern District of California chose not to have Columbia's case against Johnson & Johnson and Ares Trading reassigned to him. Biogen Brief at 5; Genentech Brief at 5; Amgen Brief at 11. Although Judge Walker's reasoning is unknown to the parties, at the time he issued his order, he likely had not seen Columbia's motion for pretrial transfer and consolidation pursuant to section 1407, which was submitted to the Clerk of the Panel for filing on the same day that Judge Walker issued that order. Yet after Judge Walker learned of the instant motion, he *sua sponte* stayed discovery in the Genentech action and summarily "terminated" a motion filed by Genentech, in both instances citing the pending transfer motion as his basis. Supp. Gindler Decl. Exs. D & E. These later actions by Judge Walker would appear to demonstrate both his deference to the Panel on the question of whether transfer is appropriate as well as a recognition of the need to avoid duplicative activities given the possible consolidation of the cases before a single judge.

B.    **At This Stage, The Interests Of Convenience, Efficiency, And Justice Are Best Served By Transfer And Consolidation Under Section 1407**

While plaintiffs spend many pages cataloguing even the finest distinctions among the eight pending cases, they have very little to say about the interests of justice or the convenience

---

[23]    Plaintiffs point out that, when moving to transfer under section 1404(a), Columbia stated that multidistrict litigation would not serve the interests of convenience, efficiency, and justice. Plaintiffs ignore, however, that Columbia made this statement in the context of comparing transfer under section 1404(a)—which would allow consolidation of *both* pretrial and trial proceedings—with transfer under section 1407—which would *only* allow consolidation of *pretrial* proceedings. Because transfer under section 1404 (a) would eliminate the waste and inconvenience of multiple trials on the same claims regarding the validity and enforceability of the '275 Patent, Columbia argued that transfer under section 1407 was inadequate in light of the availability of transfer under section 1404(a). Now that transfer and consolidation for all purposes is unavailable given the denial of Columbia's transfer motion in the Amgen case, multidistrict litigation offers the only opportunity to conserve the resources of parties, witnesses, and the judiciary, even if such efficiency and convenience only extends to pretrial proceedings.

of the parties and witnesses. This is understandable, given that these factors strongly favor transfer under section 1407.

> **1.     Multiple Claim Construction Proceedings Would Be Wasteful And Inefficient**

In its landmark decision in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), the Supreme Court held that it is the exclusive duty of the court, and not that of a jury, to interpret the claims of a patent, emphasizing "the importance of uniformity in the treatment of a given patent." *Id.* at 390. In the years following the *Markman* decision, the Panel has routinely recognized that the need for uniformity and efficiency in the claim construction process strongly favors using multidistrict litigation to govern multiple actions involving the same patent. *E.g., In re Mailblocks, Inc., Patent Litig.*, 279 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (holding that transfer under Section 1407 "is necessary in order to . . . prevent inconsistent pretrial rulings (especially with respect to time-consuming and complex matters of claims construction)").

In four separate briefs, Plaintiffs fail to cite a single decision by this Panel after *Markman* denying transfer in a multi-forum patent dispute. Indeed, given the complex and time-consuming burdens of claim construction hearings as mandated by *Markman*, multiple actions on the validity and enforceability of the same patent have become paradigmatic cases for application of Section 1407. *See, e.g., In re Mirtazapine*, 199 F. Supp. 2d at 1381 (granting transfer where "[a]ll actions concern the validity and alleged infringement of Patent No. 5,977,099" and thus "the six actions in this litigation involve common questions of fact"); *In re Cygnus*, 177 F. Supp. 2d at 1376 (granting transfer where "the same complex patent" was at issue in each action and thus "[a]ll actions . . . could be expected to share factual and legal questions"); *In re Phonometrics, Inc., Elec. Long Distance Call Cost Computer And Recorder Patent Litig.*, No. 1141, 1997 WL 83673, at *1 (J.P.M.L. Feb. 19, 1997) (granting transfer where each of the actions involved "the same Phonometrics patent" and thus "common questions of fact").

Claim construction will be central to the resolution of the issues concerning the validity and enforceability of the '275 Patent. Each of the lawsuits against Columbia includes the same double-patenting allegation.[24] In addition, six of the actions also allege invalidity based on the identical grounds of 35 U.S.C. § 101, 102, 103 and/or 112.[25] It is well established that the first step in determining double patenting and other validity issues is claim construction. *Akami Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) ("The first step in any invalidity analysis is claim construction . . .").[26] Moreover, two of the actions include infringement allegations.[27] Just as with validity, the starting point of every infringement analysis is claim construction. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) ("An infringement analysis involves two steps. First, the court determines the scope and meaning of the patent claims asserted . . ."). Because all of the actions share core allegations that will require pretrial claim construction under *Markman*, it is evident that one consolidated claim construction hearing before a single judge is the only rational solution. Permitting multiple claim construction hearings in these eight related cases would undermine the uniformity interests endorsed by the Supreme Court when it concluded that claim construction is a question solely for the court. *Markman*, 517 U.S. at 390.

---

[24]    Gindler Decl. Ex. 1 at 8 (¶¶31-35); *id.* Ex. 2 at 36 (¶¶66-67); *id.* Ex. 3 at 56 (¶41); *id.* Ex. 4 at 77 (¶¶25-26); *id.* Ex. 6 at 112 (¶37); *id.* Ex. 7 at 136 (¶38); Supp. Gindler Decl. Ex. N at 115 (¶46).

[25]    Gindler Decl. Ex. 2 at 36 (¶66); *id.* Ex. 3 at 56 (¶42); *id.* Ex. 4 at 77 (¶27); *id.* Ex. 6 at 112 (¶38); *id.* Ex. 7 at 136 (¶39); Supp. Gindler Decl. Ex. N at 115 (¶47).

[26]    *See, e.g., Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001) ("Generally, an obviousness-type double patenting analysis entails two steps. First, as a matter of law, a court construes the claim[s] . . ."); *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1241 (Fed. Cir. 2003) ("an enablement [35 U.S.C. § 112 validity] inquiry typically begins with a construction of the claims").

[27]    Gindler Decl. Ex. 2 at 39-40 (¶¶85-87); Supp. Gindler Decl. Ex. N at 127 (¶¶88-90).

### 2. Failure To Transfer Will Cause Inconvenience To All Witnesses, Many Of Whom Are Third Parties

While Plaintiffs focus on the named inventors of the '275 Patent as witnesses, all eight cases will involve a much broader group of core witnesses, most of whom are third parties. In addition to the three named inventors on the '275 Patent, all eight actions likely will require testimony from researchers who worked with the named inventors, the various attorneys who participated in the prosecution of the '275 Patent, former Columbia administrators who had responsibility for technology transfer during the relevant time period, expert witnesses engaged by the parties, and authors of significant prior art. [28]  Gindler Decl. ¶¶10-12.

If discovery were to proceed separately in each case, these witnesses would face the unreasonable burden of giving the exact same testimony on multiple occasions. It is inconceivable that Plaintiffs actually believe that the convenience of the parties and witnesses would be served by multiple depositions of numerous (often non-party) witnesses on the same topics. Indeed, multidistrict litigation is intended to address precisely this situation. The Panel has frequently noted that because the same witnesses will be required for the same issues in each of the lawsuits, transfer under section 1407 is appropriate "in order to streamline the efforts of the parties and the witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned." *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) .

### 3. Informal Coordination Of Discovery Is Unrealistic And Insufficient

Several of the Plaintiffs suggest that informal discovery coordination would be an adequate alternative to multidistrict litigation. The problem, of course, is that only Amgen has offered to coordinate discovery across all of the pending cases. While the Massachusetts Plaintiffs offer to coordinate discovery among their four cases, they do not offer to coordinate discovery with any of the other cases. No other Plaintiff has offered to coordinate discovery in

---

[28]  In their Initial Disclosures, Biogen, Genzyme and Abbott identify a large number of potential third party witnesses. Supp. Gindler Decl. Exhs. F, G & H.

any way. Indeed, to the contrary, Genentech has refused to participate in coordination of discovery—and even attempted to conduct its own depositions of the inventors and of the lead attorney who prosecuted the '275 Patent (an effort that was rejected *sua sponte* by the court). *See* Gindler Decl. Ex. 10; Supp. Gindler Decl. Ex. D.

In any event, informal discovery coordination is hardly an adequate case management technique in a situation where twelve parties are challenging the validity and enforceability of a complex biotechnology patent in four districts spanning three different states. Faced with a similar argument against section 1407 transfer, the Panel noted that "[w]hile we applaud every cooperative effort undertaken by parties to any litigation, we observe that transfer under Section 1407 has the benefit of placing [all] actions . . . before a single judge who can structure pretrial proceedings . . . while ensuring that common parties and witnesses are not involved in discovery demands and pretrial proceedings in one action which duplicate activity that has already occurred or would occur in the other action." *In re Mailblocks*, 279 F. Supp. 2d at 1380-81 (granting transfer). Whatever degree of informal coordination might occur, there will be no appreciable benefit unless all of these actions come before a single judge for the resolution of discovery disputes, the conduct of claim construction, and the administration of other pretrial proceedings.

### 4.    Discovery On Issues Unrelated To A Particular Case Will Not Cause Undue Delay

Genentech and Amgen argue that discovery on issues unrelated to their cases will cause unacceptable delay. Genentech Brief at 12; Amgen Brief at 8-9. Their professed concerns are misplaced.

One of the principal purposes of multidistrict litigation is to put all discovery decisions before a single judge who can then tailor discovery to meet the needs of all parties. *See In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. 955, 960 (J.P.M.L. 1979) (granting transfer and noting that "[t]he transferee judge, of course, will have the flexibility and overall perspective of this litigation to design a pretrial program that will accommodate the needs of each party for

- 12 -

any unique discovery or judicial attention concurrently with the common pretrial matters and, as a result, the litigation will harmoniously proceed for the benefit of the parties, their witnesses and the judiciary"). In multidistrict pretrial proceedings, a party can simply opt out of participation in any discovery not relevant to its claims. *Id.* ("No party must participate in pretrial proceedings that the party believes will not affect its interests").[29] Moreover, discovery on individual issues will occur simultaneously with discovery on common issues, serving to expedite both. *See In re MLR*, 269 F. Supp. 2d at 1381 ("transfer under Section 1407 has the additional streamlining effect of fostering a pretrial program that: i) allows discovery with respect to any non-common issues to proceed concurrently with remaining discovery on common issues . . ."); *In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) (same).[30]

### 5. Genentech's Concerns About Prejudice Are Unfounded

Genentech argues that multidistrict litigation would cause delay, and therefore prejudice, because Genentech continues to pay royalties to Columbia on the '275 Patent. There are at least three problems with this argument.[31]

---

[29] Any concern by Plaintiffs about disclosure of confidential information is similarly unfounded. Clearly, there would be no need for any Plaintiff to produce its own confidential information to any of the other Plaintiffs. Moreover, a central purpose of coordinated pretrial proceedings is to bring protective order decisions before a single judge who can accommodate the needs and concerns of all parties. *See In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003) (consolidating thirteen actions to avoid the risk that "many of the judges assigned to the various actions would be required to needlessly replicate other judges' work on such matters as . . . the structuring of confidentiality and other discovery orders").

[30] It is more than a little ironic that Genentech protests so strongly against discovery that might not relate directly to the allegations in its complaint, given that Genentech has already demanded that Columbia produce discovery on the allegations contained in the other complaints. *See* Supp. Gindler Decl. Ex. A at 7-8 (Nos. 19-21, 15-17); *id.* Ex. B. at 17-18, 21, 23, 25 (Nos. 13, 15-16, 18-19, 39-41, 48-51, 58-60);

[31] While Genentech purports to express concern about delay, Columbia and Genentech recently stipulated—at Genentech's request—to suspend all filings and disclosures under the claim construction schedule while Columbia's transfer motion is pending, thereby effectively scuttling that schedule. Supp. Gindler Decl. ¶ 7, Ex. I. Genentech fails to disclose this fact to the Panel—and goes so far as to suggest that the existence of this now-suspended schedule justifies the denial of Columbia's transfer motion. Genentech Brief at 17-18.

First, the very purpose of multidistrict litigation is to *expedite* multiple actions. *See, e.g., In re Antibiotic Drugs Antitrust Litig.*, 355 F. Supp. 1400, 1401-02 (J.P.M.L. 1973) ("we do not agree with plaintiff that, if its action is transferred . . ., its attempt to enforce its patent will become 'bogged down' in the consolidated proceedings. Rather, we are convinced that the transferee judge . . . is in the best position to schedule . . . [discovery and motion practice on issues unique to particular transferee actions] with a minimum of delay and inconvenience to all parties concerned"); *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 740 (J.P.M.L. 1984) ("The Tennessee plaintiffs' main concern appears to be that they would be burdened by costs and delays associated with Section 1407 transfer. This fear is unwarranted. Transfer under Section 1407 will have the salutary effect of placing the [related] actions before a single judge who will . . . [facilitate] pretrial proceedings for the optimum conduct of all actions in the litigation"). Given the number and complexity of these actions on the '275 Patent, the most efficient path is one in which duplicative effort is minimized and each discovery decision need only be made once.

Second, Genentech has submitted no evidence that it has actually paid any royalties to Columbia under the '275 Patent. Nor is Columbia aware of receiving any royalties from Genentech designated as a payment under the '275 Patent. Hamilton Decl. ¶¶3-5. It is hard to understand how Genentech can claim prejudice from payments that it has never made.

Third, even if Genentech were to start paying royalties to Columbia under the '275 Patent, it would be improper to characterize those payments as resulting in "prejudice" to Genentech. To the contrary, the payment of royalties confers a *benefit* on Genentech—a license from Columbia under the '275 Patent. The only reason that Genentech would pay royalties to Columbia is because it desires the benefit of a license to the '275 Patent. If Genentech does not want, or believes that it does not require, the benefit of a license under the '275 Patent, then it

- 14 -

need not make any royalty payments to Columbia (which appears to be exactly what Genentech has done).[32]

**C.    The Northern District Of California Is The Most Appropriate Transferee Forum**

All of the Plaintiffs except Genentech object to the Northern District of California as the transferee forum. Plaintiffs' objection to that district is not motivated by the convenience of the witnesses; they will be deposed in the cities where they reside, irrespective of which district is chosen to administer these cases. Nor is Plaintiffs' objection to that district motivated by the convenience of the parties; they are dispersed across the country, making no one district substantially more convenient than any other for the parties *as a group*. In reality, Plaintiffs' objection to the Northern District of California is motivated by the convenience of *their counsel*, who are clustered in Boston, New York and Washington, D.C. Nowhere is this more obvious than in Amgen's request that the Panel select the District of Massachusetts as the transferee forum. While Amgen is headquartered in Southern California, its lead counsel is based in Washington, D.C. The convenience of the parties' *counsel* is not a relevant factor in the transfer analysis. *In re Anthracite Coal Antitrust Litig.*, 436 F. Supp. 402, 403 (J.P.M.L. 1977) ("The convenience of counsel, however, is not by itself a factor to be considered under Section 1407 in the Panel's decision whether to order transfer or in the selection of a transferee forum for a group of actions."); *cf. Matt v. Baxter Healthcare Corp.*, 74 F. Supp. 2d 467, 469 (E.D. Pa. 1999) ("In the end, only the fact that plaintiff's attorney is located in Philadelphia suggests that a transfer might be inconvenient to the plaintiff. However, the convenience of counsel is not a factor that is relevant in deciding a motion brought under 28 U.S.C. § 1404(a).").

---

[32]    Amgen suggests that transfer would cause Irell & Manella, counsel for Columbia in all cases except the Amgen action, to violate its ethical obligations to Amgen. Amgen Brief at 13. There is no potential conflict here, however, because Amgen has executed a written conflict waiver agreement that allows Irell & Manella to represent parties adverse to Amgen in any case except labor and employment matters. Supp. Gindler Decl. ¶8. Moreover, any such issues are matters for Amgen and Irell & Manella to resolve; they are irrelevant to a transfer decision that so profoundly impacts Columbia, numerous third-party witnesses, and the federal court system.

Given that the geographic location of the parties and witnesses does not strongly favor any one particular forum, the Panel should look to other factors to identify the most appropriate forum. We believe that several factors point to the Northern District of California as the most appropriate forum.

First, the Patent Local Rules in the Northern District of California offer the best opportunity for efficient resolution of these eight complex actions. These rules were designed to provide a neutral and orderly procedure for the disclosure of invalidity and infringement contentions, as well as the exchange of proposed definitions for, and briefing regarding, the patent claims that require construction by the court. N.D. Cal. Patent Local Rules 3-1 to 3-8, 4-1 to 4-6. These rules do away with the bickering and jockeying that can take place in high-stakes patent litigation when the parties are left to their own devices to argue about the order of discovery and the timing of claim construction. Indeed, the Massachusetts Plaintiffs' criticisms of the Patent Local Rules appear motivated by their desire to advance a case schedule that they believe is better suited to their own interests. There can be no serious doubt that the Patent Local Rules "promote judicial efficiency by presenting to the Court clearly delineated disputes of claim construction and clearly defined issues of infringement and invalidity prior to any Markman Hearing or trial." *Precision Shooting Equip., Inc. v. High Country Archery*, 1 F. Supp. 2d 1041, 1042 (D. Ariz. 1998).[33]

Second, the Northern District of California is the forum in which the first of these related actions was filed. The Panel has frequently held that the district in which the most advanced action is pending should be the site of coordinated pretrial proceedings. *See, e.g., In re America*

---

[33] The very authorities upon which the Massachusetts Plaintiffs rely to identify "problems" with the Patent Local Rules in fact recognize the many advantages that they provide: "Because, under [the Patent Local Rules], the parties must adhere to a variety of mandatory initial disclosures, the discovery process is more productive. As one commentator has pointed out, '[t]he result of such local rules will be to provide a judge with an effective evidentiary procedure to construe claims as a matter of law. This is precisely what is needed to make the process more efficient as well as expeditious.'" William F. Lee & Anita K. Krug, *Still Adjusting to Markman: A Prescription for the Timing of Claim Construction Hearings*, 13 Harv. J. L. & Tech. 55, 79 (1999) (cited in Biogen Brief at 17).

*Online, Inc., Cmty. Leaders Litig.*, 198 F. Supp. 2d 1381, 1381 (J.P.M.L. 2002) (transferring to district in which action "is furthest advanced"); *In re Capital Underwriters*, 464 F. Supp. at 960 (transferring to district in which "more extensive discovery and other pretrial proceedings" had occurred); *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 405 F. Supp. 1402, 1404 (J.P.M.L. 1975) (transferring to district in which action "appears to be the furthest advanced"). While some Plaintiffs quibble over the extent to which the Genentech action has progressed ahead of the other cases, the Genentech case was filed first and is the only one in which a Rule 26 meeting has occurred and a case management conference was conducted. Supp. Gindler Decl. ¶9.

Third, Judge Walker's extensive experience in patent litigation makes him well-suited to manage these cases. Judge Walker has presided over at least 120 patent cases since his appointment to the federal bench in 1989. Supp. Gindler Decl. ¶11, Ex. K. He has published at least 21 patent-related decisions from 13 different cases. Supp. Gindler Decl. ¶12, Ex. L. Moreover, Judge Walker has considerable experience as a multidistrict litigation judge, having presided over pretrial proceedings in at least four actions consolidated pursuant to section 1407. Supp. Gindler Decl. ¶14, Ex. J. While it is true that Judge Wolf has presided over a single case involving biotechnology in the same field as the '275 Patent, that fact is not, nor should be, determinative. In the past, the Panel has selected transferee judges based on their significant general experience in handling complex multidistrict litigation, even though there were other judges who had experience in the applicable technology. *E.g., In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1100-01 (J.P.M.L. 1992).[34]

-------

[34] Biogen suggests that, because Judge Walker has another multidistrict litigation action pending before him, the Panel should not "overtax" him with the instant actions. Biogen Brief at 16. It is not uncommon, however, for judges to preside over more than one multidistrict litigation. In the First Circuit, Judges Hornby, Keeton, Zobel, Tauro and Saris each currently have two multidistrict proceedings pending before them. In the Second Circuit, Judges Gleeson (2), Sweet (4), Brieant (3), Mukasey (2), Sheindlin (3), Daniels (2), Sprizzo (2), Kram (2) and Cote (2) are each presiding over more than one multidistrict proceeding. In the Ninth Circuit, Judges Breyer and Coughenour are each presiding over two multidistrict proceedings. Supp. Gindler Decl. ¶10, Ex. J.

No matter which forum is selected, many lawyers and their clients will need to travel *someplace* to attend court hearings and case conferences. That *someplace* should be the forum best equipped to handle these eight cases, in which twelve sophisticated pharmaceutical companies are challenging the validity and enforceability of a complex patent from the field of recombinant DNA technology. Its own geographic interests aside, Columbia submits that *someplace* is the Northern District of California.

## III.    CONCLUSION

For the foregoing reasons, the Panel should transfer the lawsuits, as well as any related actions that might later be filed, to the United States District Court for the Northern District of California for consolidated pretrial proceedings under 28 U.S.C. § 1407.

Dated: January 19, 2004                                    Respectfully submitted,

                                                           IRELL & MANELLA LLP
                                                           Morgan Chu
                                                           David I. Gindler
                                                           Jason G. Sheasby
                                                           Alison Hajdusiewicz


                                                           By: _____
                                                               David I. Gindler
                                                               Attorneys for The Trustees of Columbia
                                                               University in the City of New York

                                                           IRELL & MANELLA LLP
                                                           1800 Avenue of the Stars
                                                           Suite 900
                                                           Los Angeles, California 90067
                                                           Telephone: (310) 277-1010
                                                           Facsimile: (310) 203-7199

- 18 -