# APPENDIX A

1    ARTHUR WINEBURG, *pro hac vice*
     PILLSBURY WINTHROP LLP
2    1133 Connecticut Avenue, N.W.
     Washington, D.C. 20036
3    Telephone: (202) 775-9800
     Facsimile: (202) 833-8491
4

5    KIRKE M. HASSON #61446
     PILLSBURY WINTHROP LLP
     50 Fremont Street
6    Post Office Box 7880
     San Francisco, CA 94120-7880
7    Telephone: (415) 983-1000
     Facsimile: (415) 983-1200
8

9    JENNIE L. LA PRADE #82224
     VICKI G. NORTON #175067
     PILLSBURY WINTHROP LLP
10   725 South Figueroa Street, Suite 2800
     Los Angeles, California 90017-5406
11   Telephone: (213) 488-7100
     Facsimile: (213) 629-1033
12

     Attorneys for Plaintiffs
13

14           UNITED STATES DISTRICT COURT

15         CENTRAL DISTRICT OF CALIFORNIA

16

17   Immunex Corporation, a Washington     No. CV-03-4349-MRP (CWx)
     corporation, and Amgen Inc., a
18   Delaware corporation,                  Memorandum of Points and
                                Authorities of Plaintiffs, Immunex
19                  Plaintiffs,     Corporation and Amgen Inc., in
                                Opposition to Defendant Columbia's
20        vs.                        Motion to Dismiss Plaintiffs'
                                Seventh Claim for Relief, or, in the
21   The Trustees of Columbia University   Alternative, Motion for a More
     in the City of New York, a New York   Definite Statement
22   corporation,
23              Defendant.      Date: January 26, 2004
                                Time: 10:00 a.m.
24                                Ctrm: 12
                                Honorable Mariana R. Pfaelzer
25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2004

CENTRAL DISTRICT OF CALIFORNIA
BY

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.  AMGEN'S AMENDED SEVENTH CLAIM FOR RELIEF
    PROPERLY REASSERTS A CLAIM FOR A
    DECLARATION OF RIGHTS UNDER THE CONTRACT ...................... 2

II.  COLUMBIA'S MOTION TO DISMISS IS NOT A PROPER
     VEHICLE TO ATTACK THE MERITS OF AMGEN'S
     CLAIM FOR DECLARATORY RELIEF. .................................................... 5

III.  EVEN IF THE COURT REACHES THE MERITS OF THIS
      DECLARATORY RELIEF DISPUTE ON A MOTION TO
      DISMISS, THE "REPRESSIVE PRACTICES" PROVISION
      IS PROPERLY VIEWED AS AN OBLIGATION OF
      COLUMBIA WHICH, IF NOT MET, EXCUSES PAYMENT
      OF ROYALTY BY AMGEN. ......................................................................... 6

      A.  As required by the U.S. Government, Columbia
          undertook in the license agreement to refrain from
          repressive practices. ........................................................................ 6

      B.  Columbia's argument confuses the concept of express
          conditions with the concept of implied or constructive
          conditions. ........................................................................................ 7

      C.  Case law applying these principles shows that
          Columbia's material failure to perform excuses Amgen
          from performance. ............................................................................ 12

IV.  THE SEVENTH CLAIM FOR RELIEF IS NOT
     DUPLICATIVE OF OTHER CLAIMS. ....................................................... 15

V.  COLUMBIA'S ALTERNATIVE MOTION FOR MORE
    DEFINITE STATEMENT LACKS MERIT .................................................. 16

CONCLUSION .................................................................................................. 20

10772205v4

- i -

1

# TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4
Archie Comic Publications v. Decarlo,
5     2001 WL 1543526, at *2 (S.D.N.Y. 2001) ....................................................5

6
Bureerong v. Uvawas,
    922 F.Supp. 1450 (C.D. Cal. 1996)............................................................ 17

7
Catskill Development, L.L.C. v. Park Place Entertainment Corp.,
8     154 F. Supp.2d 696 (S.D.N.Y. 2001)............................................................ 14

9
DeVito v. Hempstead China Shop,
    38 F.3d 651 (2d Cir. 1994) ..................................................................... 14

10
Dow Chem. Co. v. Exxon Corp.
11     139 F.3d 1470 (Fed. Cir. 1998) .................................................................. 20

12
Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.,
    261 F. Supp. 2d 293 (S.D.N.Y. 2003) ............................................................4

13
Hofbauer v. Liss,
14     220 N.Y.S.2d 659 (Sup. Ct. 1961) ...............................................................3

15
In re Hanford Nuclear Reservation Litigation,
    780 F.Supp. 1551 (E.D. Wash. 1991)........................................................ 17

16
Keene Corp. v. Insurance Co. of North America,
17     667 F.2d 1034 (D.C. Cir. 1981)...................................................................4

18
Leon v. Hotel & Club Employees Union Local 6,
    26 F.R.D. 158 (S.D.N.Y 1960)................................................................... 19

19
Lisle Corp. v. Edwards,
20     599 F. Supp. 897 (S.D. Iowa 1984)............................................................. 13

21
Michigan Gas & Electric Co. v. American Electric Power Co.,
    41 F.R.D. 462 (S.D.N.Y. 1966)............................................................ 17, 19

22
Milligan v. Commissioner of Internal Revenue,
    1992 WL 321334 (U.S. Tax Ct. 1992), reversed on other grounds,
23     38 F.3d 1094 (9th Cir. 1994) ....................................................................... 12

24
Monroe Paper Box Co. v. Harrison Blaine Inc.,
    226 N.Y.S.2d 841 (Sup. Ct. 1962) .................................................................3

25

26
Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,
    86 N.Y.2d 685,
27     636 N.Y.S.2d 734 (Ct. App. 1995)........................................................ 13, 14

28

Prudential Insurance Co. of America v. Premit Group, Inc.,
270 A.D.2d 115,
704 N.Y.S.2d 253 (App. Div. 2000).............................................................. 15

Research Frontiers Inc. v. Marks Polarized Corp.,
295 F. Supp. 1050 (E.D.N.Y. 1969)............................................................ 12

Sagan v. Apple Computer, Inc.,
874 F.Supp. 1072 (C.D. Cal. 1994)............................................................ 16

Su Mei, Inc. v. Hirofumi Kudo,
302 A.D.2d 740,
755 N.Y.S.2d 481 (App. Div. 2003)............................................................ 14

Uniroyal, Inc. v. Heller,
65 F.R.D. 83, 93 (S.D.N.Y. 1974).............................................................. 14

Water Techs. Corp. v. Calco, Ltd.,
576 F. Supp. 767 (N.D. Ill. 1983)................................................................ 12

Wyeth v. The Trustees of Columbia University in the City of New York,
Action No. 03-CV-11570 MLW,
U.S. District Court for the District of Massachusetts............................ 17, 18

Youell v. Grimes,
2001 WL 121955, at *2 (D. Kan. 2001)........................................................5

Statutes and Codes

Code of Federal Regulations
Title 45, section 8.2(b).....................................................................................7

United States Code
Title 35, Sections 200-212...............................................................................7

United States Code,
Title 28, section 2201 .....................................................................................3

Rules and Regulations

Federal Rules of Civil Procedure
Rule 12(e) ........................................................................................ 18, 21, 22

Federal Rules of Civil Procedure
Rule 57.......................................................................................................... 16

Federal Rules of Civil Procedure
Rule 8(e)(2)................................................................................................... 17

1

## Other Authorities

2 Schwarzer, Tashima & Wagstaffe, Federal Civil
    Procedure Before Trial (2003), § 8:134 ................................................. 18

3 JAMES W. MOORE, ET AL.,
    MOORE'S FEDERAL PRACTICE,
    ¶ 15.14 (3d ed. 2003). ...................................................................5

C. Wright, Law of Federal Courts (6th Ed. 2002)
    § 100 ...........................................................................................4

Congressional Record
    S30634 (daily ed. Nov. 20, 1980)..................................................7

II Farnsworth on Contracts (1998)
    § 8.2 ....................................................................... 11, 16

II Farnsworth on Contracts (1998)
    § 8.3 ......................................................................... 9, 11

II Farnsworth on Contracts (1998)
    § 8.4 ....................................................................... 11, 12

II Farnsworth on Contracts (1998)
    § 8.9 ............................................................. 4, 12, 13, 14

Inventions Resulting from Research Grants, Fellowship Awards, and Contracts
    for Research,
    20 Fed. Reg. 6747 (Sept. 14, 1955)..............................................8

Restatement (Second) of Contracts
    § 225 ...........................................................................................9

Restatement (Second) of Contracts
    § 227 ................................................................................. 10, 15

Restatement (Second) of Contracts
    § 232 ........................................................................................ 10

Restatement (Second) of Contracts
    § 237 ........................................................................................ 10

Restatement (Second) of Contracts
    § 240 ........................................................................................ 10

Restatement (Second) of Contracts
    § 274 ........................................................................................ 13

Restatement (Second) of Contracts
    § 275 ........................................................................................ 13

Restatement (Second) on Contracts
    § 185 ........................................................................................ 13

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1                              **INTRODUCTION**

2          The motion of Defendant, The Trustees of Columbia University in the

3   City of New York ("Columbia"), to dismiss the Seventh Claim for Relief of

4   Plaintiffs, Immunex Corporation and Amgen Inc. (collectively, "Amgen"),

5   lacks merit.

6          First, Amgen properly reasserted in this Seventh Claim a claim for

7   declaration of the parties' "respective rights and duties with respect to

8   Columbia's obligation to refrain from repressive practices." The Court, in

9   granting leave to amend, did not preclude the assertion of such a claim, and

10  Columbia does not explain why the Court should not declare the parties' rights

11  and duties.

12         Second, contrary to Columbia's assumption, a motion to dismiss is not

13  the proper vehicle to determine the merits of a declaratory relief claim.

14  Whether the "repressive practices" clause means what Amgen or Columbia

15  contends, the claim should not be dismissed, but should proceed to an

16  appropriate declaration on a developed record.

17         Third, Columbia is incorrect in arguing that its obligation to refrain

18  from repressive practices was not a condition to Amgen's continued

19  performance under the license agreement. Columbia's authorities concern the

20  question (irrelevant at this stage) whether Columbia's obligations should be

21  considered to be an *express* condition or a *constructive* condition, but in all

22  events those obligations were *a condition* to Amgen's continued performance.

23         Fourth, the Seventh Claim is not duplicative of the preceding claims,

24  because it correctly introduces the theory that Columbia engaged in repressive

25  practices within the meaning of the license agreement. Pleading alternative

26  theories is entirely proper under the Federal Rules.

27         Lastly, Columbia's alternative motion for more definite statement – a

28  disfavored motion – lacks merit. Amgen's claim is sufficiently clear to enable

1   Columbia to frame a responsive pleading, which Columbia has in fact done in
2   a parallel case where a similar claim was asserted.

3                           **ARGUMENT**

4   **I.    AMGEN'S AMENDED SEVENTH CLAIM FOR RELIEF**
5          **PROPERLY REASSERTS A CLAIM FOR A**
6          **DECLARATION OF RIGHTS UNDER THE CONTRACT.**

7          The United States Government ("USG") funded the purported invention
8   at issue in this case.  In granting licensing rights under the pertinent patents
9   (the "Axel patents") to Columbia, the USG forced Columbia to include in its
10  license to Amgen an obligation to refrain from "unreasonable royalties and
11  repressive practices" (for short, "repressive practices").[1]  Columbia did not
12  honor that obligation, but instead demanded royalties, after its Axel patents
13  expired, based on still-pending applications and, as to one such application, so
14  delayed and manipulated the patent process as to procure a further patent
15  claiming the same subject matter as its prior patents.  This conduct not only
16  violated the obligations that all persons owe under the patent laws, but
17  independently constituted "repressive practices" in violation of Columbia's
18  obligations under its license agreement with Amgen.

19         Amgen's amended Seventh Claim for Relief, as in the First Amended
20  Complaint, explicitly seeks declaratory relief by reason of Columbia's failure
21  to refrain from repressive practices as required by the parties' license
22  agreement.  Although the Court's November 21 Memorandum of Decision
23  stated that Paragraph 90 of the First Amended Complaint (seeking an estoppel
24  remedy) was dismissed with prejudice, the Court indicated that "the remainder

25

26  _____

27  [1]  This obligation was incorporated by reference in section 2(b) of the license
    agreements at issue in this action.  (Second Amended Complaint, ¶¶ 20-21
28  and Exhibits E and F thereto.)

1    of the Seventh Claim is dismissed <u>without prejudice</u>" (Memo. of Decision,

2    at 10 (emphasis in original)) and allowed leave to amend.

3        The Second Amended Complaint's Seventh Claim for Relief follows

4    this ruling, and does not seek an estoppel remedy.

5        Columbia's current motion assumes that Amgen was given leave to

6    amend only to state a damage claim for breach of contract. Toward this end,

7    Columbia cites certain comments by the Court that were directed to new

8    arguments raised for the first time in Columbia's November 17, 2002 reply

9    memorandum to which Amgen had no opportunity to respond.

10       Columbia's November reply memorandum raised for the first time an

11   argument that Amgen had not pled the elements of a breach of contract claim,

12   including performance by the plaintiff and damages. Columbia Reply Brief,

13   Nov. 17, 2002, at 9.

14       This argument by Columbia was erroneous. Amgen was asserting,[2] and

15   continues to assert, a claim for a declaration of rights under a contract. A

16   party seeking a declaration of rights under a contract need not plead due

17   performance on its part: "Performance of contractual conditions precedent by

18   either party is not a prerequisite to a declaration of rights by a court." *Monroe*

19   *Paper Box Co. v. Harrison Blaine Inc.*, 33 Misc.2d 441, 442, 226 N.Y.S.2d

20   841, 842 (Sup. Ct. 1962); *accord Hofbauer v. Liss*, 31 Misc.2d 538, 540,

21   220 N.Y.S.2d 659, 662 (Sup. Ct. 1961).

22       Nor is it necessary for the plaintiff to allege damages: declaratory relief

23   is available by statute "whether or not further relief is or could be sought."

24   28 U.S.C. § 2201 (2003). One purpose of declaratory relief actions is to allow

25   a party to obtain a declaration of its rights and duties before the point where

26   _____

27   [2] *See* First Amended Complaint, page 24 and ¶ 89 (seeking a "Declaratory
     Judgment" regarding Columbia's "contractual obligations to refrain from
28   unreasonable royalties and repressive practices."

1  one of the parties suffers damage. *See* CHARLES A. WRIGHT AND MARY KAY

2  KANE, LAW OF FEDERAL COURTS § 100 at 716-17 (6th ed. 2002); *Keene Corp. v.*

3  *Insurance Co. of North America*, 667 F.2d 1034, 1039-40 (D.C. Cir. 1981);

4  *Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*, 261 F. Supp. 2d

5  293, 295 (S.D.N.Y. 2003) (claim for breach of contract dismissed as not ripe,

6  but claim for declaratory relief allowed to proceed).[3]

7      In response to Columbia's reply memorandum, the Court's previous

8  order referred to issues of Amgen's performance of its responsibilities (Memo.

9  of Decision, at 8) and to the allegation of damages. *Id.* at 9. In fact, no such

10  allegations are necessary in a claim for declaratory relief.

11      The Court's permission to amend should be construed consistently with

12  the legal requirement that such leave should be liberally granted.

13      Although the ability to amend a pleading is not automatic and requires
    court approval, a district judge should freely grant leave to amend when
14  justice requires, absent a substantial reason to deny. . . . In exercising
    its discretion, the court should be guided by the underlying purpose of
15  allowing amendments to facilitate a decision on the merits. The policy
    in favor of allowing amendments is extremely liberal. The text of
16  Rule 15(a) is unequivocal regarding the requirement that leave to amend
    be granted liberally. The policy that a court should freely grant
17

18  [3] Although the authorities often refer to the event that excuses performance as
    a "breach of contract" by the other party, and that is usually the case, in fact
19  the more conceptually exact statement is that the "failure of performance" by
    a party is what excuses the other party's performance, and the elements of a
20  damage claim for "breach of contract" are not relevant. Columbia's
    Professor Farnsworth explains this distinction:
21
        The concept of constructive conditions of exchange is most often called
22      into play when one party seeks to justify its own refusal to perform on
        the ground that the other party has committed a breach of contract. The
23      concept is not restricted to that situation, however, and may justify such
        a refusal whenever the other party fails to perform, even if that failure
24      does not amount to a breach. . . . But for the sake of clarity the
        discussion in the remainder of this chapter will be confined to the
25      situation where the nonperformance is a breach.

26  II E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 8.9 at 455-56
    (2d ed. 1998) (hereinafter "Farnsworth"). Unfortunately, Amgen's use of
    the simpler term "breach" was used by Columbia to lead the Court into
27  thinking that Amgen's claim needed to be classified as a damage claim for
    breach of contract.
28

1    amendments limits a party's ability to deny leave to amend, and in a
2    proper case, may warrant a finding of abuse of discretion in denying
     leave.

3    3 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 15.14 (3d ed. 2003).

4    **II.    COLUMBIA'S MOTION TO DISMISS IS NOT A PROPER**
5    **VEHICLE TO ATTACK THE MERITS OF AMGEN'S**
6    **CLAIM FOR DECLARATORY RELIEF.**

7    Amgen has pleaded a claim to have a declaration of the parties'

8    "respective rights and duties with respect to Columbia's obligation to refrain

9    from repressive practices." Second Amended Complaint ¶ 92. Columbia

10   never explains why those rights and duties should not be declared by the Court,

11   and Columbia's opposition on the merits further demonstrates (as alleged) that

12   there is an actual controversy between the parties regarding Columbia's

13   obligation.

14   Columbia's arguments regarding what the Court's ultimate declaration

15   *should be* do not support a motion to dismiss. Even if Columbia were correct

16   on the merits – which it is not – Amgen is entitled to seek a declaration on the

17   subject. *See, e.g., Youell v. Grimes*, 2001 WL 121955, at *2 (D. Kan. 2001)

18   ("[a] rule 12(b)(6) motion to dismiss for failure to state a claim . . . is not a

19   proper vehicle for attacking the individual requested findings"); *Archie Comic*

20   *Publications v. Decarlo*, 2001 WL 1543526, at *2 (S.D.N.Y. 2001) ("a legally

21   sufficient claim for a declaratory judgment depends on satisfying the

22   requirements for issuance of a declaration, not upon satisfying the

23   requirements for a declaration in favor of the party who first seeks it").

24

25

26

27

28

1     **III.    EVEN IF THE COURT REACHES THE MERITS OF THIS**

2            **DECLARATORY RELIEF DISPUTE ON A MOTION TO**

3            **DISMISS, THE "REPRESSIVE PRACTICES" PROVISION**

4            **IS PROPERLY VIEWED AS AN OBLIGATION OF**

5            **COLUMBIA WHICH, IF NOT MET, EXCUSES PAYMENT**

6            **OF ROYALTY BY AMGEN.**

7          **A.    As required by the U.S. Government, Columbia**

8                **undertook in the license agreement to refrain from**

9                **repressive practices.**

10       The invention for which Columbia has collected hundreds of millions of

11 dollars of royalty, and as to which it now seeks to collect hundreds of millions

12 more, "was made in the course of work under grants . . . from the National

13 Institutes of Health, Department of Health and Human Services." U.S. Patent

14 No. 4,399,216, Exh. A to Second Amended Complaint, at 1:6-9. As a result,

15 Columbia was not entitled to commercialize the invention without the

16 permission of the Department of Health and Human Services ("HHS").

17       HHS gave permission to Columbia in writing (the "HHS letter,"

18 attached to Exhibits E and F to the Second Amended Complaint), but

19 expressly "subject to the following terms and conditions," including two of

20 special importance to this motion:

21       (j) Any license granted by the University under the U.S. patent
application shall include adequate safeguards against unreasonable royalties

22 and repressive practices.

23       * * *

24       (l) All licenses issued by the University shall be subject to the
conditions of this determination, and shall specifically incorporate by

25 reference all applicable provisions contained herein.

26       The obligation to refrain from unreasonable royalties and repressive

27 practices is also imposed by 45 C.F.R. § 8.2(b) (1981) – the regulation under

28 which the HHS letter was issued, as explained in that letter. To implement

1   Columbia's obligations, the license agreement to Amgen attached a copy of

2   the HHS letter and incorporated its obligations by reference. Second

3   Amended Complaint, Exh. E and F, § 2(b).

4       The concerns giving rise to these obligations were not the same

5   concerns that govern the behavior of all patentees in the Patent and Trademark

6   Office ("PTO"). If the HHS had only been interested in seeing that Columbia

7   met its obligations under the patent laws, there would have been no need to

8   require Columbia also to promise not to engage in repressive practices. As

9   will be shown in the course of this litigation, the public policy behind the HHS

10  position – to promote the public use of inventions that were paid for with

11  public grant money[4] – supports a broad reading of this restriction on

12  Columbia's activities, limiting what Columbia could do with the purported

13  invention more strictly than is normally the case for all patentees under the

14  patent laws. For example, whether or not the patent laws would prohibit

15  Columbia from trying to exact royalties based on pending patent applications,

16  the restriction on repressive practices would do so.

17          **B.**    **Columbia's argument confuses the concept of express**

18                  **conditions with the concept of implied or constructive**

19                  **conditions.**

20      Amgen seeks the unremarkable remedy of a declaration of the rights

21  and duties of the parties by reason of the "repressive practices" restriction,

22  _____

23  [4] The concern leading to enactment of the Bayh-Dole Act of 1980, Pub. L.
    No. 96-517, codified as amended at 35 U.S.C. §§ 200-212 (1984), which
24  promoted such licensing, was that inventions for which the Government had
    paid were "gathering dust" in government warehouses rather than benefiting
25  the public. *See, e.g.,* 96 CONG. REC. S30634 (daily ed. Nov. 20, 1980)
    (statement of Sen. Bayh). In enacting the regulation under which
26  Columbia's HHS letter was issued, the Department stated that "[T]he
    Department has a responsibility to see that the public use of the fruits of the
27  research will not be unduly restricted or denied." Inventions Resulting from
    Research Grants, Fellowship Awards, and Contracts for Research, 20 Fed.
28  Reg. 6747, 6749 (Sept. 14, 1955) (to be codified at 45 C.F.R. pt. 8).

1   including but not limited to a declaration that because Columbia has not met

2   its obligations under that clause, Columbia cannot take advantage of its own

3   failure to improve its position against Amgen, e.g., by purporting to terminate

4   the license agreement for non-payment of royalty.

5       Columbia's motion confuses several issues in the law of contract in an

6   effort to advance the rather remarkable proposition that, regardless of

7   Columbia's own material failures of performance, Amgen is required to

8   perform under the license agreement. In order to advance Columbia's

9   argument, Columbia artificially truncates at least one quotation from an

10  authority, and ignores distinctions made even in the cases it cites.

11      The principal confusion in Columbia's argument is between an *express*

12  *condition* to an obligation to perform, and an *implied or "constructive"*

13  *condition* to an obligation to perform. Whether Columbia's duties are

14  ultimately determined to be express or constructive conditions, they are

15  conditions.

16      Language in an agreement may be ambiguous regarding whether one

17  party is unilaterally promising to do a particular act *if* the other party should

18  happen to do certain things, or each party is promising that it *will* perform. In

19  addressing this situation – the so-called "express condition" situation – the

20  interpretation is preferred that each party is promising to perform. This

21  interpretation avoids the harsh result that could occur because express

22  conditions are not subject to the doctrine of substantial performance.[5]

23      However, if as Columbia argues (Columbia Memo., at 7:2-4), the

24  obligations are promissory terms of the agreement – in Amgen's case,

25  promising to pay royalty under appropriate circumstances, and in Columbia's

26

27  [5] Farnsworth, at 401 ("If the occurrence of a condition is required by the agreement of the parties, rather than as a matter of law, a rule of strict compliance traditionally applies").

28

1    case, promising to refrain from repressive practices – the courts nonetheless

2    imply that each party's performance of material obligations *is a constructive*

3    *or implied condition* of the other party's obligation to continue to perform.[6]

4        Confusing this distinction, Columbia quotes from the Restatement a

5    sentence stating that the rule under section 227 "states a preference for an

6    interpretation that merely imposes a duty on the obligee to do the act and does

7    not make the doing of the act a condition of the obligor's duty," (Columbia

8    Memo., at 5:6-8), but Columbia ignores the two sentences that follow this

9    quotation:

10        The preferred interpretation avoids the harsh results that might
           otherwise result from the non-occurrence of a condition and still gives
11        *adequate protection to the obligor under the rules of Chapter 10*
           *relating to performances to be exchanged* under an exchange of
12        promises. *Under those rules*, particularly §§ 237-41, *the obligee's*
           *failure to perform his duty has, if it is material, the effect of the non-*
13        *occurrence of a condition* of the obligor's duty.

14    Restatement, § 227 cmt. d (emphasis added).

15        Columbia then ignores the rules of Chapter 10 of the Restatement.

16        Under Chapter 10, it is presumed that the promises by each party are

17    exchanged for the promises of the other party:

18        Where the consideration given by each party to a contract consists in
           whole or in part of promises, all the performances to be rendered by
19        each party taken collectively are treated as performances to be
           exchanged under an exchange of promises, unless a contrary intention is
20        clearly manifested.

21    Restatement, § 232. And with an exception not applicable here, the remaining

22    performance owed by one party "is a condition of each party's remaining

23    duties":

24    _____

25    [6] Columbia's repressive practices occurred over a period commencing in the
       1980's, including conduct well before Amgen ceased paying royalties.
26    Material non-performance on Columbia's part excuses later duties of Amgen,
       whether or not Columbia's non-performance was yet known. RESTATEMENT
27    (SECOND) OF CONTRACTS Restatement (hereinafter "Restatement"), at § 225
       cmt. e.
28

1

2

3

> Except as stated in § 240, *it is a condition* of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.

Restatement, § 237 (emphasis added).[7]

4

5

6

7

8

9

There is nothing remarkable about these rules, which simply mean that Columbia must have met its material obligations in order to expect Amgen to be obligated to continue to perform. Indeed, Columbia itself has admitted in this case that for a party to claim damage for breach by the other party, the claimant must allege that it had performed on its part. Columbia Reply Brief, Nov. 17, 2003, at 9:19.

10

11

12

13

14

15

16

17

18

19

20

21

22

The Reporter for the Second Restatement, Columbia's own Professor Farnsworth, has explained these principles in his treatise. As he explains, "[c]onditions that are agreed to by the parties, as in the examples given above, are commonly referred to as 'express conditions.'" Farnsworth, § 8.2, at 394.[8] He distinguishes implied conditions. *Id.* at 395 ("The distinction between an express and an implied condition is ingrained in the thinking of lawyers and is rooted in a faith in freedom of contract. It is of practical importance because the rule of strict compliance is limited to express conditions" (footnote omitted)). He acknowledges that a rule of strict compliance applies to express conditions (Farnsworth, § 8.3, at 401), and that accordingly there is a preference for an interpretation that imposes on a party a duty to see that an event occurs, rather than one that merely makes the other party's duty

23

[7] Restatement § 240 deals with contracts which apportion the parties' performances into corresponding pairs of agreed equivalents.

24

25

26

27

28

[8] The examples cited by Professor Farnsworth are of the type offered by Columbia in its memo at page 6: "if," "on condition that," "subject to," and the like. Given the language in the HHS letter that the grant to Columbia was "subject to" the stated "terms and conditions," the repressive practices clause may indeed be an express condition. On the current motion, the Court need not address the issue whether the "repressive practices" clause is an express condition or a constructive condition, because in either event it is a condition.

1  conditional on occurrence of the event. *Id.* § 8.4, at 409. However, he

2  explains that, even if this interpretation is made, the duty of that party to see

3  that an event occurs is still an *implied* or *constructive condition* of the other

4  party's duty to perform:

> 5  Courts manifest the . . . preference when an agreement refers to an event
> within the control of one of the parties but does not make clear if that
> 6  party is under a duty to see that the event occurs or if, instead, the event
> is a condition of the other party's duty. As we shall learn, *if the court*
> 7  *holds that the obligee is under a duty to see that the event occurs, the*
> *event will still be a condition of the obligor's duty because of the*
> 8  *concept of constructive conditions of exchange, but the doctrine of*
> *substantial performance will apply.*
> 9

10  Farnsworth, § 8.4, at 409-10 (footnotes omitted, emphasis added).

11  Professor Farnsworth then explains how the doctrine of implied

12  conditions or "constructive conditions of exchange" evolved to address the

13  early common law rule that in a bilateral contract certain duties were

14  considered independent, such that "[i]f the builder failed to build the house,

15  the owner would still be bound to pay the price." *Id.* § 8.9, at 449. To avoid

16  results that Lord Mansfield in 1773 called "monstrous," the law developed that

17  performance by each party was a constructive or implied condition on the

18  other party's duty:

> 19  Since a bilateral contract involves an exchange of promises and the
> performance of each is made a condition of the duty to perform the
> 20  other, such implied conditions are often called *constructive conditions of*
> *exchange.*
> 21

22  Farnsworth, § 8.9, at 452-53 (emphasis in original). Under this rule – the

23  same rule described in Chapter 10 of the Restatement and ignored by

24  Columbia – the presumption is that the mutual promises *are* conditions of one

25  another, unless the language very clearly demands otherwise:

> 26  By and large . . . only by the clearest language can the parties make a
> promise to which the concept of constructive conditions does not apply.
> 27

28

10772205v4                              - 11 -

1   *Id.* § 8.9, at 454.[9]

2           **C.**    **Case law applying these principles shows that**

3                    **Columbia's material failure to perform excuses Amgen**

4                    **from performance.**

5         The above principles are illustrated in *Research Frontiers Inc. v. Marks*

6   *Polarized Corp.*, 295 F. Supp. 1050 (E.D.N.Y. 1969). In that action, a patent

7   licensee sued the licensors for breach of the agreement and on other theories.

8   Defendants counterclaimed for a declaration that the license was terminated

9   for nonpayment of royalties, and moved for partial summary judgment to

10   establish termination of the license agreements. Denying the defendants'

11   motion, the court said that the plaintiff's obligation to pay royalty was excused

12   if the licensors had materially failed to perform:

13       A suit on a patent license may well be determined under the rules of
general contract law, that a material failure of performance by one party
14       may discharge the other party's duty to perform. Restatement,
Contracts, §§ 274, 275.
15

16   *Id.* at 1053.[10] Similarly in *Water Technologies Corp. v. Calco, Ltd.*, 576 F.

17   Supp. 767, 773 (N.D. Ill. 1983), the court ruled that non-payment of royalties

18   was justified if the licensor had breached its obligations, rendering any

19   purported termination for non-payment invalid. The court stated:

20       If . . . it may be said that Water Tech was justified in not paying further
royalties due to an earlier material failure of performance by Aqua-
21       Chem, termination would not have been proper.

22   _____

23   [9]  Of course, conditions can be either affirmative or negative in nature, such as
a condition not to compete. *See, e.g.*, Restatement § 185, illustration 1;
24   *Milligan v. Commissioner of Internal Revenue*, 1992 WL 321334 (U.S. Tax
Ct. 1992), *reversed on other grounds*, 38 F.3d 1094 (9th Cir. 1994).

25   [10]  The cited sections of the first Restatement, dealing with "failure of
consideration," concern the fact that "material failure of performance" by
26   one party discharges the other party's duty to perform. As Farnsworth notes,
more modern terminology refers to a "failure of performance" rather than
27   "failure of consideration," as part of the doctrine of "constructive
conditions." Farnsworth, § 8.9, at 455.

28

1   *Id.* at 773. *See also, Lisle Corp. v. Edwards*, 599 F. Supp. 897, 900 (S.D. Iowa
2   1984) (licensor may not terminate patent license where he had failed to live up
3   to his own obligations).

4   The cases cited by Columbia are not to the contrary. Indeed, in parts
5   not quoted by Columbia, the cases recognize the distinction discussed above
6   between an express condition and a constructive condition.

7   Columbia partially quotes a sentence from *Oppenheimer & Co. v.*
8   *Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690-91, 636 N.Y.S.2d 734,
9   737 (1995) for the proposition that "'In determining whether a particular
10  agreement makes an event a condition courts will interpret doubtful language
11  as embodying a promise . . . .'" Columbia Memo., at 5:10-12 (ellipses in
12  Columbia's Memo.). The point of Columbia's argument is that the courts will
13  interpret doubtful language to be a promise *rather than a condition*, but the
14  actual quotation shows that the court was making a very different point. The
15  court's actual statement is: "In determining whether a particular agreement
16  makes an event a condition courts will interpret doubtful language as
17  embodying a promise *or constructive condition rather than an express*
18  *condition*" (emphasis added). Columbia's quote, omitting the court's actual
19  words italicized above, is potentially misleading. Consistent with the
20  Restatement and Professor Farnsworth, the *Oppenheimer* court distinguished
21  "[e]xpress conditions" from "[i]mplied or constructive conditions," then noted
22  that the doctrine of substantial performance applies to the latter but not the
23  former, and in that context noted that (as discussed above) the interpretive
24  preference is for promises *and constructive conditions* rather than *express*
25  *conditions*. Columbia's erroneous argument, that the preference is to find that
26  parties' obligations are *not conditions*, can be supported only by ignoring the
27  omitted words in the quotation.

28

1    Similarly, the court in *DeVito v. Hempstead China Shop*, 38 F.3d 651,

2    654 (2d Cir. 1994), cited by Columbia, was dealing only with the express

3    condition provisions of Restatement § 227 – and even in that context the court

4    reversed summary judgment, indicating that the resolution of the point was not

5    appropriate in that case. In *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 93

6    (S.D.N.Y. 1974), the court rejected an argument that an obligation to pay was

7    conditioned on the establishment of a pension plan, because the contract

8    expressly required payment to be made even if no pension plan was

9    established by a certain time. The other two cases cited by Columbia involve

10   the special issue of express conditions to the *existence* of a contract, and

11   Columbia's own cases explicitly recognize that that issue is "conceptually"

12   different.[11]

13

14

15

16   [11] *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 154 F.

17   Supp.2d 696, 704-05 (S.D.N.Y. 2001) (where land purchase agreement for
     casino development obliged tribe to seek BIA approval, tribe's failure to do

18   so did not mean that no contract was formed; in fact, court recognized that
     this "is a clear example of a contract where the parties' *performance* is

19   conditioned on the government approvals") (emphasis in original); *Su Mei,
     Inc. v. Hirofumi Kudo*, 302 A.D.2d 740, 741-42, 755 N.Y.S.2d 481, 483-84

20   (App. Div. 2003) (written consent of landlord was not a condition precedent
     to the existence of a contract for sale of restaurant; court distinguished

21   separate issue of whether it was a condition precedent to *performance* and
     held that the latter issue was not preserved by the pleadings).

22   The *Catskill* court quoted the *Oppenheimer* court's observation (at 86
     N.Y.S.2d 690, 636 N.Y.S.2d 737) that conditions to a party's obligation to

23   perform a promise are "to be distinguished conceptually from a condition
     precedent to the formation or existence of the contract itself." Such cases

24   are inapplicable, because Amgen's claim is not based on an argument that
     Columbia's duty to refrain from repressive practices meant that the license

25   agreement did not come into existence. The Restatement does not even use
     the word "condition" to refer to the question whether a contract was formed.

26   *See* Farnsworth, § 8.2, at 395 ("[T]he Restatement Second definition [of
     "condition"] excludes . . . events that must occur before a contract comes

27   into existence . . . . The Restatement Second uses *condition* in the context of
     a contract that already exists") (emphasis in original).

28

1    **IV.    THE SEVENTH CLAIM FOR RELIEF IS NOT**
2           **DUPLICATIVE OF OTHER CLAIMS.**

3    .       It is common that a party faced with a contractual demand for royalty or

4    other payments may sue for a declaration that it owes nothing, even if other

5    remedies also exist.[12]  A recent example in New York is *Prudential Insurance*

6    *Co. of America v. Premit Group, Inc.*, 270 A.D.2d 115, 704 N.Y.S.2d 253

7    (App. Div. 2000), where plaintiff licensee sued defendant patent licensor.  In

8    this decision, the court affirmed the trial court's declaration that plaintiff owed

9    no further royalties as a result of defendant's breach of the license, and that

10   otherwise the license continued in effect to protect the licensee from

11   infringement claims.

12           Columbia argues that Amgen's Seventh Claim is duplicative of

13   Amgen's "other claims for declaratory judgment."  Columbia Memo., at 7.

14   That is not accurate.  The Seventh Claim sets forth the particular theory that

15   Columbia engaged in "repressive practices" within the meaning of the license

16   agreement, and as a result certain rights and duties should be declared.  No

17   preceding claim for relief in the Second Amended Complaint articulates this

18   theory.[13]  Nor would a ruling on issues of patent law necessarily clarify

19   Columbia's obligations under the "repressive practices" clause.  Even if

20   Columbia's practices in the PTO managed somehow to skirt the prohibitions

21   of patent laws, its practices – such as demanding payments under pending

22   applications after the patents had expired – were repressive practices within

23   _____

24   [12] "The existence of another adequate remedy does not preclude a judgment
     for declaratory relief in cases where it is appropriate."  Fed. R. Civ. P. 57.

25   [13] The First Claim for Relief seeks a declaration with regard to the contractual
     royalty base, such as Columbia's claim that royalties are owed under the
26   license agreement based on pending patent applications.  The Second
     through Sixth Claims for Relief seek declaratory relief regarding the
27   application of the license agreement to distinct theories of invalidity and
     unenforceability and non-infringement of the '275 patent.
28

10772205v4                           - 15 -

1  the spirit of the laws by which Columbia gained access to the patents in the

2  first place, which laws were designed to promote, rather than restrict, the use

3  of inventions funded by our tax dollars. And the contractual consequences of

4  Columbia engaging in prohibited repressive practices may be different than

5  the remedies available for, e.g., patent misuse.

6       Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to

7  set forth "two or more statements of a claim . . . alternately . . . either in one

8  count . . . or in separate counts." Although Amgen might have attempted to

9  consolidate its declaratory relief claims in fewer counts (inviting debate as to

10  whether they relate to the same or different "transactions or occurrences"),

11  Amgen followed standard practice by separately articulating its theories in

12  separate counts:

13       The better practice is to set forth separate theories of recovery in
        separately numbered counts – whether or not based on the same
14       transaction or occurrence. This helps to organize the complaint and
        provides the court and opposing party with a clearer idea of the issues
15       involved.

16  2 SCHWARZER, TASHIMA & WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE

17  TRIAL § 8:134, at 8-54 (2003).

18  **V.    COLUMBIA'S ALTERNATIVE MOTION FOR MORE**

19  **DEFINITE STATEMENT LACKS MERIT.**

20       Columbia alternatively moves under Rule 12(e) for a more definite

21  statement. That rule provides for such a motion only if a pleading "is so vague

22  or ambiguous that a party cannot reasonably be required to frame a responsive

23  pleading." Motions for a more definite statement "are viewed with disfavor

24  and are rarely granted because of the minimal pleading requirements of the

25  Federal Rules." *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D.

26  Cal. 1994). Accordingly, "a motion for a more definite statement should not

27  be granted unless the defendant literally cannot frame a responsive pleading."

28

1   *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996).  As one court

2   noted, such motions "are often 'interposed largely for purposes of delay. . . .'"

3   *In re Hanford Nuclear Reservation Litigation*, 780 F.Supp. 1551, 1583 (E.D.

4   Wash. 1991).

5        Denying such a motion, the court in *Michigan Gas & Electric Co. v.*

6   *American Electric Power Co.*, 41 F.R.D. 462, 463-64 (S.D.N.Y. 1966),

7   rejected the argument that the plaintiff was required to specify which of the

8   acts alleged violated the Sherman Anti-Trust Act, which violated the Clayton

9   Act, which violated both, and that plaintiff identify the "related statutes"

10  mentioned.  The court explained:

11       In the present case plaintiff has alleged in its complaint a series of acts
         which it contends violates the anti-trust laws and which were designed
12       to drive it out of business.  No separate statement is required. . . .

13       Rule 12(e) of the Federal Rules of Civil Procedure permits a motion for
         a more definite statement to be granted if a complaint "is so vague that a
14       party cannot reasonably be required to frame a responsive pleading."  . . .

15       Rule 12(e) does not require the pleader to set out in detail the facts upon
         which he bases his claim [citation omitted] nor may the Rule be
16       employed as a means of discovery.  [citations omitted]  It is proper only
         when necessary to frame a responsive pleading.  [citation omitted]
17       Defendants' contentions as to their inability to respond to the complaint
         are without merit.  It seems clear that defendants, who are apparently
18       encountering difficulty in discovery . . . are attempting to use the within
         motions for discovery purposes and as a basis for a motion to dismiss.
19       This they may not do.

20  *Id.* at 464-65.

21       The clearest evidence that Columbia can frame a responsive pleading to

22  the allegation of repressive practices is that Columbia has already done so in

23  another case.  In *Wyeth v. The Trustees of Columbia University in the City of*

24  *New York*, Action No. 03-CV-11570 MLW, U.S. District Court for the District

25  of Massachusetts, Wyeth's Complaint alleges the history leading to the

26  issuance of the '275 patent (the same patent challenged in this action),

27  including Columbia's dilatory actions in the PTO (Complaint, ¶¶ 17, 31-33),

28  the invalidity of the '275 patent (*Id.* ¶¶ 26, 27), actions by Columbia

10772205v4                              - 17 -

1  constituting inequitable conduct in the PTO (*Id.* ¶¶ 37-64), and patent misuse

2  (*Id.* ¶¶ 80-83).[14]  Wyeth seeks *inter alia* declarations that it owes no

3  contractual royalties by reason of the invalidity and unenforceability of the

4  '275 patent (Fourth Claim), that it owes no contractual royalties based on

5  pending patent applications (Fifth Claim), and in an independent Seventh

6  Claim incorporates all prior allegations in the Complaint and alleges that

7  Columbia's actions violate its obligations under Section 2(b) of the Wyeth

8  License Agreement – which as in Amgen's license agreement incorporates by

9  reference the HHS letter. *Id.* ¶¶ 87-88.  Having pled that a "condition" of the

10  HHS letter was that Columbia would safeguard against "unreasonable

11  royalties and repressive practices" (*Id.* ¶ 1), Wyeth then pleads the prohibition

12  of repressive practices in terms at least as broad as Amgen:

13          Wyeth maintains that Columbia is in breach of Section 2(b) of the
        License Agreement because Columbia's actions and conduct, including,
14      *inter alia,* demanding royalties and fees under the License Agreement
        after August 16, 2000 on the basis of the '275 patent and/or pending
15      patent applications, violates, and are antithetical to the spirit and
        intended purpose of, the laws and regulations under which the Federal
16      government granted title to the invention to Columbia, which include,
        *inter alia,* the laws, regulations, federal public policy statements, and/or
17      agreements referred to in the Columbia/HHS letter agreement to
        Columbia granting title to the original patent application to Columbia.
18

19  *Id.* ¶ 89.  On this and related bases, Wyeth "further desires a declaratory

20  judgment that due to this material breach, Wyeth is under no obligation to pay

21  royalties and fees based on activities occurring after August 16, 2000." *Id.*

22  ¶ 93.

23          Columbia had no difficulty pleading to these allegations.  In its Answer

24  to Complaint dated November 24, 2003, it denied all of these allegations,

25  except that it admitted the contents of its license agreements and the content of

26  _____

27  [14]  The Complaint is submitted herewith as Exhibit 1 to the Request for
     Judicial Notice, and Amgen requests the Court to take judicial notice of its
28     contents.

1   certain laws and regulations.[15] By moving, rather than answering, in this

2   action, Columbia has avoided the need to file a counterclaim, which may

3   reveal differences between this and the other cases it has asked the Judicial

4   Panel on Multidistrict Litigation to transfer to the Northern District of

5   California. If Columbia truly believed that Amgen's Seventh Claim fails to

6   state a claim, Columbia would not have answered Wyeth's very similar claim.

7        Lastly, Columbia argues that clarification of the "repressive practices"

8   allegations should be ordered "so that the Court can determine whether the[]

9   Seventh Claim for Relief is . . . preempted or based on conduct that is

10  privileged under the patent laws." Columbia Memo., at 9. That is an

11  improper basis for a motion for more definite statement. The proper use of a

12  motion for more definite statement is only where "a party cannot reasonably

13  be required to frame a responsive pleading." Rule 12(e). It is improper to use

14  such a motion to attempt to discover the basis for a motion to dismiss. *See*

15  *Michigan Gas & Electric Co. v. American Electric Power Co.*, *supra*,

16  41 F.R.D. at 464-65; *Leon v. Hotel & Club Employees Union Local 6*,

17  26 F.R.D. 158, 159 (S.D.N.Y 1960) ("[i]t may be that plaintiff's motion under

18  Rule 12(e) is preparatory to a motion to dismiss. Rule 12(e) is designed to

19  enable a litigant to answer, not to move for dismissal").[16]

20  _____

21  [15] The Answer to Complaint is submitted herewith as Exhibit 2 to the Request
    for Judicial Notice, and Amgen requests the Court to take judicial notice of
22  its contents.

23  [16] Columbia's suggestion that some or all of the Seventh Claim may be
    preempted by patent law, citing an unfair competition case, is also
24  erroneous. The Federal Circuit has acknowledged that state contract law is
    not preempted merely because the substance of a contract presents patent
25  issues:

26      As we have recognized with regard to licensing agreements, it is
        generally state law, not federal patent law, that governs contractual
27      disputes even when patent issues must be adjudicated because patents
        are involved in the subject matter of those contracts. . . . [S]tate law
28      governs the maintenance of orderly contractual relations and this

*(continued on next page)*

1

## CONCLUSION

2      For the above reasons, Plaintiffs request the Court to deny Columbia's

3   motion to dismiss and its alternative motion for more definite statement.

4      Dated:  January 12, 2004.          ARTHUR WINEBURG
                                          KIRKE M. HASSON
5                                         VICKI G. NORTON
                                          JENNIE L. LA PRADE
6                                         PILLSBURY WINTHROP LLP

7

8                                         By
                                             Jennie L. La Prade
9                                         ATTORNEYS FOR PLAINTIFFS,
                                          IMMUNEX CORPORATION and
10                                        AMGEN INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   *(continued from previous page)*
         function is not preempted merely because patents and patent issues are
27       presented in the substance of those contracts.

     *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1478 (Fed. Cir. 1998).
28