# APPENDIX C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| IN RE: COLUMBIA UNIVERSITY ) | MDL NO. 1592 |
| PATENT LITIGATION ) | |
| ) | |
| ) | |
| IMMUNEX CORPORATION, a ) | CIVIL ACTION NO.: 04-10740-MLW |
| Washington Corporation and ) | |
| AMGEN INC., a Delaware Corporation, ) | C. D. Cal. No. CV 03-4349 MRP (CWx) |
| ) | |
| Plaintiffs, ) | Judge Mark L. Wolf |
| ) | |
| vs. ) | |
| ) | |
| THE TRUSTEES OF COLUMBIA ) | |
| UNIVERSITY in the City of New York, a ) | |
| New York Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| AND RELATED COUNTERCLAIM. ) | |
| ) | |

AMGEN INC.'S AND IMMUNEX CORPORATION'S REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO SUPPLEMENT AND AMEND COMPLAINT

## I. THE LIBERAL RULES OF PLEADING APPLY ESPECIALLY WHERE -- AS IN THIS CASE -- CLAIMS SURVIVE A MOTION TO DISMISS

Columbia does not dispute that the grounds for denial of a motion to amend are futility, bad faith, undue delay, a dilatory motive, or prejudice. Nor does Columbia argue that any of those grounds is present here. Instead, Columbia argues that Amgen's claims for relief have been dismissed – a theory that is both inaccurate in fact and in law.

Subject matter jurisdiction still exists for Amgen's First and Seventh Claims, which request a declaration of certain rights and obligations under the parties' license agreements,

including royalty obligations based on sales after expiration of the original Axel patents. Columbia itself admits to a dispute over payment of royalties on post-expiration sales. Columbia's Brief in Opposition to Motion to Amend and Supplement Complaint ("Col. Opp.") at 3.

Nonetheless, in asserting that Amgen's contract claims must be dismissed while its own counterpart counterclaims survive, Columbia erroneously frames Amgen's First and Seventh Claims for Relief as limited to "declaratory judgment regarding the '275 patent," Col. Opp. at 5. Columbia invents such a limitation in the Second Amended Complaint ("SAC"), whose allegations encompass the royalties allegedly owed under the original Axel patents. For example, ¶ 60 in the First Claim of the SAC alleges that "[a]n actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Columbia, on the other hand, concerning whether, as Columbia contends, Plaintiffs are breaching the License Agreement by non-payment of royalties for periods after August 16, 2000"—not limited to periods after September 2002, when the '275 patent issued.  SAC at ¶ 60.  Paragraph 58, incorporated by reference in ¶ 59 of the First Claim, specifically refers to Columbia's "demand upon Amgen and Immunex in the name of the License Agreement for the payment of royalties for sales occurring after August 16, 2000, even though the '216, '665 and '017 patents had expired." These allegations for declaratory relief encompass a determination of what, if any, royalties are owed for sales occurring after August 16, 2000, whether based on Columbia's demand for royalties on post-expiration sales which allegedly fall under the original Axel patents, or on "*inter alia*, claims in pending patent applications." SAC at ¶¶ 61-62.

Columbia similarly misreads and ignores allegations in Amgen's Seventh Claim for Relief in arguing that the Seventh Claim is limited to "declaratory judgment regarding the '275

patent." Columbia ignores not only the broad title of the Seventh Claim, "Amgen and Immunex Have No Contractual Royalty Obligations Based on Columbia's Failure to Perform Condition," but also the absence of any statement in ¶¶ 88-92 that would limit the disputed royalty obligations to those under only the '275 patent. Instead, ¶¶ 89-92 of the Seventh Claim refer generally to Columbia's repressive practices in derogation of Amgen's rights under the License Agreement -- not to royalties owed under any one Axel patent.[1] In addition, the Seventh Claim incorporates by reference ¶ 58's discussion of Columbia's demand for post-expiration royalties. Thus, Columbia's inartful attempts to paint the First and Seventh Claims as "pertain[ing] solely to Amgen's obligations to pay royalties based on the '275 patent . . . ," Col. Opp. at 6, have no colorable basis.[2]

Since Amgen's First and Seventh claims of its SAC survive Columbia's Motion to Dismiss, Columbia's argument that leave to amend should be denied due to successful resolution of a motion to dismiss is inapplicable. Columbia has failed to cite any court's refusal to permit amendment to add allegations based on newly discovered facts and events, where a motion to

---

[1] That Columbia's mischaracterization of Amgen's First and Seventh Claims is nothing more than its latest stratagem to prevent Amgen from obtaining declaratory relief is evidenced by comparing the general allegations in Columbia's Counterclaims with its description of the "Background Facts" in its Opposition, Col. Opp. at 3. Although Columbia's Counterclaims allege only generally that Amgen and Immunex have breached their respective License Agreements by "failing to pay royalties on sales of licensed products . . . ," Columbia's opposition elaborates on its Counterclaims by asserting that Amgen owes royalties under the license agreement for "licensed product that it manufactured *during the term of the original Axel patents*," Col. Opp. at 3. Even though Columbia must therefore interpret its own generally stated Counterclaims to cover breach of contract for alleged failure to pay royalties under both the '275 patent and the original Axel patents, Columbia inexplicably reads Amgen's First and Seventh Claims for declarations of no royalties owed as limited to royalties owed under the '275 patent. Columbia cannot have it both ways—it cannot argue that its Counterclaims present the issue of whether Amgen owes royalties under the prior issued Axel patents when its Counterclaims are nothing more than generally stated counterparts to Amgen's First and Seventh Claims.

[2] Columbia's argument that Amgen failed to properly assert that the First and Seventh Claims survive the Motion to Dismiss is unsupported. *See* Opp. Br. at 5-7. Amgen's Opposition to Columbia's Emergency Motion to Dismiss ("Amgen's Opposition") specifically cited Amgen's First Claim as one that would survive regardless of the outcome of the Emergency Motion. Amgen's Opp. at 14. Amgen's Opposition further stated that "Amgen's claim for declaratory relief regarding contract rights remains," *id.* at 2, and discussed significant common questions that would remain in the MDL, including "Columbia's repressive practices that excuse contractual performance by plaintiffs," *id.* at 14-15—the practices at issue in Amgen's Seventh Claim.

3

dismiss was successful for only some of the claims at issue.[3]  When only some claims are

dismissed on a motion, no dispositive ruling weighs against amendment and the liberal standards

for amending and supplementing pleadings apply.  *See In re One Meridian Plaza Fire Litigation*,

1993 WL 308726 (E.D. Pa. 1993) (granting motion for leave to file Second Amended Complaint

despite order granting in part and denying in part defendant's motion to dismiss); *see also Bush*

*v. United Parcel Service*, 2000 WL 1780353 (N.D. Ill. 2000) (holding that dismissal of

complaint did not dismiss entire action and granting plaintiff's motion to file a third amended

complaint with respect to amendments which stated a claim despite the court's dismissal of the

Second Amended Complaint for failure to state a claim).  Amgen should therefore be given leave

to amend and supplement its claims to include allegations based on newly discovered

information and later transpired events.

Although Judge Pfaelzer's January 27, 2004 Order denying Columbia's motion to

dismiss Amgen's Seventh Claim stated that "[f]urther leave to amend will not be granted," that

Order was made in the context of her intention that discovery and pre-trial would be very

abbreviated leading to trial in December 2004,[4] and did not preclude amendment based on later

discovered facts without further analysis or justification.  The Supreme Court has held that

"outright refusal to grant the leave [to amend] without any justifying reason appearing for the

denial" is an abuse of discretion "inconsistent with the spirit of the Federal Rules." *Foman v.*

*Davis*, 371 U.S. 172, 1982, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).  Furthermore, Judge Pfaelzer's

---

[3] *In Re Recombinant DNA Technology Patent and Contract Litigation*, cited by Columbia, actually supports amendment here.  That court granted Genentech's motion to file a Second Amended Complaint "to include recently discovered conduct" which could not have been included in the Amended Complaint.  *In Re Recombinant DNA Tech. Patent and Contract Litig.*, 874 F. Supp. 904, 916 (S.D. Ind. 1994).  That court also granted leave to amend to state a new legal basis based on facts already pleaded: "[T]o the extent that Genentech seeks to amend to add a common law unfair competition claim based on conduct already pleaded, we believe such amendment is proper." *Id.* at 919.

ruling was superseded during the hearing on Columbia's Motion to Stay, when the Court denied

Columbia's request to set a deadline for amendment of pleadings, and indicated that amendments

to the pleadings were to be made after the obviousness-type double-patenting portion of the case

was completed, in January. *See* Excerpt of June 22, 2004 Hearing Transcript at 194:23-197:24,

attached as Exhibit A.

Here, the just disposition of this case requires that Amgen be permitted to amend and

supplement its pleadings since the allegations Amgen seeks to add are based on information

newly discovered, and conduct occurring after Amgen's December 10, 2003 filing of the SAC,

as demonstrated by Amgen at pages 2-3 of its opening Memorandum.

## II. BEFORE ADDRESSING WHETHER GOOD CAUSE EXISTS FOR REMAND OF THIS ACTION, THE CLAIMS AND FACTUAL DISPUTES AT ISSUE IN EACH OF THE CONSOLIDATED CASES SHOULD BE DETERMINED

Columbia argues that the decision on whether to permit amendment of the pleadings

should be deferred until after the Court rules on whether to suggest to the J.P.M.L. that it remand

this action to the transferor court. This is the reverse of logical order. Under Columbia's

proposal, in deciding whether good cause had been demonstrated for remand, the J.P.M.L. could

only consider the common facts pleaded but not those which will be pleaded by amendments. If

the cases are remanded and amendment is subsequently granted, the J.P.M.L. will again have to

decide whether consolidation is appropriate – this time in light of the amended pleadings.

Clearly, this is an inefficient use of judicial resources.

Columbia's argument that "the reason for consolidation was that each lawsuit presented

common questions relating to the validity and enforceability of the '275 patent" (Col. Opp. at 4)

---

[4] Her Civil Minutes of February 18, 2004 set a discovery cutoff of August 27, 2004 and a trial date of December 7, 2004.

5

directly contradicts its reliance upon common facts regarding the license agreements in urging the J.P.M.L. to send these cases to one court:

> [C]lose similarity between the complaints carries over to allegations relating to Columbia's obligations under a letter agreement with the National Institute of Health ("NIH") not to engage in "repressive royalty practices." . . . Moreover, every Plaintiff serving discovery upon Columbia has requested the production of documents on this issue . . . .

Columbia University's Reply Brief in Support of Motion to Transfer under Section 1407, Jan. 19, 2004, p. 5.

Moreover, as Amgen demonstrated in its Memorandum at pages 11-12, efficiency requires consideration of the proposed pleadings when determining whether good cause has been shown to remand. Since Amgen filed its Motion to Amend, additional filings have further delineated the common facts in these cases weighing against remand. The Amgen Affiliates filed a new pleading placing Columbia's repressive practices at issue, *see Amgen Mfg. v. Trs. of Columbia Univ.*, Case No. 04-12626 MLW, Complaint, at ¶¶ 102-05, just as in Amgen's Seventh Claim and in Biogen-Idec's complaint, *see Biogen Idec Inc. v. Trs. of Columbia Univ.*, Case No. 04-12009 MLW, Complaint, at ¶ 82. In addition, Biogen Idec filed an amended pleading alleging that Columbia breached the most favored nation provision of its license agreement—a breach that is also alleged in Amgen's proposed amendment to its First Claim for Relief. *See Biogen Idec Inc. v. Trs. of Columbia Univ.*, Case No. 04-12009 MLW, Amended Complaint, at ¶¶ 72, 83-84; *see also* Third Amended Compaint at ¶ 79. Finally, both Biogen Idec and the Amgen Affiliates have alleged the invalidity and unenforceability of the '275 patent, presenting legal and technological issues with which this Court is well-versed. *See, e.g., Biogen Idec* Complaint at ¶¶ 94-97 (invalidity); ¶¶ 98-100 (laches); ¶¶ 101-128 (inequitable conduct); *Amgen Mfg.* Complaint at ¶¶ 76-81 (invalidity); ¶¶ 89-93 (laches); ¶¶ 82-88 (inequitable conduct).

Efficiency dictates that each of these amendments be considered in determining whether

Columbia has demonstrated good cause to remand.

## CONCLUSION

For the above reasons and those set forth in Amgen's Memorandum in support of its

Motion to Amend, Amgen respectfully requests that the Court grant Amgen's Motion to Amend

the Complaint.

Dated:  January 4, 2005                    Respectfully submitted,

                                           IMMUNEX CORPORATION, a Washington
                                           Corporation and AMGEN INC., a Delaware
                                           Corporation

                                           By their attorneys,


                                           /s/ Eileen M. Herlihy

                                           EILEEN M. HERLIHY (BBO #231410)
                                           Palmer & Dodge LLP
                                           111 Huntington Avenue at Prudential Center
                                           Boston, MA  02199-7613
                                           Telephone:  (617) 239-0100
                                           Facsimile:   (617) 227-4400

7

# EXHIBIT A

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


BIOGEN, INC., ET AL            )  CA 03-11329
                              )  Boston, MA
v.                            )  June 22, 2004
                              )
COLUMBIA UNIVERSITY, ET AL    )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:

(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10-Room 5200
Boston, MA 02210
(617)946-2577

194

1    tape.

2              THE COURT:  But Biogen has already paid for it

3    once.  First, they did it with power point, and I had a

4    book, and so I had each slide and I could write on it.

5    And then they had something that was animated the second

6    time.  But it exists, and it's the same technology,

7    right?  I mean, it's the same process.

8              All right, we need to build in a date for the

9    tutorial, which should be after November 1, right?  But

10   not too far after it.  How about the 5th.  Is that okay?

11             MS. BEN-AMI:  On your calendar, I just wanted to

12   remind your Honor that I am at trial during the time

13   period --

14             THE COURT:  But you've got to do the following.

15   You've, first of all, got to get somebody else with you.

16   I hope some of those 40 people were with you.

17             MS. BEN-AMI:  I have one.

18             THE COURT:  Get two more.  And that's one.  And

19   you all think you're going to win on summary judgment.

20             MS. BEN-AMI:  I agree with that.

21             THE COURT:  We'll cross that bridge when we come

22   to it.

23             MR. GINDLER:  There's one other date I think we

24   should set now, which is a last day by which pleadings

25   should be amended, because we have counterclaims that we

195

1    would like to assert, both breach of contract, which will

2    live no matter what, and infringement, but won't be done

3    now, but I think we should at least --

4          THE COURT:  Why?

5          MR. GINDLER:  Because I think that it's only

6    fair to just close the pleadings and to put our claims on

7    the table, and the infringement claims could be

8    terminated if we lose on double patenting.  The breach of

9    contract claims will not, though, because those simply

10   applied during the period before anyone sued.  And so

11   those will be royalty claims.

12         We're not proposing to do anything with the

13   claims.  We just think they should be on the table.

14         THE COURT:  You have so much to do.  Why do

15   that?  I don't know.  What do you think?  Maybe I'm

16   missing something.

17         MR. WARE:   Your Honor, at least in the case of

18   Biogen and Genzyme, there is a stand-still agreement that

19   infringement claims won't be asserted.  So it's obviously

20   not germane to our case.  I don't really see why it's

21   necessary.

22         With respect to contract counterclaims, I think

23   we would want the opportunity to oppose the time to add

24   such claims into the case at this point, which come a

25   year after we sought an declaration of -- that no

196

1    royalties were owed.  So we would certainly at least want

2    the opportunity to oppose adding such claims into the

3    case at this point.  But I don't see why it's necessary.

4         THE COURT:  You'd claim they're futile or

5    something?

6         MR. WARE:   No, I'd claim there are no admitted

7    counterclaims.  We specifically asserted that we did not

8    owe royalties.

9         MR. GINDLER:  We tried to keep activity down to

10   a low buzz before we got before a single court.  It took

11   us a long time to get here.  We started this process in

12   October of last year, with opposition by every plaintiff,

13   and we finally got to one court.  That's good.  So we

14   want to be as in a position so that if, for example, the

15   court were to rule against us on double patenting, okay,

16   that takes a lot out of the case.  What's left?  Well, we

17   should know what's left.  And so  --

18        THE COURT:  Frankly, if I rule against you or

19   the jury finds against you on double patenting, I hope

20   you're all going to sit down in a businesslike way and

21   see if you can work it out.  That's the purpose of all of

22   this.

23        MR. GINDLER:  But I do think it makes sense to

24   just put those on the pleadings.

25        THE COURT:  Why not put them on the pleadings in

197

1    the beginning of January?

2          MR. GINDLER:  We could do it then.

3          THE COURT:  I'm trying to get you off for the

4    4th of July.

5          MR. GINDLER:  You succeeded.

6          THE COURT:  Did Mr. Barsky show your wife the

7    transcript?  Some other judge will probably foul it up.

8          MR. BARSKY:  I'd point out that there are some

9    counterclaims, contract counterclaims in the consolidated

10   cases already.  For example, the case I'm counsel on,

11   Amgen.  There are those counterclaims already.

12         THE COURT:  I'm really just trying to get this

13   focused.  And maybe I've miscalculated.  But I just think

14   this is -- you know, the validity of this patent is very

15   important to all of you, and Mr. Goldberger was telling

16   me Malcolm Baldridge, Secretary of Commerce, has

17   subsequently said, you know, he could manage adversity,

18   he couldn't manage uncertainty.  And your clients can

19   manage adversity, but this is really important, I think,

20   and these products are very important.  They're not

21   widgets.  They're very important to human health.

22         MR. GINDLER:  If you prefer to have the date in

23   January, it's okay with us.

24         THE COURT:  Yeah.  Just try to keep our eye on

25   this ball and, you know, they think they've got a great

CERTIFICATE

I, JUDITH A. TWOMEY, RPR, Official Court
Reporter for the United States District Court, District
of Massachusetts, do hereby certify that the foregoing
transcript, pages 1 through 200 inclusive, was taken by
me stenographically and thereafter by me reduced to
transcription and is a true record of the proceedings in
the above-entitled matter to the best of my ability.


                         JUDITH A. TWOMEY, RPR
                         Official Court Reporter