# APPENDIX N

COPY

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
Adrian M. Pruetz (Bar No. 118215)
Charles K. Verhoeven (Bar No. 170151)
Victoria F. Maroulis (Bar No. 202603)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Plaintiff Genentech, Inc.

ORIGINAL FILED
MAY 14 2004
RICHARD W. WIEKING
[NORTHERN DISTRICT OF CALIFORNIA]

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WDB

| | |
|---|---|
| GENENTECH, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br><br> Defendant. | CASE NO. C 04 1910 <br><br> COMPLAINT FOR DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY OF U.S. PATENT NO. 6,455,275 AND BREACH OF CONTRACT |

COMPLAINT

50656/63828.1

Reissue of U.S. Patent No. 6,455,275 B1
Issued: September 24, 2002
REISSUE filed June 17, 2004
Exhibit 16

CU 03397

## OVERVIEW AND NATURE OF THE CASE

1. Twenty years ago, The Trustees of Columbia University in the City of New York ("Columbia") obtained its first U.S. patent on a certain invention relating to recombinant DNA. In the two decades since then, Columbia has licensed those patent rights to approximately two dozen companies and has received substantial royalties from those companies - over seventy million dollars from Genentech, Inc. ("Genentech") alone. Columbia obtained the full benefits of the patent coverage on its invention. When patent protection on Columbia's invention expired in August 2000, the invention passed into the public domain. Nonetheless, on September 24, 2002, Columbia obtained a new U.S. patent on the invention. Genentech brings this case to stop Columbia's attempt to illegally recapture the invention from the public domain.

2. Columbia's first U.S. patent on the invention at issue here issued in 1983. That patent expired on August 16, 2000, after which the invention was dedicated to the public. After procuring that initial patent, Columbia obtained two additional U.S. patents on the invention. Because those two later patents claimed the same invention as the first patent or merely an obvious variant of it, the United States Patent and Trademark Office ("PTO") required Columbia to disclaim the rights in those two patents after the first patent's expiration date. The inventions claimed in each of those patents were also dedicated to the public after August 16, 2000.

3. Notwithstanding the above, some *fifteen years* after first filing its initial U.S. patent application on the invention in 1980, Columbia filed yet another U.S. patent application to try to obtain yet another patent on its invention. Columbia's prosecution of that application was dilatory, and multiple PTO examiners reviewed the application. After seven years, *and some twenty three years after its initial filing*, Columbia obtained U.S. Patent No. 6,455,275 ("the '275 patent"). But it did so without filing a terminal disclaimer as it had for the last two patents. The '275 patent should not have issued; having issued, it is invalid and unenforceable. Each of its twenty claims attempts to capture the same invention, or an obvious variant of the same invention, that is claimed in one or more of the three prior expired patents.

4. In addition, the doctrine of laches renders the '275 patent invalid and unenforceable. The United States Supreme Court has held that a nine-year delay in prosecution

COMPLAINT -1- 50656/63828.1

CU 03398

1  renders a patent unenforceable, *Woodbridge v. United States*, 263 U.S. 50 (1923), and that an
2  eight-year delay in prosecution renders a patent unenforceable, *Webster Electric Co. v. Splitdorf*
3  *Electrical Co.*, 264 U.S. 463 (1924). Relying on these cases, the Federal Circuit has recently
4  affirmed that "the equitable doctrine of laches may be applied to bar enforcement of patent
5  claims that issued after an unreasonable and unexplained delay in prosecution . . . ." *Symbol*
6  *Technologies, Inc. v. Lemelson Medical*, 277 F.3d 1361 (Fed. Cir. 2002).
7       5.    Columbia unreasonably delayed the prosecution of the '275 patent. In February
8  1980, Columbia first filed an application that Columbia asserts supports the claims of the '275
9  patent. But Columbia did not file the application that matured into the '275 patent until June
10 1995 – some *fifteen years* later. The delays that Columbia introduced into the prosecution of the
11 '275 patent are unreasonable and unexplained.
12      6.    The '275 patent is also unenforceable due to inequitable conduct in obtaining the
13 patent. In part because the PTO has limited resources with which to review patent applications,
14 U.S. patent law obligates a patent applicant and those substantively involved in the prosecution
15 of a patent application to disclose to the PTO all information known to be material to the PTO's
16 decision whether to grant the application. Columbia, its named inventors, and/or its patent
17 prosecutors committed inequitable conduct during the prosecution of the '275 patent, because
18 they withheld material information from a new patent examiner regarding an earlier rejection and
19 because they failed to disclose material scientific references with an intent to deceive the PTO.
20      7.    The invention claimed in the '275 patent is the same as, or merely an obvious
21 variant of, the invention claimed in the three earlier U.S. patents that Columbia obtained. The
22 invention claimed in those patents passed into the public domain as of August 16, 2000.
23 Columbia has already reaped the full benefit the law allows for its invention. Genentech
24 therefore seeks this Court's declaratory judgment that each of the claims of the '275 patent is
25 invalid and unenforceable.
26      8.    Genentech also seeks a determination that Columbia has materially breached its
27 License Agreement with Genentech by improperly terminating the agreement for pretextual
28

COMPLAINT                                    -2-                                    50656/63828.1

CU 03399

1 reasons. Due to all of the circumstances alleged in this complaint Genentech is not paying
2 royalties to Columbia under the '275 patent.

### THE PARTIES

9. Genentech, Inc., is a Delaware corporation with a principal place of business in this judicial district.

10. Upon information and belief, the Trustees of Columbia University in the City of New York is a New York corporation with its principal place of business in New York.

### JURISDICTION

11. This is an action for declaratory relief of patent invalidity and unenforceability arising under the patent laws of the United States, including Title 35 of the United States Code.

12. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201. As set forth in more detail below, an actual controversy exists between Genentech and Columbia regarding the validity and enforceability of the '275 patent because Columbia has represented to Genentech that the '275 patent is valid and enforceable and that Genentech owes royalties to Columbia pursuant to a license to that patent. The '275 patent is not valid or enforceable; hence Genentech disputes that any royalties are owed based on that patent. Moreover, Genentech has stopped paying royalties to Columbia under the '275 patent, thus establishing subject matter jurisdiction and meeting the standard for declaratory relief.

13. This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Genentech's breach of contract claim. That claim is so related to the other claims for relief that they form part of the same case or controversy under Article III of the United States Constitution. Each of the five claims for relief in this complaint is based on the same set of operative facts and allegations.

### VENUE

14. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b): Columbia negotiated a patent license (that includes rights to the '275 patent at issue in this lawsuit) with Genentech, which is a resident of this judicial district; Genentech signed the patent license in this judicial district; Columbia has directed substantial communications regarding the license and the

COMPLAINT -3- 50656/63828.1

CU 03400

1 '275 patent to Genentech in this judicial district; Columbia has accepted from Genentech
2 substantial sums of money originating from this district pursuant to that license; and Columbia
3 has indicated to Genentech that Genentech owes royalties under that license based on the '275
4 patent.

## ALLEGATIONS COMMON TO ALL CLAIMS

### Columbia obtains a patent for the invention: the '216 patent

7    15.    More than twenty years ago, Columbia filed the patent application U.S. Serial No. 06/124,513 ("the '513 application"), which issued as U.S. Patent No. 4,399,216 ("the '216 patent") on August 16, 1983, to Columbia as the assignee of named inventors Richard Axel, Michael H. Wigler, and Saul J. Silverstein. As issued, the '216 patent contained 73 claims. A true and correct copy of the '216 patent is attached hereto as Exhibit 1.

12    16.    Under U.S. law applicable at the time, the '216 patent expired as of August 16, 2000. After August 16, 2000, the invention claimed in the '216 patent passed into the public domain.

### Columbia obtains the '665 patent

16    17.    After receiving notice that the '216 patent would issue, on August 11, 1983, Columbia submitted an application ("the '665 application") that matured into U.S. Patent No. 4,634,665 ("the '665 patent"). The PTO rejected certain claims of the '665 application – "under the judicially created doctrine of obviousness-type double patenting as being unpatentable over the prior inventions as set forth in [certain claims] of U.S. patent no. 4,399,216." In particular, the PTO concluded that those claims "are not patentably distinct from each other" when compared to claims in the '216 patent.

23    18.    In response, Columbia did not contest that the '665 patent claimed the same invention, or merely an obvious variant of the same invention, that was claimed in the '216 patent. Instead Columbia chose to submit a terminal disclaimer of the allowed claims of the '665 patent by which Columbia agreed that the term of the '665 patent would not extend beyond the August 16, 2000 expiration date of the '216 patent.

19. On January 6, 1987, the '665 patent issued to Columbia as assignee of named inventors Richard Axel, Michael H. Wigler, and Saul J. Silverstein. As issued, the '665 patent contained 23 claims. A true and correct copy of the '665 patent is attached hereto as Exhibit 2.

20. The '665 patent issued with the notice that "[t]he portion of the term of this patent subsequent to Aug. 16, 2000 [the '216's expiration date] has been disclaimed." Thus, after August 16, 2000, the invention claimed in the '665 patent passed into the public domain.

**Columbia licenses its invention to Genentech.**

21. As the '216 and '665 patents reflect, Columbia's "invention . . . was made in the course of work under grants numbers CA-23767 and CA-76346 from the National Institutes of Health, Department of Health and Human Services."

22. While Columbia's '513 application was pending, the Office of the Assistant Secretary for Health of the Department of Health and Human Services, by letter in response to Columbia's petition, denied Columbia's request for "title to the invention" and that "the nonexclusive, irrevocable, royalty-free license for the government apply only to the United States." The Assistant Secretary's letter also noted that "development is necessary to advance *the invention* to the point of practical application and to meet Food and Drug Administration Approval. Such development shall include . . . identifying and cloning eucaryotic cells; preparing biologically significant materials using the process of the invention; and preparing, isolating, and characterizing biologically significant materials produced using the process of *the invention*." The Assistant Secretary imposed conditions on Columbia, including: (1) that the inventors "assign all of their rights in *the invention* to the University"; (2) that the University shall report to HHS "regarding the development and commercial use that is being made and is intended to be made of *the invention*"; and (3) that the "University shall use all reasonable efforts to bring the invention to the commercial market through licensing on a non-exclusive, royalty-free or reasonable royalty basis."

23. Thereafter, by an agreement dated October 12, 1987 ("the License Agreement"), Columbia secured Genentech's agreement to pay royalties to Columbia. In exchange, Columbia granted a non-exclusive license to certain patents and patent applications, including the '216 and

COMPLAINT                              -5-                              50656/63828.1

CU 03402

1  the '665 patents. That agreement required Genentech to pay more than one million dollars in up-
2  front fees not creditable against royalties, and required Genentech to pay substantial royalties to
3  Columbia based on particular defined sales. To date, Genentech has paid more than seventy
4  million dollars to Columbia under the License Agreement. According to Columbia, the
5  invention is its "single most successful innovation" and has been licensed to "23 companies
6  worldwide."

**Columbia obtains the '017 patent**

8      24. Notwithstanding having obtained the '216 patent and the '665 patent, both of
9  which Columbia effectively admitted claim the same invention, on June 18, 1991, Columbia
10 filed yet another application ("the '017 application"). That application also claimed priority to the
11 '513 application. Columbia represented to the PTO that the '017 application was a divisional of
12 application Serial No. 07/346,089.

13     25. In response, the PTO (1) rejected certain claims "as claiming the same invention"
14 as a certain claim in the '216 application, noting that "[t]his is a double patenting rejection," and
15 (2) noted that the claims presented "were not present in the parent application and were never
16 subjected to the requirement for restriction. Therefore, the present application is being examined
17 as a continuation of application Serial No. 07/346,089 and not as a divisional application."

18     26. The PTO also rejected certain other claims in the '017 application "under the
19 judicially created doctrine of obviousness-type double patenting as being unpatentable" over
20 certain claims of the '216 patent. The PTO noted that the conflicting claims were "not patentably
21 distinct from each other because the mammalian cells claimed in the instant application would
22 result from the processes claimed" in the '216 patent, and that the mammalian cells claimed were
23 "clearly obvious" over the '216 patent claims.

24     27. In response, Columbia did not contest that certain claims of the '017 application
25 claimed the same invention, or merely an obvious variant of the same invention, that was claimed
26 in the '216 patent. Instead, Columbia chose to submit a terminal disclaimer, by which Columbia
27 agreed that the term of the '017 patent would not extend beyond the August 16, 2000 expiration
28 date of the '216 patent. Subject to the terminal disclaimer, on January 12, 1993, the '017 patent

COMPLAINT           -6-                  50656/63828.1

CU 03403

1. issued, with five claims, to Columbia as assignee of named inventors Richard Axel, Michael H. Wigler, and Saul J. Silverstein. A true and correct copy of the '017 patent is attached hereto as Exhibit 3.

2. 28. The '017 patent issued with the notice that "[t]he portion of the term of this patent subsequent to Aug. 16, 2000 [the '216's expiration date] has been disclaimed." Pursuant to the terminal disclaimer, after August 16, 2000, the invention claimed in the '017 patent passed into the public domain.

**Columbia obtains the '275 patent – without entering a terminal disclaimer**

29. As noted above, Columbia obtained an initial U.S. patent for its invention – the '216 patent. Columbia thereafter sought to obtain additional U.S. patents for its invention. Columbia was able to obtain those two additional patents only by disclaiming all of the rights to the invention claimed in those patents after the '216 patent's expiration date. Despite that, on June 7, 1995 – some *fifteen years* after filing the '513 application – Columbia filed *yet another* U.S. application ("the '275 application") on its invention that again claimed priority to the '513 application. As initially presented, the '275 application contained 125 claims, which Columbia thereafter amended several times due to, among other things, rejections based upon double patenting.

30. In May 2002, after the '275 application had been pending for some seven years – a delay caused by Columbia's dilatory responses to the PTO's Office Actions – a PTO Examiner different from the Examiner who initially rejected the '275 application allowed certain pending claims.

31. On September 24, 2002, the '275 patent issued. A true and correct copy is attached hereto as Exhibit 4. As issued, the '275 patent contains 20 claims.

32. Columbia did not agree to a terminal disclaimer when it obtained the '275 patent, unlike when it obtained the '665 and '017 patents.

COMPLAINT -7- 50656/63828.1

CU 03404

**During the prosecution of the '275 patent, Columbia makes misrepresentations and misleading omissions to the PTO that are material to the patentability of the '275 patent**

33. On February 3, 1998, the Patent Examiner rejected all pending claims in the application that matured into the '275 patent on the basis of double patenting over the claims of the '017 patent regarding transformed Chinese Hamster Ovary ("CHO") cells.

34. On July 24, 1998, Columbia responded to the double patenting rejection by canceling claim 132 and conceding the merits of the double patenting rejection for claims regarding transformed CHO cells. Columbia then argued that by canceling claim 132 the remaining claims became distinct from the transformed cells claimed in the '017 patent.

35. On September, 14, 1998, the Patent Examiner noted the cancellation of claim 132 and again rejected, though on different grounds, the remaining proposed claims of the application.

36. On January 31, 2000 and on October 24, 2000, a new Patent Examiner rejected the pending proposed claims, which did not claim transformed CHO cells, for double patenting over the claims of the '216 patent.

37. On June 14, 2001, in response to the new Examiner's rejections, Columbia added claims for transformed cells like those rejected by the previous Examiner. Indeed the same prosecuting counsel who had responded to the February 3, 1998 Office Action in which the Examiner rejected all the transformed cell claims for double patenting, resubmitted the transformed cell claims without disclosing to the new Patent Examiner the prior rejection of February 3, 1998 or the response of July 24, 1998. This omission was material and was intended to deceive the PTO. Had this information been disclosed to the Examiner, Columbia could not have obtained the '275 patent.

38. In addition to failing to inform the Examiner that the resubmitted claims had been previously rejected, Columbia redrafted the rejected CHO claims to appear superficially different while being virtually identical in substance. This misrepresentation was material and was intended to deceive the PTO.

CU 03405

39.  In addition to the above conduct, Columbia and/or others substantively involved in prosecution of the application leading to the '275 patent withheld material information from the PTO with the intent to deceive the PTO. The withheld information includes but is not limited to N. Mantei et al., "Rabbit β-globin mRNA Production in Mouse L Cells Transformed with Cloned Rabbit β-globin DNA," Nature 281, pp. 40-46 (1979) ("Mantei Cotransformation Article"). Columbia, its named inventors, and/or its patent prosecution counsel knew of the Mantei Cotransformation Article, knew that the PTO would have considered the Mantei Cotransformation Article to be material, and intended to deceive the PTO about it. Indeed, the Mantei Cotransformation Article was cited during Columbia's prosecution of the earlier '216 patent, which claims the same invention as the later '665, '017, and '275 patents. The article had also been cited in opposition to (1) a European patent application that Columbia had previously filed that also claimed priority to the '513 application, and (2) a Japanese patent application that Columbia had previously filed that also claimed priority to the '513 application.

40.  In fact, Columbia purported to cite the Mantei Cotransformation Article in an Information Disclosure Statement submitted to the PTO during the '275 patent's prosecution. In response, the PTO refused to consider the citation to the Mantei Cotransformation Article because the citation was "not in conformance [with the PTO's Manual of Patent Examination and Procedures] and not considered." Despite this awareness of the article and awareness that the PTO would have considered it to be material, the article was not thereafter submitted in conformance with PTO rules for the PTO's consideration during the '275 patent's prosecution. The result is that the PTO did not consider the Mantei Cotransformation Article in assessing the validity of the '275 patent.

41.  The withheld information also includes, but is not limited to K. Willecke et al., "Cotransfer of Two Linked Human Genes into Cultured Mouse Cells," Proc. Nat'l Acad. Sci. USA 73(4), pp. 1274-1278 (1976) ("Willecke Cotransformation Article"). Columbia, its named inventors, and/or its patent prosecution counsel knew of the Willecke Cotransformation Article, knew that the PTO would have considered the Willecke Cotransformation Article to be material, and intended to deceive the PTO about it. Indeed, Columbia's named inventors cited the

COMPLAINT                                    -9-                                    50656/63828.1

CU 03406

1  Willecke Cotransformation Article prior to filing the first patent application in Wigler et al.,
2  "DNA-Mediated Transfer of Adenine Phosphoribosyltransferase Locus Into Mammalian Cells,"
3  Proc. Nat'l Acad. Sci. USA 76(3), pp. 1373-1376 (1976). In addition, the Examiner cited the
4  Willecke Cotransformation Article against the then-pending claims during the prosecution of the
5  earlier '665 patent, which claims the same invention as the '216, '017, and '275 patents. The
6  Examiner stated that "Willecke et al. teach the cotransfer of two linked genes into cultured mouse
7  cells using one gene coding for a selectable trait and producing proteins from each gene." Later
8  in the prosecution of the '665 patent and in maintaining the rejection of claims relating to linked
9  cotransformation, the Examiner stated that "Willecke et al. show linking two pieces of DNA for
10 cotransformation and one would expect similar behavior for other linked DNA."

11    42.    Columbia purported to cite the Willecke Cotransformation Article in an
12 Information Disclosure Statement submitted to the PTO during the prosecution of the '275 patent.
13 In response, the PTO refused to consider the citation to the Willecke Cotransformation Article
14 because the citation was "not in conformance [with the PTO's Manual of Patent Examination and
15 Procedures] and not considered." Despite this awareness of the article and awareness that the
16 PTO would have considered it to be material, the Willecke Cotransformation Article was not
17 thereafter submitted in conformance with PTO rules for the PTO's consideration during the '275
18 patent's prosecution. The result is that the PTO did not consider the Willecke Cotransformation
19 Article in assessing the validity of the '275 patent.

20    43.    The withheld information also includes but is not limited to Miller & Ruddle,
21 "Co-Transfer of Human X-Linked Markers into Murine Somatic Cells via Isolated Metaphase
22 Chromosomes," Proc. Nat'l Acad Sci. USA 75(7), pp. 3346-3350 (1978) ("Miller
23 Cotransformation Article"). Columbia, its named inventors, and/or its patent prosecution counsel
24 knew of the Miller Cotransformation Article, knew that the PTO would have considered the
25 Miller Cotransformation Article to be material, and intended to deceive the PTO about it.
26 Indeed, the Miller Cotransformation Article was cited during Columbia's prosecution of the
27 earlier '665 patent, which claims the same invention as the '216, '017, and '275 patents.
28

COMPLAINT                                    -10-                              50656/63828.1

CU 03407

44. Columbia purported to cite the Miller Cotransformation Article in an Information Disclosure Statement submitted to the PTO during the prosecution of the '275 patent. In response, the PTO refused to consider the citation to the Miller Cotransformation Article because the citation was "not in conformance [with the PTO's Manual of Patent Examination and Procedures] and not considered." Despite this awareness of the article and awareness that the PTO would have considered it to be material, the Miller Cotransformation Article was not thereafter submitted in conformance with PTO rules for the PTO's consideration during the '275 patent's prosecution. The result is that the PTO did not consider the Miller Cotransformation Article in assessing the patentability of the '275 patent.

**Columbia materially breaches the License Agreement**

45. In a letter dated March 18, 2004, Columbia gave notice to Genentech that it was terminating the License Agreement due to the following alleged material breaches by Genentech:

> (1) failing to pay all royalties due on Licensed Products manufactured on or after September 24, 2002, the date on which United States Patent No. 6,455,275 was issued; (2) failing to provide required reports for all such unpaid royalties; (3) failure to provide proper certified royalty reports; (4) failing to allow an audit of its books and records in accordance with the terms of the agreement; (5) failing to pay all fees due under the license agreement.

46. In a letter dated April 16, 2004, Genentech responded to Columbia's purported termination by explaining that the bases for Columbia's termination of the License Agreement were meritless and pretextual. Genentech stated that Columbia's pretextual termination of the License Agreement constituted a material breach of the agreement.

47. In its letter of April 16, 2004, Genentech also informed Columbia that because of Columbia's material breach Genentech would not make future royalty payments under the '275 patent. Genentech is therefore not paying royalties to Columbia under the '275 patent.

COMPLAINT -11- 50656/63828.1

CU 03408

**FIRST CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT THAT THE**

**'275 PATENT IS INVALID BECAUSE OF DOUBLE PATENTING**

48. Genentech hereby incorporates ¶¶ 1-47 of this complaint.

49. Columbia maintains that the '275 patent is valid and enforceable. Genentech maintains that all of the claims of the '275 patent are invalid and unenforceable because each of the inventions claimed in it is identical to, or is merely an obvious variant of, the inventions claimed in the '216, '665, and/or '017 patents. There is a case or controversy between the parties about whether the '275 patent is invalid and unenforceable because Columbia has asserted that the '275 patent is valid and enforceable, and that Genentech owes royalties under the '275 patent.

50. Accordingly, Genentech seeks this Court's declaratory judgment that the '275 patent is invalid because each of the claims in it is identical to, or is merely an obvious variant of, claims in the '216, '665, and/or '017 patents.

51. This is an exceptional case, and Genentech is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

52. WHEREFORE, Genentech prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT THAT THE '275 PATENT IS INVALID**

**AND UNENFORCEABLE BECAUSE OF PROSECUTION LACHES**

53. Genentech hereby incorporates ¶¶ 1-52 of this complaint.

54. As set forth above, the patent claims of the '275 patent issued after unreasonable and unexplained delays in the prosecution of those claims. In light of those unreasonable and unexplained delays in the prosecution of the '275 patent, Genentech maintains that all of the claims of the '275 patent are invalid and unenforceable. Despite those unreasonable and unexplained delays, Columbia maintains that the '275 patent is valid and enforceable. There is a case or controversy between the parties about whether the '275 patent is invalid and unenforceable.

55. The delay has caused and will cause Genentech to suffer material prejudice.

COMPLAINT     -12-     50656/63828.1

CU 03409

56. Accordingly, Genentech seeks this Court's declaratory judgment that the '275 patent is invalid and unenforceable because of prosecution laches.

57. This is an exceptional case, and Genentech is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

58. WHEREFORE, Genentech prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF

### DECLARATORY JUDGMENT THAT THE '275 PATENT IS UNENFORCEABLE BECAUSE OF INEQUITABLE CONDUCT

59. Genentech hereby incorporates ¶¶ 1-58 of this complaint.

60. The '275 patent is unenforceable by reason of Columbia's inequitable conduct during the prosecution of the '275 patent.

61. Columbia owed a duty of candor, good faith, and honesty to the PTO in the prosecution of the '275 patent. Columbia breached this duty, with the requisite intent to deceive, when before the '275 patent issued, Columbia and/or others substantively involved in prosecuting the application leading to the '275 patent, were aware of information material to the patentability of the claims of the '275 patent and withheld that information from the PTO.

62. The acts constituting Columbia's inequitable conduct include, but are not limited to: (1) misleading the '275 patent examiner into withdrawing double-patenting rejections based on the '017 patent; and (2) withholding material scientific references that had been cited during the prosecution of the '216 and '665 patents.

63. Columbia's misrepresentations, misleading statements, omissions, and manipulations were material and were made with the intent to deceive. Columbia thus committed inequitable conduct while prosecuting the '275 patent, thereby making the '275 patent unenforceable.

64. Accordingly, Genentech seeks this Court's declaratory judgment that the '275 patent is unenforceable because of inequitable conduct committed during its prosecution.

65. This is an exceptional case, and Genentech is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

CU 03410

66. WHEREFORE, Genentech prays for relief as set forth below.

### FOURTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT THAT GENENTECH OWES NO ROYALTIES UNDER THE '275 PATENT

67. Genentech hereby incorporates ¶¶ 1-66 of this complaint.

68. Columbia contends that pursuant to the License Agreement between it and Genentech, Genentech must pay royalties to Columbia on the '275 patent. Genentech contends that the '275 patent is invalid and unenforceable and thus the License Agreement does not require Genentech to pay royalties to Columbia based on the '275 patent.

69. In particular, the License Agreement defines "Licensed Products" to mean "products, the manufacture, use or sale of which is covered by a claim of Licensed Patent Rights which have neither expired nor been held invalid by a court of competent jurisdiction from which no appeal has or may be taken." Because invalidity and unenforceability are distinct concepts under our patent laws, the License Agreement thereby does not require Genentech to pay royalties to Columbia if the Licensed Patents are unenforceable. The '275 patent is unenforceable.

70. Accordingly, Genentech is entitled to declaratory judgment that Genentech is entitled to recover any and all royalties based on the '275 patent paid by Genentech to Columbia under the License Agreement.

71. WHEREFORE, Genentech prays for relief as set forth below.

### FIFTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

72. Genentech hereby incorporates ¶¶ 1-71 of this complaint.

73. Genentech has performed all conditions, covenants, and promises that it is required to perform under the License Agreement with Columbia.

74. On March 18, 2004, Columbia improperly terminated the License Agreement with Genentech on a pretextual basis.
COMPLAINT -14- 50656/63828.1

CU 03411

75. Columbia's pretextual termination constitutes a material breach of its obligations under the License Agreement.

76. As a proximate result of Columbia's breach, Genentech has suffered actual and consequential damages.

WHEREFORE, Genentech prays for relief as follows:

### PRAYER FOR RELIEF

1. The Court enter a declaratory judgment that the '275 patent is invalid because each of its claims purports to claim the same invention, or an obvious variant thereof, as an invention claimed in claims from the '216, '665, and/or '017 patents.

2. The Court enter a declaratory judgment that the '275 patent is invalid and unenforceable because of prosecution laches.

3. The Court enter a declaratory judgment that the '275 patent is unenforceable because of inequitable conduct committed during its prosecution.

4. The Court enter a declaratory judgment that the License Agreement does not obligate Genentech to pay royalties under the '275 patent.

5. The Court award damages to Genentech resulting from Columbia's breach of its License Agreement with Genentech.

6. The Court grant injunctive relief prohibiting Columbia from demanding any further royalties under the License Agreement based on the '275 patent or on any pending continuations, continuations-in-part, or divisional applications of the patents recited in those agreements;

7. That Columbia be directed to pay Genentech's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

8. That Genentech have such other and further relief as this Court may deem just and proper.

COMPLAINT                                    -15-                                    50656/63828.1

CU 03412

```
Dated: May 14, 2004                    QUINN EMANUEL URQUHART
                                       OLIVER & HEDGES LLP

                                       By: /s/ Charles K. Verhoeven /PHS
                                           John B. Quinn
                                           Adrian M. Pruetz
                                           Charles K. Verhoeven
                                           Victoria F. Maroulis

                                       Attorneys for Plaintiff
                                       GENENTECH, INC.
```

COMPLAINT                              -16-                        50656/63828.1

CU 03413

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil Local Rule 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a nonfinancial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Genentech, Inc.

Roche Holdings, Inc. owns approximately 60% of the issued common stock of Genentech Inc., however, Genentech Inc., remains an independent, publicly traded company.

Dated: May 14, 2004

QUINN EMANUEL URQUHART
OLIVER & HEDGES LLP

By: _/s/ Charles K. Verhoeven /PHS_
John B. Quinn
Adrian M. Pruetz
Charles K. Verhoeven
Victoria F. Maroulis

Attorneys for Plaintiff
GENENTECH, INC

COMPLAINT                       -17-                       50656/63828.1

CU 03414