UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: COLUMBIA UNIVERSITY PATENT LITIGATION | 04-MDL-01592 |
| BIOGEN, INC., GENZYME CORPORATION, and ABBOTT BIORESEARCH CENTER, INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>        Defendant. | CIVIL ACTION No. 03-CV-11329-MLW |

**MEMORANDUM OF BIOGEN IDEC MA INC. AND GENZYME CORPORATION IN RESPONSE TO COURT'S ORDER OF MAY 17, 2005**

On May 17, 2005, this Court ordered that the parties submit papers addressing (a) whether the first count of plaintiffs' MDL complaint (No. 03-CV-11329-MLW) ("*Biogen* action") survives the Court's November 5, 2005 Memorandum and Order ("Mem.") and (b) whether Biogen Idec MA Inc. ("Biogen") and Genzyme Corporation ("Genzyme") should be permitted to consolidate their new complaint (No. 04-CV-12009-MLW) ("*Idec* action") with the surviving portion of the *Biogen* action.[1]

Pursuant to the Court's Order of May 17, 2005, counsel for Biogen and Genzyme have conferred further with Columbia regarding the resolution of the above issues. Columbia

---

[1] Biogen and Genzyme incorporate herein the arguments they presented in the Joint Report submitted December 6, 2004 in the MDL action (No. 04-MDL-1592-MLW, Court's Dkt. No. 179); their briefs in support of their motion to consolidate the *Idec* action with the *Biogen* action (No. 03-CV-11329-MLW, Court's Dkt. Nos. 90, 96); and their brief in opposition to Columbia's first motion to dismiss the *Idec* action (No. 04-CV-12009-MLW, Court's Dkt. No. 8).

continues to assert the contradictory positions that, on the one hand, all counts of the *Biogen* action should be dismissed, and on the other hand, Biogen and Genzyme should move to amend or supplement the *Biogen* action rather than proceed with the *Idec* action. At the same time, Columbia opposes plaintiffs' motion to consolidate the *Idec* action with the *Biogen* action. Biogen and Genzyme simply wish to litigate their contract and tort claims against Columbia on the merits, and they do not care whether their claims proceed under the caption of the *Biogen* action or under the new caption of the *Idec* action. Indeed, as previously stated, Biogen and Genzyme would accede to dismissal of all counts of the *Biogen* action if Columbia would withdraw its overreaching motion to dismiss the *Idec* action on a purely procedural ground: that the claims must be made the subject of a motion to amend, rather than a motion to consolidate, in the *Biogen* action.[2] Since Columbia simultaneously insists that if the *Biogen* action is dismissed, plaintiffs will have no right to adjudicate their contract and tort claims either there or in any other action, Biogen and Genzyme cannot agree to Columbia's proposal to dismiss Counts I and V of the *Biogen* action.

As discussed below in Section II, Count I of the *Biogen* action raises justiciable issues that are not affected by the Court's rationale for dismissing certain declaratory judgment claims based upon Columbia's covenant not to sue, and this count therefore should survive. As discussed in Section III, however, Biogen and Genzyme are entirely amenable to dismissing Count I of the *Biogen* action if their wrongful termination claim can be adjudicated in the *Idec* action, along with their other contract and tort claims. Moreover, as set out in Section IV,

---

[2] Columbia now represents that it will *partially* withdraw its motion to dismiss the *Idec* action on procedural grounds. In particular, it will withdraw its motion to dismiss Biogen Idec Inc.'s claims, but continue to press its motion with respect to Biogen's and Genzyme's claims. At the October 6, 2004 hearing on Columbia's motion to dismiss, the Court itself approved the presentment of Biogen Idec Inc.'s claims in a separate action, stating in a colloquy with Amgen's counsel, "if there's what you call an affiliate that's not a party to this case and if I dismiss this case, then that affiliate can file its own case the way Idec did." Tr., Oct. 6, 2004, at 131.

Biogen and Genzyme recently informed Columbia that they would also be amenable to **staying** their remaining claims in both the *Biogen* and *Idec* actions pending the conclusion of reexamination and reissue proceedings relating to the '275 patent. Although Columbia previously sought such a stay to avoid the burden and cost of litigation, it has now reversed its position in order to pursue its inconsistent and illogical procedural objections to the *Idec* action.

In the absence of agreement about where and whether the contract claim in the *Biogen* action can be adjudicated, Biogen and Genzyme ask that the *Idec* action be consolidated with the *Biogen* action. If, however – contrary to the arguments below – the Court were to conclude that Biogen and Genzyme have **no** remaining justiciable claims in the *Biogen* action, the *Idec* action would simply go forward without consolidation.

## I.   The Parties Have Conferred Regarding Settlement.

The Court directed the parties to determine whether their case can be settled. Subsequent to the Court's Order, counsel for Biogen and Genzyme participated in several conferences with counsel for Columbia to discuss the prospects of settlement, and those discussions are continuing. Columbia is currently considering a settlement proposal presented by Biogen.

## II.   This Court Continues to Have Subject Matter Jurisdiction Over Count I.

Count I of the complaint in the *Biogen* action alleged a dispute "concerning plaintiffs' obligations under the License Agreements" and sought declaratory relief that plaintiffs had no obligation to pay any further royalties under the License Agreements. Notwithstanding Columbia's subsequent covenant not to seek royalties under the existing '275 patent, an actual controversy remains as to whether any royalties were owed prior to the covenant. This is because Columbia terminated Biogen's and Genzyme's licenses on grounds of nonpayment, and whether or not that termination was justified has important legal consequences. In particular,

resolution of that legal issue will affect whether Columbia is liable for damages for breach of contract.

Because whether royalties were owed in 2004 affects whether Columbia was in breach when it terminated Biogen's and Genzyme's licenses, and because Columbia has not conceded that it was in breach, the dispute over whether royalties were owed remains a "real and substantial controversy" – not a "hypothetical" one. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 (1937) (justiciable controversy is "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts").

Although Columbia had not yet breached by terminating the licenses at the time the *Biogen* complaint was filed, plaintiffs were entitled to seek a declaration of their rights in advance of the breach. *See, e.g., Doody v. Ameriquest Mortgage Co.,* 242 F.3d 286, 288 (5th Cir. 2001) (there was "actual controversy" in dispute over mortgage despite the absence of breach); *Keener Oil & Gas Co. v. Consol. Gas Utils. Corp.,* 190 F.2d 985, 989 (10th Cir. 1951) (there was "actual controversy" as to the terms of contract even in absence of breach); *see also* 3 Dan B. Dobbs, *Law of Remedies* § 12.8(7), at 242–43 (2d ed. 1993).

After plaintiffs filed their complaint, subsequent events gave rise to additional jurisdictional facts, namely, an actual breach of contract by Columbia. This supplied an additional, independent basis for jurisdiction that would apply even if the original grounds for jurisdiction no longer existed. Columbia has argued that Count I must be dismissed because "there is no reference to the termination notice in the actual text of Count I." Joint Report at 13. Based upon prior proceedings in this litigation, however, the Court may take judicial notice of the undeniable facts that Columbia sent termination notices to plaintiffs in the spring of 2004 and

that their licenses were terminated upon denial of the preliminary injunction, as the Court noted in its August 13, 2004 Memorandum and Order.[3] Mot. for Prelim. Inj., Exs. 6, 8 (No. 03-CV-11329-MLW, Court's Dkt. No. 36); *Biogen Idec MA Inc. v. Trustees of Columbia Univ.*, 332 F. Supp. 2d 286, 289 (D. Mass. 2004) (noting that denial of preliminary injunction meant Biogen and Genzyme licenses were terminated as of April 2004 and May 2004 respectively).

The fact that Columbia no longer seeks royalties does not extinguish the continuing controversy over whether Biogen and Genzyme **owed** royalties when Columbia terminated the licenses. *See* 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2757 (3d ed. 1998) ("There is little difficulty in finding an actual controversy [in a declaratory judgment case] if all of the acts that are alleged to create liability already have occurred. The court is then merely being asked, as in any litigation, to determine the legal consequences of past events …."). Columbia's position to the contrary amounts to an assertion that the relief a plaintiff is entitled to seek is fixed and frozen at the time the complaint is filed, regardless of the subsequent evolution of the facts. *Cf.* 28 U.S.C. § 2202 (relief in declaratory judgment action not limited to declaration itself; rather, "further necessary or proper relief based on a declaratory judgment or decree may be granted….").

For these reasons, Count I should survive the Court's November 5, 2004, decision.

### III. Consolidation Is Appropriate if Claim I is not Dismissed.

The *Idec* action was brought in part to protect the rights of Biogen Idec Inc., Biogen's affiliate, which Columbia unequivocally excluded from the scope of the covenant not to sue. For convenience, and to minimize the number of filings with the Court, Biogen's and Genzyme's

---

[3] By statute, any technical deficiency in the pleading of these additional jurisdictional facts could be cured by amendment if the Court found it to be necessary. *See* 28 U.S.C. §1653. Furthermore, if the Court orders the *Idec* action to be consolidated with this action, the additional jurisdictional facts will be made part of the pleadings in this case.

breach of contract and tort claims against Columbia – claims that arose or were discovered after the *Biogen* complaint was filed – were included in the *Idec* complaint.[4] Columbia's arguments concerning the alleged impropriety of the *Idec* complaint are addressed in Biogen's and Genzyme's briefing on Columbia's two motions to dismiss that complaint (No. 04-CV-12009-MLW, Court's Dkt. Nos. 8, 22, 31).

For the sake of efficiency and economy, Biogen and Genzyme are willing to stipulate to the dismissal of all claims in the *Biogen* action on the condition that Columbia agrees they may proceed on the merits in the *Idec* action. Alternatively, Biogen and Genzyme are willing to move to supplement the original *Biogen* action with the new jurisdictional facts and the new claims currently pending in the *Idec* action if the Court regards that course of action as preferable. Either alternative would eliminate the need for the Court to rule on two pending motions: (i) the motion of Biogen and Genzyme to consolidate their claims in the *Idec* action with the original claims in the *Biogen* action (No. 03-CV-11329-MLW, Court's Dkt. No. 89), and (ii) Columbia's motion to dismiss the *Idec* action without prejudice on procedural grounds (No. 04-CV-12009, Court's Dkt. No. 6). Columbia has been unwilling to discuss either alternative. Instead, it takes the contradictory positions that all counts of the *Biogen* action should be dismissed, and also that Biogen and Genzyme should move to supplement the *Biogen* action rather than proceed with the *Idec* action.

## IV.     Biogen and Genzyme Are Amenable to a Stay of the Remaining Claims in Both Cases.

In the interest of judicial economy and temporary repose, during recent conferences with Columbia, Biogen and Genzyme offered to assent to a stay of all remaining claims in the *Biogen*

---

[4] In addition to the breach of contract claims arising from the termination of the licenses and other claims, the *Idec* complaint includes claims on behalf of both Genzyme and Biogen for breach of the "most favored licensee" provisions of the license agreements. These claims were not discovered until after the *Biogen* complaint was filed.

action **and** the *Idec* action pending the results of the reissue and reexamination proceedings on the '275 patent. Columbia refused, reversing the position it took a year ago when it sought to stay **all** of the MDL plaintiffs' claims pending the Patent Office proceedings.

Although at the time of the Joint Report filed December 6, 2004, Biogen and Genzyme did not believe it would be appropriate to stay their remaining claims, they are amenable to a stay of all their remaining claims if it would assist the Court in reconciling the parties' positions and would reduce the burdens on the Court's docket.

### V.  The Court Should Enter An Order of Dismissal In the Form Proposed By Biogen and Genzyme.

The Court's Order of May 17, 2005, directed the parties to file proposed orders dismissing the claims that they agree should be dismissed. The parties have conferred but have been unable to reach agreement on a proposed order. Therefore, the parties are submitting separate proposed orders, to be filed by Columbia today. For the reasons set forth below, Biogen and Genzyme respectfully submit that the Court should enter an order in the form they have proposed.

#### A.  Any Order of Dismissal Should Expressly Incorporate Columbia's Covenant Not To Sue and Retain Jurisdiction To Enforce The Covenant.

As set out in the Joint Report of December 6, 2004, and in Biogen's and Genzyme's proposed order filed by Columbia today, Biogen and Genzyme respectfully request that any order of dismissal for lack of subject matter jurisdiction expressly incorporate Columbia's Amended and Restated Covenant Not to Sue, the basis of the Court's November 5, 2004, decision. The Court should retain jurisdiction to enforce the Covenant and to resolve any disputes regarding the interpretation or enforcement of the Covenant. *Cf.*, *ATMI, Inc. v. Innovative Eng'g Solutions, Inc.*, No. C 01-1729 SI, 2002 WL 826794, *2 (N.D. Cal. Apr. 29, 2002) (ordering that covenant not to sue is binding); *Highway Equip. Co., Inc. v. Feco, Ltd.*, No.

C03-0076, 2005 WL 936469, *2-4 (N.D. Iowa Apr. 22, 2005) (retaining jurisdiction in patent case to consider claim for attorney fees even after dismissal of claims for lack of subject matter jurisdiction based upon covenant not to sue). Surprisingly, Columbia opposes the incorporation of its Covenant into a Court Order, maintaining that the Court "already explained the meaning and the consequence" of the Covenant. Joint Report at 12. Clearly Columbia must be required to comply with the Covenant. Biogen and Genzyme submit that this is best accomplished by confirming that the Covenant is a condition of the dismissal and will be enforced by this Court.

### B. Any Order of Dismissal Should Be Without Prejudice

Columbia's proposed form of order does not expressly recite that the dismissal is without prejudice. Because the dismissal is for lack of subject matter jurisdiction, plaintiffs sought clarification that Columbia was not asserting that the dismissal represented an adjudication on the merits of plaintiffs' challenge to the validity and enforceability of the '275 patent. Even though Fed. R. Civ. P. 41(b) expressly provides that dismissal for lack of subject matter jurisdiction not an adjudication on the merits, Columbia surprisingly refused either to recite that the dismissal was without prejudice or even to disclose Columbia's position as to the effect of its proposed order of dismissal. As the Court is aware, issues as to the validity and enforceability of the '275 patent are explicitly raised in the *Idec* action, and the Court has not yet adjudicated these issues. In light of Columbia's inexplicable refusal to acknowledge that a ruling on subject matter jurisdiction does not go to the merits, and to prevent any future litigation over this question, the Court should enter an order of dismissal without prejudice in the form proposed by plaintiffs.

### VI. Conclusion

Because a live controversy exists over the rights of the parties under the license agreements, Count I of the *Biogen* action, which seeks a declaration of those rights, is ripe for adjudication and should not be dismissed. If the count is not dismissed, then the *Idec* action

should be consolidated with the *Biogen* action for further proceedings. If, however, the *Biogen* action is dismissed in its entirety, then Biogen and Genzyme should be permitted to proceed with the merits of their claims in the *Idec* action. Biogen and Genzyme do not oppose a stay of all claims in the *Biogen* action and the *Idec* action pending the results of reissue and reexamination proceedings on the '275 patent. Finally, any order of dismissal should expressly incorporate the Covenant, so that the Court may retain jurisdiction to adjudicate any disputes over the Covenant itself.

Dated: June 10, 2005                                  Respectfully submitted,

/s/ Donald R. Ware
Donald R. Ware  BBO # 516260
Claire Laporte  BBO # 554979
Sarah Cooleybeck BBO # 631161
Carla Miriam Levy  BBO # 654212
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000
Attorneys for plaintiffs BIOGEN IDEC MA
 INC. and GENZYME CORPORATION